UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

| | |
|---|---|
| PURE POWER BOOT CAMP, INC., PURE POWER BOOT CAMP FRANCHISING CORPORATION, and PURE POWER BOOT CAMP JERICHO INC., | SUPPLEMENTAL MEMORANDUM OF LAW<br><br>Index No.: 08 CV 4810 (JGK) |
| Plaintiffs | |
| -against- | |
| WARRIOR FITNESS BOOT CAMP, LLC, ALEXANDER KENNETH FELL a/k/a ALEX FELL, Individually; RUBEN DARIO BELLIARD a/k/a RUBEN BELLIARD, Individually; JENNIFER J. LEE Individually; and NANCY BAYNARD, Individually, | |
| Defendants. | |

-------------------------------------------------------------------x

## INJUNCTIVE RELIEF

In order to obtain injunctive relief, there must be a showing of irreparable injury and the inadequacy of legal remedies. Irreparable harm, and either (a) a likelihood of success on the merits, or (b) a balance of hardships tipping decidedly toward the party seeking the injunctive relief is required. Payment Alliance Intern., Inc. v. Ferreira, 530 F.Supp.2d 477, 480 (SDNY 2007) (*quoting* Covino v. Patrissi, 967 F.2d 73, 77 (2d Cir.1992).) As set forth in the original motion papers along with Lauren Brenner's supplemental affidavit submitted herewith, any one of defendants' acts, (a) the theft and use of plaintiff's customer list, (b) the restrictions of the employee agreements (along with the theft and destruction by Belliard), (c) the theft, copying and use of plaintiff's other corporate documents, including but not limited to its business plan which

1

plaintiffs expended substantial sums to develop in connection with their franchising plan, (d) the breach of Belliard and Fell's fiduciary obligations to plaintiffs, which, in addition to the foregoing malfeasance, included the active creation and development of a competing entity while employed by plaintiffs and on plaintiffs' time, and the use of defendants Lee and Baynard as corporate spies, to befriend and subvert clients, and (e) infringement upon plaintiff's trade dress, satisfy all three criteria. With the combination of these acts, the need for injunctive relief is inescapable.

## THEFT OF CUSTOMER LISTS

The facts have already been developed at length in the original motion papers along with the supplemental affidavit of Lauren Brenner. Briefly, on the eve of Belliard's resignation, at the same time he was in Brenner's office, defendants' "updated" their customer list. Although they tried to convince Justice Freedman in State Court that this was not a stolen list but information they already knew, that court rejected the claim, concluded that the lists were stolen and ordered their return. Physical copies were returned, but there was no effort to purge electronic files and even if there were, after the mass emails by defendants using the list, the damage had been done.

Cases condemning this misconduct by employees and granting injunctive relief are innumerable. The need for injunctive relief results from either the theft of confidential information or the desire to punish the " egregious breach of trust and confidence while in plaintiffs' service" . Leo Silfen, Inc. v. Cream, 29 N.Y.2d 387, 328 N.Y.S.2d 423 (1972). Here, both concerns apply. The list was confidential as it was not available to the general public. First, it was a list of clients so it provided defendants with an instant database of over 300 people who use boot camp programs which is the business they were attempting to copy. It also provided

personal and business contact information and email addresses, much of which, and certainly, at a minimum, the email addresses, would not have been available to the general public.

Second, even if the list were not confidential (and ignoring for the moment the confidentiality requirements of the employee agreement discussed below), the list was stolen.

In North Atlantic Instruments, Inc. v. Haber, 188 F.3d 38 (2d Cir. 1999), the court affirmed the finding that a customer list was a trade secret, holding,

> Numerous cases applying New York law have held that where, as here, it would be difficult to duplicate a customer list because it reflected individual customer preferences, trade secret protection should apply. See, e. g., FMC Corp. v. Taiwan Tainan Giant Indus. Co., 730 F.2d 61, 63 (2d Cir.1984) (per curiam) (reversing as clearly erroneous a district court's finding that a customer list was not a trade secret where it would have been difficult to find clients without the employee's help); Webcraft Techs., Inc. v. McCaw, 674 F.Supp. 1039, 1044 (S.D.N.Y.1987) (Leval, J.) (protecting as a trade secret a customer list that took great time and effort to compile, including "development of a specialized knowledge of the customer's operations and needs"); Nutmeg Techs., Inc. v. Mahshie, 12 U.S.P.Q.2d 1469, 1472, 1989 WL 60285, at **5-6 (N.D.N.Y. June 6, 1989) (holding that a customer list whose "customers are only cultivated after extensive efforts by [the plaintiff]" was a trade secret); Giffords Oil Co. v. Wild, 106 A.D.2d 610, 611-12, 483 N.Y.S.2d 104, 106 (2d Dep't 1984) (holding that a customer list that required substantial time and money to compile and that contained information "which could only be achieved through personal solicitation" was a protectable trade secret); see also Leo Silfen, Inc. v. Cream, 29 N.Y.2d 387, 392-93, 278 N.E.2d 636, 640, 328 N.Y.S.2d 423, 428 (1972) ("[W]here the customers are not known in the trade or are discoverable only by extraordinary efforts courts have not hesitated to protect customer lists and files as trade secrets. This is especially so where the customers' patronage had been secured by years of effort and advertising effected by the expenditure of substantial time and money."). At least one very recent New York appellate case concluded that a customer list was a trade secret and upheld an injunction "prohibit[ing] the defendants from contacting or soliciting those customers of the plaintiffs who previously were served by the ... defendants when they were employed by the plaintiffs." Laro Maintenance Corp. v. Culkin, 681 N.Y.S.2d 79, 80, 255 A.D.2d 560, 560 (2d Dep't 1998).

The court further noted the holding of Leo Silfen, supra, that a physical taking or studied

copying would also warrant injunctive relief, and noted that it might well be the case "in light of the unrefuted evidence that Haber printed and used information from North Atlantic's client database after the date on which he had purported to return or destroy all such material", just as here, we have the "update" on the eve of Belliard's resignation. However, the North Atlantic Court concluded that the issues was unnecessary to decide since the finding that North Atlantic's list of client contacts was a trade secret stands on its own.

As in the present case, there was also a confidentiality agreement (see below) and the North Atlantic court further hld that

> Both this Circuit and numerous New York courts have held "that an agent has a duty 'not to use confidential knowledge acquired in his employment in competition with his principal.' " ABKCO Music Inc. v. Harrisongs Music, Ltd., 722 F.2d 988, 994 (2d Cir.1983) (quoting Byrne v. Barrett, 268 N.Y. 199, 206, 197 N.E. 217, 218 (1935)). Such a duty "exists as well after the employment is terminated as during its continuance." Id. (internal quotation marks omitted); accord L.M. Rabinowitz & Co. v. Dasher, 82 N.Y.S.2d 431, 435 (Sup.Ct.1948) ("It is implied in every contract of employment that the employee will hold sacred any trade secrets or other confidential information which he acquires in the course of his employment. This is a duty that the employee assumes not only during his employment but after its termination.") (internal citations omitted). Despite this implied duty, it is of course possible for an employer and employee to agree by contract to limit this duty. As explained below, however, Haber and North Atlantic did not do so in this case: Indeed, the Employment Agreement provided expressly that Haber had a comparable duty to maintain the confidentiality of TMI's and North Atlantic's trade secrets.
>
> Haber's Employment Agreement requires that he "keep secret and retain in the strictest confidence all confidential matters which relate to [North Atlantic], including, without limitation, customer lists, trade secrets, pricing policies and other confidential business affairs of [North Atlantic] ... and any affiliate." The agreement also prohibits him from "disclos[ing] any such confidential matter to anyone." The Employment Agreement contains no limitation on its duration; rather it applies both "during [and] after his period of service with [North Atlantic]." In this way, it makes explicit an employee's implied duties under New York law with respect to confidential information.

Finally the court concluded that irreparable harm would follow and granted injunctive relief.

## EMPLOYEE AGREEMENTS.

Although counsel for defendants first denied that either of them were subject to any restrictions, after the production of emails acknowledging Belliard's execution and shredding of an agreement, counsel admitted in court that Belliard did, in fact, execute the agreement, but asserted that the 10 year term rendered the agreement unenforceable (Transcript, p. 31). Although this court has the authority by law, and by the specific terms of the contract, to reduce the term to one it finds reasonable and appropriate, one consideration in making that determination should be Belliard's theft and spoliation of evidence.

With respect to Fell's denial, Brenner has explained that employees were all required to execute this agreement when the franchise plan went into effect. Her explanation is a reasonable one, while defendants' credibility, between the false representations which pervade this dispute and the misconduct which pervaded their relationship with plaintiffs, is marginal at best.

In Unisource Worldwide, Inc. v. Valenti, 196 F.Supp.2d 269 (EDNY 2002), Unisource brought an action against a former employee, his spouse and other former employees seeking to enforce a covenant not to compete and confidentiality clauses of employment agreements. Unisource sought a preliminary injunction enjoining the defendants from (1) Contacting, soliciting or communicating with any Unisource customer for the purpose of obtaining sales or business from that customer ...; (2) Selling any products or services to any of Unisource's customers; [and] (3) Using proprietary items of Unisource. The company argued that its former employee, Anthony Valenti, breached his Employment Agreement, that the employee defendants

breached their fiduciary duty to Unisource, and that all of the individual defendants used its confidential information."

The court held, inter alia, that: (1) the covenant not to compete and the confidentiality clauses of the employment contract were enforceable under New York law for purposes of showing likelihood of success on merits; (2) the geographic limitations of the covenant not to compete were not reasonable under New York law, but could be corrected without rendering entire covenant unenforceable;and (3) the employer established irreparable harm.  The court granted injunctive relief against Anthony Valenti.

With respect to the restrictive covenant, the court held, "If a court finds a limitation to be unreasonable, it can 'blue pencil' the covenant to restrict the term to a reasonable geographic limitation, and grant partial enforcement for the overly broad restrictive covenant." Id. at 276, quoting BDO Seidman v. Hirshberg, 93 N.Y.2d 382, 388-89 (1999)).

The court also held that employees could not conspire to set up a competing businesses while they were still employed. Id. At 280.

In Estee Lauder Companies Inc. v. Batra, 430 F.Supp.2d 158 (SDNY 2006), this Court reviewed a restrictive covenant and nondisclosure agreement, also in connection with a motion for a preliminary injunction.  Addressing the issue of whether the restriction was overbroad and therefore unenforceable, this Court, citing Seidman and Karpinski v. Ingrasci, 28 N.Y.2d, supra, at 51-52, 320 N.Y.S.2d 1, held that

> "Courts need not employ an all or nothing approach to the enforcement of
> employee restrictive covenants. Indeed, New York courts have 'expressly
> recognized and applied the judicial power to sever and grant partial enforcement
> for an overbroad employee restrictive covenant.' [ ] Pursuant to this rule, partial
> enforcement may be justified so long as 'the employer demonstrates an absence of

overreaching, coercive use of dominant bargaining power, or other anti-competitive misconduct, but has in good faith sought to protect a legitimate business interest, consistent with reasonable standards of fair dealing.'"

This Court concluded that given Estee Lauder's business, a world wide geographic restriction was reasonable.

Here, given the national franchise plan, a nation-wide geographic restriction should be upheld as well.

As far as the duration, this court noted that while there are circumstances where a period of one year or longer is upheld, citing the 18 months period in BDO Seidman, where plaintiff had a history on non-enforcement or reduced enforcement, and in fact had offered defendant a reduced period upon his announcement that he was leaving, a 5 month period, consistent with that offer would be appropriate.

Given the foregoing, this Court found Estee Lauder to have a likelihood of success on the merits. Alternatively, this court held that "at a minimum, Estee Lauder has demonstrated sufficiently serious questions going to the merits of their claims to make them a fair ground for litigation. Therefore, because Estee Lauder has demonstrated a balance of hardships tipping decidedly in its favor, a preliminary injunction is warranted in this case", citing. Brewer v. W. Irondequoit Cent. Sch. Dist., 212 F.3d 738, 743-744 (2d Cir.2000).

In BDO Seidman v. Hirshberg, supra, the New York Court of Appeals reversed the decision of the Appellate Division, which had refused to modify a restrictive covenant which on its face was overbroad. The court held

> In Karpinski v. Ingrasci, 28 N.Y.2d, supra, at 51-52, 320 N.Y.S.2d 1, this Court expressly recognized and applied the judicial power to sever and grant partial enforcement for an overbroad employee restrictive covenant. The Court refused to

give effect to the portion of the covenant which barred the practice of general dentistry, but enforced it respecting the practice of oral surgery, that being the employer's actual, specialized dental practice.

The issue of whether a court should cure the unreasonable aspect of an overbroad employee restrictive covenant through the means of partial enforcement or severance has been the subject of some debate among courts and commentators (*see,* Blake, *op. cit.,* at 682-683). A legitimate consideration against the exercise of this power is the fear that employers will use their superior bargaining position to impose unreasonable anti-competitive restrictions, uninhibited by the risk that a court will void the entire agreement, leaving the employee free of any restraint (*id.*). The prevailing, modern view rejects a per se rule that invalidates entirely any overbroad employee agreement not to compete. Instead, when, as here, the unenforceable portion is not an essential part of the agreed exchange, a court should conduct a case specific analysis, focusing on the conduct of the employer in imposing the terms of the agreement (*see,* Restatement [Second] of Contracts § 184). Under this approach, if the employer demonstrates an *absence of overreaching, coercive use of dominant bargaining power, or other anti-competitive misconduct, but has in good faith sought to protect a legitimate business interest, consistent with reasonable standards of fair dealing, partial enforcement may be justified (*see,* Blake, *op. cit.,* at 633; Restatement [Second] of Contracts § 184[1], [2] ). We essentially adopted this more flexible position in *Karpinski* (*supra* ).

Here, the undisputed facts and circumstances militate in favor of partial enforcement. The covenant was not imposed as a condition of defendant's initial employment, or even his continued employment, but in connection with promotion to a position of responsibility and trust just one step below admittance to the partnership. There is no evidence of coercion or that the Manager's Agreement was part of some general plan to forestall competition. Moreover, no proof was submitted that BDO imposed the covenant in bad faith, knowing full well that it was overbroad. Indeed, as already discussed, the existence of our "learned profession" precedents, and decisions in other States upholding the full terms of this type of agreement, support the contrary conclusion. Therefore, partial enforcement of paragraph SIXTH is warranted.

The same result is required here. The agreements were not part of the defendants' initial employment but imposed in conjunction with plaintiffs' plan to embark upon a national franchise offering. The interest protected was twofold. First, it was to protect against disclosure or use of confidential information or Pure Power's unique trade dress.and second, to ensure that employees

who had the primary contact with clients developed by plaintiffs at substantial expense could not simply leave and solicit clients with whom they had personal contact. See BDO Seidman, supra, noting that the employer has a legitimate interest in (a) protecting again an employee's exploitation or appropriation of the goodwill generated while working with employer clients and (b) noting that the prohibition could be expanded if the solicitation included the use of confidential information.

Here, there are the relationships between Belliard and Fell and the clients' they serviced as the 2 primary drill instructors, the relationships developed by Lee and Baynard who were effectively extensions of Fell and Belliard in their scheme to subvert clients, coupled with the theft of the client list, all calls for a full prohibition against soliciting or servicing plaintiffs' clients.

## FAITHLESS EMPLOYEE-UNFAIR COMPETITION

The manner in which the former employee has commenced the competing enterprise underlies many cases involving applications for injunctive relief; often, when it involves a violation of the employee's fiduciary obligations to the former employer, injunctive relief follows.

The law regarding an employee's obligations to his employer is well settled. As stated in Western Electric Co. v. Brenner, 41 N.Y.2d 291, 392 N.Y.S.2d 409 (1977),

> Fundamental to [the employer-employee relationship] relationship is the proposition that an employee is to be loyal to his employer and is 'prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties' (Lamdin v. Broadway Surface Adv. Corp., 272 N.Y. 133, 138, 5 N.E.2d 66, 67).

In 7th Sense, Inc. v. Liu, 220 A.D.2d 215, 631 N.Y.S.2d 835, the First Department affirmed the grant of plaintiffs' application for preliminary injunctive relief enjoining the defendants from unfairly competing with plaintiffs in the sale and manufacture of products utilizing plaintiffs' designs and methods of production, holding that " the right to such relief was clearly warranted in light of

competent evidence of active solicitation, conversion, and unfair competition by the defendants (see, Nassau Soda Fountain Equip. Corp. v. Mason, 118 A.D.2d 764, 500 N.Y.S.2d 154)."

Although it did not involve an application for injunctive relief, the decision in Louis Capital Markets, L.P. v. REFCO Group Ltd., LLC, 9 Misc.3d 283, 801 N.Y.S.2d 490, addressed the rights of an employer victimized by corporate espionage. In upholding the complaint against the employee-spy and the firm utilizing his services, the court noted the fiduciary duty owed by an employee to his employer as a matter of law and that the employee is "prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties." Lamdin v. Broadway Surface Advertising Corp., 272 N.Y. 133, 138, 5 N.E.2d 66 (1936).

Allegations that the employee was placed with plaintiff as a "mole" for the sole purpose of corporate espionage for REFCO by learning LCM's trading strategies and befriending their key employees (emphasis supplied), was sufficient to sustain causes of action against both the employee and REFCO for aiding and abetting the breach, as well as for claims of unfair business practices.

## TRADE DRESS

Pursuant to both the Lanham Act (15 U.S.C.. § 1125(a)(3)) and N.Y. Gen. Bus. Law §360-1, trade dress infringements are actionable. The seminal decision addressing trade dress violation is Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 112 S.Ct. 2753 (1992). There, as here, the court dealt with the protection which a restaurant with a distinctive design would have under the Lanham act against a competitor seeking to utilize a similar design.

The Taco Cabana trade dress was described in great detail, not only with respect to physical attributes, but ambiance as well. The court noted that Two Pesos adopted a very similar motif.

The Supreme Court began with an analysis of when trade dress may be inherently distinctive, stating,

> Marks are often classified in categories of generally increasing distinctiveness; following the classic formulation set out by Judge Friendly, they may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. See *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (CA2 1976). ... The latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection.

It concluded that a mark or trade dress which falls within these categories and is inherently distinctive is entitled to protection under the Lanham Act, without regard to whether it has acquired secondary meaning.

In the present case, the original Brenner affidavit, supplemented by the affidavit of Susan Douglas, Esq, plaintiffs' trademark counsel, and the exhibits to plaintiffs' original motion, fully describe the trade dress which plaintiffs have developed over its existence, through marketing, franchising and media coverage, all at plaintiffs' substantial expense.

The affidavit of Cheryl Dumas, the email exhibits referenced above in which defendants seek to duplicate plaintiffs' facility, the client blog acknowledging Warrior Fitness' identical nature (Exhibit 2), the sanitation worker's comment on the similarity of the facilities and the photographs of defendants' facility (Exhibit 3) all confirm defendants' calculated infringement.

## IRREPARABLE INJURY/ BALANCE OF EQUITIES

An award of injunctive relief in the face of any of the foregoing misconduct is well settled. For trade dress infringement, injunctive relief is required to avoid the dilution or tarnishing. For employee malfeasance, injunctive relief is required, inter alia, to avoid the loss of client relationships. See *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63 (2d Cir. 1999), holding "the potential

11

loss of "relationship[s] with [ ] clients" would cause irreparable harm and that "it would be very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come."; <u>Credit Suisse Securities (USA) LLC v. Ebling</u>, 2006 WL 3457693 (SDNY 2006), holding that Credit Suisse would suffer immediate and real harm without a preliminary injunction preventing the former employee from soliciting Credit Suisse's clients and employees. The court found that without a preliminary injunction, Credit Suisse would face "losses of clients, employees, and goodwill-harm that cannot be compensated by money damages."

Plaintiffs' have satisfied the criteria for injunctive relief and an injunction should be granted prohibiting defendants from operating a facility in violation of the employee agreements and further prohibiting defendants from soliciting, serving or contacting any of plaintiffs' clients, including all parties (other than defendants) on the client list.

Respectfully submitted,

Bahn, Herzfeld & Multer, LLP

<u>S/HERZFE 25%tenog</u>
RICHARD L. HERZFELD (RH0642)
Attorneys for Plaintiffs
555 Fifth Avenue
New York, N.Y. 10017
BHMLLP@aol.com
(212) 818-9019

Stacey Richman, Esq.
Law Offices of Stacey Richman
Attorneys for Plaintiffs
2027 Williamsbridge Road
Bronx, NY 10461