UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PURE POWER BOOT CAMP, INC.
PURE POWER BOOT-CAMP FRANCHISING
CORPORATION, and PURE POWER BOOT
CAMP JERICHO INC.,

**ECF Case**
**Case No.  08-cv-4810 (JGK) (THK)**

Plaintiffs,

- against –

WARRIOR FITNESS BOOT CAMP, LLC;
ALEXANDER KENNETH FELL a/k/a ALEX FELL,
Individually; RUBEN DARIO BELLIARD
a/k/a RUBEN BELLIARD, Individually;
JENNIFER J. LEE, Individually;
and NANCY BAYNARD, Individually,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Daniel A. Schnapp, Esq. (DS 3484)
Carolyn D. Richmond, Esq. (0993)
Eli Z. Freedberg, Esq. (6854)
**FOX ROTHSCHILD LLP**
100 Park Avenue, 15th Floor
New York, NY  10017
Tel: (212) 878-7900
Fax: (212) 692-0940

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...............................................................i, ii, iii

PRELIMINARY STATEMENT.................................................................1

PROCEDURAL HISTORY ....................................................................2

STATEMENT OF FACTS.....................................................................3

    A.    Plaintiffs Acknowledge That Pure Power Is a Facsimile of a Military Boot
          Camp...........................................................................3

    B.    Plaintiffs' Purported Trade Dress is Inconsistent and Incomprehensive...............4

    C.    Defendants' Gym.................................................................5

    D.    Plaintiffs Do Not Have Any Trade Secrets..........................................6

    E.    Plaintiffs' Unclean Hands.........................................................7

ARGUMENT...................................................................................9

    POINT I.................................................................................9

    PLAINTIFFS ARE NOT ENTITLED TO AN INJUNCTION............................9

        A.    Plaintiffs Cannot Show That They Will Succeed on the
             Merits.........................................................................9

            1.    Plaintiffs Cannot Demonstrate That They Are Likely
                 to Succeed on Their Cause of Action For Violation of
                 The Lanham Act ....................................................10

                     A.    Plaintiffs' Purported Trade Dress is Functional.....10

                     B.    Plaintiffs' Purported Trade Dress is Not
                        Inherently Distinctive...................................11

                     C.    Plaintiffs' Purported Trade Dress Has Not
                        Acquired Secondary Meaning.......................12

                     D.    Plaintiffs Cannot Show Likelihood of
                        Confusion .............................................14

2.    Plaintiffs Cannot Demonstrate That They Are Likely to Succeed On Their Cause of Action For Unfair Competition, Misappropriation Of Confidential And Proprietary Information, or NY GBL Section 360, *et seq.*....................................................................................15

3.    Plaintiffs Cannot Demonstrate That They Are Likely to Succeed On Their Cause of Action For Breach Of The Duty of Loyalty..................................................18

4.    Plaintiffs Cannot Demonstrate That They Are Likely to Succeed On Their Cause of Action For Breach of Contract, Breach of Restrictive Covenant, Breach of Confidentiality and Non-Competition Agreement............19

    A.    Pure Power Has Identified any Confidential Information That The Restrictive Covenant Was Designed to Protect....................................20

    B.    Defendants Cannot be Enjoined From Competing Against Plaintiffs...........................20

    C.    Even if Pure Power's Restrictive Covenant Has a Savings Clause, it is Still Unenforceable Competing Against Plaintiffs...........................21

B.    Plaintiffs Have Made No Showing of Irreparable Harm............22

1.    Plaintiffs Waited Months After Discovering the Alleged Harm Before Filing Papers...........................23

2.    Plaintiffs Have An Adequate Remedy At Law..................24

C.    The Balance of the Equities Favors Defendants.....................24

CONCLUSION.................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976) ..............11

*Ale House Mgmt. Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137 (4th Cir. 2000)..............11

*Am. Inst. of Chem. Eng'rs v. Reber-Friel Co.*, 682 F.2d 382, 388 (2d. Cir. 1982) ...........17

*Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 868 (8th Cir. 1994)............................13

*Ashland Mgmt. v. Janien*, 82 N.Y.2d 395, 407 (1993) ......................................................15

*Awards.com LLC v. Kinkos, Inc.*, 42 A.D.3d 178, 189, 834 N.Y.S.2d 147, 156
(1st Dep't 2007) ...........................................................................................................17

*Bates Chevrolet Corp. v. Haven Chevrolet, Inc.*, 13 A.D.2d 27, 29, 213 N.Y.S.2d
577, 580 (1st Dep't 1961) ...........................................................................................20

*Bell & Howell: Mamiya Co. v. Maisel Supply Co.*, 719 F.2d 42, 45 (2d Cir. 1982) ........22

*BDO Seidman v. Hirschberg*, 93 N.Y.2d 382 (1999) .................................................21, 22

*Bus. Networks of New York, Inc. v. Complete Network Solutions, Inc.*, 265 A.D.2d
194, 195, 696 N.Y.S.2d 433, 435 (1st Dep't 1999)......................................................19

*Cicena Ltd. V. Columbia Telecommunications Group*, 900 F.2d 1546, 1552 (Fed.
Cir. 1993)...................................................................................................................13

*Duraco Prods Inc. v. Joy Plastics Enter. Ltd.*, 40 F.3d 1431 (3d Cir. 1994). ..................13

*Elvis Presley Enters. v. Capece*, 141 F.3d 188 (5th Cir. 1998) ........................................15

*Estee Lauder Cosmetics, Inc. v. Batra*, 430 F.Supp.2d 158, 170 (S.D.N.Y. 2006).............9

*Firemen's Ins. Co. of Newark New Jersey v. Keating*, 753 F.Supp. 1146, 1149-50
(S.D.N.Y. 1990) .........................................................................................................23

*First Empire Securities, Inc. v. Miele*, 17 Misc.3d 1108(A), 851 N.Y.S.2d 57
(Sup. Ct., Suffolk Co. 2007) .......................................................................................19

*Geritrex Corp. v. Dermarite Indus., LLC*, 910 F.Supp. 955, 966 (S.D.N.Y. 1996) .........24

*Hanson Trust PLC v. SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986) ..............9

i

*Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 75 (2d Cir. 1988) ...................................14

*Hudson Hotels Corp. v. Choice Hotels Int'l*, 995 F.2d 1173, 1171 n.1 (2d Cir. 1993) ........................................................................................................................15

*JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990) ..........................22

*Kraft Gen. Foods, Inc. v. Allied Old English, Inc.*, 831 F. Supp. 123, 135 (S.D.N.Y. 1993) ..............................................................................................................18

*Kutik v. Taylor*, 80 Misc.2d 839, 841, 364 N.Y.S.2d 387, 390 (Sup. Ct., Kings Co. 1975) .........................................................................................................................18

*Laureyssens v. Idea Group Inc.*, 964 F.2d 131, 136 (2d Cir. 1992) ..................................13

*Lazar's Auto Sales, Inc. v. Chrysler Fin. Corp.*, 1999 WL 123501, at *4 (S.D.N.Y. 1998) ..............................................................................................................24

*Lockheed Martin Corp. v. Atlas Commerce Inc.*, 283 A.D.2d 801, 804, 725 N.Y.S.2d 722, 725-726 (3d Dep't 2001) ..................................................................16

*Louis Capital Markets, L.P. v. REFCO Group Ltd., LLC*, 9 Misc.3d 283, 290, 801 N.Y.S.2d 490, 496 (Sup. Ct., N.Y. Co., June 6, 2005) .................................................19

*Med. Soc'y of the State of N.Y. v. Toia*, 560 F.2d 535, 538 (2d Cir. 1977) .........................9

*Nina Ricci S.A.R.L. v. Gemcraft Ltd.*, 612 F.Supp. 1520, 1530 (S.D.N.Y. 1985) ...........24

*Pappas v. Passias*, 271 A.D.2d 420, 707 N.Y.S.2d 178, 180 (2d Dep't 2000) .................18

*Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820 (1961) ............................................................................................14

*Primo Enters. v. Bachner*, 148 A.D.2d 350, 351, 59 N.Y.S.2d 320, 321 (1st Dep't 1989) ........................................................................................................................19

*Production Resource Group, LLC v. Oberman*, 2003 WL 22350939, at *7 (S.D.N.Y. 2003) ..............................................................................................................24

*Prudential Secs., Inc. v. Plunkett*, 8 F.Supp.2d 514, 519 (E.D. Va. 1998) ......................20

*Scott, Stackrow & Co. v. Skavina*, 9 A.D.3d 805, 806, 780 N.Y.S.2d 675, 676 (3d Dep't 2004) ..............................................................................................................20

*Silipos, Inc. v. Bickel*, 2006 WL 2265055, at * 6 (S.D.N.Y. 2006) ..................................20

*Spinal Dimensions, Inc. v. Chepenuk,* 16 Misc.3d 1121(A), at \*5, 847 N.Y.S.2d
    905 (Sup. Ct., Albany Co. 2007) ...............................................................................21

*Tactica Intern., Inc. v. Atlantic Horizon Intern., Inc.,* 154 F.Supp.2d 586, 606-607
    (S.D.N.Y. 2001) ........................................................................................................17

*Todd Chemical Co. v. Di Stefano,* 30 A.D.2d 879, 292 N.Y.S.2d 811 (2d Dep't
    1968) ........................................................................................................................20

*Traffix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32 (2001)........................10

*Two Pesos, Inc. v. Taco Cabana*, Inc. 505 U.S. 763, 769 (1992)................................10, 11

*Wiener v. Lazard Freres & Co.*, 241 A.D.2d 114, 120, 672 N.Y.S.2d 8, 15 (1st
    Dep't 1998) ..............................................................................................................15

*Willis of New York v. DeFelice*, 299 A.D.2d 240, 242, 750 N.Y.S.2d 39, 42 (1st
    Dep't 2002) ..............................................................................................................21

## STATUTES

15 U.S.C. § 1052(f)................................................................................................13

CPLR § 3016(b)....................................................................................................18

NY1 231054v1 07/03/08

Defendants hereby oppose Plaintiffs' Motion for a Preliminary Injunction.

## **PRELIMINARY STATEMENT**

Plaintiffs are operators of a "boot camp" style gymnasium that, by Plaintiffs' own admission, copies its concept, design, and layout directly from the United States military. As demonstrated by the many exhibits attached to Plaintiffs' motion papers, boot camp style exercise regimens that employ military-like training are increasingly popular and have received significant press and television coverage in recent years.

Plaintiffs have repeatedly tried, however, to disingenuously palm this ubiquitous concept off as their own. First, Plaintiffs attempted to register their purported trade dress with the United States Trademark Office. This attempt was summarily rejected. Now, Plaintiffs have instituted this baseless motion in an attempt to shut down Defendants' business, insulate Plaintiffs' gym from ordinary commercial competition, and to prevent Defendants, two of whom are former United States Marines who were honorably discharged, from earning a livelihood. Plaintiffs have even gone so far as to commit trespass and to illegally hack into Defendants' personal and corporate e-mail accounts--after Defendants no longer worked at the Plaintiff's facility--in order to obtain ammunition for this lawsuit. This monopolistic, anti-competitive, and illegal behavior cannot be countenanced by this Court.

Thus, we show below that Plaintiffs have failed to prove that they are entitled to the drastic remedy of a Preliminary Injunction. Plaintiffs cannot show any probability of success on the merits because: (a) Plaintiffs do not have any trademark or trade dress rights in their "gym"; (b) Plaintiffs concede that they cannot stop Defendants' from operating a boot camp gym; (c) even if Plaintiffs had a proprietary right to such a ubiquitous concept, Defendants have not infringed this right because Defendants' gym is demonstrably different than Plaintiffs' gym;

(d) the alleged non-competition clause sought to be enforced by Plaintiffs is invalid because Plaintiffs do not have any proprietary information worthy of protection; (e) the New York State Court has already determined that the clause is unenforceable as drafted; and (f) as Plaintiffs *admit*, the clause is entirely overbroad since it restricts competition anywhere in the world during a ten-year time frame.

Plaintiffs also cannot show any irreparable harm since: (a) they waited more than a month after the allegations giving rise to this lawsuit to institute their Motion; (b) they can be adequately compensated by money damages if ultimately successful on their claims; (c) Plaintiffs' owner recently publicly stated to hundreds of her current and former clients that this "episode is a momentary distraction" and that she wishes to "move on"; (d) Plaintiffs continue to use Defendants' likenesses in their marketing and advertising efforts; (e) Plaintiffs have failed to produce an iota of evidence that Defendants have solicited her clients; (f) in their most recent filings, Plaintiffs modified the relief sought to a single request that Defendants no longer solicit their purported clients.

In addition, the balance of the equities favors Defendants since, as more fully set forth below, Plaintiffs have broken into Defendants' gym and rely almost exclusively upon stolen and privileged communications in order to support their claims. Plaintiffs have also only produced one alleged non-competition agreement bearing a forged signature.

Accordingly, for the reasons set forth below, no injunction should ensue.

## PROCEDURAL HISTORY

Plaintiffs commenced this action in the Supreme Court, State of New York, County of New York (the "New York Court") by filing a summons and complaint on May 5, 2008, more than a month after Plaintiffs allege that Defendants' misappropriated Plaintiffs' confidential and

2

proprietary information. The complaint alleges, among other things, infringement of Plaintiffs'

proprietary rights in their gym and breach of a covenant not to compete.

At the same time, Plaintiffs requested a wide-ranging 11- point temporary restraining

order. On May 6, 2008, the New York Court struck half of the proposed TRO. After oral

argument on the motion two days later, the New York Court determined that the non-compete

clause is unenforceable as drafted and then dissolved the TRO in its entirety. *See* Declaration of

Daniel A. Schnapp, dated July 3, 2008, ("Schnapp Decl.") ¶ 5, Ex. B.

The New York Court scheduled a "Preliminary Conference" for a date almost 3 weeks

later -- May 27, 2008. Schnapp Decl., ¶ 14, Ex. E. Having dissolved the TRO, the New York

Court refused to restrain Defendants from opening their business during this time. Prior to the

scheduled conference, Defendants removed this action to this Court.

In the present federal action, Plaintiffs submitted a list of their purported client names

allegedly purloined by Defendants in a letter to the Court dated May 28, 2008. Schnapp Decl., ¶

7. Although counsel for Plaintiffs requested that this information be placed under seal, counsel

did not attempt to place this information under seal before first making it a public record. *Id.* In

addition, Plaintiffs' owner, Lauren Brenner, has recently encouraged her clients to read her

"court papers" which she stated are a "public document." *See* Schnapp Decl., ¶ 9. This

contrasts sharply with Plaintiffs' allegation that these materials are confidential and proprietary.

## STATEMENT OF FACTS[1]

### A.    Plaintiffs Acknowledge That Pure Power Is a Facsimile of a Military Boot Camp

Pure Power is located in the West Chelsea neighborhood of Manhattan. *See* Affidavit of

Plaintiff Lauren Brenner ("Brenner Aff."), ¶ 14. By Plaintiffs' own admission, Pure Power is

---

[1] Although the pertinent facts are set forth at length in the accompanying affidavit of Alexander Fell, sworn to on July 3, 2008, ("Fell Aff."), and the exhibits annexed thereto, Defendants herein provide a summary of the most salient facts for the Court's convenience.

3

modeled after a United States military training facility, complete with an obstacle course and drill instructors. Plaintiff's owner, Lauren Brenner, claims that she visited Fort Knox and copied the layout and design of the United States' military's boot camps in designing Pure Power. Brenner Aff., ¶ 11. Brenner, however, was never in the military.

Plaintiffs filed an application, on February 2, 2006, with the United States Trademark Office for trade dress certification for her gym. Brenner Aff., ¶ 16; *See* Affidavit of Susan Upton Douglass ("Douglass Aff."), ¶ 7. Plaintiffs described their purported mark as consisting of "an exercise facility, styled to look like a military boot camp training course comprised of camouflage wall and ceiling décor, crushed rubber flooring, a tire run, climbing walls, climbing nets, and hurdles with the terms desire, stre [sic], courage, and uty [sic]." Brenner Aff., ¶ 16, Ex. C. The Trademark Office rejected Plaintiffs' application. Brenner Aff., ¶ 17, Douglass Aff., ¶ 8. This rejection parallels Plaintiffs' counsel's admission in open Court that Plaintiffs cannot stop Defendants from operating a boot camp style gym.[2]

**B.    Plaintiffs' Purported Trade Dress is Inconsistent and Incomprehensible**

Plaintiffs subsequently opened Pure Power Jericho, another boot-camp style gym, in Jericho, New York. There are significant differences between Plaintiffs' two gyms. *See* accompanying Aff. of Alexander Fell, sworn to on July 3, 2008, ("Fell Aff."), ¶ 18.

For example:

- Pure Power's obstacle course has fewer obstacles than Pure Power Jericho's obstacle course. Pure Power's course starts with hurdles and is followed by a cargo net, rope swing, abdominal hurdles, walls, monkey bars, a rock wall, belly robbers, a boxing drill, an intensity wall, a tire run and finally, a rope climb. On

---

[2] During the hearing before Justice Helen Freedman in the New York State Proceeding, Plaintiffs' attorney stated, "there are other boot camps in the country. They're welcome to do that. They can do their own boot camp." Schnapp Decl., ¶ 13.

4

the other hand, Pure Power Jericho's course starts with hurdles, and is followed by a ramp/slide, cargo net, rope swing, barbed wire crawl, abdominal hurdles, monkey bars, walls, rock wall, belly robbers, boxing drill, intensity wall, rope climb, hurdles and a tire run;

- Pure Power's hurdles are designed and look different than Pure Power Jericho's hurdles. For example, Pure Power Jericho has three sets of hurdles, while Pure Power has only two sets, and each gym's hurdles are located in different parts of the gym; Fell Aff., ¶ 18.

## C.    **Defendants' Gym**

Fell and Belliard designed their gym based upon their extensive and personal experiences as soldiers in the military. Fell Aff., ¶ 27.    In addition, Fell and Belliard used, as a guide, materials published by the United States Marine Corps concerning the design and layout of obstacle courses. Fell Aff., ¶ 21. As a result, the Warrior obstacle course and training techniques are more faithful to military techniques than those offered by Pure Power. Fell Aff., ¶ 27.

Defendants' gym — Warrior Fitness — does not resemble Plaintiffs' gyms in any material respect. For example:

- Defendants' gym has stall bars, medicine balls, and resistance bands whereas Plaintiffs' gyms do not. On the other hand, Plaintiffs' gyms have a rock climbing wall, a belly robber obstacle, an intensity wall (tall slanted wall with a rope on it); abdominal hurdles, a cargo net, a tire run and a bob and weave rope obstacle while Defendants' gym does not have these features.    Fell Aff., ¶ 18; *See* Affidavit of Rocco Greco, sworn to on July 3, 2008, ¶ 14 ("Greco Aff.");

5

- Defendants' gym is painted in red, yellow and white - - the Marine Corps' colors. Plaintiffs gyms are painted in green and the colors of her columns are in camouflage. Fell Aff., ¶ 18; Greco Aff., ¶ 14.;

- Defendants gym has no netting anywhere, while Plaintiffs' gym has netting covering her ceilings. Fell Aff., ¶ 18; Greco Aff., ¶ 14;

- Defendants' gym has changing rooms bordered by walls with cubby holes and a vanity while Plaintiffs use large military tents as changing areas and locker rooms. Fell Aff., ¶ 18; Greco Aff., ¶ 14;

- The floor beneath the Defendants' obstacle course is red/dirt colored while the floor beneath Plaintiffs' obstacle course is black. Fell Aff., ¶ 18; Greco Aff., ¶ 14;

- Defendants' customers can wear workout clothing of their own choosing, whereas, Plaintiffs' "recruits" are required to wear an olive t-shirt and camouflage pants. Fell Aff., ¶ 18; Greco Aff., ¶ 14.

The gyms also have different pricing points and packages, terminology (*e.g.* Defendants calls their classes training days and Plaintiffs call them "sessions," Defendants call their clients "warriors" and Plaintiffs call their clients "recruits"), Defendants call their clients by their first names and Plaintiffs call their clients by their last names, Defendants offer two half hour power lunch training sessions whereas Plaintiff does not, and the gyms have different hours of operation. Fell Aff., ¶ 18.

**D.**    **Plaintiffs Do Not Have Any Trade Secrets**

Plaintiffs claim that they possess information entitled to protection. What information? What Plaintiffs claim as confidential are brochures, marketing materials, and franchise documents that are available to the public.

6

Indeed, Plaintiffs' owner has recently invited her present and previous clients over to her office to read her "court papers" which she called a "public document." Schnapp Decl. ¶ 9. By doing so, Plaintiffs have made their so-called proprietary information, including a detailed description of their trade dress, operations manual, business plan, client lists and startup manual, available to Plaintiffs' customers and to members of the public. Similarly, Plaintiffs have submitted their list of client names to this Court without first ensuring that this information was placed under seal. Schnapp Decl. at ¶8.

Plaintiffs claim that Defendants signed confidentiality and non-competition agreements which they claim are necessary to protected this so-called confidential information. Yet, Plaintiffs have only produced a single agreement that bears a forged signature from Alex Fell. Fell Aff. at ¶11.

In any event, according to Plaintiffs, the terms of these agreements include: (1) an agreement not to compete "during the term of your employment and for *ten (10) years thereafter*," (emphasis added) (Complaint, ¶ 167); and (2) an agreement not to conduct any business that uses "any physical exercise program." (Complaint, ¶ 167(a)).

The New York Court determined that the ten year provision is unenforceable. Schnapp Decl., ¶ 11. In her sworn Affidavit, Brenner concedes that this provision is overbroad. See Supplemental Brenner Aff. at ¶30. Indeed, on its face, this agreement, if signed by any of the Defendants, would prohibit competition *anywhere in the world for a period of ten years* and would prohibit Defendants from earning a living in a vocation in which they have spent most of their working lives. Fell Aff. at ¶28.

## E.    **Plaintiffs' Unclean Hands**

In their zealousness to prosecute this lawsuit, Plaintiffs have committed trespass, have illegally hacked into Defendants' personal computer email accounts, have violated Defendants'

7

privacy rights and statutes governing the use of private individual's images, have forged documents, and have stolen Defendants' personal information.

Cheryl Dumas, in a sworn affidavit submitted to this Court in support of Plaintiffs' Motion, admits that, on April 22, 2008, she entered Defendants' gym without authorization. *See* Affidavit of Cheryl Dumas ("Dumas Aff."), ¶ 3. During her unauthorized visit presumably ordered by Brenner, and when no one was there, Dumas spied on Defendants' progress in building their gym and apparently stayed long enough to draw sketches. Dumas Aff., ¶ 11.

Moreover, Brenner hacked into Defendants' personal and Warrior Fitness corporate computer e-mail accounts and intercepted confidential and privileged emails, much of which forms the basis of Plaintiffs' Complaint and Motion. Brenner Aff., ¶¶ 116-133, Exs. J-O, R-U, W-HH. These e-mails were created during Defendants' own personal time and on their own personal computers, and subsequent to the termination of their relationships with Plaintiffs. Fell Aff., ¶ 31.

Recently, as Plaintiffs' Motion was pending, Brenner sent out a large e-mail "blast" to present and former clients. Fell Aff., ¶ 35. In this e-mail, Brenner admits that PPBC does not offer any unique services and that there is no chance that PPBC would suffer any irreparable harm as a result of Defendants' actions.[3]  Schnapp Decl. ¶ 9.

Finally, Plaintiffs are illegally utilizing the images of the individual Defendants in their advertisement and in their website. For example, Brenner has begun marketing her gym by placing large advertisements on the sides of New York City busses. These advertisements bear the images of Defendants Fell and Belliard. Fell Aff., ¶ 38. Neither Fell nor Belliard consented

---

[3] Brenner writes: "Anyone can take an aerobics class, do military jumping jacks, count in cadence and lift weights without thought or conviction; or for that matter claim principles but act without them. That is not what we do and that is not what Pure Power Boot Camp stands for. That being said, this episode is a momentary distraction which I believe needed an explanation before we move on and do what we all do so well. I guess in some ways this is just another part of our journey."

8

to Plaintiffs' use of their images for this purpose. Fell Aff., ¶ 38. Plaintiffs are also marketing their gyms on the internet using the unauthorized images of Fell and Belliard. Fell Aff., ¶ 38.

## ARGUMENT

## POINT I

## PLAINTIFFS ARE NOT ENTITLED TO AN INJUNCTION

A preliminary injunction is a "drastic" and "extraordinary" remedy. *Hanson Trust PLC v. SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986) (preliminary injunctions are "one of the most drastic tools in the arsenal of judicial remedies"); *Med. Soc'y of the State of N.Y. v. Toia*, 560 F.2d 535, 538 (2d Cir. 1977) (a preliminary injunction is "an extraordinary and drastic remedy which should not be routinely granted").

A preliminary injunction may be granted only when the party seeking the injunction establishes that: 1) absent injunctive relief, it will suffer irreparable harm, and 2) either a) that it is likely to succeed on the merits, or b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party. *See Estee Lauder Cosmetics, Inc. v. Batra*, 430 F.Supp.2d 158, 170 (S.D.N.Y. 2006).

Here, Plaintiffs have failed to meet their burden of proof and have no right to the extraordinary relief requested from this Court.

## A.    Plaintiffs Cannot Show That They Will Succeed on the Merits

As demonstrated below, Plaintiffs cannot show a likelihood of success on the merits on any of their claims.

1. **Plaintiffs Cannot Demonstrate That They Are Likely to Succeed On Their Cause of Action For Violation of The Lanham Act**

To show a likelihood of success in a claim asserting trade dress infringement, the plaintiff must establish that: (i) the trade dress is primarily non-functional; (ii) the trade dress is either inherently distinctive or has become distinctive because it has acquired secondary meaning; and (iii) there is a likelihood of confusion between the trade dresses at issue. *See Two Pesos, Inc. v. Taco Cabana*, Inc. 505 U.S. 763, 769 (1992).

A. Plaintiffs' Purported Trade Dress is Functional

The Lanham Act does not protect functional trade dress because that would, in effect, create a perpetual patent at the expense of competition. *Traffix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32 (2001). A design feature is functional if it is not "merely an ornamental, incidental, or arbitrary aspect of the device," but rather is "essential to the use or purpose of the device or if it affects the cost or quality of the device." *Id.*

The Supreme Court has held that trade dress as a whole is functional, "[i[f it is one of a limited number of equally efficient options available to competitors and free competition would be hindered by according the design trademark protection." *See Two Pesos,* 505 U.S. at 770.

Here, Plaintiffs' "indoor obstacle course" is not entitled to trade dress protection because it is a functional design. Plaintiffs claim that Pure Power features an obstacle course containing hurdles, a series of walls to ascend and descend, a tire run, a barbed wire netting to crawl under, monkey bars, dip bars, rolling logs, a wrap-around climbing wall, a cargo net climb, bob-and-weave boxing ropes, a rope climb, a ramp with a tunnel to shoot through, and a rope swing over a water pit. Brenner Aff., ¶ 12. The gym also apparently has a calisthenics area with wooden crates used for jump-ups and partnering activities, men's and women's tents in lieu of changing

10

rooms and ceiling netting to enhance the boot-camp feel. *Id.* This equipment is functional in nature since it is necessary for Plaintiffs' patrons' use in their workouts.

In addition, anyone operating a military style boot camp in New York City may necessarily need to include an indoor obstacle course. For example, Boot Camp Fitness in Brooklyn offers an indoor obstacle course. *See* Greco Aff., ¶ 10. An indoor obstacle course in such a setting is one of a limited number of equally efficient options available to competitors and free competition would be hindered by according an indoor obstacle course trademark protection. This also renders Plaintiffs' purported trade dress a functional design not capable of protection. *Two Pesos,* 505 U.S. at 770.

> B.    Plaintiffs' Purported Trade Dress is Not Inherently Distinctive[4]

The inherent distinctiveness of a trademark or trade dress is evaluated under the test set forth by the Second Circuit in *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir. 1976), as follows:

> Trade dress is classified on a spectrum of increasing distinctiveness as generic, descriptive, suggestive, or arbitrary/fanciful. Suggestive and arbitrary or fanciful trade dress are deemed inherently distinctive and thus always satisfy the first prong of the test for protection. A descriptive trade dress may be found inherently distinctive if the Plaintiff establishes that its mark has acquired secondary meaning giving it distinctiveness to the consumer. A generic trade dress receives no Lanham protection.

Most trade dress is not afforded protection because it is not sufficiently distinctive to warrant protection. *See Ale House Mgmt. Inc. v. Raleigh Ale House, Inc.,* 205 F.3d 137 (4th Cir. 2000).

---

[4] Plaintiffs do not allege in their moving papers that their gyms are inherently distinctive, only that they have acquired secondary meaning.

11

Here, Plaintiffs' gym is not distinctive because it merely copies constituent elements of the United States' military boot camps. By Plaintiffs' own admission, Pure Power is modeled after a United States military training facility, complete with an obstacle course and drill instructors. Brenner claims that she visited Fort Knox and copied the layout and design of the United States' military's boot camps in designing Pure Power. Brenner Aff., ¶ 11. Pure Power mimics the use of military terminology and procedures while interacting with its customers. For example, each customer is given dog tags and fatigues, customers are called recruits, trainers are called drill instructors, Brenner is called "Commanding Officer," the Pure Power brochure is called an "enlistment guide," and training sessions are called "tours of duty." Brenner Aff., ¶ 13.

Plaintiffs claim that another one of their "distinctive and unique" features are standing pillars with principles of leadership stenciled on them. The principals are not unique to Plaintiffs, however, because each United States Marine is given an "Ethos Card," which contains most of these principles of leadership. *See* Greco Aff., ¶ 12 Ex., C.

In addition, customers of both gyms have noticed the vast differences between the two facilities. *See* Affidavit of Nichole Davis, sworn to on July 1, 2008 ("Davis Aff."); Affidavit of Amy Marks, sworn to on July 1, 2008 ("Marks Aff."); Affidavit of Elizabeth Friesell, sworn to on July 1, 2008 ("Friesell Aff.").

Nor is Plaintiffs' purported trade dress consistent or coherent. There are many differences, for example, between Pure Power and Pure Power Jericho. *See* Fell Aff., ¶ 19. These differences between Plaintiffs' own gyms also counsel against a finding of distinctiveness.

C.    Plaintiffs' Purported Trade Dress Has Not Acquired Secondary Meaning

In order to make such a showing of secondary meaning, a party must demonstrate that the trade dress has become so associated in the minds of consumers with the goods and services being offered for sale, that the trade dress actually serves to distinguish the source of the services

from competitors. *See Aromatique, Inc. v. Gold Seal, Inc.,* 28 F.3d 863, 868 (8th Cir. 1994) (the mere method and style of doing business is not protectable, because it is ludicrous to suggest that in our free enterprise system, one producer and not another is permitted to take advantage of a marketing approach to enhance consumer reception of its product).

To demonstrate secondary meaning, courts have generally inquired into: (1) the trade dress owner's advertising expenditures, measured primarily with regard to those advertisements that reflect the trade dress in issue, (2) consumer surveys linking the trade dress to a particular single source, (3) sales volume, and (4) exclusive and continuous use of the trade dress in commerce for a period of five years. *Duraco Prods Inc. v. Joy Plastics Enter. Ltd.,* 40 F.3d 1431 (3d Cir. 1994).

Here, Plaintiffs have not provided any evidence demonstrating that they have undertaken an extensive advertising campaign or expended any monies in support of advertising initiatives intending to associate the trade dress with the Plaintiffs' gyms. Plaintiffs also do not cite to any evidence establishing that consumers associate the concept of indoor obstacle courses and military-style training with Plaintiffs.

In addition, Plaintiffs have not submitted any evidence showing that they have used their trade dress exclusively and continuously for five years. Many courts have held that failure to do so is evidence pointing strongly away from a finding of secondary meaning. *See e.g.*, 15 U.S.C. § 1052(f); *Laureyssens v. Idea Group Inc.*, 964 F.2d 131, 136 (2d Cir. 1992) (less than two years of exclusive use is insufficient to demonstrate secondary meaning); *Cicena Ltd. V. Columbia Telecommunications Group*, 900 F.2d 1546, 1552 (Fed. Cir. 1993) (use of mark for only 18 months is evidence pointing strongly away from finding secondary meaning).

In fact, Plaintiffs, and their attorney *admit* in sworn testimony that it is impossible to establish secondary meaning without having exclusive use of trade dress for five years and that

13

they cannot establish this element of trade dress protection. *See* Brenner Aff., ¶ 17; Douglass Aff. ¶ 7.

Plaintiffs have also not shown that they have used their purported trade dress exclusively. There are hundreds of gyms across the country that are implementing obstacle courses and boot camp style training techniques. Greco Aff., ¶ 9. Plaintiffs acknowledge this in the many media clippings annexed to their motion.

Also, Plaintiffs cannot make a showing of secondary meaning in light of the inconsistency in design and layout between their Manhattan and Jericho locations.

D.    Plaintiffs Cannot Show Likelihood of Confusion

In order to determine whether there is a likelihood of confusion between trade dress, courts utilize the eight factor test set forth in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820 (1961). Under this test, the factors to be considered include:

> [t]he strength of [Plaintiff's] mark; the degree of similarity between the two marks; the proximity of the products; the likelihood that the prior owner will bridge the gap; actual confusion; the reciprocal of Defendant's good faith in adopting its mark; the quality of Defendant's product; and the sophistication of the buyers.

*Id.; see also Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 75 (2d Cir. 1988). No single factor is determinative. *Polaroid*, 287 F.2d at 495.

Here, there can be no confusion between the trade dresses because the parties' respective gyms are wholly distinct. The gyms have distinct color schemes, changing rooms, floors, obstacle course layouts and designs, outfits for working out, and equipment. Fell Aff., ¶ 18; Greco Aff., ¶13; Davis Aff. ¶8; Marks Aff. ¶5. Even Plaintiffs' attorney concedes that Defendants "can do their own boot camp." *See* Schnapp Decl., ¶ 13.

14

In any event, Plaintiffs have not produced any evidence, nor do they even allege that there has been any actual confusion arising out of the alleged trade dress infringement. *See Elvis Presley Enters. v. Capece*, 141 F.3d 188 (5th Cir. 1998) (if services have been sold without any actual confusion, an inference can be drawn that continued marketing of the services under the allegedly confusing trade dress will not lead to consumer confusion in the future).

Thus, Plaintiffs have not shown a likelihood of success on the merits of their trade dress claim.

2.     **Plaintiffs Cannot Demonstrate That They Are Likely to Succeed On Their Cause of Action For Unfair Competition, Misappropriation Of Confidential And Proprietary Information, or NY GBL Section 360, *et seq*.**

To succeed on a claim for misappropriation of confidential and proprietary information, or unfair competition based on the misappropriation of trade secrets, a plaintiff must be able to prove that it possessed and that the defendant actually exploited and stole proprietary, sensitive and valuable trade secrets. *See Ashland Mgmt. v. Janien*, 82 N.Y.2d 395, 407 (1993); *Wiener v. Lazard Freres & Co.*, 241 A.D.2d 114, 120, 672 N.Y.S.2d 8, 15 (1st Dep't 1998).

In determining whether information constitutes a trade secret under New York law, courts consider: (1) the extent to which the information is known outside the business; (2) the extent to which the information is known to employees and others involved in the business; (3) the extent that measures are taken to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of money or effort expended in developing the information; and, (6) the ease or difficulty with which the information could properly be acquired or duplicated by other. *See Hudson Hotels Corp. v. Choice Hotels Int'l*, 995 F.2d 1173, 1171 n.1 (2d Cir. 1993). The most important factor in determining whether the information is a trade secret is whether the information was kept secret. *Id.*

NY1 119872v11 07/03/08

Here, although Plaintiffs' Complaint alleges, albeit in the most conclusory of terms, that Defendants misappropriated proprietary information, nowhere does it set forth the facts to establish that any such information actually constituted *trade secrets*. In any event, Defendants did not misappropriate any such information, and, to the extent that the New York Court advised Defendants to return any materials, Defendants have done so. Fell Aff. at ¶¶9-12, 14-15, 21-27; Schnapp Decl. ¶7.

Plaintiffs have also submitted no evidence whatsoever, whether from customer surveys or from expert or lay testimony, that supports the proposition that any of their claimed confidential items are valuable, confidential or proprietary. *See Lockheed Martin Corp. v. Atlas Commerce Inc.*, 283 A.D.2d 801, 804, 725 N.Y.S.2d 722, 725-726 (3d Dep't 2001) (dismissing complaint because Plaintiffs failed to allege the grounds to support the allegation that it maintained proprietary or confidential information).

Nor have Plaintiffs cited to any specific facts concerning measures taken by Plaintiffs to obtain the clients, which employees at Pure Power had access to the client list, measures taken by Plaintiffs to guard the secrecy of the list, and whether Plaintiffs' competitors would value the list.

This is because Plaintiffs' customer lists have no commercial value and that the identities of Plaintiffs' customers are easily ascertainable. *See* Greco Aff., ¶ 20. Indeed, it is next to impossible for a gym to keep its so-called customer list a secret from its own trainers because trainers are interacting with the customers on a daily or weekly basis. Friendships and relationships typically develop between a customer and his or her personal trainer. Greco Aff., ¶ ¶19. Ultimately, most gyms do not attempt to protect their customer list because they are not proprietary. Greco Aff., ¶20.

Plaintiffs also make the extraordinary claims that their brochures, business plans and manuals are confidential and proprietary. These materials, which are distributed to the public

16

(*i.e.* annexed to Brenner's affidavit and, upon her admission, available for all to see in her office) cannot, as a matter of law, be proprietary. *Am. Inst. of Chem. Eng'rs v. Reber-Friel Co.*, 682 F.2d 382, 388 (2d. Cir. 1982).

In addition, Plaintiffs have willingly disclosed their purported trade secret information to this Court and have therefore waived any alleged trade secret protection. *See Awards.com LLC v. Kinkos, Inc.*, 42 A.D.3d 178, 189, 834 N.Y.S.2d 147, 156 (1st Dep't 2007) (holding that even if Plaintiff possessed any trade secrets, the claim for misappropriation and breach of a confidentiality agreement was waived because Plaintiffs filed the purportedly confidential document with the Court).

Plaintiffs also waived their right to assert that their client contracts, business plans, saving matrix, promotional materials and enlistment guides are secret, proprietary and confidential after their owner sent a "blast" email to her present and former clients and inviting them to her office to review her filings in the New York Court.[5] The invitation to third-parties to review these documents, extinguishes any right to consider these documents privileged and confidential. Plaintiffs will also not be able to succeed on their unfair competition claims.

The essence of an unfair competition claim under New York law is the bad faith misappropriation by one business of another's expenditures of labors, skill and money in a way that is likely to cause confusion or to deceive purchasers as to the origin of the goods. *Tactica Intern., Inc. v. Atlantic Horizon Intern., Inc.*, 154 F.Supp.2d 586, 606-607 (S.D.N.Y. 2001) (denying motion for preliminary injunction based on unfair competition because a former employee may solicit former customers whose names and addresses are readily discoverable and because the specific needs and business habits of particular customers are not confidential).

---

[5] Brenner's email concluded with the following invitation to view her New York Court filing which included her alleged proprietary information. "PS: I have been told by my counsel that certain facts which are in dispute cannot be discussed. However, the court papers are a public document and if interested can be read in my office. LB."

17

In order to prevail on an unfair competition claim, a plaintiff must: (1) prove the existence of actual confusion, if seeking damages, or a likelihood of confusion in order to obtain equitable relief, and (2) show that Defendant acted in bad faith. *See Kraft Gen. Foods, Inc. v. Allied Old English, Inc.*, 831 F. Supp. 123, 135 (S.D.N.Y. 1993).

Here, as set forth above, the design of the parties' respective gyms are wholly distinct. Plaintiffs do not attempt to (and could not) introduce any showing of confusion among purchasers as to the origin of the parties' products and services. Greco Aff., ¶ 14.

Thus, Plaintiffs have not shown that they are likely to prevail on their causes of action for misappropriation of trade secrets, unfair competition, and violation of New York's General Business Law.

### 3.    Plaintiffs Cannot Demonstrate That They Are Likely to Succeed On Their Cause of Action For Breach Of The Duty of Loyalty

As a matter of statutory prescription, a plaintiff asserting a claim for breach of fiduciary duty, must support the allegation with more specificity and detail than ordinarily required. *See* CPLR § 3016(b); *Pappas v. Passias*, 271 A.D.2d 420, 707 N.Y.S.2d 178, 180 (2d Dep't 2000). The pleading must explicitly state the circumstances upon which a fiduciary relationship was created, the parties to whom the duty was owed, the actions constituting the breach, a factually detailed description of the harm or damage done and a statement that the alleged breach caused the damage suffered by the person who was owed the duty. *See Kutik v. Taylor*, 80 Misc.2d 839, 841, 364 N.Y.S.2d 387, 390 (Sup. Ct., Kings Co. 1975) (dismissing a complaint that failed to delineate details constituting a breach of fiduciary duty). Here, Plaintiffs' complaint fails to set forth these elements.

In any event, former employees do not breach duties of loyalty owed to their employer by setting up competing business, provided that the employee does not improperly use the

18

employer's time, facilities or trade secrets.[6]  *See e.g., Louis Capital Markets, L.P. v. REFCO Group Ltd., LLC*, 9 Misc.3d 283, 290, 801 N.Y.S.2d 490, 496 (Sup. Ct., N.Y. Co., June 6, 2005).

Here, Defendants set up their gym (such as looking for a suitable property, negotiating lease terms, purchasing materials) on their own time and did not use Pure Power's time, facilities, or trade secrets in developing their own gym. *See* Fell Aff., ¶ 15. Defendants also did not misappropriate or destroy any of Plaintiffs' documents. Fell Aff., ¶ 14.

In addition, Plaintiffs are not entitled to secure a preliminary injunction against Defendants  because Plaintiffs have utterly failed to support these defamatory accusations with any admissible evidence.  Under these circumstances, Plaintiffs have failed to demonstrate a likelihood of success on the merits of their claims for breach of fiduciary duties. *First Empire Securities, Inc. v. Miele*, 17 Misc.3d 1108(A), 851 N.Y.S.2d 57 (Sup. Ct., Suffolk Co. 2007).

    **4.**    **Plaintiffs Cannot Demonstrate That They Are Likely to Succeed On Their Cause of Action For Breach of Contract, Breach of Restrictive Covenant, Breach of Confidentiality and Non-Competition Agreement**

Restrictive covenants that prohibit employees from obtaining employment in a vocation of their choosing are disfavored under New York law and are only enforced to the extent necessary to protect the disclosure of any trade secrets. *See, e.g., Bus. Networks of New York, Inc. v. Complete Network Solutions, Inc.*, 265 A.D.2d 194, 195, 696 N.Y.S.2d 433, 435 (1st Dep't 1999) *Primo Enters. v. Bachner*, 148 A.D.2d 350, 351, 59 N.Y.S.2d 320, 321 (1st Dep't 1989) (it is recognized that such covenants tend to be anticompetitive and may cause unnecessary hardship by unduly restricting a former employee's vocational options).

---

[6] As addressed above, Defendants have established that Plaintiffs possessed no trade secrets, trade dress and that their purported customer lists are not proprietary.  Thus Defendants' alleged "misappropriation" of trade secrets and trade dress cannot support a basis to allege claims sounding in a breach of a duty of loyalty.

NY1 119872v11 07/03/08

Accordingly, such covenants are enforceable only to the extent that they afford an employer demonstrably necessary protection against unfair competition stemming from the use or disclosure of trade secrets. *Prudential Secs., Inc. v. Plunkett*, 8 F.Supp.2d 514, 519 (E.D. Va. 1998).

A.    Pure Power Has Not Identified Any Confidential Information That The Restrictive Covenant Was Designed to Protect

Here, even if Plaintiffs were to somehow convince the Court that the restrictive covenant is not overbroad, they have not made a showing that it is necessary to protect Plaintiffs. *See Bates Chevrolet Corp. v. Haven Chevrolet, Inc.*, 13 A.D.2d 27, 29, 213 N.Y.S.2d 577, 580 (1st Dep't 1961). This is because, as discussed above, Plaintiffs have not produced any evidence supporting their contention that they possess trade secrets.

B.    Defendants Cannot be Enjoined From Competing Against Plaintiffs

The New York Court has determined and the Plaintiffs have admitted that the non-compete clause is unenforceable as drafted. Even if Plaintiffs were able to show that they had information entitled to protection, the terms in the alleged non-competition agreement are, as Plaintiffs admit, patently overbroad and remain unenforceable.

The restrictive covenant in this case, which was drafted exclusively by Plaintiffs, prohibits competition throughout the world and for a ten-year period. These types of far-reaching provisions are invalid. *See, e.g., Todd Chemical Co. v. Di Stefano,* 30 A.D.2d 879, 292 N.Y.S.2d 811 (2d Dep't 1968) (restrictive covenant with a ten year term is unenforceable); *Silipos, Inc. v. Bickel,* 2006 WL 2265055, at * 6 (S.D.N.Y. 2006) (worldwide restrictions on competition are not reasonable).

Pure Power's restrictive covenant is also invalid because it improperly purports to prohibit Defendants from soliciting or providing services to clients who they know outside of their relationship with Pure Power. *See, e.g. Scott, Stackrow & Co. v. Skavina*, 9 A.D.3d 805,

20

806, 780 N.Y.S.2d 675, 676 (3d Dep't 2004); *Spinal Dimensions, Inc. v. Chepenuk*, 16 Misc.3d 1121(A), at \*5, 847 N.Y.S.2d 905 (Sup. Ct., Albany Co. 2007). Plaintiffs, by bringing this motion and action are attempting to eliminate a potential competitor for *all* possible or potential clients, not only those clients who had prior relationships with Plaintiffs.

In addition, Pure Power's restrictive covenant is overbroad because it purports to prohibit Defendants from maintaining relationships with clients that are loyal to Defendants and their personal training expertise. *See* Marks Aff., ¶ 3; Friesell Aff., ¶ 2.; Davis Aff., ¶ 3. New York courts have repeatedly held that a former employee whose clients are loyal to him personally, rather to an employer, should not be enjoined from servicing those clients in a new business. *See e.g, BDO Seidman v. Hirschberg*, 93 N.Y.2d 382 (1999); *Willis of New York v. DeFelice*, 299 A.D.2d 240, 242, 750 N.Y.S.2d 39, 42 (1st Dep't 2002) (refusing to enter an injunction against competition "since the record discloses that many of [defendant's] clients are loyal to him personally, and not to the firm at which he works").

Plaintiffs are also attempting to limit the options of their own customers. If Plaintiffs are successful, the purported restrictive covenant would prohibit Pure Power's current or former clients who, out of their own volition wish to terminate their membership at Pure Power, from joining Warrior.

  C. Even if Pure Power's Restrictive Covenant Has a Savings Clause, it is Still Unenforceable

The New York Court of Appeals made clear in *BDO Seidman v. Hirschberg*, 93 N.Y.2d 382 (1999) that Courts should refuse to cure the overreaching provision if the employer is using its dominant bargaining power, or is otherwise engaged in anticompetitive conduct.

Partial enforcement is likewise inappropriate in this case because it is clear that Plaintiffs' motivations are purely anti-competitive and retaliatory. Plaintiffs not only seek to deprive

21

Defendants of employment for an unreasonable period of ten years and throughout the entire world, but also seek to create a windfall by preventing Defendants from competing for currently unaffiliated clients. Consequently, the Court should not rewrite the restrictive covenant and/or add new terms.[7]

Gyms in New York City do not require their trainers to sign covenants restricting competition. *See* Greco Aff., ¶ 16; *See also* Affidavit of Brent A. Leffel, sworn to on June 30, 2008. Although New York gyms will, occasionally, require high-level executives to sign restrictive covenants, these covenants merely prohibit competition is a small area, typically only a five or ten block radius from the initial employer's gym. Greco Aff., ¶ 17.

If, however, the Court deems it necessary to rewrite the agreement, it should be written in accordance with the terms that are common in the industry, *i.e.* a five or ten block radius. Greco Aff., ¶ 17.

### B.    Plaintiffs Have Made No Showing of Irreparable Harm

The Second Circuit has instructed that a showing of irreparable harm is the "single most important prerequisite for the issuance of a preliminary injunction." *Bell & Howell: Mamiya Co. v. Maisel Supply Co.*, 719 F.2d 42, 45 (2d Cir. 1982). The mere possibility of harm is not sufficient – the harm must be imminent and the movant must show that it is likely to suffer irreparable harm if equitable relief is denied. *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990). In order for harm to be deemed irreparable, a movant must show that money damages alone will not adequately compensate it for the harm purportedly suffered.

---

[7] Moreover, even if Defendants did in fact sign the restrictive covenant, Defendants did not have the opportunity to negotiate its terms. By Plaintiffs' own admission, a signature of the restrictive covenant was a condition of employment. *See* Pl. Br. P. 10 (it was corporate policy to sign the restrictive covenant). In these instances, courts have held that they will not revise or blue-line restrictive covenants. *See BDO Seidman,*, 93 N.Y.2d at 394. Consequently, the restrictive covenant should be rejected in its entirety rather than cured by the Court.

*See Firemen's Ins. Co. of Newark New Jersey v. Keating*, 753 F.Supp. 1146, 1149-50 (S.D.N.Y. 1990).

Here, Plaintiffs have exaggerated the harm, if any, that they may suffer in the absence of injunctive relief. Plaintiffs' owner has already admitted in an e-mail, attached to the Schnapp Decl., at Ex. C, that this lawsuit is a "momentary distraction" and that we should "move on." Therefore, Plaintiffs believe that the "threat" of competition that Warrior represents is not particularly menacing.

In addition, notably absent from Plaintiff's motion is any evidence that Defendants have been actively recruiting or soliciting Plaintiffs' customers to switch gyms. In fact, as set forth in the accompanying Davis, Marks, and Friesell Affidavits, at no time have Defendants solicited Plaintiffs' clients to switch gyms.

Also absent from the motion are consumer surveys demonstrating that Defendants' gym is substantially similar to Plaintiffs' gym and that the likelihood of confusion between the gyms is inevitable. The reason for the lack of these affidavits is simple - there is no likelihood of confusion and Defendants have not been soliciting Plaintiffs' customers. As a result, Plaintiffs cannot attribute any business that it may have lost in the last two months to Defendants' actions.

    1.    <u>Plaintiffs Waited Months After Discovering the Alleged Harm Before Filing Papers</u>

Plaintiffs' delay in seeking relief makes it abundantly clear that it is not at any real risk of irreparable harm. Brenner claims that she terminated Fell on March 16, 2008 and that Belliard left her employ on March 31, 2008. Brenner Aff., ¶¶ 94, 109. Brenner herself admits that she became suspicious as early as April 1, 2008 about Defendants' plans. Brenner Aff., ¶ 113. Nevertheless, Plaintiffs did nothing to protect her supposed rights until she filed the Summons and Complaint over a month later on May 5, 2008. Under the circumstances, Plaintiffs cannot

23

now allege that they are at risk of imminent and irreparable harm – if this was the case Plaintiffs would and could have sought immediate injunctive relief. *See e.g. Lazar's Auto Sales, Inc. v. Chrysler Fin. Corp.*, 1999 WL 123501, at \*4 (S.D.N.Y. 1998) (denying preliminary injunction in part because there was an unexplained delay of five weeks in bringing suit); *Nina Ricci S.A.R.L. v. Gemcraft Ltd.*, 612 F.Supp. 1520, 1530 (S.D.N.Y. 1985) (denying preliminary injunction in part because of a six week delay in seeking relief).

2.      Plaintiffs Have An Adequate Remedy At Law

Plaintiffs have only alleged claims that, at worst, resulted in a loss of revenue. Plaintiffs have not put forth any evidence that demonstrated that they do not have an adequate remedy at law for their claims. Moreover, in the event that the court finds that Defendants are liable on any of the claims alleged by Plaintiffs, which they are not, damages are readily ascertainable and quantifiable. *See e.g., Production Resource Group, LLC v. Oberman*, 2003 WL 22350939, at \*7 (S.D.N.Y. 2003); *Geritrex Corp. v. Dermarite Indus., LLC*, 910 F.Supp. 955, 966 (S.D.N.Y. 1996) (declining to enjoin competitor's sale of hygiene products because any potential lost sales to Plaintiffs could be determined by comparing customer lists and sales information).

C.    **The Balance of the Equities Favors Defendants**

Lastly, the balance of hardships tips decidedly in Defendants' favor. If the Court grants Plaintiffs' motion, Defendants would be barred from employment anywhere in the entire world in a vocation that Defendants have worked in extensively since their discharge from the military. Plaintiffs, by their own statements, are a large, well-organized and financed operation. Defendants are an embryonic stage business located in a separate neighborhood from Plaintiffs. New York City is a large enough market for both businesses.

Moreover, Plaintiffs unclean hands should prevent them from obtaining the equitable remedies they currently seek. In light of the substantial evidence indicating that Plaintiffs broke

24

into Defendants' gym, stole Defendants' private e-mail passwords and eavesdropped on private,

privileged and confidential communications, forged Defendant Fell's signature, Plaintiffs should

be estopped from obtaining the equitable remedies they currently seek.

## CONCLUSION

Based on the foregoing, Plaintiffs' Motion for a Preliminary Injunction must be denied in

its entirety.

Dated:    New York, New York
          July 3, 2008

                                FOX ROTHSCHILD, LLP
                                Attorneys for Defendants

                                By: _____
                                    Daniel A. Schnapp (DS 3480)
                                    Carolyn D. Richmond, Esq. (0993)
                                    Eli Z. Freedberg, Esq. (6854)
                                    100 Park Avenue
                                    New York, New York 10017
                                    (212) 878-7900

25