UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

PURE POWER BOOT CAMP, INC.,
PURE POWER BOOT CAMP FRANCHISING
CORPORATION, and PURE POWER BOOT
CAMP JERICHO INC.,

          Plaintiffs

-against-

WARRIOR FITNESS BOOT CAMP, LLC,
ALEXANDER KENNETH FELL a/k/a ALEX
FELL, Individually; RUBEN DARIO BELLIARD
a/k/a RUBEN BELLIARD, Individually;
JENNIFER J. LEE Individually; and NANCY
BAYNARD, Individually,

          Defendants.
------------------------------------------------------------------x

AFFIDAVIT OF LAUREN
BRENNER IN OPPOSITION TO
MOTION TO PRECLUDE EMAILS
Index No.: 08 CV 4810 (JGK)(THK)

STATE OF NEW YORK :

          s.s.:

COUNTY OF NEW YORK:

          LAUREN BRENNER, being duly sworn, deposes and says:

    1.    I am the president of each of the plaintiffs and make this affidavit in opposition to the instant motion by defendants to preclude the use of the emails attached to my motion for a preliminary injunction.

1

2. As set forth prior in my prior supplemental affidavit in support of the motion for injunctive relief, we have two computers at Pure Power. One is on the front desk to be used only by my two assistants on their shifts, and the other one is in my private office to be used only by me.

3. In fact we have a specific employee manual (Exhibit 1 to my supplemental affidavit), which prohibits the use of company computers for personal purposes. It specifically advises the employees that emails will be retrieved in the company's discretion and that employees have no right of privacy for such emails.

4. For the period from July, 2007 until they implemented their plan in April, 2008, defendants Belliard and Fell, along with their accomplice girlfriends, defendants Lee and Baynard, plotted to steal away my business.

5. While Belliard and Fell were employed by me, they established a competing business, looked for and leased space, purchased equipment, imitated my trade dress, stole our business plan, our customer forms and our customer list from Pure Power's computer and then solicited and stole our customers.

6. When they downloaded my client base, they would have obtained client credit card information and health related notes as well.

7. In addition, Belliard stole his personnel file and as well as the general drill instructor file, then shredded his employment/non-compete agreement; although Carolyn Richmond, a partner at defendants' present counsel, Fox Rothschild, knew of the non-compete (see Exhibit BB to my original affidavit in support of the preliminary injunction sworn to May 5, 2008 and email 28 of defendants Exhibit 1 to this motion), after the shredding, she wrote to my then counsel and asserted

that neither Belliard nor Fell were subject to restrictive agreements (See Exhibit B to the affirmation of Andrew Calcagno in support of the original order to show cause).

8. I am advised that defendants' conduct is not only in violation of their obligations to Pure Power as employees, the theft of Pure Power computer files (the customer lists included customer credit card information) is a criminal act as well.

9. Not surprisingly, as the e-mails attached to the motion for preliminary injunctive relief document defendants' malfeasance, they wish to suppress the evidence. To do so, Fell does not deny his use of Pure Power's computer, but claims that he neither received or sent the subject e-mails from Pure Power. Significantly, Belliard, who shredded his non-compete, offers no affidavit to support defendants' claims.

10. So the court is clear, Fell does not deny using Pure Power computers. In opposition to the original motion in state court, defendants were apparently represented briefly by Chadbourne and Park. The sole position taken by defendants at that time is that the emails should be suppressed, a position taken by letter dated May 8, 2008 ( Exhibit A hereto).

11. In that letter counsel specifically states, " Mr. Fell does not dispute the possibility that while an employee of Pure Power Boot Camp, he may have accessed that account from the computer in Ms. Brenner's gym", contending only that there was an expectation of privacy. This was reiterated during the state court conference at p. 26-27 (Exhibit B to the Schnapp declaration in opposition to the preliminary injunction), at which time counsel acknowledged that Fell accessed his account while at Pure Power.

12. Indeed, as set forth in the affidavit of Elizabeth Lorenzi, submitted herewith, Fell used

the computer often.

13. As such, when my assistant Elizabeth Lorenzi attempted to access Hotmail on the computer outside my office in late April, 2008, it immediately opened to a page which had Fell's username and password saved and on display. As I understand it, this is accomplished by an option provided by Hotmail and other e-mail providers which allows the user to save the username and password for ease of use and could only occur if Fell had accessed his hotmail account from my computer, and as set forth in my assistant's affidavit, he used the computer often.

14. Given his improper use of Pure Power computers, his voluntary storage of his username and password, and his criminal and civil misconduct, I do not believe it should matter whether the specific emails in issue were sent from Pure Power or not. If it is an issue, the claim should be rejected. Given his use of Pure Power computers and the period of time and number of emails in issue, it would be impossible for him to state with certainty where each email had been sent from and as far as receipt, he would not receive an email in any computer. It would go into the account he voluntarily provided access to and accessed from any location at all. Moreover, since he is in control of the information necessary to substantiate his claim, absent affirmative proof as to where and when each email originated, his self-serving claim should be rejected.

15. To the extent there is any credibility contest, the court should keep in mind defendants' deceitful, criminal conduct in the 9 months prior to their leaving Pure Power and the misrepresentations in this action.

16. Regarding the misrepresentations, as indicated, on March 31st, Belliard barged his way into my office, where he was not allowed to be, over my assistant's objection. On the 25th,

defendants had a client list of 88 with no telephone numbers (other than their own) and two e-mail addresses. See Exhibit U to my original affidavit in support of the motion for a preliminary injunction sworn to May 5, 2008, and e-mail 19 on defendant's Exhibit 1).

17. Within my computer was a comprehensive list of Pure Power clients and included names, telephone numbers, e-mail information, credit card, health information and oftentimes, the nature of the services subscribed to by the clients.

18. Six days later on the evening of March 31st, the very evening that Belliard was alone in my office without permission, the e-mail list expanded to 321 Pure Power clients virtually all of whom had their e-mail addresses included. See Exhibit X to my May 5th affidavit and e-mail 21 to defendant's Exhibit 1. Although defendants claim the expansion was from personal contact information, in the cover email from Lee on the 31st, she states, "I just updated our party list (w/a VERY DEAR FRIEND OF OUR'S additions)(Exhibit X). Thus it is clear that this was not their personal contact information and I firmly believe that this was a sarcastic reference to the fact that they took the clients from my database.

19. Defendants also claim no solicitation of clients took place while Fell and Belliard were employed or at any time thererafter. Apart from the mass emailing which refute their claim (Exhibit DD and EE to my original a affidavit), even more telling is the "friends" list (Exhbiti U). It has 6 lettered columns and F and G clearly reflect ongoing solicitation as of March 25th while Belliard was still employed; given the breadth of solicitation, it undoubtedly was going on for some time.

20. As such, the court should evaluate credibility bearing in mind that defendants will say

whatever it takes to avoid liability.

21. I am advised by my assistants that there are many occasions when I was not present and defendants improperly used my computers without my knowledge or consent and in violation of our policy.

22. As set forth in my assistant's affidavit, the e-mail account was discovered toward the end of April It was only at that juncture that I first learned of defendants' pervasive conspiracy. At no time was I able (or would I even know how) to access emails while they were made. Anything I accessed was after the fact.

23. In seeking suppression of these damning emails, defendants apparently suggest that with the knowledge of their ongoing illegal and immoral activity, I should have turned a blind eye to this evidence and allowed them to pillage my company. Clearly I was not about to sit by idly and allow that to happen.

24. Defendants also contend my prior explanation for access to Fell's email address is inconsistent with the foregoing because my attorney stated during a court conference that a password had been given to my employee.

25. Defendants are mistaken. I have consistently explained that access was because the user name and password were saved in my computer and appeared as soon as hotmail was accessed. (Exhibit B to the Schnapp declaration in opposition to the preliminary injunction, p. 19).

26. In fact, if one reads the colloquy before Judge Koetl which defendants point to, my

attorney said that most emails had been recovered due to illicit use of the computers.. That would be the emails discussed above.

27. Counsel added that in addition to the illicit use which led to the recovery of most of the emails, an email password had been given by Fell to my assistant, Elizabeth Lorenzi to check the status of an ebay sale.

28. I believed at the time I accessed the emails, and continue to believe now that the emails were legitimately secured, by reason of Fell's use of the computer in violation of firm policy, the firm policy which alerted employees that their emails would be scrutinized and by reason of the criminal conduct and civil malfeasance by defendants. I continue to believe the access was proper.

29. Should this court conclude otherwise, it is my understanding that the court must still weigh the equities to determine what should be done. Given the actions of defendants, with Fell and Belliard as faithless employees, setting up a competing business, stealing corporate papers, including our business plan, operations manual and startup manual, and even the first chapter of my book, the drill instructors file and Belliard's personnel file, stealing our customer lists with credit card information, and using their girlfriends as spies to "convert" Pure Power clients (see Lee email dated April 18, 2008, Exhibit AA to my affidavit and email 27 to defendants exhibit 1), the spoliation of evidence by stealing and shredding Belliard's non-compete agreement, any access to the emails which this court feels was not proper pales in significance and is certainly justified by the immoral and illegal attack on my business. I f the court does wieg the equities, I request that it review my affidavit, supplemental affidavit and reply affidavit submitted in conjunction with the motion for injunctive relief to see the full extent of defendants' malfeasance.

31. Defendants' motion should be denied.

*LAUREN BRENNER*

Sworn and subscribed to before
me this 10 day of July, 2008

NOTARY PUBLIC

Nicole Georgiafentis
Notary Public, State of New York
No.01GE6150326
Qualified in Nassau County
My Commission Expire 07/24/20 10

8