UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

| | |
|---|---|
| PURE POWER BOOT CAMP, INC., PURE POWER BOOT CAMP FRANCHISING CORPORATION, and PURE POWER BOOT CAMP JERICHO INC., | MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO PRECLUDE USE OF EMAILS |
| Plaintiffs | Index No.: 08 CV 4810 (JGK)(THK) |
| -against- | |
| WARRIOR FITNESS BOOT CAMP, LLC, ALEXANDER KENNETH FELL a/k/a ALEX FELL, Individually; RUBEN DARIO BELLIARD a/k/a RUBEN BELLIARD, Individually; JENNIFER J. LEE Individually; and NANCY BAYNARD, Individually, | |
| Defendants. | |

-----------------------------------------------------------------x

Bahn, Herzfeld & Multer, LLP

S/HERZFE 25%tenog
RICHARD L. HERZFELD (RH0642)
Attorneys for Plaintiffs
555 Fifth Avenue
New York, N.Y. 10017
BHMLLP@aol.com
(212) 818-9019

Stacey Richman, Esq.
Law Offices of Stacey Richman
Attorneys for Plaintiffs
2027 Williamsbridge Road
Bronx, NY 10461

PRELIMINARY STATEMENT

Defendants in the instant action are accused of engaging in a scheme for over eight months through which defendants Fell and Belliard, plaintiffs' long-time, trusted employees at the time, established a competing facility, stole physical and electronic corporate documents, stole plaintiffs' customer list, stole and shredded Belliard's employment agreement containing a restrictive covenant and used their girlfriends, defendants Lee and Baynard, to pose as customers in order to ingratiate themselves with actual clients and subvert those clients when the new operation began. Virtually all of the foregoing is documented by the e-mails in issue and constitutes both civil and criminal misconduct.

Nevertheless, defendants seek to preclude the use of the e-mails in issue claiming, without substantiation, that "plaintiffs illegally hacked" into the e-mail accounts, which they claim was a "shocking invasion of defendants' privacy rights" and that plaintiffs are now seeking to use the "poisonous fruits of their illegal activity". Defendants' memorandum, preliminary statement, p. 1.

As the court will see below, the only shocking activity in the present case was by defendants and the motion, which includes misstatements or distortions of both fact and law, is without merit.

STATEMENT OF FACTS

The facts are set forth at length in plaintiffs' affidavits and memoranda in support of the motion for a preliminary injunction and the affidavits of Lauren Brenner and Elizabeth Lorenzi in opposition to the instant motion. Briefly stated, Fell and Belliard had been the primary "drill instructors" employed by plaintiffs. At the same time that plaintiffs decided to engage in a

franchising business plan, plaintiffs' employees were asked to sign employment agreements which included restrictions on competition as well as protection of plaintiffs' proprietary property.

In March and April, 2008, Belliard and Fell left Pure Power. This had been the culmination of their secret plan to establish a competing facility, in effect since at least July, 2007. Over this period, while Fell and Belliard remained employees, their girlfriends, defendants Lee and Baynard operated as corporate spies, befriending Pure Power clients under the guise of being fellow "recruits", and ultimately using that relationship to subvert the clients when defendants began their facility, while Fell and Belliard secured and developed space to operate in the same vicinity as Pure Power, and which imitated plaintiffs' trade dress in terms of both design and operations.

Just before leaving, Belliard and Fell stole plaintiffs' franchise plan, startup manual and operations manual plan, which had been developed at a cost of hundreds of thousands of dollars; Belliard stole his personnel file, the general drill instructor file and stole and shredded his employment agreement; defendants stole plaintiffs' customer list which would have included not only contact information but credit card and health-related information as well; and defendants', out of pure malice, stole the first chapter of a book being written by Brenner.

Much of the foregoing is documented or supported by the various e-mails in issue. Contrary to defendants' conclusory contentions, no hacking occurred to secure these e-mails, no laws were violated and plaintiffs' position has been consistent throughout these proceedings. The e-mails in issue were secured in two ways. The e-mails from Fell's Hotmail account were secured because Fell left his username and password on Pure Power's computer, in violation of

2

Pure Power's employee policy (Exhibit 1 to Brenner's supplemental affidavit), prohibiting personal use of Pure Power's computers by employees. There was never any representation that the Hotmail e-mails had been secured because Fell had given a Pure Power employee the password for that account, contrary to defendants' claims. See Schnapp decl, par. 9-10.

In fact this is one of several allegations by defendants where the record is misrepresented. In the State Court transcript (Exhibit B to the Schnapp declaration in opposition to the motion for a preliminary injunction), counsel for plaintiffs specifically states that there had been a computer on the workstation at the front desk. One of Pure Power's employees, Liz (Elizabeth Lorenzi), opened Hotmail and found that Fell's e-mail account was there; counsel for plaintiffs noted that Fell conceded that he accessed the account on plaintiff's computer, pointing to page 2 of defendant's letter in opposition to the original state court motion in which counsel for defendants acknowledged that Fell did not dispute that he may have accessed his account from Pure Power's computer (Schapp decl. Exhibit B, Transcript, pp.18-19). Counsel also explained that Fell had given Lorenzi his password to check on property he was selling on ebay (Transcript, p. 20).

Later, counsel for defendants confirmed that Fell had accessed his email account while at Pure Power (Transcript, pp. 26-27).

Ignoring the foregoing, defendants contend that it is plaintiffs' position that all e-mails had been secured because a password had been provided verbally and that this contention is "patently false" (Schnapp dec., par. 9-10). Apart from the fact that the state court colloquy makes it clear that this had not been plaintiffs' position, the colloquy before Judge Koetl also does not support their position. The full transcript is annexed to the Schnapp declaration in opposition to the motion for a preliminary injunction as exhibit F .

At page 12 of the transcript, it was stated that Pure Power had an employee policy against using e-mail on the firm computer. That policy was ignored and defendants used the computer, resulting in the recovery of the emails. It was stated that other e-mails were recovered because the defendants actually gave an employee their password. Accordingly, we explained that in addition to verbally sharing their password with a Pure Power employee, they actually left the password on the Pure Power computer.

Thus, it is clear that the primary basis for the recovery of e-mails from the Hotmail account had been because Fell used the Pure Power computer and ended up storing his password and username. Defendants' contention that the sole source for the e-mails had been the verbal disclosure by Fell is contrary to the specific statements in both transcripts.

Another misdirection by defendants is Fell's claim that the emails in issue had not been sent from plaintiffs' computers (Fell aff., par. 5-6). Even if this were the case, Fell does not deny that he accessed his email account from plaintiffs' computer, in contravention of the firm's employee policy, Lorenzi confirms his frequent use in her affidavit and Belliard does not provide any affidavit at all.

As shown above, counsel for defendants at the State court proceedings conceded that Fell had in fact used the company computer for personal use. The result was that his email password and user name had been stored, and that is how the hotmail emails were secured.

As set forth below, based upon the facts and prevailing law, all of the e-mails were properly obtained and none should be excluded.

ARGUMENT

THERE WAS NO VIOLATION OF THE ELECTRONIC

COMMUNICATION PRIVACY ACT

Defendants contend that the access of e-mails by plaintiffs was in violation of the Electronic Communications Privacy Act , 18 USC § 2510 et seq. (the "ECPA") and therefore, use of the emails must be precluded. In so arguing, plaintiffs ignore the clear language of the statute as well as the extensive case law. The ECPA prohibits the interception of electronic communications, subject to a number of exceptions and issues of consent. Putting aside the applicability of the exceptions or issues of consent, it is well settled that interception under the ECPA requires the acquisition of the communication contemporaneously with its transmission. United States v. Steiger, 318 F3d 1039, 1048-1049(11th Cir, 2003); Konop v. Hawaiian Airlines, Inc., 302 F.3d 868, 874 (9th Cir. 2002); Fraser v. Nationwide Mutual, 352 F.3d 107, 113-114(3d Cir. 2003), holding,

> Every circuit court to have considered the matter has held that an "intercept" under the ECPA must occur contemporaneously with transmission. See United States v. Steiger, 318 F.3d 1039,1048-49 (11th Cir. 2003); Konop v. Hawaiian Airlines, Inc., 302 F.3d 868 (9th Cir. 2002); Steve Jackson Games,Inc. v. U.S. Secret Serv., 36 F.3d 457 (5th Cir. 1994); see also Wesley College v. Pitts, 974 F. Supp. 375 (D. Del.1997), summarily aff'd, 172 F.3d 861 (3d Cir. 1998).

In fact, although defendants claim that the ECPA prohibits unauthorized access to communications facilities and unauthorized access to communications stored incident to their transmission (Memorandum, p. 13), that is incorrect and the very case they cite, Hudson v Goldman Sachs & Co., 283 A.D.2d 246, 725 N.Y.S.2d 318, holds otherwise, acknowledging that

"the statute prohibits only intercepts that are contemporaneous with transmission". Despite defendants' liberal use of the term "hacking", no contemporaneous interception is alleged and as set forth in the affidavits of Brenner and Lorenzi, none took place. As such, no violation of the ECPA occurred.

### THERE WAS NO VIOLATION OF PENAL LAW 350.05; CPLR 4506 DOES NOT APPLY

.

Defendants also claim that the emails should be precluded pursuant to CPLR §4506. CPLR §4506 prohibits the use of communications obtained in violation of Penal Law § 350.05. Penal Law §350.05 parallels the ECPA, each requiring the "interception" of a communication.

18 USC §2510 (4) defines "intercept" as the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device. As above, this has been interpreted to require a retrieval contemporaneously with transmission.

Penal Law §250.00 defines "Intercepting or accessing of an electronic communication" and "intentionally intercepted or accessed" as the intentional acquiring, receiving, collecting, overhearing, or recording of an electronic communication, without the consent of the sender or intended receiver thereof, by means of any instrument, device or equipment, except when used by a telephone company in the ordinary course of its business or when necessary to protect the rights or property of such company.

Just as 18 USC §2510(4) requires a contemporaneous interception, so should Penal Law 250.05 and absent proof of the interception of emails contemporaneously with their transmission, no violation of Penal Law §250.05 occurred and CPLR §4506 would not apply. Should this court

6

find otherwise, the issues of consent and defendants' civil and criminal misconduct, detailed below, would also apply.

THERE WAS NO VIOLATION OF THE STORED COMMUNICATIONS ACT.

The Stored Communications Act, 18 USC §2701 ("SCA"), prohibits, under certain circumstances, the intentional access without authorization of stored communications. One exception is access with the express or implied consent of a party. Implied consent has been found when an employee uses the employer's computer system for personal purposes when the employer has a stated policy which prohibits such use and which indicates that email communications are subject to employer review. In such event, consent is implied, any expectation of privacy is lost and not only may emails be retrieved, but attorney client communications lose any privilege..

In Scott v. Beth Israel Medical Center Inc., 17 Misc.3d 934, 847 N.Y.S.2d 436, 2007, a decision which was affirmatively cited by defendants in their letter to the State Court (Exhibit A to the Brenner affidavit, footnote 3) is on point.

In Scott, as in the present case, the employer had a policy prohibiting use of its computers for personal e-mail, advising the employees that they had no personal right of privacy to any e-mails sent from the employer's computers and that the employer reserved the right to access and review such e-mails. The court concluded that there would be no reasonable expectation of privacy in such e-mails and that it would be the equivalent of the employee sending an e-mail with the employer standing over the employee's shoulder. Accordingly, the court concluded that no attorney-client privilege would attach to such e-mails.

In so holding, the court cited Long v. Marubeni America Corp., 2006 WL 2998671

7

(S.D.N.Y. 2006), also holding that an employer policy prohibiting personal use abrogated any expectation of privacy or confidentiality of attorney-client communications.

Similarly, many cases find implied consent where there is notice of a policy of recording calls and use of the telephone system after such notice.  In U.S. v. Rittweger, 258 F.Supp.2d 345 (SDNY 2003), Judge Koetl held that continued use of the telephone system after being advised the calls would be recorded and reviewed constituted an implied consent to that recording; see also United States v. Workman, 80 F.3d 688, 693 (2d Cir.1996), finding implied consent by a prisoner using the telephone system after notice.

As in the foregoing cases, the policy prohibiting personal use of plaintiffs' computers and further advising employees that computer e-mails would be monitored, (Exhibit A to Brenner's supplemental affidavit in support of the motion for a preliminary injunction) would be enough to establish implied consent.  However in this case there is even more.  Fell affirmatively left his username and password on the computer allowing access.  Just as Scott analogized the Beth Israel policy to be the equivalent of an employee sending an email while the employer watched, Fell's storage of his password and user name in the employer computer is the equivalent of his leaving a file of papers behind for anyone to open.

As in the above cases,  any expectation of privacy in as e-mails had been forfeited and Pure Power was within its rights to audit those e-mails to determine their content.

Nor should access to the emails be limited to those sent prior to Fell's departure. (originally defendants represented that they were not contesting email sent before Fell's employment terminated. Apparently they have reversed that position).

First, having left his access codes in plaintiffs' computer, after his unauthorized use of the

8

computer, Fell forfeited any expectation of privacy in those emails

Second, Fell was on notice that by using the computer his email would be monitored. The right to monitor did not end when he terminated employment, particularly when the continued access was the result of Fell's own acts.

Third, even after Fell left, Lee and Belliard stayed on and as the emails are in furtherance of the civil and criminal misconduct, access should be allowed.

Finally, once Pure Power discovered defendants' civil and criminal misconduct(see below), it was certainly within its rights in continuing to monitor to those e-mails to protect against such misconduct. The fraud/crime/breach of fiduciary duty exception to attorney-client privilege, discussed below, is analogous. Just as communications in furtherance of a fraud, a crime or a breach of fiduciary duty is not protected by attorney-client privilege, any right of privacy, any right of privacy for e-mails in furtherance of defendants' fraud, crime and breach of fiduciary duty also should be forfeited.

Should this court conclude that the SCA had been in some respect violated, preclusion of the e-mails is not a necessary result. Contrary to the defendant's contentions, unlike the ECPA, the SCA does not have require that e-mails secured in violation of the statute must be suppressed. See U.S. v. Ferguson, 508 F.Supp.2d 7 (D.D.C.2007). As such, this is more analogous to an evaluation of an application to sanction discovery misconduct by precluding use of the evidence in issue and to reach that evaluation, the court must weigh the actions taken, the harm incurred and the parties' respective conduct.

Any such evaluation must ultimately be in plaintiffs' favor. First, as Justice Freedman concluded in the state court, any of the e-mails secured by plaintiffs would have been required to

9

be produced in discovery in any event (the few attorney communications are discussed below). Contrary to defendant's contention, even if, arguendo, there were a violation of the SCA, there is no prohibition against the discovery of evidence. The only case cited by defendants is a California case, O'Grady v. Superior Court and it is submitted that that holding while not binding upon this court in any event, does not stand for the proposition cited. Thus, aside from the issue of attorney client privilege for a small number of the emails, discussed below, the balance would clearly have been produced and as such, there was no prejudice to defendants.

Moreover, the access was provided by Fell's own actions and plaintiffs' review of the emails was upon discovery of the pervasive scheme by defendants to undermine and steal plaintiffs' business. Even if some of the access to later emails was technically not permitted (and it is submitted that all access was proper), plaintiffs' conduct was certainly understandable under the circumstances.

In contrast, defendants secretly set up a competing business while employed by plaintiffs, the defendant girlfriends posed as clients only for the purpose of learning the identity of other clients and subverting them when the time came, defendants stole computer files containing corporate documents, including the business and franchising plans, customer agreements, and a customer list which not only included names, but email addresses, credit card and health information, none of which defendant were entitled to, and finally, defendants engaged in spoliation of evidence, stealing and shredding Belliard's non-compete agreement.

Defendants' theft and copying of computer records is criminal, violating, inter. alia, criminal possession of computer related material (Penal Law 156.35), computer trespass (Penal Law 156.10) and potentially crimes with respect to the theft of the clients' credit card

information.

The decision in <u>Fayemi v. Hambrecht and Quist, Inc.</u>, 174 F.R.D. 319 (S.D.N.Y. 1997), is on point. There, the court concluded that plaintiff's access and copying of employer bonus records had been improper, but since the records would have been produced in discovery in any event, the court concluded that the appropriate sanction would have been to preclude the use of the improperly obtained information. However, because the relief requested was equitable in nature, the court also had to look to the conduct of defendants in fashioning appropriate relief and where the defendants engaged spoliation, destroying the bonus records, no sanction would be imposed at all.

Here, as noted by Justice Freedman, the e-mails in issue would also be produced in discovery, the e-mails recovered all relate to defendants' civil and criminal misconduct against plaintiff and defendants not only engaged in spoliation of evidence but stole computer records, and customer information which included health-related matters and credit card numbers. If, arguendo any of the access by plaintiffs had been improper, and it is submitted that there was no impropriety, given defendants' unclean hands, no sanctions should be imposed.

THE ATTORNEY EMAILS WERE NOT PRIVILEGED;<br>IF ANY PRIVILEGE COULD BE ASSERTED, IT WAS WAIVED

Defendants point to emails from the office of their attorneys and claim the emails are protected by attorney client privilege. None are. First, as in <u>Scott</u>, Fell's use of plaintiffs' computers was implied consent to email review and a waiver of privilege; second, at least some of the communications were shared with third parties, breaking any privilege. Finally, most of the communications was not legal advice from an attorney but was the transmittal of public records

by non-attorneys and would not be privileged.

On the issue of implied consent, Scott v. Beth Israel, supra, cited affirmatively by defendants in their letter to Justice Freedman, is on point, holding any privilege to be waived.

Further, all attorney communications are not privileged, only communications from counsel of legal advice.

Finally disclosure to third parties breaks privilege.

The first two emails are dated March 5, 2008 from Geraldine Sutera to Fell (purportedly emails number 12 and 13 to defendants' exhibit 1, although email 12 is not produced; email no. 13 is part of plaintiffs' exhibit O to the original Brenner motion). The sender is not an attorney. Although defendants characterize the e-mails as "on behalf of Eric Michaels", an attorney, the March 5th email does not even mention his name. In any event, the content was not legal advice, but simply the transmittal of a public record, the tax identification number of Warrior Fitness, and as such, no privilege would apply even if, arguendo, there were not implied consent.

The next e-mail is dated March 20, 2008 (part of Exhibit S to Brenner's original affidavit and email 14 to defendants' Exhibit 1) . It is a cover e-mail again from Sutera which included defendants' articles of organization. As above, it is not from counsel, it is not legal advice but transmittal of a public document and is not privileged. Again defendants characterize the email as on behalf of Michaels. Here he is copied on the email, but that alone does not make it an attorney client communication. In any event, once again, it is not legal advice.

Defendants next complain of e-mail 28 from Richmond to Fell dated April 16, 2008. In addition to the issue of consent and the lack of expectation of privacy for communications on an email account for which Fell has preserved his password ands user name on plaintiffs' computers

12

after using them in violation of company policy, there are 2 further reasons why privilege would not apply.

First, there is waiver by reason of Fell's sharing of prior attorney communications on this subject with Lee. Although Lee is a defendant in this action also represented by the Fox firm, at the time of the email she was not a party or, upon information and belief, represented by counsel. New York applies a subject matter waiver with respect to attorney client communications. See GPA Inc, v. Leggett Group, Inc.,1996 WL 389288 (S.D.N.Y.), citing AMBAC Indem. Corp. v. Bankers Trust Co., 151 Misc.2d 334, 340-41, 573 N.Y.S.2d 204, 208 (Sup.Ct.1991); Matter of Estate of Baker, 139 Misc.2d 573, 576, 528 N.Y.S.2d 470, 473 (Sur.Ct.1988); see also Bowne, 150 F.R.D. at 484-85 (construing New York law and citing cases), and thus requires disclosure of all otherwise privileged communications on the same subject. See also In re Kidder Peabody Secs. Litig.,1996 WL 263030, at 14-15 (S.D.N.Y. May 17, 1996) (undertaking same analysis under federal law).

In an email to Lee (Exhibit S to Brenner's affidavit and defendants' email 17), Fell includes Richmond's advice regarding similar employment related issues. Significantly, defendants do not contend that this is a privileged communication. Having disclosed an attorney communication regarding the subject matter already, Fell has waived privilege for other communications regarding the same subject.

Should the court disagree, as it is defendants' burden to prove privilege [In re County of Erie, 473 F.3d 413, 418 (2d Cir. 2007)], defendants should be compelled to produce their email accounts for the relevant period to determine whether a similar sharing of legal advice occurred.

Finally, there is the crime/fraud/fiduciary duty exception. As stated in <u>U.S. v. Jacobs</u>, 117 F.3d 82 (2d Cir. 1997),

> The attorney-client privilege (<u>CPLR 4503[a]</u>; 3101[b], [c] ) "may give way to strong public policy considerations"(<u>Spectrum Sys. Intl. Corp. v. Chemical Bank</u>, 78 N.Y.2d 371, 380, 575 N.Y.S.2d 809, 581 N.E.2d 1055, citing <u>Matter of Priest v. Hennessy</u>, 51 N.Y.2d 62, 67-68, 431 N.Y.S.2d 511, 409 N.E.2d 983), and may not be invoked where it involves client communications that may have been in furtherance of a fraudulent scheme, an alleged breach of fiduciary duty or an accusation of some other wrongful conduct (see <u>Surgical Design Corp. v. Correa</u> , 284 A.D.2d 528, 529, 727 N.Y.S.2d 462; <u>Woodson v. American Tr. Ins. Co.</u>, 280 A.D.2d 328, 720 N.Y.S.2d 467;see also <u>In re John Doe, Inc.</u>, 13 F.3d 633, 636 [2nd Cir.]; <u>Madanes v. Madanes</u>, 199 F.R.D. 135, 145-146 [S.D.N.Y.] ).

The defendants engaged in all three areas of misconduct, the crimes set forth above, the pervasive breach of fiduciary duty and the fraud on plaintiffs, including spoliation of evidence. Should there be any issue regarding spoliation, the court should consider the following, the email dated April 16th (Exhbit CC to the original motion papers) which states that Belliard shredded his agreement; the fact that the agreement is missing and Belliard had been alone in Brenner's office and the fact that at the state court conference, counsel for Belliard grudgingly admitted he had signed such an agreement.

Weighing the equities should result in the denial of defendants' request. Alternatively, as a sanction for spoliation, counsel's email, acknowledging the existence of the non-compete shredded by Belliard, even if privileged, should nevertheless be allowed.

SPOLIATION SANCTIONS

Defendants also argue that sanctions should be imposed based upon purported spoliation of evidence by plaintiffs in that the e-mails attached as exhibits to the motion did not reflect the dates when they were printed. Defendants' analysis of what constitutes spoliation is misguided.

As set forth in Whitney v. JetBlue Airways Corp, 2008 WL 2156324 (E.D.N.Y.),

> The Second Circuit has defined spoliation as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably forseeable litigation."West v. Goodyear Tire & Rubber Co., 167 F.3d at 779;accord Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 107 (2d Cir.2001). A party has the obligation to preserve evidence when the party is on notice "that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation."Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 436 (2d Cir.2001) (citing Kronisch v. United States, 150 F.3d at 126);Barsoum v. N.Y.C. Hous. Auth., 202 F.R.D. at 400 (holding that a party is under an obligation to retain documents and other evidence that it knows may be relevant to a pending or future litigation). This obligation to preserve relevant documents exists whether or not the documents have been specifically requested in a demand for discovery. Barsoum v. N.Y.C. Hous. Auth., 202 F.R.D. at 400.
>
> Three elements must be established by the party seeking sanctions for spoliation of evidence:
>
> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.
>
> Farella v. City of New York, No. 05 CV 5711, 2007 WL 193867, at 2 (S.D.N.Y. Jan.25, 2007); see also Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d at 108-09; Fujitsu Ltd. v. Federal Express Corp., 247 F.3d at 436; Zubulake v. UBS Warburg LLC. 220 F.R.D. 212, 220 (S.D.N.Y.2003). In analyzing the second prong of this test, it is unclear exactly what degree of culpability is required, with some courts in this Circuit requiring a showing of bad faith, some requiring proof of intentional destruction, and others drawing an inference based on gross negligence. See Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d at 107-08 (citing Reilly v. NatWest Mkts. Group Inc., 181 F.3d 253, 267 (2d Cir.1999), cert. denied,528 U.S. 1119, 120 S.Ct. 940, 145 L.Ed.2d 818 (2000)). Thus, the Second Circuit has concluded that "a case by case approach is appropriate." Id. at 108.
>
> Here, defendants complain that dates are not included as part of plaintiffs' exhibits, but

offer nothing to show that emails with the relevant dates do not exist, explain why these dates are

even relevant or how they are prejudiced. Defendants satisfy none of the 3 prongs cited above.

On the other hand, as set forth above, defendants have engaged in theft and spoliation, with Belliard's destruction of his employment agreement and sanctions should flow from that destruction.

Plaintiffs' access to the email was proper, there is no privilege which can be asserted, and defendants' motion should be denied.

        Respectfully submitted,

        Bahn, Herzfeld & Multer, LLP

        S/HERZFE 25%tenog
        RICHARD L. HERZFELD (RH0642)
        Attorneys for Plaintiffs
        555 Fifth Avenue
        New York, N.Y. 10017
        BHMLLP@aol.com
        (212) 818-9019

        Stacey Richman, Esq.
        Law Offices of Stacey Richman
        Attorneys for Plaintiffs
        2027 Williamsbridge Road
        Bronx, NY 10461