UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
PURE POWER BOOT CAMP, INC.,
PURE POWER BOOT CAMP FRANCHISING    REPLY AFFIDAVIT OF LAUREN
CORPORATION, and PURE POWER BOOT    BRENNER IN SUPPORT OF
CAMP JERICHO INC.,                  MOTION FOR A PRELIMINARY
                                    INJUNCTION
                    Plaintiffs
                                    Index No.: 08 CV 4810 (JGK)(THK)
        -against-

WARRIOR FITNESS BOOT CAMP, LLC,
ALEXANDER KENNETH FELL a/k/a ALEX
FELL, Individually; RUBEN DARIO BELLIARD
a/k/a RUBEN BELLIARD, Individually;
JENNIFER J. LEE Individually; and NANCY
BAYNARD, Individually,
                    Defendants.
-----------------------------------------------------------------x
STATE OF NEW YORK :
                        s.s.:
COUNTY OF NEW YORK:

LAUREN BRENNER, being duly sworn, deposes and says:

1.      I am the president of each of the plaintiffs and make this reply affidavit in support of the motion for a preliminary injunction to address some of the factual assertions by defendants and counsel.

CLIENT LIST/EMPLOYEE MALFEASANCE

2.      As set forth in the previous affidavits, defendant Belliard, on the evening of March 31st, immediately prior to his resignation, illegally trespassed in my office.

3.      Defendants' "friends" list from March 25th (Exhibit U) consists of 88 persons, nearly all of whom are Pure Power clients. It contains no telephone numbers other than defendants' and only two e-mail addresses other than defendants. However, on the evening of March 31st, when

1

Belliard trespassed in my office, defendants "friends" suddenly expanded to 321 entries, most of whom had e-mail addresses and almost all of whom were Pure Power clients (Exhibit X).

4. Although defendants contend that this is personal contact information, Belliard is silent and there is no explanation of how, in six days, the list more than tripled. Indeed in their cover email on the 31st, Lee states, "I just updated our party list (w/a VERY DEAR FRIEND OF OURS additions)(Exhibit X). Thus it is clear that this was not their personal contact information and I firmly believe that this was a sarcastic reference to the fact that they took the clients from my database. Even if they had the information (which is doubtful given the timing), one must also question where that information came from given the defendants' espionage and malfeasance, using Lee and Baynard as inside agents to convert clients at the right time.

5. The allegations of this misconduct are unrefuted. Fell does not address it and Lee, Belliard and Baynard provide no affidavits at all. Should there be any question in this regard, in addition to Lee's e-mail "call me miss conversion" (Exhibit AA), one need only look at the last two columns, F and G on their first list, Exhibit U, generated while Belliard was still employed.. In F, there are the codes Y/M/P and it is clear from the comments in G that these stand for yes, and I assume maybe and possibly. As such, if there is any question as to the ongoing solicitation of Pure Power clients on or before March 25th, while at least Belliard was still an employee (although the list is dated March 25th, there is no indication of how long the solicitations had gone on for), this is proof positive, and as indicated, is not denied. Although defendants contend that some of the misconduct occurred after Fell and Belliard quit, it does not matter. They were using the stolen property, they were infringing on our trade dress and they continued the corporate espionage, leaving Lee behind to continue to subvert my clients. Lee's last attendance was April 25th,[1] so when Lee wrote her miss conversion email (AA) and sent her mass mailing (DD), Lee was still masquerading

as a client.

6. Although defendants repeatedly claim that no "solicitation"took place and that Pure Power clients simply followed them coincidentally, this is just another misrepresentation.

7. As reflected above, their friends list shows what was taking place, as does Lee's miss conversion email. Defendants also sent a mass e-mail to Pure Power clients, with Lee or Baynard telling everyone how excited they are about the new facility, asking them to spread the word and providing pricing information (which just happens to offer the same training packages at discounted prices-evidence of defendant's use of their knowledge or pricing and packaging to undermine Pure Power) (See Exhibits DD, EE). Nicole Davis inadvertently shows how these are in fact solicitations. In her affidavit in support of the motion to preclude emails, Davis claims she was not solicited but states that she joined Warrior Fitness after receiving their e-mail announcement (Davis aff., par. 5).

8. Defendants contend that the lists were "returned" so no harm has been done. That is absurd. First, the physical lists may have been returned but any electronic files were not and in any event the harm has already been done. Moreover I was advised by a number of my clients that after the physical lists were supposedly returned, another mass email went out to them alerting them to Warrior Fitness' upcoming television spot. Thus, they continue to use the stolen list.

9. As far as the confidentiality of the list, Pure Power's client base was the culmination of five years of operations hundreds of thousands of dollars on advertising and many hundreds of hours generating good will through media appearances and interviews (see Exhibit F to my original affidavit). This is a list of individuals who actually participate in the unique form of fitness training Pure Power offers. This is not simply a list of people who might want to use a gym; this is a highly specialized regimen. There is absolutely no way to secure this list except by years of work and hundreds of thousands of dollars, or by theft. This is not a list that could be bought or culled from

any directory. Nor, as Greco suggests is this largely clients local to the neighborhood. Greco's perspective is as an executive of a large generic chain of gyms, with customers who for the most part exercise on their own. These facilities saturate the city, with one or more every few blocks. Greco is probably right that gyms get their customers from people who live nearby. They offer nothing unique and so people will choose based on convenience.

10. Not so for Pure Power. Pure power is a destination location. I draw from all over. I have clients from New York, New Jersey, Connecticut, Long Island, Westchester and even have people come from places like Florida to train with me.

11. We do not draw from the neighborhood and our customer list is the result of years of operations, promotions and media events. It cannot be bought or learned elsewhere.

12. Moreover, I am advised that in the event of employee theft, sanctions will follow even if the list were not confidential, to punish the misconduct. Certainly here, where the theft is coupled with ongoing corporate espionage, the case for sanctions is even stronger.

13. Defendants argue that I have waived my right to protect the customer list because I did not lock my office door and invited clients to review the litigation papers.

14. As to the former, my office is directly behind the front desk where one on my assistants is seated. They served as the security for any unauthorized entry. In any event, defendants can hardly complain that any alleged lack of security justifies Belliard's trespass and theft.

15. As far as my invitation to clients, it was my understanding that defendants were engaged in a course of defamation against me, trying to put an innocent spin on their treachery, with false, derogatory comments against me. I wanted to set the record straight and simply showed any interested party what defendants did and how Lee was not the disinterested client she claimed to be. I had no intention of allowing a review of any confidential information such as my business plan

or customer list and no one was shown those documents.

## RESTRICTIVE COVENANT/EMPLOYEE AGREEMENT.

16. Pure Power's employee agreement (Exhibit I to my original affidavit) provides for non-disclosure of confidential information (which would include the client list) (par. 2).

17. It provides that the obstacle-confidence courses and related environments, the trade dress and the overall look and feel of Pure Power's operations is intellectual property which the employee agrees would not be used in any competing business. (Par.3)

18. It provides that the employee will not compete for a period of 10 years and will not solicit a client to discontinue services or use services of another business (Par. 4).

19. Finally, should a court find a provision unreasonable, paragraph 5 directs that the provision "shall be modified" to the extent necessary to render it enforceable and the modification will not affect the validity or enforceability of the remainder of the agreement.

20. When Belliard trespassed in my office, he stole his personnel file and the general drill instructor file. Although emails show that Belliard shredded his employment agreement (which he does not deny), faced with these emails, counsel had no choice but to acknowledge during the State Court proceedings that Belliard had in fact signed the agreement.

21. Fell's employee agreement is annexed as Exhibit I to my original affidavit. This was a standard agreement and Belliard's would be the same.

22. As indicated, the agreement was originally generated and signed in conjunction with the initiation of our franchise plan, at the suggestion of counsel. Defendants were already employed at the time. I explained that the agreements were needed and they willingly signed.

23. Apart from the issue of the duration of the restrictive covenant, we believe the

agreement to be enforceable. It prohibits disclosure or use of confidential information and intellectual property. It limits competition to facilities similar to plaintiffs', allowing defendants to open a gym, as long as it does not parallel plaintiffs' operations with obstacle courses or military style training. It prohibits the drill instructors from capitalizing on the bonding they develop with clients (see Greco affidavit submitted by defendant, par., 20-21) and stealing the client away, all of which we believe to be reasonable

24. The only issue is how long the restrictive covenant should last. We believe that a period of 2 years is appropriate the bond with a departing drill instructor to dissipate and to give the new instructor an opportunity to forge a new bond. After that, if the client wishes to leave, defendants can proceed, only not with our proprietary information.

25. Defendant's actions have violated the agreement in a number of different ways, taking client information, using Pure Power's intellectual property, including its look, feel and method of operations, stealing its corporate business plan and plagiarizing client documents, engaging in a competing enterprise and convincing clients to terminate service and transfer to defendants' facility.

26. Defendants seek to invalidate the agreement entirely. First, they contend that the 10 year restrictive covenant is excessive (we concede that it is) and argue that the agreement should be invalidated in its entirety. We disagree. The agreement directs that it be modified to an enforceable period, there are aspects of the agreement which they violated, independent of paragraph 4, and particularly in light of the violation by Fell and Belliard of their loyalty obligations while employees and Belliard's theft and shredding of the agreement, we feel that modification would be the fair and just result, and that two years is the appropriate period.

27. Although Belliard's execution of the agreement is undisputed, Fell claims that his

signature was forged. Attached as Exhibit A hereto is another document executed by Fell. The court can see the similarity in signatures and should evaluate Fell's claim in light of his other representations and ongoing misconduct. In any event, it is my understanding that we do not have to prove the falsity of Fell's claim as an absolute fact at this point; we have to show a likelihood of success or a legitimate issue and a balance of equities in our favor and we believe all of the foregoing has been established.

28.　With respect to Fell's credibility and misstatements, I also want to point out that his claim that he needed no training is an outright lie. Fell and Belliard both were trained by me, both in terms of how to conduct the programs and how to be an instructor. Belliard watched for 3 months, trained for six weeks and took 2 years to get certified. Fell trained for thee weeks and took over one year to be certified. Even Belliard's superior in the marines, Wally Powers, a lieutenant colonel who preceded him as an instructor, trained with me. The fact that they were in the Marines does not make them an instructor. I did that, with great time and effort.

29.　Defendants also submit affidavits by Rocco Greco and Brent Leffert, individuals affiliated with large generic fitness facilities such as Crunch and Equinox, who contend that restrictive covenants are not required for their facilities, that to their knowledge, they are not the norm in the industry, that there are restrictive covenants for executives but they only cover a 5 or 10 block radius and that there are a number of "boot camps" in the area.

30.　I do not believe that these gentlemen are competent to speak to the norm for the industry, if there even is one, but even if they were, as indicated above, Pure Power is a completely different type of facility. Pure Power is not a gym and it is certainly not a large fitness chain such as Equinox and Crunch. Crunch and Equinox have a large client base and the majority do not bother

with trainers so if a trainer leaves, there is no significant loss of customers. We have no general population. All of our clients have trainers and because of the bond (which Greco recognizes), as well as our franchise plans, we needed a cooling off period..

31. As far as the appropriate radius for a restrictive covenant five or tem bock may be suitable for a gym; as indicated, gyms saturate the city and their customers undoubted select based on convenience.

32. However, as set forth above, Pure Power draws from all over. We do not draw from the neighborhood and a local radius is meaningless. Moreover, when we franchise, the exposure will be international. I have interested investors from as far away as Argentina and China.

33. As to Greco's claim that there are other boot camps in the area, anyone can call themselves a boot camp and many do. My boot camp however is unique. Pure Power is, or was until defendants stole my business, the only facility which offered an indoor obstacle confidence course using military style training. That is why I am featured on so many televison shows and in the media (see Exhibit F to my original affidavit). If there were many others, I would be just another gym. There are no others.

34. Finally, defendants contend that the employment agreement should be rejected as there is no date, no proof of who else signed, no proof of whether the agreement has been consistently enforced and that the agreement was the product of coercion (Schnapp decl., par. 18).

35. As far as the circumstances surrounding the agreement, I have already explained that this was in conjunction with our franchise plan. There was no coercion. Defendants had already been employed. We explained to them why it was necessary and it was signed voluntarily. There was never any discussion and never any suggestion that they would not continue employment if they

refused.

36.  All drill instructors are asked to sign the agreement and have done so since we began asking.

37.  The theft and plagarism of my business plan and client documents was also in violation of the agreement, in violation of the defendants' obligations as employees, copyright infringement and a criminal act. The similarities between these documents make the theft and copying apparent.

38.  Fell claims that the documents were public and as such even if they were copied plaintiffs have no claim. Fell is incorrect. Even if there were some documents were public (my business plan was not), these are copyrighted materials.

## TRADE DRESS

39.  In addition to the statutory protections afforded Pure Power's trade dress, as set forth above, the employment agreement acknowledges that Pure Power's obstacle-confidence course and the overall look and feel are intellectual property which may not be used by defendants. Indeed, in their business plan (Exhibit P), which they claim is an independently generated document, they acknowledge on the third page headed "opportunity", third paragraph, that this is a "completely different fitness experience based on military style physical training that includes a rare indoor obstacle confidence-course" and goes on to describe the concept as "cutting edge". These are allegedly defendants' own words, "completely different", "rare", "cutting edge". Defendants acknowledge that this is unique. Defendants cannot avoid infringement by painting their facility a different color. The infringement of Pure Powers' concept is in violation of their contract, Federal and State law.

40. Although it is my understanding that a showing of confusion is not necessarily required, here, the style of the facility is clearly similar (even if the color is not) with the obstacle course layout, so much so that at least one bystander thought it was the same as ours; and their methods are the same as well; in fact, a number of clients commented when they saw a television spot by Fell that they thought it was my program until the end.

## IRREPARABLE INJURY

41. As far as the nature and extent of my injury, I understand that the theft and use of customer lists, the violation of restrictive covenant and the creative of competitive advantage by violating an employees duty of loyalty to an employer, each, alone, have warranted injunctive relief. The combination certainly should.

42. I have devoted over five year to establishing this concept. I have spent hundreds of thousands of dollars on promotion, on trademarking and on developing a franchise plan. I am poised to launch the franchise plan and now, defendants think they can steal a concept I have established with sweat and money.

43. I have lost over 36 longstanding clients, repeat customers who have expended in excess $160,000 on my facilities, and would have continued to do so in the future. The loss is incalculable and I believe more clients will be following as their fitness packages are complete. I cannot predict how many will be lost but the loss will be substantial as we are not a large organization to begin with.

44. The well has been poisoned. Limiting injunctive relief to no further solicitation does not good (especially given what defendants believe constitutes solicitation). At a minium, if defendants are not enjoined from continuing their business, there should be a direction not to

parallel our operations and a prohibition against servicing, not just soliciting Pure Power customers.

Finally, as far as defendants' complaints about my supposed misconduct, since they have no legitimate grounds to contest the application it appears they want to divert attention by irrelevant allegations.

I have not defamed defendants. I have consistently told the truth about what they have done. It is certainly not flattering but it is not defamatory.

I have not infringed on their right. As far as the bus advertisement, all it shows are defendants' backs.

As far as the website I do not believe that the use of photos while they were employed is improper, particularly given the employee agreement which assigns all intellectual property to Pure Power. However, if arguendo, there is an issue, it is not an issue for this case or an excuse for defendants' conduct.

/s/ LAUREN BRENNER

Sworn and subscribed to before
me this 10 day of July, 2008

NOTARY PUBLIC

Nicole Georgiafentis
Notary Public, State of New York
No.01GE6150326
Qualified in Nassau County
My Commission Expire 07/24/20_10_

# Form W-4 (2006)

**Purpose.** Complete Form W-4 so that your employer can withhold the correct federal income tax from your pay. Because your tax situation may change, you may want to refigure your withholding each year.

**Exemption from withholding.** If you are exempt, complete only lines 1, 2, 3, 4, and 7 and sign the form to validate it. Your exemption for 2006 expires February 16, 2007. See Pub. 505, Tax Withholding and Estimated Tax.

**Note.** You cannot claim exemption from withholding if (a) your income exceeds $850 and includes more than $300 of unearned income (for example, interest and dividends) and (b) another person can claim you as a dependent on their tax return.

**Basic instructions.** If you are not exempt, complete the Personal Allowances Worksheet below. The worksheets on page 2 adjust your withholding allowances based on itemized deductions, certain credits, adjustments to income, or two-

earner/two-job situations. Complete all worksheets that apply. However, you may claim fewer (or zero) allowances.

**Head of household.** Generally, you may claim head of household filing status on your tax return only if you are unmarried and pay more than 50% of the costs of keeping up a home for yourself and your dependent(s) or other qualifying individuals. See line E below.

**Tax credits.** You can take projected tax credits into account in figuring your allowable number of withholding allowances. Credits for child or dependent care expenses and the child tax credit may be claimed using the Personal Allowances Worksheet below. See Pub. 919, How Do I Adjust My Tax Withholding, for information on converting your other credits into withholding allowances.

**Nonwage income.** If you have a large amount of nonwage income, such as interest or dividends, consider making estimated tax payments using Form 1040-ES, Estimated Tax for Individuals. Otherwise, you may owe additional tax.

**Two earners/two jobs.** If you have a working spouse or more than one job, figure the total number of allowances you are entitled to claim on all jobs using worksheets from only one Form W-4. Your withholding usually will be most accurate when all allowances are claimed on the Form W-4 for the highest paying job and zero allowances are claimed on the others.

**Nonresident alien.** If you are a nonresident alien, see the Instructions for Form 8233 before completing this Form W-4.

**Check your withholding.** After your Form W-4 takes effect, use Pub. 919 to see how the dollar amount you are having withheld compares to your projected total tax for 2006. See Pub. 919, especially if your earnings exceed $130,000 (Single) or $180,000 (Married).

**Recent name change?** If your name on line 1 differs from that shown on your social security card, call 1-800-772-1213 to initiate a name change and obtain a social security card showing your correct name.

---

**Personal Allowances Worksheet (Keep for your records.)**

A  Enter "1" for yourself if no one else can claim you as a dependent . . . . . . . . . . . . . . . . . . . .  A  _1_

B  Enter "1" if:
   - You are single and have only one job; or
   - You are married, have only one job, and your spouse does not work; or
   - Your wages from a second job or your spouse's wages (or the total of both) are $1,000 or less.   B  _1_

C  Enter "1" for your spouse. But, you may choose to enter "-0-" if you are married and have either a working spouse or more than one job. (Entering "-0-" may help you avoid having too little tax withheld.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C  _____

D  Enter number of dependents (other than your spouse or yourself) you will claim on your tax return . . . . .  D  _____

E  Enter "1" if you will file as head of household on your tax return (see conditions under Head of household above) . E  _____

F  Enter "1" if you have at least $1,500 of child or dependent care expenses for which you plan to claim a credit . . F  _____
   (Note. Do not include child support payments. See Pub. 503, Child and Dependent Care Expenses, for details.)

G  Child Tax Credit (including additional child tax credit):
   - If your total income will be less than $55,000 ($82,000 if married), enter "2" for each eligible child.
   - If your total income will be between $55,000 and $84,000 ($82,000 and $119,000 if married), enter "1" for each eligible child plus "1" additional if you have four or more eligible children.  G  _____

H  Add lines A through G and enter total here. (Note. This may be different from the number of exemptions you claim on your tax return.)  ▶  H  _____

For accuracy, complete all worksheets that apply.
- If you plan to itemize or claim adjustments to income and want to reduce your withholding, see the Deductions and Adjustments Worksheet on page 2.
- If you have more than one job or are married and you and your spouse both work and the combined earnings from all jobs exceed $35,000 ($25,000 if married) see the Two-Earner/Two-Job Worksheet on page 2 to avoid having too little tax withheld.
- If neither of the above situations applies, stop here and enter the number from line H on line 5 of Form W-4 below.

---

Cut here and give Form W-4 to your employer. Keep the top part for your records.

**Form W-4**     **Employee's Withholding Allowance Certificate**     OMB No. 1545-0074
Department of the Treasury
Internal Revenue Service       ▶ Whether you are entitled to claim a certain number of allowances or exemption from withholding is subject to review by the IRS. Your employer may be required to send a copy of this form to the IRS.     **2006**

1  Type or print your first name and middle initial.  **ALEX**    Last name  **FELL**    2  Your social security number  **503:80:4862**

Home address (number and street or rural route)  **2750 Johnson Ave 5G**

3  ☒ Single  ☐ Married  ☐ Married, but withhold at higher Single rate.
Note. If married, but legally separated, or spouse is a nonresident alien, check the "Single" box.

City or town, state, and ZIP code  **Bronx, NY 10463**

4  If your last name differs from that shown on your social security card, check here. You must call 1-800-772-1213 for a new card. ▶ ☐

5  Total number of allowances you are claiming (from line H above or from the applicable worksheet on page 2)   5  **2**
6  Additional amount, if any, you want withheld from each paycheck . . . . . . . . . . . . . . . . . . .   6  **$**
7  I claim exemption from withholding for 2006, and I certify that I meet both of the following conditions for exemption.
   - Last year I had a right to a refund of all federal income tax withheld because I had no tax liability and
   - This year I expect a refund of all federal income tax withheld because I expect to have no tax liability.
   If you meet both conditions, write "Exempt" here . . . . . . . . . . . . . . . . . . . . . . ▶  7

Under penalties of perjury, I declare that I have examined this certificate and to the best of my knowledge and belief, it is true, correct, and complete.

Employee's signature
(Form is not valid unless you sign it.) ▶  *[signature]*                            Date ▶  **9/26/06**

8  Employer's name and address (Employer: Complete lines 8 and 10 only if sending to the IRS.)   9  Office code (optional)   10  Employer identification number (EIN)

For Privacy Act and Paperwork Reduction Act Notice, see page 2.      Cat. No. 10220Q      Form W-4 (2006)