UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

| | |
|---|---|
| PURE POWER BOOT CAMP, INC., PURE POWER BOOT CAMP FRANCHISING CORPORATION, and PURE POWER BOOT CAMP JERICHO INC., | REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION<br>Index No.: 08 CV 4810 (JGK)(THK) |

                Plaintiffs

        -against-

WARRIOR FITNESS BOOT CAMP, LLC,
ALEXANDER KENNETH FELL a/k/a ALEX
FELL, Individually; RUBEN DARIO BELLIARD
a/k/a RUBEN BELLIARD, Individually;
JENNIFER J. LEE Individually; and NANCY
BAYNARD, Individually,

                Defendants.
-----------------------------------------------------------------x

                                          Bahn, Herzfeld & Multer, LLP

                                          S/HERZFE 25%tenog
                                          RICHARD L. HERZFELD (RH0642)
                                          Attorneys for Plaintiffs
                                          555 Fifth Avenue
                                          New York, N.Y. 10017
                                          BHMLLP@aol.com
                                          (212) 818-9019

                                          Stacey Richman, Esq.
                                          Law Offices of Stacey Richman
                                          Attorneys for Plaintiffs
                                          2027 Williamsbridge Road
                                          Bronx, NY 10461

## THE CLIENT LIST

Defendants argue that the plaintiffs cannot prevail on its claim claimed that of the customer list because (a) they never took it, (b) the list has no value as the customers are easily ascertainable from public sources, (c) plaintiffs have failed to show that the efforts to generate the list or the efforts to maintain its secrecy, (d) defendants already returned whatever they had and (e) without expert or lay testimony, plaintiffs cannot show the list is confidential.(Defendants' Mem., pp. 15-18)

None of these contentions have merit. As to the claim that the list was not taken, there is no affidavit from Belliard denying the allegations and Justice Freedman concluded it was taken. Defendants' claim that the sudden increase from 88 friends to 313 friends, virtually all of whom are Pure Power clients (defendants have alleged four or five out of 313 were not), and going from no e-mail addresses to full contact information, was based on personal knowledge is ludicrous. Although defendants contend that this is personal contact information, Belliard is silent and there is no explanation of how, in six days, the list more than tripled. Indeed in their cover email on the 31st, Lee states, "I just updated our party list (w/a VERY DEAR FRIEND OF OUR'S additions)(Exhibit X). Thus it is clear that this was not their personal contact information. Even if they had the information (which is doubtful given the timing), one must also question where that information came from given the defendants' espionage and malfeasance, using Lee and Baynard as inside agents to convert clients at the right time.

As far as defendants' other claims, Brenner has more than adequately detailed the efforts to develop the list, the reasons why the identity of the clients cannot be easily ascertained (to address Greco's contention, unlike ordinary gyms which are located on nearly every other block, Pure Power is unique and does not depend upon clientele from the immediate vicinity). She also detailed the fact that the list was located on her computer, in her office where no one was allowed. In addition, the employee agreements provided for the confidentiality of customer information.

1

The contention that because the physical lists were returned, no harm has occurred is equally absurd. We pointed out that electronic files were not returned, defendants have not represented otherwise and there was a mass email by defendants, after the physical file return, alerting Pure Power clients to an upcoming television demonstration. More important, the harm has already occurred.

Nor can defendants' representations be trusted. Apart from their overall misconduct, they claim that no solicitation occurred. The evidence, however, proves otherwise. One need only look at the last two columns, F and G on their first"friends" list, Exhibit U, generated while Belliard was still employed.. In F, there are the codes Y/M/P and it is clear from the comments in G that these stand for yes, and presumably maybe and possibly. As such, if there is any question as to the ongoing solicitation of Pure Power clients on or before March 25th, while at least Belliard was still an employee (although the list is dated March 25th, there is no indication of how long the solicitations had gone on for), this is proof positive, and as indicated, is not denied. Although defendants contend that some of the misconduct occurred after Fell and Belliard quit, it does not matter. They left Lee behind, continuing to masquerade as a client and Lee's e-mail "call me miss conversion" (Exhibit AA) and her mass email (DD) were written before she left.

The mass emails (DD and EE), announcing the opening, providing pricing information and asking to spread the word were solicitations and even after defendants claimed they stopped soliciting, they sent a mass email announcing their upcoming television spot.

Nicole Davis, in her affidavit in support of defendants motion to preclude e-mails, unwittingly sums it up. She claims she was never solicited but did receive a notice from Baynard regarding the opening of Warrior Fitness.

Finally, although the foregoing is more than adequate to establish the client list as a confidential document (defendants ignore <u>North Atlantic Instruments, Inc. v. Haber</u>, 188 F.3d 38 (2d Cir. 1999), cited in the supplemental memorandum, describing various circumstances in which a customer list would be

considered confidential), defendants also ignore the authority, set forth in the supplemental memorandum, which provides for sanctions against employee theft of customer lists even if the list is not confidential based upon the need to punish this "egregious breach of trust and confidence while in plaintiffs' service" Leo Silfen, Inc. v. Cream, 29 N.Y.2d 387, 328 N.Y.S.2d 423 (1972.).

The decision in Webcraft Technologies, Inc. v. McCaw, 674 F.Supp. 1039 (S.D.N.Y.1987), is on point. In Webcraft, there was also an employment agreement prohibiting disclosure of customer information, a restrictive covenant and the theft of a customer list. Although not nearly as egregious as the conduct at bar, where defendants collectively worked to steal information and subvert clients before opening their facility, in Webcraft, as here, the employee delayed giving notice after employment with a competitor, to engage in similar misconduct, and again, although not as egregious as defendants' solicitations while employed, in Webcraft, upon joining the competitor, the employee sent letters, made calls and as in the present case, inputted the Webcraft's customers into the competitor's database.

As in the present case, the court found aspect of the restrictive covenant overbroad, but found that many of the provisions which had been violated were reasonably designed to protect Webcraft's legitimate interests. The court found that while a list of prospective customers might not be a trade secret ans that could be culled from easily available sources, the customer list would be as it identifies customers who have learned and have bought the benefits of Webcrafts's products The court noted that in Leo Silfen, Inc. v. Cream, supra,, the court held that where customers are not readily ascertainable, but only discoverable with great effort, and particularly where the patronage of such customers was secured through the expenditure of considerable time and money, the list is a protectible trade secret.

The Webcraft court noted Silfen's direction that "if there has been a physical taking or studied copying, the court may in a proper case enjoin solicitation" and that "the Court in Leo Silfen suggests that its holding is limited to cases where there is no express non-solicitation agreement between the parties. 328

3

N.Y.S.2d at 430".

The employee in <u>Webcraft</u> removed the customer list and had a restrictive covenant. Although she contended could have "remembered the names and contacts of her few customers and only took the rolodex for convenience" (not unlike defendants' claims of personal recollection)," the court held that the "fact remains that she took the list and no doubt it helped her remember far more than she could have remembered without it". Accordingly, the court granted injunctive relief, in a holding that could as easily have been written for the present case,

> Her wanton conversion of Webcraft's trade secrets, however, justifies application of the injunction to any account she solicited, contacted or acquired information about while she was in Webcraft's employment. The injunction should cover any entity about which she took information to Tech Web. This may mean she will be enjoined as to some entities as to which the information she took was not a confidential trade secret. On the other hand, it is so clear she has stolen trade secrets that Webcraft should not be required to run the risk of her so profiting on accounts where Webcraft cannot prove her theft. In view of her clearly established breach of fiduciary duty, I believe this correctly draws the line .

Defendants make a last ditch effort to avoid the issue. They claim that although we have a pending request to seal certain exhibits, including the customer list, because we did not request that a separate copy of the exhibit which was provided to the court be under seal, the issue has been waived. The intention was to seal the customer list. Presumably the request to seal the exhibit would include any copies of the exhibit. Should this court even consider the argument, it is respectfully requested that the application be deemed to include any copies of exhibits as well as the exhibits themselves.(Defendants' Mem., p. 17)

Defendants also contend that because Brenner invited clients to review the litigation papers, she has effectively waived her rights. As set forth in her affidavit, Brenner never intended to disclose confidential information, Brenner never disclosed confidential information, and in any event, even if a client reviewed the customer list, it is unlikely that much could be committed to memory and is hardly the equivalent of downloading over 300 names and e-mail addresses (Defendants' Mem., p. 17).

EMPLOYMENT AGREEMENT

With respect to the employment agreement, there are two components, the confidentiality obligations and the 10 year restrictive covenant, each independent obligations. Defendants contend that the State Court found the employment agreement unenforceable (Schnapp decl., par. 11). It did not. It found a ten year duration unenforceable but never addressed the issue of whether it could be modified or if it would affect the other aspects of the agreement (Schnapp decl., Ex. B, pp 28-29).

Defendants argue that the agreement is unenforceable based upon the 10 year duration and worldwide coverage. Second, they claim it prohibits defendants from servicing clients they would encounter outside of their relationship with Pure Power and that it prohibits Pure Power clients from exercising their discretion to follow defendants. Finally, they claim it should not be enforced because the agreement was coerced and that restrictive covenants are not typical in the "industry" (Defendants' Mem., pp. 19-22).

This argument, of course, ignores the independent prohibition against disclosure of confidential information, including customer lists, and the prohibition against use of proprietary information, including the look, feel and methodology of Pure Power's operations. As in North Atlantic, and Webcraft, these provisions are enforceable obligations so that in addition to the violation of common law obligations when they stole the client list, they also violated the terms of the employee agreement.

With respect to the claim that the agreement prohibits defendants from servicing clients unrelated to Pure Power, defendants are correct. That is the nature of a restrictive covenant. It does not prohibit defendants from earning a living in their field, they can open a fitness center. However they cannot draw upon their training and experience with Pure Power to open a competing facility. Admittedly the 10-year term is excessive, but pursuant to the contract and pursuant to prevailing case law, this Court can tailor the agreement to an appropriate term.

The fact that it is worldwide in nature, as Brenner explained, relates to her franchise plans and therefore was reasonable in scope but if this court finds otherwise, it can also tailor the geographical provisions. However, the limitation of a 5 to 10 block radius is untenable. Defendants suggest this based upon the Greco affidavit. However, Greco addresses the issue from the perspective of chain fitness centers, available in every neighborhood and almost every block, therefore drawing primarily upon local clientele. Pure Power is unique, draws from a broad geographical base, and once franchised, will expand worldwide. Defendants ignore this court's decision in Estee Lauder Companies Inc. v. Batra, 430 F.Supp.2d 158 (SDNY 2006), cited in the supplemental memorandum, upholding a worldwide geographical restriction.

As far as the need to allow customers to follow defendants, that too is untenable. One purpose of a restrictive covenant is to allow a break when an employee develops a close relationship with a customer as part of his or her duties and at the time and expense of the employer. See BDO Seidman v. Hirshberg, 93 N.Y.2d 382 at 392, holding that "[ T]he employer retains "a legitimate interest in preventing former employees from exploiting ... the goodwill of a client or customer, which had been created and maintained at the employer's expense, to the employer's competitive detriment" ..

Defendants' contention that restrictive covenants are not the norm, is both irrelevant and misleading. Whatever Greco feels is the norm, defendants signed the employee agreement with the restrictive covenant. As indicated, Greco approached this from the perspective of a large fitness chain, presumably with most of its base comprised of customers who used no trainer at all. It gives up little if there is no restrictive covenant. Here, Pure Power is small and all relationship are direct with the drill instructor, thereby forming the bond described by Greco. A cooling off period was reasonable. Moreover, Greco does not address the fact that, unlike ordinary employment situations, here, there was the additional need as a result of Pure Power's plan to franchise.

Fell's claim that his signature is a forgery is also baseless, although it will have to be resolved at

trial. Brenner explained that the agreements were signed after both had been employed and were signed by them at the same time. Brenner submits another document signed by Fell with a similar signature and Fells credibility is suspect in the first place. Even if not rejected out of hand, certainly creates an significant issue for litigation.

Finally, defendants claim the agreement was coerced. However, Belliard, who stole and shredded his agreement, provides no affidavit; he denies nothing and does not claim coercion. As Fell denies he signed it all, he also doses not claim he was coerced. There is nothing to suggest that is coerced and Brenner, in her affidavit, explains otherwise.

Defendants' extrapolation that there was no right to negotiate from a statement in the prior memorandum that the employment agreement was a company policy (Defendants' memorandum, p. 22, fn 7) is baseless and in any event, where sole allegations are that the agreements were signed without protest, the issue is moot.

## EMPLOYEE MISCONDUCT

With respect to defendants' breach of their obligations as employees, defendants completely ignore the misconduct by Fell and Belliard, using Lee and Baynard to subvert clients while employed by plaintiffs See (Defendants' Mem., pp.18-19). As defendants are silent on the issue, given these unrebutted allegations, along with the email proof, the conclusion that defendants breached their obligation of the utmost good faith and loyalty to Pure Power as employees (<u>Western Electric Co. v. Brenner</u>, 41 N.Y.2d 291, 392 N.Y.S.2d 409 (1977)) is inescapable.

The same holds true for the solicitation of clients while employed. At a minimum, the March 25th "friends" list reflects ongoing solicitation, and Belliard was still employed at that point. How long the misconduct went on before that will have to be determined at trial

## TRADE DRESS

Finally, with respect to the issue of trade dress, although this is largely fact driven, as set forth in the affidavits and declarations submitted in connection with this motion, Pure Powers' look and feel, its method of operations and its obstacle-confidence course are all subject to trade dress protection as well as the protection of the employment agreement.. Defendants acknowledge the foregoing in their employee agreement and further acknowledge it in their business manual (Exhibit P), describing the operation a "completely different fitness experience, based on military style physical training that includes a rare indoor obstacle confidence-course" and "cutting edge". Painting the facility another color does not negate these obligations. Although defendants argue that there is no showing of a likelihood of confusion, apart from the comments detailed on the affidavits as to the similarity of look and operation, confusion is not required under 15 U.S.C. § 1125 (c)(1) and GOL § 360-l.

To the extent defendants contend that the State Court concluded that if certain changes were made, plaintiffs would be unable to prove irreparable injury or that it found plaintiffs had no right to indoor obstacle courses or boot camp concepts, defendants are mistaken. See Herzfeld decl., par. 5-11.

## INJUNCTIVE RELIEF

Perhaps the single matter on which the parties agree is the standards for injunctive relief, the potential for irreparable harm and either a likelihood of success on the merits or serious issues going to the merits and the balance of hardship in the movement's favor. As set forth in the original and supplemental memorandum, plaintiffs meet all three criteria.

## LIKELIHOOD OF SUCCESS/MATERIAL ISSUES TO LITIGATE

As indicated, each act of the misconduct, the theft of customer lists, the breach of the employee agreement to maintain confidentiality, the agreement not to use Pure Power's trade dress, the breach of the restrictive covenant, soliciting clients and using corporate spies while employed, the theft of corporate

documents and the infringement on trade dress, would justify injunctive relief and between the documentary evidence, the affidavits submitted, the admissions by Fell and the failure of Belliard, Baynard or Lee to refute the allegations against them, plaintiffs have shown a likelihood of success on the merits. Plaintiffs cite a number of cases in the memorandum and supplemental memorandum, such as <u>North Atlantic Instruments, Inc. v. Haber</u>, 188 F.3d 38 (2d Cir. 1999), <u>Ticor Title Ins. Co. v. Cohen</u>, 173 F.3d 63 (2d Cir. 1999), holding "the potential loss of "relationship[s] with [ ] clients" would cause irreparable harm and that "it would be very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come." and <u>Credit Suisse Securities (USA) LLC v. Ebling</u>, 2006 WL 3457693 (SDNY 2006), holding that Credit Suisse would suffer immediate and real harm without a preliminary injunction preventing the former employee from soliciting Credit Suisse's clients and employees. The court found that without a preliminary injunction, Credit Suisse would face "losses of clients, employees, and goodwill-harm that cannot be compensated by money damages."

In <u>Velo-Bind, Inc. v. Scheck</u>, 485 F.Supp. 102 (D.C.N.Y. 1979), under similar circumstances the court granted injunctive relief, holding,

> To recapitulate, it is not possible to have achieved the level of sales to former Velo-Bind customers which was realized by defendants except by direct reliance on known Velo-Bind customers. In such a case, the customer list is entitled to protection as a trade secret and its utilization by a former employee constitutes a breach of fiduciary obligation which may be enjoined, even absent a specific covenant not to compete. By siphoning off plaintiff's carefully gleaned customers, defendants subject plaintiff to a definite possibility of irreparable harm, which increases as long as it continues unrestrained. What is at stake here is plaintiff's good will built up over the years, which is not, contrary to defendant's assertion, monetarily ascertainable Other decision which support the likelihood of success are <u>Duane Jones Co. V. Burke</u>, 306 N.Y. 172 (1954), in which defendants started a competing business and immediately secured 9 of plaintiff's accounts. The Court of Appeals held that it was a reasonable inference that this was the result of conduct taken before their employment was terminated. It held that defendants, while employees of plaintiff, "determined upon a course of conduct which, when subsequently carried out, resulted in benefit to themselves through destruction of plaintiff's business, in violation of the fiduciary

9

duties of good faith and fair dealing imposed on defendants by their close relationship with plaintiff corporation". ...[T]he conduct of the individual defendants-appellants as officers, directors or employees of the plaintiff corporation '* * * fell below the standard required by the law of one acting as an agent or employee of another.' *188 Lamdin v. Broadway Surface Adv. Corp., 272 N.Y. 133, 138, 5 N.E.2d 66, 67. Each of these defendants was '* * * prohibited from acting in any manner inconsistent with his agency or trust and (was) at all times bound to exercise the utmost good faith and loyalty in the performance of his duties.' 272 N.Y. at page 138.

The same analysis holds true in the case at bar.

Defendants claim that plaintiffs acknowledged a lack of irreparable injury by suggesting that if the court did not shut Warrior Fitness down, at a minimum, an injunction against servicing Pure Power clients would be warranted. There is a volume of authority concluding that the continued service of clients from stolen customer lists or in violation of restrictive covenants constitutes irreparable injury. The same holds true for defendant's argument that because Warrior Fitness is operating, irreparable injury has not occurred and the only issue is monetary damages. See <u>Velo-Bind, Inc. v. Scheck</u>, <u>supra</u>.

Defendants also argue that it be weighing of the equities falls in favor of defendants because, they claim, Cheryl Dumas trespassed when she entered their open facility, which they characterize as "corporate espionage" and because they claim Brenner has defamed defendants and continues to use their likeness in Pure Power promotions.

Even if that were correct, and it is not, the allegations pale in comparison to the pervasive malfeasance by defendants. Dumas committed no trespass and As Brenner explained the ads only show instructors' basks and the photographs were taken as part of their employment and is intellectual property assigned by defendants in their agreements (Schnapp decl., par. 24-25).

Finally, defendants argue that irreparable injury is waived because plaintiffs delayed before proceeding (Defendants' Mem., p. 23). Brenner learned of the conspiracy at the end of April. The order to show cause was filed motion was filed on or about May 5th.

FOR THE FOREGOING REASONS,

PLAINTIFFS' MOTION SHOULD BE GRANTED.

                Respectfully submitted,

                Bahn, Herzfeld & Multer, LLP

                <u>S/HERZFE 25%tenog</u>
                RICHARD L. HERZFELD (RH0642)
                Attorneys for Plaintiffs
                555 Fifth Avenue
                New York, N.Y. 10017
                BHMLLP@aol.com
                (212) 818-9019

                Stacey Richman, Esq.
                Law Offices of Stacey Richman
                Attorneys for Plaintiffs
                2027 Williamsbridge Road
                Bronx, NY 10461