UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

| | |
|---|---|
| PURE POWER BOOT CAMP, INC., <br> PURE POWER BOOT CAMP FRANCHISING <br> CORPORATION, and PURE POWER BOOT <br> CAMP JERICHO INC., | REPLY DECLARATION OF <br> RICHARD L. HERZFELD <br> IN SUPPORT OF MOTION <br> FOR A PRELIMINARY INJUNCTION |
|         Plaintiffs | Index No.: 08 CV 4810 (JGK)(THK) |
| -against- | |
| WARRIOR FITNESS BOOT CAMP, LLC, <br> ALEXANDER KENNETH FELL a/k/a ALEX <br> FELL, Individually; RUBEN DARIO BELLIARD <br> a/k/a RUBEN BELLIARD, Individually; <br> JENNIFER J. LEE Individually; and NANCY <br> BAYNARD, Individually, | |
|         Defendants. | |

-----------------------------------------------------------------x

RICHARD L. HERZFELD, ESQ., declares pursuant to 28 USC §1746 as follows:

1.  I am a member of Bahn, Herzfeld & Multer, LLP., attorneys for plaintiffs and make this reply to declaration in support of plaintiffs' motion for a preliminary injunction.

2.  The facts specific to the underlying causes of action are detailed in the affidavits of Lauren Brenner, Denise Parker and Elizabeth Lorenzi.

3.  This declaration is to address certain factual issues raised by counsel for defendants in his declaration.

4.  Faced with documented theft of a client list, corporate espionage, employee malfeasance, breach of the duty of loyalty, theft and shredding of one employment agreement and breach of a restrictive covenant, defendants seek to distort the record, in an effort to divert focus

1

from their misconduct. One such effort is defendants' assertions as to what took place in State Court.

## THE STATE COURT PROCEEDINGS

5. At the outset, defendants tried to convince this court that the motion for a preliminary injunction had been denied, when in fact the transcript of the State Court proceedings reflects the court's adjournment for purposes of reassessment and a hearing. (Schnapp Exhibit F, p. 3; Exhibit B, p. 43).

6. Now, defendants suggest that the State Court held that plaintiffs could not establish irreparable harm as long as defendants made certain changes to their business (Schnapp decl., par. 6), that the restrictive covenant was "facially invalid" (Schnapp decl., par. 11), and that the court held that plaintiffs had no proprietary right to the boot camp concept or the concept of indoor obstacle courses (Schnapp decl., par. 12)..

7. In fact, the court decided nothing (other than concluding that the customer lists had in fact been stolen, that the emails should be allowed, and establishing through pointed inquiry of counsel that Belliard in fact did sign the employee agreement (Schnapp Exhibit B, Transcript, pp. 28, 32-33).

8. The court did not find that plaintiffs could not establish irreparable harm. Significantly, defendants provide no citation in the transcript and the court ultimately concluded that nothing could be decided when at a hearing (Schnapp Exhibit B, Transcript p. 43).

9. The court did not find the restrictive covenant facially invalid. It did express the opinion that a 10 year restriction would be unenforceable but did not address the viability of the agreement in its entirety or the ability to tailor it pursuant to the savings clause (Schnapp Exhibit B, Transcript, p. 31)..

10. Nor did the court conclude that plaintiffs had no proprietary rights in the boot camp concept or the concept of indoor obstacle courses.

11. Finally with respect to defendants' claim that counsel conceded that defendants were entitled to conduct their own boot camp, the statement was by trademark counsel in connection with trade dress issues. Her point was that the trade dress did not encompass the boot camp concept, per se; it was the manner of operation and look and feel of the facility which was protected (Schnapp Exhibit B, Transcript, p. 39).

12. However, if defendants wish to rely upon what took place in state court, then they must live with the conclusion which is clear on the record that the customer list had been stolen.

## THE SUPPLEMENTAL PAPERS

13. With respect to defendant's complaint that the supplemental papers assert new or contradictory allegations, (Schnapp decl., par. 18), defendants are once again incorrect.

14. Defendants first complain of the introduction of an affidavit by Denise Parker, detailing Belliard's trespass into Brenner's office prior to his resignation, asserts that it is "rank hearsay" and finds it suspicious that it was first introduced as a supplemental affidavit.

15. Preliminarily, it is not hearsay, it is an affidavit provided by the witness to the events. Nor is there anything suspicious about its introduction. Prior counsel obviously worked quickly to prepare the motion papers and concluded that he had sufficient information to document defendants' theft of the customer list. While we agree that the e-mails and documentary evidence are adequate to establish the theft ( Justice Freedman concluded that the list was stolen), we felt that the Parker affidavit provided additional context and we did not want defendants to complain that it was first submitted in reply, thereby depriving defendants of an opportunity to respond.

16.     Apparently the concern was unfounded as Belliard has offered no affidavit denying the trespass, denying the theft of the employment agreement and the customer list, or denying his destruction of his employment agreement.

17.     The affidavit regarding the garbage collector raises nothing new and was offered at this time because the encounter took place after the motion papers were filed.

18.     The issue of the restrictive covenants is nothing new and the allegations regarding execution of the restrictive covenants provided the circumstances surrounding their execution, allowing defendants to address the issue should they desire, rather than first introducing it in reply.

19.     The fact that Brenner prohibits entry into her office but rarely locks it does not suggest a failure to protect confidential information; as Brenner explained, her assistant sits out front and that is generally enough.  Brenner did not contemplate that a trusted employees would openly ignore her instructions, her assistant's demands to stay out, and brazenly loot her office.  Defendants' argument that because they were able to steal from Brenner, her security was lacking and she has no right to complain is hardly persuasive.

20.     As far as the employee manual regarding e-mails, this was offered based upon defendants' original letter objecting to use of the e-mails, which was written after the motion was filed.  Although counsel suggests that defendants deny that the email policy was in place or that they ever reviewed the policy, counsel is incorrect.  First, no affidavit from Belliard was provided and so he denies nothing.  As far as Fell, given the careful crafting of Fell's affidavit regarding his use of Pure Power computers (see below), one must carefully review his contentions regarding an e-mail policy to avoid being misled.  While it is true that Fell states he does not "recall" receiving the policy or seeing it on a refrigerator, he does not state that he did not see it elsewhere or that he was unaware

of the policy and his "recollection" may be faulty.

21. Defendants again mischaracterize plaintiffs' position (see below) regarding appropriate relief. Plaintiffs do not suggest that the sole remedy would be to limit defendants' access to Pure Power clients; plaintiffs offered this as an alternative should the court choose not to completely shut defendant's operations. In any event, the request for an injunction precluding the servicing or soliciting of Pure Power clients hardly supports defendants' position that the lack of irreparable injury has been conceded. As set forth in the memoranda, this remedy is frequently employed to address the malfeasance of former employees.

22. Defendants' contention that the request for injunctive relief has been waived because the customer list is now public record (Schnapp decl., par. 8-9) is also unavailing.

23. There is presently pending a request to seal the record with respect to certain exhibits, including the customer list exhibit. A copy of that exhibit had been forwarded to the court and defendants contend that because there was no request to seal that copy as well, the issue is waived. If the court is inclined to give any credence to this argument, the intent was to seal the exhibit and the request should be deemed to include any copies of the exhibit as well.

24. To the extent defendants claim Brenner's e-mail inviting clients to review court papers constitutes a waiver, there is nothing to suggest that Brenner intended to disclose confidential information as well, Brenner explains in her affidavit that no confidential information was disclosed and in any event, a cursory review by a client on consent is hardly the same as the calculated downloading of at least 300 clients, including credit card information and e-mail addresses.

25. Defendants' explanation that the list was compiled from their own personal contacts was rejected by Justice Freedman and is inherently unbelievable, particularly where the list was

compiled the same time Belliard was engaged in trespass, six days before there had been 88 names without contact information and most important, Lee's cover email on the 31st states, "I just updated our party list (w/a VERY DEAR FRIEND OF OUR'S additions)(Exhibit X). If the "additions" came from a "very dear friend", it was not from defendants' personal contact information as they claim and we believe that this is a sarcastic reference to Brenner, after downloading her customer base.

26. Significantly, defendants offer no explanation for this sudden increase in "friends" or how, coincidentally, most of their "friends" corresponds to Pure Power clients.

27. The claim that no solicitation of clients occurred is another example of defendants' misrepresentations. Apart for the email evidence of mass mailings (Exhibits DD and EE), the "friends" list is conclusive proof. On the first list of March 25th (Exhibit U), there are 7 lettered columns, A though G. The last 2 columns shows the status of their solicitation of the Pure Power clients. On the 25th Belliard was still employed and both Baynard and Lee still clients. We do not know how long the solicitation went on for prior thereto, but presumably it was for some time given the number of clients solicited. This is just one more misrepresentation by defendants (or rather by Fell since Lee Belliard and Baynard offer nothing) in an effort to avoid responsibility..

28. Although the issue is pending before Magistrate Judge Katz, defendants raise the issue of improper access to their emails. Should this be an issue for this court, we refer the court to the affidavits, declaration and memorandum filed in opposition to defendants' application to preclude the use of the emails.

29. One issue does need to be addressed, as it affects the court's overall analysis of defendants' credibility.

30. Defendants have repeatedly asserted that it is plaintiffs' contention that the e-mails

were accessed as a result of Fell's voluntary disclosure of his e-mail password. As defendants believe that this is not credible, they assert that the only access must have been by "hacking".

31.     However, as above, defendants completely and unjustifiably misstate plaintiffs' position. Plaintiffs have always contended that the e-mails in issue were secured in two ways. The e-mails from Fell's Hotmail account were secured because Fell left his username and password on Pure Power's computer, in violation of Pure Power's employee policy (Exhibit B to Brenner's supplemental affidavit), prohibiting personal use of Pure Power's computers by employees. There was never any representation that the Hotmail e-mails had been secured because Fell had given a Pure Power employee the password for that account, contrary to defendants' claims. See Schnapp dec., par. 9-10.

32.     In the State Court transcript (Schnapp decl., Exhibit B), counsel for plaintiffs specifically states that there had been a computer on the workstation at the front desk.   One of Pure Power's employees, Liz (Elizabeth Lorenzi), opened Hotmail and found that Fell's e-mail account was there. Counsel for plaintiffs noted that Fell conceded that he accessed the account on plaintiff's computer, pointing to page 2 of defendant's letter in opposition to the original state court motion (Exhibit A to Brenner's affidavit in opposition to defendants' email application) in which counsel for defendants acknowledged that Fell did not dispute that he may have accessed his account from Pure Power's computer (Schapp decl. Exhibit B, transcript, pp.18-19).  Counsel also explained that Fell had given Lorenzi his email password to check on Ebay property he was selling (Schapp decl., Exhibit B, Transcript, p. 20).

33.     Later, counsel for defendants confirmed that Fell had accessed his email account while at Pure Power (Schapp decl. Exhibit B, transcript, pp. 26-27).

34. The colloquy before this Court also does not support their position. At page 12 of the transcript (Schnapp decl., Exhibit F), I stated that Pure Power had an employee policy against using e-mail on the firm computer. That policy was ignored and defendants used the computer, resulting in the recovery of the emails. It was stated that other e-mails were recovered because the defendants actually gave an employee their password. Accordingly, we explained that in addition to verbally sharing their password with a Pure Power employee, they actually left the password on the Pure Power computer.

35. Although I was mistaken as to certain details (Fell used the computer at the front desk; it was Belliard who accessed Brenner's office computer; I indicated that the emails were housed on the computer, it was the username and password housed on the computer which gave access to Fell's emails).

36. The primary basis for the recovery of e-mails from the Hotmail account had been because Fell used the Pure Power computer and ended up storing his password and username. Defendants' contention that the sole source for the e-mails had been verbal disclosure by Fell is contrary to the specific statements in both transcripts.

37. Another misdirection by defendants is Fell's claim that the emails in issue had not been sent from plaintiffs' computers (Fell aff.in support of defendants' motion to preclude, par. 5-6). As with many of defendants' claims, the statements must be carefully parsed to avoid the misleading conclusion they hope will be drawn. As worded, it suggests that Fell is denying use of the Pure Power computers at all. However, apart from the fact that he must have if his email and username were saved in the computer, and, apart from the Lorenzi affidavit in opposition to the motion to preclude emails, explaining that Fell often used the computer when Brenner was not there, counsel for

defendants at the State Court proceedings conceded that Fell had in fact used the company computer for personal use (Schapp decl. Exhibit B, Transcript, pp. 26-27).

38.    While Fell claims he never sent the emails in issue from Pure Power's computer (an issue to be resolved after full production of his email account, as well as the accounts of Belliard, Lee, Baynard, Lawrence Buterman and the Fox firm, the latter subject to issues of privilege presently before Magistrate Judge Katz), what is critical for the moment is that Fell does not deny his access of his email through Pure Power computers, Lorenzi's affidavit in opposition to the motion to preclude emails explains his frequent use of the computers and Belliard does not provide any affidavit at all.

## THE SILENCE OF BELLIARD, LEE AND BAYNARD

39.    One would expect an affidavit from Belliard to refute the allegations of theft, trespass and spoliation of evidence if the allegations were untrue. No affidavit has been submitted and the allegations stand unrefuted.

40.    Similarly one would expect affidavits refuting the allegations of breach of fiduciary duty and corporate espionage, using Lee and Baynard, during the employment of Fell and Belliard, to accumulate "friends". These allegations stand unrefuted as well.

41.    Nor do defendants address the authority provided to the court regarding the appropriate penalties should this court conclude that misconduct occurred.

42.    To the extent that defendants complain that Pure Power is illegally utilizing the images of defendants in their advertisement and web site, the issues are irrelevant to the instant application but even if they were germane, as set forth in Brenner's affidavit, only backs appear on the bus advertisement and the website photos were part of the intellectual property assigned by

defendants in their employee agreement.

43.   As set forth in the accompanying memorandum of law, plaintiffs' motion for injunctive relief, precluding defendants from imitating plaintiffs' style and method of operations, including the use of military raining and an indoor obstacle-confidence course, and further precluding the solicitation or servicing of Pure Power clients, should be granted.


Dated: New York, New York
      July 11, 2008                    S/HERZFE 25%tenog
                                              RICHARD L. HERZFELD (0642)