UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PURE POWER BOOT CAMP, INC.
PURE POWER BOOT CAMP FRANCHISING
CORPORATION, and PURE POWER BOOT
CAMP JERICHO INC.,

               Plaintiffs,

       - against –

WARRIOR FITNESS BOOT CAMP, LLC;
ALEXANDER KENNETH FELL a/k/a ALEX FELL,
Individually; RUBEN DARIO BELLIARD
a/k/a RUBEN BELLIARD, Individually;
JENNIFER J. LEE, Individually;
and NANCY BAYNARD, Individually,

              Defendants.

**ECF Case**
**Case No. 08-cv-4810 (JGK) (THK)**

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT IN ITS ENTIRETY AND/OR FOR SUMMARY JUDGMENT

---

Daniel A. Schnapp, Esq. (DS 3484)
Carolyn D. Richmond, Esq. (CR 0993)
Eli Z. Freedberg, Esq. (EF 6854)
**FOX ROTHSCHILD LLP**
100 Park Avenue, 15th Floor
New York, NY 10017
Tel: (212) 878-7900
Fax: (212) 692-0940

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………….....i, ii, iii, iv

PRELIMINARY STATEMENT………………………………………………..…1

PROCEDURAL HISTORY …………………………………………………….....3

STATEMENT OF FACTS…..………………………………………………….….3

    A.    Plaintiffs' Concept is Anything but Unique………………………..……...3

    B.    The Purported Agreement is Unenforceable……………………......…..…4

    C.    Plaintiffs Do Not Sufficiently Allege That there is A Likelihood of Consumer Confusion…………………………………………………...………...…….....5

    D.    Plaintiffs Do Not Allege That Baynard and Lee Owed Any Duties to Them…….…6

ARGUMENT…………………….………………………..…………………….....7

    POINT I………………………………….…………………….…...…......7

        ALL OF PLAINTIFFS' CLAIMS MUST BE DISMISSED WITH PREJUDICE…………………………………………….…….…...…......7

        A.    Plaintiffs Have Failed to State A Claim For Conversion…………7

        B.    Plaintiffs Have Failed to State A Claim For Unjust Enrichment………………………………………….……..…..9

        C.    Plaintiffs Have Failed to State A Claim For Theft of Trade Secrets, Theft of Trade Dress, and Theft by Deception……….....9

        D.    Plaintiffs Have Failed to State A Claim For Civil Conspiracy......11

        E.    Plaintiffs Have Failed to State A Claim For Tortious Inference with Prospective Economic Advantage...…..………..11

        F.    Plaintiffs Have Failed to State A Claim For Unfair Competition or NY GBL § 360……………...……...………..12

        G.    Plaintiffs Have Failed to State A Claim For Breach of Duty of Loyalty…………………………………….…..………..13

        H.    Plaintiffs Have Failed to State A Claim For Misappropriation of Confidential and Proprietary Information ...……..……...…..14

I.  Plaintiffs Have Failed to State A Claim For Tortious
    Inference with Contractual Relations……….………..……….…..15

J.  Plaintiffs Have Failed to State A Claim For Breach of
    Contract, Breach of Restrictive Covenant, Breach of
    Confidentiality and Non-Competition Agreement……..……….…15

K.  Plaintiffs Have Failed to State A Claim For Breach of Good
    Faith and Fair Dealing……………………………..…...……….17

L.  Plaintiffs Have Failed to State A Claim For Fraud and
    Misrepresentation…………………………………….…...……….17

M.  Plaintiffs Have Failed to State A Claim For Breach of
    Fiduciary Duty…………………………………………...……….19

N.  Plaintiffs Have Failed to State A Claim For Trade Dress
    Infringement, Violation of 15 U.S.C. § 1125 and Lanham
    Act § 43…………………………………………………...……….19

    1.  Plaintiffs' Purported Trade Dress is Functional…..…...…19

    2.  Plaintiffs Have Not Alleged Facts To Support A Claim
        That Their Trade Dress Acquired Secondary Meaning.....20

    3.  Plaintiffs Have Not Pled Facts That Demonstrate That
        There Will Be a Likelihood of Confusion…………….....21

POINT II…………………………………………...………………...……....21

    PLAINTIFFS HAVE FAILED TO STATE ANY CLAIMS AS TO LEE
    AND BAYNARD…………………………...………………...……....21

POINT III………………………………………….………………...……....24

    PLAINTIFFS HAVE FAILED TO STATE ANY CLAIMS AS TO
    WARRIOR………………………………………….………...……....24

POINT IV……………………………………….………………...……....24

    THE COURT MAY CONVERT THIS MOTION TO DISMISS TO A
    MOTION FOR SUMMARY JUDGMENT……………...……...……....24

CONCLUSION………………………………………….……….….……….....25

## TABLE OF AUTHORITIES

### CASES

*AD Rendon Communications, Inc. v. Lumina Americas, Inc.*, 2007 WL 2962591
at * 4 (S.D.N.Y. 2007) .........................................................................................7, 8

*Alter v. Bogoricin*, 1997 WL 691332, at *7-8 (S.D.N.Y. 1997).....................................22

*Abercrombie v. Andrews College*, 438 F.Supp.2d 243, 275 (S.D.N.Y. 2006) ...............23

*Am. Inst. of Chem. Eng'rs v. Reber-Friel Co.*, 682 F.2d 382, 388 (2d. Cir. 1982)............15

*Apace Communications, Ltd. v. Burke*, 522 F.Supp.2d 509. 520 (W.D.N.Y. 2007) ........19

*Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 868 (8th Cir. 1994) ...........................20

*Ashland Mgmt. v. Janien*, 82 N.Y.2d 395, 407 (1993) .....................................................14

*Atlantis Information Technology, GmbH v. CA, Inc.*, 485 F.Supp.2d 224, 230
(E.D.N.Y. 2007).......................................................................................................17

*Bartell v. Onbank, Onbank & Trust Co.*, 1996 WL 421189, at *5 n.9 (N.D.N.Y.
1996) ...........................................................................................................................8

*Berman v. Sugo LLC*, 2008 WL 2414052, at *10-11 (S.D.N.Y. 2008).............................7

*Blue Tree Hotels Inc. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide,
Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) ...................................................................25

*Briarpatch Ltd. L.P. v. Geisler Roberdeau, Inc.*, 148 F.Supp.2d 321, 328-329
(S.D.N.Y. 2001).........................................................................................................8

*Bridgestone/Firestone v. Recovery Credit Servs.*. 98 F.3d 13, 20 (2d Cir. 1996) ............18

*Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1381 (11th
Cir. 1997) .................................................................................................................18

*Bus. Networks of New York, Inc. v. Complete Nework Solutions, Inc.*, 265 A.D.2d
194, 696 N.Y.S.2d 433, 435 (1st Dep't 1999).............................................................10

*Congress Fin. Corp. v. John Morrell & Co.*, F. Supp. 459, 469 (S.D.N.Y. 1992) ...........17

*Delta Filter Corp. v. Morin*, 108 A.D.2d 991, 993, 485 N.Y.S.2d 143, 145 (3d
Dep't 1985)..............................................................................................................14

NY1 298504v1 07/16/08

*Diduck v. Kaszycki & Sons Contractors, Inc.*, 774 F.Supp. 802 (S.D.N.Y. 1991), *rev'd on other grounds*..........................................................................................11

*Duraco Prods Inc. v. Joy Plastics Enter. Ltd.*, 40 F.3d 1431 (3d Cir. 1994) ..................20

*ENV Servs., Inc. v. Alesia,* 10 Misc.3d 1054(A), at *5, 809 N.Y.S.2d 481 (Sup.Ct. Nassau Co. 2005)...........................................................................................16

*Ferreira v. Unirubio Music Publishing*, 2002 WL 1303112, *1 (S.D.N.Y. 2002) .............7

*Gebba v. Toronto-Dominion Bank.* 306 A.D.2d 37, 762 N.Y.S.2d 38 (1st Dep't 2003) .............................................................................................................12

*Giant Supply Corp. v. City of New York*, 248 A.D.2d 231, 235, 670 N.Y.S.2d 29 (1st Dep't 1998)...........................................................................................9

*Global Network Communications v. City of New York*, 458 F.3d 150 (2d Cir. 2006) ...........................................................................................................24

*Harper & Row Publishers, Inc. v. Nation Enterprises*, 723 F.2d 195, 201 (2d Cir. 1983) *rev'd on other grounds,* 471 U.S. 539 (1985)......................................................8

*Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002) .................17

*Heartland Sec. Corp. v. Gerstenblatt,* 2000 WL 303274 (S.D.N.Y. 2000) .....................15

*Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 38 (S.D.N.Y. 1992) .................................................17

*Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413 (1996) .....................................15

*Laureyssens v. Idea Group Inc..* 964 F.2d 131, 136 (2d Cir. 1992) .................................21

*Lockheed Martin Corp. v. Aatlas Commerce, Inc.*, 283 A.D.2d 801, 804, 725 N.Y.S.2d 722, 725-726 (3d Dep't 2001) ...........................................................10, 14

*Long Island Univ. v. Grucci For Congress, Inc.*, 10 A.D.3d 412, 781 N.Y.S.2d 148 (2d Dep't 2004) ...........................................................................................12

*Malletier v. Dooney & Bourke, Inc.*, 2008 WL 2245814 (S.D.N.Y. 2008).......................13

*Marketplace LaGuardia Ltd. Partnership v. Harkey Enterprises, Inc.*, 2008 WL 905188, at *6 (E.D.N.Y. 2008)..............................................................................9

*Midsummer Financial Products, Inc. v. Rapid Filing Services LLC*, 14 Misc.3d 1209(A), at *2, 836 N.Y.S.2d 486 (Sup. Ct, N.Y. Co., 2006)....................................14

ii

*Mosello v. Ali, Inc.*, 190 B.R. 165, 168 (Bankr. S.D.N.Y. 1995) .........................................7

*Peter Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 452 N.Y.S.2d 599
(1st Dep't 1982) ....................................................................................................8

*Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492. 495 (2d Cir.), *cert. denied*,
368 U.S. 820 (1961)............................................................................................21

*Primo Enters. v. Bachner*, 148 A.D.2d 350, 351, 59 N.Y.S.2d 320, 321 (1st Dep't
1989) .....................................................................................................................16

*Priolo Communications, Inc. v. MCI Telecommunications Corp.*, 248 A.D.2d
453, 669 N.Y.S.2d 376 (2d Dep't 1998) ..............................................................8

*Prudential Secs., Inc. v. Plunkett*, 8 F.Supp.2d 514, 519 (E.D. Va. 1998)........................16

*Schneider Leasing Plus, Inc. v. Stallone*, 172 A.D.2d 739, 741, 569 N.Y.S.2d 126
(2d Dep't 1991) ...................................................................................................13

*Scott, Stackrow & Co. v. Skavina*, 9 A.D.3d 805, 806, 780 N.Y.S.2d 675, 676 (3d
Dep't 2004)..........................................................................................................16

*Shared Communication Services of ESR, Inc. v. Goldman Sachs & Co.*, 23
A.D.3d 162, 162, 803 N.Y.S.2d 512, 513 (1st Dep't 2006) .............................12

*Silipos, Inc. v. Bickel*, 2006 WL 2265055, at * 6 (S.D.N.Y. 2006) ...................................16

*Snyder v. Sony Music Entertainment. Inc.*, 252 A.D.2d 294, 300, 684 N.Y.S.2d
235 (1st Dep't 1999)...........................................................................................11

*Telecom Intl. Am., Ltd., v. AT&T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001) ....................18

*Todd Chemical Co. v. Di Stefano,* 30 A.D.2d 879, 292 N.Y.S.2d 811 (2d Dep't
1968)....................................................................................................................16

*Traffix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32 (2001) ......................19

*Two Pesos. Inc. v. Taco Cabana*, Inc. 505 U.S. 763, 769 (1992) .....................................19

*Wiener v. Lazard Freres & Co.*, 241 A.D.2d 114, 120, 672 N.Y.S.2d 8. 15 (1st
Dep't 1998)......................................................................................................9, 14

*Wurtsbaugh v. Banc of America Securities LLC*, 2006 WL 1683416, at *7
(S.D.N.Y. 2006) ..................................................................................................18

iii

## STATUTES

15 U.S.C. § 1052(f) ...............................................................................................21

15 U.S.C. § 1125...................................................................................................19

FRCP 9(b) .........................................................................................................17, 19

FRCP 12(b)(6) ...................................................................................................24

FRCP 12(d) .........................................................................................................24

Lanham Act § 43 .................................................................................................19

NY GBL § 360 ................................................................................................12, 23

Defendants hereby move to dismiss Plaintiffs' Complaint (the "Complaint") in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") and/or for summary judgment pursuant to FRCP 12(d).

## PRELIMINARY STATEMENT

Plaintiffs are operators of a "boot camp" style gymnasium. They have commenced this action in an attempt to stifle ordinary and lawful competition and to retaliate against two of their former at-will employees who have started their own gym.

In their relentless attempt to close Defendants' business (either by Court Order or by forcing the expenditure of hundreds of thousands of dollars in legal fees), Plaintiffs have filed a Complaint that fails to set forth cognizable causes of action under federal or state law.

For example, Plaintiffs allege that they own a proprietary right in the concept of indoor obstacle courses and boot camp training techniques. Plaintiffs make this extraordinary allegation despite the fact that Plaintiffs simultaneously admit that they copied their allegedly unique concept, design, and layout directly from the United States military. Plaintiffs also do not dispute that the concept of boot camp training regimens is one that many gyms across New York. and the United States, have adopted. The icing on the cake. however, is that Plaintiffs assert a proprietary right to indoor obstacle courses and boot camp training regimens even though Plaintiffs readily concede elsewhere that their application to register their purported trade dress was rejected by the United States Trademark Office.

Plaintiffs also allege in their Complaint that *all* of the Defendants were contractually prohibited from obtaining any job in the fitness industry, anywhere in the world, for a period of ten years following their departure from Plaintiffs' business. At the same time, Plaintiffs allege that only Defendants Fell and Belliard have signed the purported restrictive covenant (the

"Purported Agreement"). Indeed, three of the defendants, Lee, Baynard, and Warrior, could not have been subject to such an agreement because they never worked for Plaintiffs.[1]

At a minimum, this requires the dismissal of all claims against all of the Defendants other than Fell for any cause of action related to the Purported Agreement.

Even assuming that Belliard and Fell did sign the Purported Agreement, the terms of the alleged restrictions are so overly broad, so incredibly burdensome, and so unreasonable that even *Plaintiffs* admit that the Purported Agreement is unenforceable. Moreover, Justice Freedman, who presided over this Action in the New York State Court. prior to the removal to this Court, opined that the overbroad terms of the Purported Agreement rendered it unenforceable.

Plaintiffs have also not alleged any facts to support the proposition that this alleged restrictive covenant with its breadth, scope and magnitude, is necessary. Nor have Plaintiffs supported their allegation that they maintained underlying trade secrets requiring the protection of a restrictive covenant with facts sufficient to identify those trade secrets.

Ultimately, Plaintiffs' meritless Complaint mirrors their unethical and sanctionable conduct prior to and during the pendency of this action. Plaintiffs have hacked into Defendants' personal and corporate email accounts with the intent to steal private, confidential, and privileged communications. Plaintiffs have broken into Defendants' gym and trespassed onto Defendants' property. Plaintiffs are also illegally misappropriating the images of the individual Defendants in their paid advertisements and on their website. These actions demonstrate that Plaintiffs' goal is not to protect any of their purported interests, but simply to extinguish any perceived competition and to vanquish their former employees--no matter the costs or consequences.

---

[1] The only Purported Agreement that Plaintiffs did in fact produce, allegedly signed by Fell, is a forgery.

Thus, as we show below, Plaintiffs' Complaint must not only be dismissed in its entirety since it fails to state any cause of action, but this Motion should be converted to one under FRCP 12(d), and Plaintiffs' case should be summarily disposed of.

## PROCEDURAL HISTORY

Plaintiffs commenced their action in the Supreme Court, State of New York, County of New York (the "New York Court") by filing a summons and Complaint on May 5, 2008. At the same time, Plaintiffs requested a wide-ranging 11-point temporary restraining order and preliminary injunction.

On May 6, 2008, the New York Court struck half of the proposed TRO. After oral argument two days later, the New York Court determined that the Plaintiffs' alleged non-compete clause was unenforceable as drafted and then dissolved the TRO in its entirety. *See* Declaration of Daniel A. Schnapp, dated July 15, 2008, ("Schnapp Decl.") ¶ 4. During the same oral argument, Plaintiffs' attorney conceded that Plaintiffs could not stop Defendants from operating a boot-camp. Schnapp Decl., ¶ 5. The New York Court refused to restrain Defendants from opening their business. Subsequently, Defendants removed this action to this Court. Schnapp Decl. ¶ 7.

## STATEMENT OF FACTS[2]

### A.    Plaintiffs' Concept is Anything but Unique

Plaintiffs operate gyms that are capitalizing on the popular fad of military style, boot camp training techniques. As Plaintiffs repeatedly admit, their gyms are modeled after United States military training facilities, and their gyms, like the military facilities they resemble, come complete with an obstacle courses and drill instructors. In particular, Plaintiffs' owner, Lauren

---

[2] A copy of the Complaint is attached as Exhibit "A" to the Schnapp Decl.

Brenner ("Brenner"), states that she visited Fort Knox and copied the layout and design of the United States' military's boot camps in designing Pure Power. *See* Schnapp Decl., ¶ 10, Ex. "D" at ¶ 11.[3]

Although Brenner's gyms closely resemble military facilities, she, unlike Defendants Fell and Belliard, never actually served in the armed forces. Rather, in order to preserve the "authenticity" of her facility, she only hired actual military personnel who were expected to train her customers as they themselves had been trained in boot camps. *See* Complaint, ¶ 20.

**B.    The Purported Agreement is Unenforceable**

Brenner hired Belliard in 2004 and Fell in 2005. *See* Complaint, ¶ 36-37. They both worked for Plaintiffs as "Drill Instructors." Fell and Belliard were at-will employees and could have been fired, or could have quit, at any time. *See* Complaint, ¶¶ 81-93.

Plaintiffs allege that all of their employees were required to sign the Purported Agreement. *See* Complaint, ¶ 50. Plaintiffs have only produced a single Purported Agreement (despite their voluminous filings) bearing a forged signature allegedly from Alex Fell. Plaintiffs' failure to produce more then this single Purported Agreement should, by itself, mandate the dismissal of the Complaint against all Defendants, except Fell, for any cause of action arising out of the Purported Agreement.

In any event, according to Plaintiffs, the Purported Agreement required employees to not disclose any "confidential or commercially sensitive information" that they learned during their employment. *See* Complaint, ¶ 165. The Purported Agreement, however, fails to define what information is to be considered confidential. Neither the Purported Agreement, the Complaint, nor Plaintiffs, have provided a basis to support the claim that any of these documents or ideas

---

[3] Future references to Lauren Brenner's affidavit will be referenced by "Brenner Aff." followed by reference to the corresponding paragraph.

were confidential or secret in the first place.[4]  In fact, much of this information is publicly available, distributed to prospective clients, or easily ascertainable simply by walking into Plaintiffs' gyms.  Brenner herself has invited hundreds of her clients to view these documents in her office.  Schnapp Decl. at ¶ 13.  These documents have also been submitted to this Court without first being placed under seal.  Schnapp Decl. at ¶ 12.

On its face, the Purported Agreement would have prohibited anyone who signed it from disclosing the names of Plaintiffs' physical trainers to third parties even though that information was discoverable simply by entering Plaintiffs' gym.  It would also prohibit the disclosure of Plaintiffs' rates to third parties even though that was discoverable to any person who approached Plaintiffs' front desk seeking membership information.

Additionally, the Purported Agreement forbids post-termination employment anywhere on Earth, in any job in the fitness industry, for a period of ten years.  *See* Complaint, ¶ 167.  At least Plaintiffs have admitted that the Purported Agreement is unenforceable.

**C.    Plaintiffs Do Not Sufficiently Allege That there is A Likelihood of Consumer Confusion**

Sometime in late 2007, Belliard and Fell, both former United States Marines, began making plans to open their own gym that would incorporate their military training and experiences.  *See* Complaint, ¶ 69.  Plaintiffs do not allege that any of this planning occurred while Fell and Belliard were actually working for Plaintiffs or teaching Plaintiffs' classes; on the contrary, Plaintiffs admit that Belliard was working diligently for Plaintiffs and that Belliard was such a productive and loyal employee that Brenner offered him a promotion.  *See* Complaint, ¶ 68.

Plaintiffs make a conclusory allegation that Defendants' gym resembles Plaintiff's gyms

---

[4] Although it is not clear, apparently Plaintiffs believe that their publicly distributed brochures, operating plans,

and that consumers are likely to join Defendants' gym under the mistaken belief that it is operated by Plaintiffs. *See* Complaint. ¶ 141. Yet, Plaintiffs utterly fail to provide any requisite detail concerning Defendants' gym that can support such a claim. *See* Complaint. ¶ 16.

Indeed, the entirety of their conclusory allegations concerning the similarity of the services is as follows:

> In comparing the Defendants' facility and Pure Power's facility, it is obvious that the Defendants have misappropriated Pure Power's trade secrets and Trade Dress. It is clear on its face.

*See* Complaint, ¶ 110.

In addition to failing to properly allege that Defendants' gym resembles Plaintiffs' gym, Plaintiffs could not even allege that their own gyms look alike or that they maintain a consistent brand identity. Plaintiffs currently operate two gyms, one in Manhattan and the other in Jericho, New York. There are many fundamental differences in appearance between Plaintiffs' two locations that counsel against a finding of brand recognition by consumers. *See* Complaint. ¶¶ 71-72.[5]

**D.    Plaintiffs Do Not Allege That Baynard and Lee Owed Any Duties to Them**

Defendants Baynard and Lee are former members of Plaintiffs' gym. *See* Complaint, ¶ 99. Plaintiffs do not allege that either Baynard or Lee were ever employed by Plaintiffs or that they ever owed any special duties to Plaintiffs. Plaintiffs do not allege that Baynard or Lee entered into any contract or agreement, other than their membership agreements, with Plaintiffs. As a result, Plaintiffs have resorted to scandalizing and disparaging Baynard and Lee.

For example, Plaintiffs allege that while Baynard and Lee were members of Plaintiffs' gym, they began romantic relationships with Belliard and Fell – but fail to explain how this

---

manuals, and pricing information constitute trade secrets.
[5] Defendants have fully briefed this issue on their opposition to Plaintiffs' Motion for a Preliminary Injunction.

6

alleged relationship might relate to any of the claims asserted against them. *See* Complaint, ¶¶ 47, 63. Similarly, Plaintiffs further allege that Brenner helped Baynard find an apartment. *See* Complaint, ¶¶ 54-55. We can only be left to wonder what this has to do with anything.

## ARGUMENT

## POINT I

## ALL OF PLAINTIFFS' CLAIMS MUST BE DISMISSED WITH PREJUDICE

This Court need accept only well-pleaded allegations and not conclusory allegations or "sweeping and unwarranted averments of fact." *Mosello v. Ali, Inc.*, 190 B.R. 165, 168 (Bankr. S.D.N.Y. 1995). "'[B]ald assertions and conclusions of law will not suffice to state a claim.'" *Ferreira v. Unirubio Music Publishing*, 2002 WL 1303112, at *1 (S.D.N.Y. 2002).

Here, Plaintiffs' own allegations and exhibits show that there is no basis for the challenged claims.

**A.      Plaintiffs Have Failed to State A Claim For Conversion**

Conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights, which includes a denial or violation of the owner's dominion, rights, or possession over the owner's property. *AD Rendon Communications, Inc. v. Lumina Americas, Inc.*, 2007 WL 2962591 at * 4 (S.D.N.Y. 2007).

Here, Plaintiffs have failed to state a claim for conversion for two reasons. First, Plaintiffs have failed to allege that any of the Defendants exercised dominion over property to the exclusion of Plaintiffs' rights. *See Berman v. Sugo LLC*, 2008 WL 2414052, at *10-11 (S.D.N.Y. 2008) (dismissing counterclaim of conversion for failure to state a claim because possession was not to exclusion of owner of property).

Plaintiffs alleged that Fell and Belliard converted proprietary information including client lists and business and corporate documents; but Plaintiffs never alleged that Defendants took the

only copies of those documents. *See* Complaint ¶ 115. Thus, Plaintiffs have failed to allege that Defendants' acts excluded them from use of the property. *See e.g. Harper & Row Publishers, Inc. v. Nation Enterprises*, 723 F.2d 195, 201 (2d Cir. 1983) (merely removing copies of documents, with or without permission, for a short time, copying parts of it, especially where the plaintiffs maintain originals, constitutes far too insubstantial an interference with property rights to demonstrate conversion) *rev'd on other grounds*, 471 U.S. 539 (1985); *Bartell v. Onbank, Onbank & Trust Co.*, 1996 WL 421189, at *5 n.9 (N.D.N.Y. 1996) (holding that the Court would have reversed conversion claims, had they not been withdrawn, because temporary interference with property rights will not support the exclusion element of a claim for conversion). Indeed, any alleged copies of Plaintiffs' documents have been returned to Plaintiffs long ago. Schnapp Decl. ¶ 6.

Plaintiffs' claim for conversion must also fail because it is duplicative of their breach of contract claim. *See AD Rendon*, 2007 WL, 4; *Briarpatch Ltd. L.P. v. Geisler Roberdeau, Inc.*, 148 F.Supp.2d 321, 328-329 (S.D.N.Y. 2001) (refusing to allow plaintiff to amend Complaint to add conversion claim because the remedy sought, damages for failure to produce certain goods, was identical in both the conversion and breach of contract claims); *see also Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 884, 452 N.Y.S.2d 599 (1st Dep't 1982).

Here, Plaintiffs seek damages and injunctive relied based on Defendants' alleged breach of the Purported Agreement. In fact, the Plaintiffs allege that the converted information is of "confidential, secret and proprietary information" -- exactly what Plaintiffs allege the Purported Agreement is supposed to protect. *See* Complaint ¶ 115.

In addition, Plaintiffs seek identical remedies for the conversion and breach of contract claims. Therefore, for this reason as well, the conversion claim must be dismissed. *Priolo*

8

*Communications, Inc. v. MCI Telecommunications Corp.*, 248 A.D.2d 453, 457. 669 N.Y.S.2d 376 (2d Dep't 1998).

**B.    Plaintiffs Have Failed to State A Claim For Unjust Enrichment**

The elements of an unjust enrichment claim are: (1) the defendant was enriched: (2) such enrichment was at the expense of the plaintiff; and (3) the circumstances were such that in equity and good conscience the defendant should make restitution. *Marketplace LaGuardia Ltd. Partnership v. Harkey Enterprises, Inc.*, 2008 WL 905188, at *6 (E.D.N.Y. 2008).

Here, Plaintiffs have failed to state a claim for unjust enrichment because they have failed to allege both that Defendants benefited and that this benefit arrived at Plaintiffs' expense. *See Id.* Plaintiffs have merely alleged that Defendants used their client lists, business and corporate documents, and trade secrets, but have not alleged that this purported use resulted in Defendants having obtaining any profit or any customers.    Additionally, Plaintiffs have not identified specific customers who terminated their relationship with the Plaintiffs to patronize Defendants' gym. *Giant Supply Corp. v. City of New York*, 248 A.D.2d 231, 235, 670 N.Y.S.2d 29 (1st Dep't 1998) (Complaint must be dismissed where plaintiff fails to allege that defendant's benefit came at plaintiff's expense).    Additionally, this claim must be dismissed because Plaintiffs allege the existence of available contract.

**C.    Plaintiffs Have Failed to State A Claim For Theft of Trade Secrets, Theft of Trade Dress, and Theft by Deception**

Trade secrets are defined as "any formula, pattern, device or compilation of information which is used in one's business and gives him an opportunity to obtain an advantage over competitors who do not know how to use it." *Wiener v. Lazard Freres & Co.*, 241 A.D.2d 114, 123, 72 N.Y.S.2d 8, 15 (1st Dep't 1998).    Information that is generally known to the public may not be a trade secret even if it could be acquired. *Id.*, at 124.

9

To make a showing that proprietary information constitutes a trade secret, a plaintiff must plead: (1) the extent to which the information is known outside the business; (2) the extent to which the information is known to employees and others involved in the business; (3) the extent that measures are taken to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of money or effort expended in developing the information; and, (6) the ease or difficulty with which the information could properly be acquired or duplicated. *Id.*

Here, Plaintiffs' claim must fail because Plaintiffs do not plead that: (1) their customer lists or business/corporate documents are not known outside of their business, (2) the information is dispersed on a need to know basis within their company, (3) that they expended money and effort in developing their corporate documents and client lists, and (4) that the information cannot be duplicated.

Merely listing categories of information, which is all that Plaintiffs do, is not sufficient to establish a claim theft of trade secrets. *See e.g., Lockheed Martin Corp. v. Aatlas Commerce, Inc.*, 283 A.D.2d 801, 804, 725 N.Y.S.2d 722, 725-726 (3d Dep't 2001) (dismissing Complaint); *Bus. Networks of New York, Inc. v. Complete Nework Solutions, Inc.*, 265 A.D.2d 194, 195, 696 N.Y.S.2d 433, 435 (1st Dep't 1999).

Indeed, belying the notion that Plaintiffs took steps to protect what it now deems so proprietary is the fact that Plaintiffs have failed to: (1) allege that they have sought the enforcement of their restrictive covenants against any other employees, (2) allege how their "customer lists" can be confidential if every employee has met all of Plaintiffs' customers and have had the opportunity to establish personal relationships with Plaintiffs' customers, (3) plausibly allege how their trade dress is secret if anyone who enters their gyms can see their

purported trade dress, (4) identify their business/confidential documents, and (5) identify the measures taken to safeguard these documents.

**D.    Plaintiffs Have Failed to State A Claim For Civil Conspiracy**

New York does not recognize civil conspiracy as an independent tort, but it can be tied to an underlying tort.  When there is an underlying tort, elements of civil conspiracy are: (1) corrupt agreement between two or more persons; (2) an overt act; (3) their intentional participation in furtherance of plan or purpose; and (4) resulting damages.  To state a claim for conspiracy, however, a plaintiff is required to plead more than just conclusory allegations of conspiracy or a common purpose against a non-actor, who must have allegedly engaged in some "independent culpable behavior."  In other words, in order for the civil conspiracy claim to survive a Motion to Dismiss, Plaintiffs must assert specific allegations, including the times, facts, and circumstances of the alleged conspiracy. *Diduck v. Kaszycki & Sons Contractors, Inc.*, 774  F.Supp. 802 (S.D.N.Y. 1991), *rev'd on other grounds.*

Here, Plaintiffs' Complaint is utterly devoid of the details required to sustain a claim for civil conspiracy.  Nowhere do Plaintiffs allege where or when Defendants planned or effectuated their alleged scheme undermine Plaintiffs' business.  Plaintiffs have also failed to adequately describe the damages suffered as a result of the alleged conspiracy.  Lastly, to the extent that Plaintiffs have failed to properly allege an existing tort, this claims must be dismissed.

**E.    Plaintiffs Have Failed to State A Claim For Tortious Interference with Prospective Economic Advantage**

Plaintiffs' fifth cause of action alleging tortious interference with prospective economic advantage must be dismissed.  To establish such a claim, Plaintiffs must allege that, through Defendants' intentional and wrongful acts, identified third parties were prevented from entering into a business relationship with Plaintiffs.  *Snyder v. Sony Music Entertainment, Inc.*, 252

11

A.D.2d 294, 300, 684 N.Y.S.2d 235 (1st Dep't 1999). Plaintiffs must also allege that, but for Defendants' wrongful interference, the contract would have been entered into. *Long Island Univ. v. Grucci For Congress, Inc.*, 10 A.D.3d 412, 781 N.Y.S.2d 148 (2d Dep't 2004).

Here, Plaintiffs have failed to satisfy a single element of this tort. Not only does the Complaint fail to specifically identify the third parties with whom Plaintiffs would have contracted or done business with, but it also fails to allege the wrongful means that Defendants allegedly employed to prevent third parties from contracting or doing business with Plaintiffs. At worst, Defendants allegedly interfered to help their new business grow -- but such allegations amount to no more than an intent to enhances one's own economic interest. Such economic motivation does not amount to the intentional tortious interference required. *See Shared Communication Services of ESR. Inc. v. Goldman Sachs & Co.*, 23 A.D.3d 162, 162, 803 N.Y.S.2d 512, 513 (1st Dep't 2006).

Also, Plaintiffs allege that "Plaintiffs had every reason to expect many of these existing relationships to grow and new clients to be obtained," and that "Defendants' intentional, malicious interference [was] without justification or excuse." *See* Complaint ¶¶ 132, 134. Without specifically identifying these contracts, this allegation is insufficient to support a claim for interference with prospective economic advantage. *See Gebba v. Toronto-Dominion Bank*, 306 A.D.2d 37, 762 N.Y.S.2d 38 (1st Dep't 2003) (dismissing Complaint for failure to plead that a specific contract would have been entered into but for defendant's interference).

## F.    Plaintiffs Have Failed to State A Claim For Unfair Competition or NY GBL § 360

The essence of an unfair competition claim under New York law is the bad faith misappropriation by one business of another's expenditures of labors, skill and money in a way that is likely to cause confusion or to deceive purchasers as to the origin of the goods. Thus, in order to prevail on an unfair competition claim, a plaintiff must: (1) prove the existence of actual

12

confusion, if seeking damages, or a likelihood of confusion in order to obtain equitable relief, and (2) show that Defendant acted in bad faith. *See, e.g. Malletier v. Dooney & Bourke, Inc,.* 2008 WL 2245814 (S.D.N.Y. 2008).

As set forth above, Plaintiffs' Complaint is thoroughly devoid of any description of the layout or design of the Defendants' gym. Thus, Plaintiffs do not attempt to allege that there is a likelihood of confusion, or that there has been any actual confusion, by consumers as to the source of Defendants' gym. Plaintiffs' Complaint fails to allege the existence of any market studies or surveys showing that consumers associate indoor obstacle courses and indoor boot camps with Plaintiffs own product. Thus, Plaintiffs have failed to allege a likelihood of confusion or actual confusion and their claims fail.

## G.    Plaintiffs Have Failed to State A Claim For Breach of Duty of Loyalty

Plaintiffs allege that Fell and Belliard breached fiduciary duties owed to them because they began forming a competing business while employed by Plaintiffs. Former at-will employees do not breach duties of loyalty owed to their employer, however, by setting up competing business, provided that the employee does not improperly use the employer's time, facilities or trade secrets. *See e.g., Schneider Leasing Plus, Inc. v. Stallone,* 172 A.D.2d 739, 741, 569 N.Y.S.2d 126 (2d Dep't 1991) ("An employee may create a competing business prior to leaving his employer without breaching any fiduciary duty unless he makes improper use of the employer's time, facilities or proprietary secrets in doing so.").

There are no allegations that Defendants actually worked on their competing business while they were "on the clock" at Plaintiffs' business. Also as established in sections C *supra,* and H and J *infra,* Plaintiffs have not alleged facts that can establish their claim that they possessed confidential information that was capable of misappropriation.

13

H.    **Plaintiffs Have Failed to State A Claim For Misappropriation of Confidential and Proprietary Information**

To succeed on a claim for misappropriation of confidential and proprietary information, or unfair competition based on the misappropriation of trade secrets, a plaintiff must allege facts supporting the assertion that it possessed and that the defendant actually exploited and stole proprietary, sensitive and valuable trade secrets. *See Ashland Mgmt. v. Janien*, 82 N.Y.2d 395, 407 (1993); *Wiener v. Lazard Freres & Co.*, 241 A.D.2d 114, 120, 672 N.Y.S.2d 8. 15 (1st Dep't 1998). Section C, *supra*, discusses the elements a plaintiff must allege in order to establish in the first instance that it maintained confidential and proprietary information *See e.g., Wiener*, 241 A.D.2d at 120. The most important factor in determining whether the information is a trade secret is whether the information was kept secret. *Delta Filter corp. v. Morin*, 108 A.D.2d 991, 993, 485 N.Y.S.2d 143, 145 (3d Dep't 1985).

Although Plaintiffs' Complaint alleges, albeit in the most conclusory of terms, that Defendants misappropriated proprietary information, nowhere does it set forth the facts to establish that any such information actually constituted *trade secrets*. Nor have Plaintiffs cited to any specific facts concerning measures taken by Plaintiffs to obtain the clients (in fact, Brenner alleged that she keeps her office door, where her trade secrets purportedly reside, unlock), the identification of employees at Pure Power had access to the client list, measures taken by Plaintiffs to guard the secrecy of the list, and whether Plaintiffs' competitors would value the list. *See e.g., Lockheed Martin Corp. v. Atlas Commerce Inc.*, 283 A.D.2d 801, 804, 725 N.Y.S.2d 722, 725-726 (3d Dep't 2001); *Midsummer Financial Products, Inc. v. Rapid Filing Services LLC*, 14 Misc.3d 1209(A), at *2, 836 N.Y.S.2d 486 (Sup. Ct, N.Y. Co., 2006) (features publicly exhibited cannot be trade secrets).

Plaintiffs also make the extraordinary claims that their brochures, business plans and

14

manuals are confidential and proprietary. These materials, which are distributed to the public cannot, as a matter of law, be proprietary. *Am. Inst. of Chem. Eng'rs v. Reber-Friel Co.*, 682 F.2d 382, 388 (2d. Cir. 1982). In addition, by publicly exhibiting her court filings, she has affirmatively waived any right to claim the existence of trade secrets.

I.    **Plaintiffs Have Failed to State A Claim For Tortious Interference with Contractual Relations**

To survive a motion to dismiss for tortious interference with contract, a party must allege: (1) the existence of a valid and enforceable contract between plaintiff and a third party, (2) the defendant's knowledge of that contract, (3) the defendant's intentional interference with that contract, and (4) resulting breach and damages. *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 424 (1996) (Complaint that alleges mere legal conclusions without factual support is insufficient to sustain an action for tortious interference with contract).

Here, the Complaint fails to allege that Plaintiffs had any outstanding contracts with any identified third parties, which is a prerequisite for establishing a tortious interference with contract claim. Plaintiffs essentially ignore this requirement and merely allude to vague "ongoing and contractual relationships." *See* Complaint ¶ 152. Yet, neither a contract, the breach of any contract, nor even the nature of any alleged interference with a contract, is set forth in Plaintiffs' Complaint. These deficiencies are fatal to the claim and mandate dismissal.

J.    **Plaintiffs Have Failed to State A Claim For Breach of Contract, Breach of Restrictive Covenant, Breach of Confidentiality and Non-Competition Agreement**

Courts will dismiss Complaints alleging the existence of onerous, overboard and burdensome restrictive covenants. *Heartland Sec. Corp. v. Gerstenblatt*, 2000 WL 303274 (S.D.N.Y. 2000) (declining to "blue pencil" an overbroad restrictive covenant where Plaintiffs failed to allege that the purpose of the covenant was to protect a legitimate business interest).

Restrictive covenants that prohibit employees from obtaining employment in a vocation

15

of their choosing are disfavored under New York law and are only enforced to the extent necessary to protect the disclosure of any trade secrets. *See, e.g., Primo Enters. v. Bachner*, 148 A.D.2d 350, 351, 59 N.Y.S.2d 320, 321 (1st Dep't 1989).

Plaintiffs admit that the restrictive covenant in this case, which was drafted exclusively by Plaintiffs, prohibits competition throughout the world and for a ten-year period. These types of far-reaching provisions are invalid. *See, e.g., Todd Chemical Co. v. Di Stefano*, 30 A.D.2d 879, 292 N.Y.S.2d 811 (2d Dep't 1968) (restrictive covenant with a ten year term is unenforceable); *Silipos, Inc. v. Bickel*, 2006 WL 2265055, at * 6 (S.D.N.Y. 2006) (worldwide restrictions on competition are not reasonable).

Pure Power's restrictive covenant is also invalid because it improperly purports to prohibit Defendants from soliciting or providing services to clients who they know outside of their relationship with Pure Power. *See, e.g. Scott, Stackrow & Co. v. Skavina*, 9 A.D.3d 805, 806, 780 N.Y.S.2d 675, 676 (3d Dep't 2004). Additionally, Plaintiffs' restrictive covenant is overbroad because it purports to prohibit Defendants from maintaining relationships with clients that are loyal to Defendants and their personal training expertise. New York courts have repeatedly held that a former employee whose clients are loyal to him personally, rather to an employer, should not be enjoined from servicing those clients in a new business. *See e.g, ENV Servs., Inc. v. Alesia*, 10 Misc.3d 1054(A), at *5, 809 N.Y.S.2d 481 (Sup.Ct. Nassau Co. 2005).

Also, such covenants are enforceable only to the extent that they afford an employer demonstrably necessary protection against unfair competition stemming from the use or disclosure of trade secrets. *Prudential Secs., Inc. v. Plunkett*, 8 F.Supp.2d 514, 519 (E.D. Va. 1998). As discussed above, Plaintiffs have not alleged any facts supporting their contention that they possessed trade secrets.

**K.    Plaintiffs Have Failed to State A Claim For Breach of Good Faith and Fair Dealing**

Under New York Law, a claim for breach of an implied covenant of good faith and fair dealing does not provide a cause of action separate from a breach of contract claim. "[P]arties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *See e.g., Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002). Accordingly, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing, should be dismissed as duplicative. *See Atlantis Information Technology, GmbH v. CA, Inc.*, 485 F.Supp.2d 224, 230 (E.D.N.Y. 2007).

**L.    Plaintiffs Have Failed to State A Claim For Fraud and Misrepresentation**

The elements of fraud under New York law are a false representation, scienter, materiality, expectation of reliance, justifiable reliance, and damage. *Congress Fin. Corp. v. John Morrell & Co.*, 790 F.Supp. 459, 469 (S.D.N.Y. 1992).

When evaluating a claim of fraud, the Court must first look to whether the claim has been pled sufficiently under Rule 9(b) of the FRCP. Rule 9(b) provides, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity...." Therefore, "a Complaint must adequately specify the statements it claims were false and misleading, give particulars as to the respect in which Plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *See e.g., Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 38 (S.D.N.Y. 1992).

Here, Plaintiffs have failed to specifically identify each of Defendants' fraudulent statements or acts, or the time, place and manner of these acts. At best, Plaintiffs lump all Defendants together and characterize their behavior as fraudulent, without specifically describing what makes their actions fraudulent. Consequently, Plaintiffs' allegations of fraud are

17

inadequate. *See Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997).

Plaintiffs do allege that "Defendants posed as loyal employees," and claim fraud based upon a comment allegedly uttered by Belliard (an at-will employee), who allegedly told Brenner that "I am here 100%" after she fired Fell. *See* Complaint ¶¶ 197, 94. This statement cannot provide the basis for a fraud claim, however, because Plaintiffs cannot justifiably rely on a statement by an at-will employee that he will remain employed with Plaintiffs. *Wurtsbaugh v. Banc of America Securities LLC*, 2006 WL 1683416, at *7 (S.D.N.Y. 2006).

Plaintiffs' fraud claim must also be dismissed because a fraud claim will not lie under New York law if it arises "out of the same facts as plaintiff's breach of contract claim." *See Telecom Intl. Am., Ltd., v. AT&T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001). In order to succeed on a fraud claim arising from a breach of contract, a plaintiff must show: (1) "a legal duty separate from the duty to perform under the contract"; (2) "a fraudulent misrepresentation collateral or extraneous to the contract"; or (3) "special damages that are caused by the misrepresentation and unrecoverable as contract damages." *See Bridgestone/Firestone v. Recovery Credit Servs.*, 98 F.3d 13, 20 (2d Cir. 1996).

Here, Plaintiffs have not pointed to any separate legal duty to support both the fraud and the contract claims. Plaintiffs' allegations that Defendants allegedly formed a competing business and used Plaintiffs' trade dress are premised on Defendants' alleged failure to adhere to their purported contractual duties to refrain from competing against Plaintiffs or using their purportedly confidential information. Plaintiffs' fraud claim rest entirely on these same duties and, therefore, Plaintiffs' fraud claim must be dismissed for this reason as well.

18

**M.**     **Plaintiffs Have Failed to State A Claim For Breach of Fiduciary Duty**

Claims for breach of fiduciary duties that are premised on misrepresentations and fraudulent conduct, like the ones here, must meet the heightened pleading requirements of FRCP 9(b). *Apace Communications, Ltd. v. Burke*, 522 F.Supp.2d 509, 519 (W.D.N.Y. 2007) (dismissing Complaint). As set forth in Section L, *supra*, Plaintiffs have not specifically identified any specific statements that can be construed as a breach of any fiduciary duties.

**N.**     **Plaintiffs Have Failed to State A Claim For Trade Dress Infringement, Violation of 15 U.S.C. § 1125 and Lanham Act § 43**

To state a claim for trade dress infringement, the Plaintiff must establish that: (i) the trade dress is primarily non-functional; (ii) the trade dress is either inherently distinctive or has become distinctive because it has acquired secondary meaning; and (iii) there is a likelihood of confusion between the trade dresses at issue. *See Two Pesos, Inc. v. Taco Cabana*, Inc. 505 U.S. 763, 769 (1992).

**1.**     **Plaintiffs' Purported Trade Dress is Functional**

The Lanham Act does not protect functional trade dress because that would, in effect, create a perpetual patent at the expense of competition. *Traffix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32 (2001). A design feature is functional if it is not "merely an ornamental, incidental, or arbitrary aspect of the device," but rather is "essential to the use or purpose of the device or if it affects the cost or quality of the device." *Id.*

Here, Plaintiffs' "indoor obstacle course" is not entitled to trade dress protection because it is a functional design. Plaintiffs claim that their gyms feature an obstacle course containing hurdles, a series of walls to ascend and descend, a tire run, a barbed wire netting to crawl under, monkey bars, dip bars, rolling logs, a wrap-around climbing wall, a cargo net climb, bob-and-weave boxing ropes, a rope climb, a ramp with a tunnel to shoot through, and a rope swing over

19

a water pit. *See* Complaint ¶ 16. The gym also apparently has men's and women's tents in lieu of changing rooms and ceiling netting to enhance the boot-camp feel. *See* Complaint ¶ 14. This equipment, which is what Plaintiffs' claim is entitled to trade dress protection, is functional because it is necessary for Plaintiffs' patrons' use in their workouts.

### 2.    Plaintiffs Have Not Alleged Facts To Support A Claim That Their Trade Dress Acquired Secondary Meaning

Plaintiffs have not alleged facts to support a claim that their trade dress has acquired secondary meaning. To establish secondary meaning a plaintiff must allege that the trade dress has become so associated in the minds of consumers with the goods and services being offered for sale, that the trade dress actually serves to distinguish the source of the services from competitors. *See Aromatique, Inc. v. Gold Seal, Inc.,* 28 F.3d 863, 868 (8th Cir. 1994) (the mere method and style of doing business is not protectable, because it is ludicrous to suggest that in our free enterprise system, one producer and not another is permitted to take advantage of a marketing approach to enhance consumer reception of its product).

To demonstrate secondary meaning, courts have generally inquired into: (1) the trade dress owner's advertising expenditures, measured primarily with regard to those advertisements that reflect the trade dress in issue, (2) consumer surveys linking the trade dress to a particular single source, (3) sales volume, and (4) exclusive and continuous use of the trade dress in commerce for a period of five years. *Duraco Prods Inc. v. Joy Plastics Enter. Ltd.,* 40 F.3d 1431 (3d Cir. 1994).

Here, Plaintiffs have not pled that there is any evidence establishing that consumers associate the concept of indoor obstacle courses and military-style training with Plaintiffs. Plaintiffs have also not pled facts demonstrating that their sales volume is so large that consumers link the trade dress to a particular source.

20

In addition, Plaintiffs have not pled that they have used their trade dress exclusively and continuously for five years. In fact, Plaintiffs acknowledge that they have not, in fact, used the trade dress exclusively because they admit that the United States Military operates obstacle courses with boot camps. Many courts have held that failure to do so is evidence pointing strongly away from a finding of secondary meaning. *See e.g.*, 15 U.S.C. § 1052(f); *Laureyssens v. Idea Group Inc.*, 964 F.2d 131, 136 (2d Cir. 1992).

In fact, Plaintiffs, and their attorney *admit* in sworn testimony that it is impossible to establish secondary meaning without having exclusive use of trade dress for five years and that they cannot establish this element of trade dress protection. *See* Brenner Aff., ¶ 17; Douglass Aff. ¶ 7.

### 3.    Plaintiffs Have Not Pled Facts That Demonstrate That There Will Be a Likelihood of Confusion

In order to state a claim for trade dress infringement Plaintiffs must allege that there exists a likelihood of confusion between Plaintiffs' and Defendants' trade dress. *See Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820 (1961).

Here, Plaintiffs do not even attempt to describe Defendants' gym. Therefore, Plaintiffs have not satisfied their requirement to allege likelihood of confusion. Plaintiffs have also not alleged that any consumer has been actually confused as to the source of Defendants' gym.

Thus, all of Plaintiffs' causes of action must be dismissed.

## POINT II

## PLAINTIFFS HAVE FAILED TO STATE ANY CLAIMS AS TO LEE AND BAYNARD

Although Plaintiffs have alleged that Lee and Baynard are liable for each of the fourteen causes of action alleged in the Complaint, Plaintiffs have only included three allegations as against them.

21

First, Plaintiffs allege that Lee and Baynard began dating Fell and Belliard, respectively. *See* Complaint, ¶ 47. Plaintiffs also allege that Brenner helped Baynard find an apartment. *See* Complaint, ¶ 55. Finally, Plaintiffs allege that both Lee and Baynard attended classes at Plaintiffs' gyms in order to "befriend, manipulate and solicit as many of Pure Power's recruits as possible, and spread lies about Brenner and Pure Power, in order to entice Pure Power's recruits to leave Pure Power and sign up with Warrior Fitness." *See* Complaint, ¶ 99. Plaintiffs fail to identify, however, what exactly Baynard and Lee said, to whom these alleged statements were made, when these statements were made, and whether Baynard and Lee were actually successful in their alleged efforts to recruit clients to Defendants' gym. None of these allegations, therefore, can support any of the claims against Baynard and Lee, and all claims against these Defendants must be dismissed with prejudice.

As to the first allegation for conversion, Plaintiffs have not alleged that Baynard and Lee were ever in possession of any tangible item belonging to Plaintiffs, to their exclusion.

As to the second allegation for unjust enrichment and the third allegation for theft of trade secrets, theft of trade dress, and theft by deception, Plaintiffs have not alleged that Baynard and Lee were enriched in any way at the expense of Plaintiffs or that Baynard and Lee were ever in possession of Plaintiffs' intellectual property, client lists or trade secrets.

As to the fourth allegation for civil conspiracy, and twelfth allegation for fraud and misrepresentation, Plaintiffs have failed to satisfy the heightened pleading standard and have failed to allege specific facts demonstrating that Lee and Baynard engaged in a corrupt agreement, that they took tangible steps in furtherance of that, agreement to cause Plaintiffs' damage, or that they made any materially false statements. *See Alter v. Bogoricin*, 1997 WL 691332, at *7-8 (S.D.N.Y. 1997).

22

Similarly, Plaintiffs' fifth claim for tortious interference with prospective economic advantage and ninth claim for tortious interference with contract is inadequate and must be dismissed because Plaintiffs failed to: identify the customers allegedly solicited by Lee and Baynard, identify the threats of physical force allegedly employed by Lee and Baynard, and identify any specific success that either Lee or Baynard had in soliciting customers on behalf of Warrior.

Plaintiffs' sixth claim for unfair competition and violation of NY GBL § 360, and eighth claim for misappropriation of confidential and proprietary information must be dismissed as against Lee and Baynard because Plaintiffs have not alleged that Lee or Baynard actually misappropriated trade secrets, trade dress, or corporate documents.

Plaintiffs have not pled any facts to establish that Lee or Baynard owed them a duty of loyalty; therefore Plaintiffs' seventh claim for breach of duty of loyalty and Plaintiffs' thirteenth claim for breach of fiduciary duty must be dismissed as to Lee and Baynard. There is no legal support that a member of a gym owes its gym a duty of loyalty. *See Abercrombie v. Andrews College*, 438 F.Supp.2d 243, 275 (S.D.N.Y. 2006) (a mere close relationship or friendship, such as between an alumnae and her alma mater does not establish a fiduciary relationship).

Plaintiffs do not allege that Lee or Baynard signed any restrictive covenants. Thus Plaintiff's tenth cause of action for breach of a restrictive covenant and eleventh cause of action for breach of good faith and fair dealing must be dismissed as against Lee and Baynard.

Finally, Plaintiffs' final claim for trade dress infringement must be dismissed as to Lee and Baynard because Plaintiffs have not alleged that either Lee or Baynard, took or used for themselves any proprietary information purportedly owned by Plaintiffs.

23

## POINT III

## PLAINTIFFS HAVE FAILED TO STATE ANY CLAIMS AS TO WARRIOR

Plaintiffs have failed to allege any facts that could support any claim against Warrior. For example, Plaintiffs have failed to allege, that Warrior resembles Plaintiffs' own gyms, an allegation that is crucial to a claim for trade dress infringement. Plaintiffs have also failed to allege that Fell, Belliard, Lee and Baynard acted on behalf of Warrior, an allegation that is necessary in order to impute any claim alleged to have been committed by any of the Individual Defendants onto Warrior. Plaintiffs also failed to allege, even upon information and belief, when the agency relationships, if any, were consummated.

In addition to failing to plead facts sufficient to demonstrate that the Individual Defendants were acting as agents of Warrior, Plaintiffs' allegations are insufficient to impute any liability on Warrior directly. For example, Plaintiffs have pled no fact concerning Warrior's alleged interference with contracts, misappropriation of trade secrets, establishment of a fiduciary relationship with Plaintiffs, or consummation of a contractual relationship with Plaintiffs. For these reasons, all claims against Warrior must be dismissed in their entirety, with prejudice.

## POINT IV

## THE COURT MAY CONVERT THIS MOTION TO DISMISS TO A MOTION FOR SUMMARY JUDGMENT

Although Defendants have initially filed this motion pursuant to FRCP 12(b)(6), the Court may, at its discretion, convert this motion to dismiss to a motion for summary judgment pursuant to FRCP 12(d), and consider the parties' filings concerning the previously filed Motion for a Preliminary Injunction and Motion to Preclude the Use of Emails that Plaintiffs illegally misappropriated. See FRCP 12(d); *see also, Global Network Communications v. City of New*

*York*, 458 F.3d 150 (2d Cir. 2006).

Alternatively, the Court, at its discretion may consider allegations contained in the Complaint, exhibits attached to or otherwise incorporated in the Complaint, matters of public records, orders of record in the lawsuit, and other materials subject to judicial notice without converting the motion to one for summary judgment. *See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).

Plaintiffs' entire Complaint consists of vague and conclusory assertions without providing any substantive and Plaintiffs fail to include any detail upon which any claims can be based. This Court should summarily dispose of all claims.

## CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss must be granted in its entirety pursuant to FRCP 12 (b)(6) and this Court should summarily dispose of the Complaint pursuant to FRCP 12(d).

Dated:     New York, New York
           July 16, 2008

                          FOX ROTHSCHILD, LLP
                          Attorneys for Defendants

                          By: _____
                          Daniel A. Schnapp (DS 3484)
                          Carolyn D. Richmond, Esq. (0993)
                          Eli Z. Freedberg, Esq. (6854)
                          100 Park Avenue
                          New York, New York 10017
                          (212) 878-7900