**<u>EXHIBIT A</u>**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------X
                     :

PURE POWER BOOT CAMP, INC., PURE     :
POWER BOOT CAMP FRANCHISING     :
CORPORATION, and PURE POWER BOOT  :
CAMP JERICHO INC.,              :    Index No.: *601 364/2008*
                     :

          Plaintiff(s),         :

                     :

          -against-         :    **SUMMONS**
                     :

WARRIOR FITNESS BOOT CAMP, LLC;   :
ALEXANDER KENNETH FELL a/k/a ALEX :  Plaintiffs designate New York
FELL, Individually; RUBEN DARIO BELLIARD : County as the place of trial
a/k/a RUBEN BELLIARD, Individually;    :
JENNIFER J. LEE, Individually;        :  Basis of Venue:
and NANCY BAYNARD, Individually,    :  Defendant's Principal Place of
                     :  Business
          Defendants.       :
---------------------------------------------------X

To the Named Defendants:

> Warrior Fitness Boot Camp, LLC
> Alexander Kenneth Fell a/k/a Alex Fell, Individually
> Ruben Dario Belliard a/k/a Ruben Belliard, Individually
> Jennifer J. Lee, Individually
> Nancy Baynard, Individually
> c/o Fox Rothschild LLP
> Carolyn D. Richmond, Esq.
> 100 Park Avenue, Suite 1500
> New York, NY 10017

       **YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve

a copy of your answer, or, if the Complaint is not served with this summons, to serve a notice of

appearance, on the Plaintiffs' Attorney within 20 days after the service of this summons,

exclusive of the day of service (or within 30 days after the service is compete if the summons is

not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: May 5, 2008

CALCAGNO & ASSOCIATES
ATTORNEYS AT LAW, LLC

**ANDREW JOHN CALCAGNO**
Attorney for the Plaintiffs
*Main Office*
213 South Avenue East
Cranford, NJ 07016
(908) 272-7300

*Satellite Office*
404 Manor Road
Staten Island, New York 10314
(718) 815-0200

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

———————————————————————— X
                                            :

| | |
|---|---|
| PURE POWER BOOT CAMP, INC., PURE POWER BOOT CAMP FRANCHISING CORPORATION, and PURE POWER BOOT CAMP JERICHO INC., | Index No.: |
| Plaintiff(s), | |
| -against- | **COMPLAINT** |
| WARRIOR FITNESS BOOT CAMP, LLC; ALEXANDER KENNETH FELL a/k/a ALEX FELL, Individually; RUBEN DARIO BELLIARD a/k/a RUBEN BELLIARD, Individually; JENNIFER J. LEE, Individually; and NANCY BAYNARD, Individually, | |
| Defendants. | |

———————————————————————— X

       Plaintiffs, Pure Power Boot Camp, Inc., Pure Power Boot Camp Franchising Corporation, and Pure Power Boot Camp Jericho Inc., by their attorneys, Calcagno & Associates Attorneys At Law LLC, complaining of Defendants, Warrior Fitness Boot Camp, LLC; Alexander Kenneth Fell a/k/a Alex Fell, Individually; Ruben Dario Belliard a/k/a Ruben Belliard, Individually; Jennifer J. Lee, Individually; and Nancy Baynard, Individually, respectfully alleges as follows:

## PARTIES

1. Plaintiff, Pure Power Boot Camp, Inc. ("Pure Power"), is a corporation organized and existing under the laws of the State of New York with its principal place of business at 38 West 21st Street, New York, NY 10010. Pure Power was previously a foreign corporation organized under the laws of the State of Delaware. Pure Power is a facility

specializing in the operation of the nation's only indoor obstacle/confidence course which trains civilians in a military style and positive setting. Pure Power has been in business since 2003.

2. Plaintiff, Pure Power Boot Camp Franchising Corporation ("Pure Power Franchise"), is a corporation organized and existing under the laws of the State of New York with its principal place of business at 38 West 21st Street, New York, NY 10010.

3. Plaintiff, Pure Power Boot Camp Jericho Inc. ("Pure Power Jericho"), is a corporation organized and existing under the laws of the State of New York with its principal place of business at 50 S. Service Road, Jericho, New York 11753. Pure Power Jericho is the second Pure Power facility opened specializing in the operation of the nation's only indoor obstacle/confidence course which trains civilians in a military style and positive setting. Pure Power Jericho was incorporated on November 29, 2007 and has been open for business since February 25, 2008.

4. Lauren Brenner ("Brenner") is the President/Founder of Pure Power, Pure Power Franchise and Pure Power Jericho (collectively hereinafter known as "PPBC").

5. Upon information and belief, Defendant, Warrior Fitness Boot Camp, LLC ("Warrior Fitness"), is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 29 West 35th Street, 3rd Floor, New York, New York 10001. Warrior Fitness was incorporated on February 28, 2008. Warrior Fitness is a facility specializing in the operation of an indoor obstacle/confidence course and is not yet open for business.

2

6.  Upon information and belief, Defendant, Alexander Kenneth Fell a/k/a Alex Fell ("Fell"), is an individual, residing at 3205 Oxford Avenue, Apt. 8, Bronx. NY 1463.  Fell is a former employee of Pure Power and a Co-CEO/Owner of Warrior Fitness.

7.  Upon information and belief, Defendant, Ruben Dario Belliard a/k/a Ruben Belliard ("Belliard"), is an individual, residing at 201 West 83rd Street, Apt. 1D, New York, New York 10024.  Belliard is a former employee of Pure Power and a Co-CEO/Owner of Warrior Fitness.

8.  Upon information and belief, Defendant, Jennifer J. Lee, Individually ("Lee"), is an individual, residing at 55 West 26th Street, Apt. 11A, New York, New York 10010.  Lee is a former client of Pure Power, girlfriend of Fell, and a Co-CEO/Owner of Warrior Fitness.

9.  Upon information and belief, Defendant, Nancy Baynard ("Baynard"), is an individual, residing at 201 West 83rd Street, Apt. 1D, New York, New York 10024.  Baynard is a former client of Pure Power, girlfriend of Belliard, and a co-conspirator.

## STATEMENT OF FACTS

10. Brenner was a Wall Street trader and a lifelong athlete.

11. After the September 11, 2001 terrorist attacks, Brenner felt that people wanted to be part of something that inspired accountability and respect.

12. Brenner wanted to combine the things she loved the most: sports, entertainment, and business and created the concept of an indoor obstacle/confidence course boot camp.

13. She created a Business Plan ("Business Plan"), found a location for the facility and transformed that location by creating twelve obstacles.  She developed these twelve

3

obstacles with two to three different ways of achieving these obstacles for varying degrees of fitness levels.

14. The Pure Power facility walls are covered with green camouflage netting and the changing rooms are World War II tents.

15. The obstacle/confidence course flooring surface is a playground certified crushed rubber (recycled) surface and is bordered by military looking sandbags.

16. Some of the Pure Power obstacles are as follows:

> 1. Monkey Bars
> 2. Barbed Wire Crawl
> 3. Swing to Beam
> 4. High Hurdles
> 5. Commando Crawl
> 6. Belly Robbers
> 7. Intensity Wall
> 8. Traverse Wall
> 9. Cargo Net
> 10. Rope Climb
> 11. Tire Run

17. Once the facility was completed, Brenner invited eight (8) Marines who had just returned from Iraq to experience the indoor obstacle/confidence course and received only the highest acclamations from them.

18. On February 4, 2004, Brenner opened the doors of Pure Power to the public.

19. Pure Power was an instant success and has gained publicity and an excellent reputation through various newspapers, magazines, televisions shows and is known nationally, as well as internationally, as the nation's only facility containing an indoor obstacle/confidence course.

20. The Drill Instructors ("D.I.s") are all former soldiers who have served in combat.

4

21. Clients ("recruits") are called by their last names and wear standard-issue military fatigues and dog tags during the class.

22. The initial program at Pure Power is called the Tour of Duty.

23. The Tour of Duty is a six-week course held four times a week for one hour, or three times a week for eight weeks.

24. Pure Power also has a Weekend Warrior program for recruits who are called Weekend Reserves.

25. The Weekend Warrior program comprises of two-hour sessions twice per week on Saturdays and Sundays for six weeks.

26. Recruits must all sign a Recruit Contract, Recruit Waiver, and receive Pure Power Boot Camp Rules.

27. When recruits step into the Pure Power facility, a life-size statue of a screaming marine greets them with a machine gun in his hand.

28. Pure Power trains civilians in a military style and positive setting and patterns recruit regimens after the armed forces.

29. Pure Power's programs are customized to suit recruits' fitness levels. Recruits are then put into platoons that consist of approximately sixteen recruits.

30. Each recruit who joins Pure Power commits to learn the following principles:

1. **Honor** – Pure Power Boot Camp requires that each recruit be true to his or her values, regardless of the personal cost.

2. **Trust** – Pure Power Boot Camp teaches each recruit to rely on the integrity, ability, or character of himself or herself and others.

3. **Respect** – Pure Power Boot Camp expects each recruit to view others with a high degree of reverence and special regard. Recruits are taught to admire others, seeing beneath the surface to see real worth and value.

5

4. **Integrity** – Pure Power Boot Camp expects each recruit to develop a personal inner sense of wholeness derived from honesty and consistent uprightness of character.

5. **Duty** – Pure Power Boot Camp teaches each recruit to practice personal accountability in relation to a principle, measuring any action (or course of action) apart from personal likes and dislikes.

6. **Loyalty** – Pure Power Boot Camp expects recruits to be faithful or devoted to one another.

7. **Power** – Pure Power Boot Camp teaches each recruit to be aware of his or her capacity to produce effects on others or to influence others.

8. **Courage** – Pure Power Boot Camp helps each recruit overcome obstacles that are encountered in daily life. Each recruit matures mentally and should exhibit an attitude of facing and dealing with anything recognized as being dangerous, difficult, or painful, instead of withdrawing from it.

9. **Dignity** – Pure Power Boot Camp teaches each recruit to respect himself or herself and others. Recruits embrace dignity, the quality or state of being worthy of esteem or respect.

10. **Wisdom** – Pure Power Boot Camp helps each recruit develop a more intelligent application of learning and/or ability to discern inner qualities and essential relationships.

11. **Pride** – Pure Power Boot Camp helps each recruit realize the reward and satisfaction taken in accomplishing an achievement.

31. On or about April 19, 2004, Brenner trademarked the names "Pure Power Boot Camp" and "Train Military Style".

32. On or about February 2, 2006, Brenner filed for trade dress of Pure Power, specifically, the design of the facility, the terms used in the facility, and indoor obstacle/confidence course used in the facility.

33. Through years of accumulated experience, time and strenuous efforts by Brenner, Pure Power has been successful in obtaining an impressive client list, and over the years has recruited approximately 1730 clients.

34. Brenner's client list is stored through a web program called Mybody.com, is not public knowledge, and is not readily obtainable.

35. Through extensive interactions with its clients, Pure Power has been successful in obtaining and identifying their individual tastes and preferences with respect to their workouts.

36. Defendant, Belliard, worked as an employee of Pure Power from 2004 up and until March 31, 2008, when he abruptly left Pure Power, claiming that he was starting a construction business with a family member.

37. Defendant, Fell, worked as an employee of Pure Power from 2005 up and until March 16, 2008, when he was fired for being belligerent and insubordinate to Brenner during a conversation and for not following direction by his Employer.

38. On or about January 9, 2006, Defendant, Nancy Baynard ("Baynard"), became a recruit at Pure Power and left on March 28, 2008.

39. On or about March 13, 2006, Defendant, Jennifer Lee ("Lee"), became a recruit at Pure Power and left on April 28, 2008.

40. In reality and unbeknownst to Brenner, in or about July 2007, Belliard, Fell, Lee, and Baynard conspired and devised to raid and sabotage Brenner's business and defraud, deceive, steal and misappropriate Pure Power's trade secrets, trade dress, client list, and corporate documents, including, but not limited to, hard copies of Pure Power's Operations Manual, Startup Manual, Business Plan, and D.I. employee agreements, as well as Brenner's hard copy of the first chapter of her book, and deleted various corporate documents.

41. When Belliard was hired, he told Brenner that he was married.  Belliard was actually married in the Dominican Republic but never legalized the marriage in the United States.

42. When Fell was hired, he told Brenner that he was engaged.

7

43. One policy of Pure Power was that employees must not become intimate with clients.

44. When Belliard and Fell were first hired, they knew nothing about the physical fitness industry and Brenner invested substantial time and money to train them and obtain Fitness Certifications for them, as she did with each employee she hired to be a D.I.

45. As a result of their training, Belliard and Fell each evolved into a motivational D.I. and a trusted employee with Pure Power.

46. As D.I.s, Belliard and Fell were entrusted with substantial responsibility to work closely with, train, motivate and inspire the recruits on behalf of Pure Power.

47. Some time during their employ at Pure Power, Belliard and Fell began personal relationships with Baynard and Lee.

48. Brenner did not know initially about the relationships.

49. During the eight (8) months that Defendants conspired against Brenner and Pure Power while employed by Pure Power, neither Brenner nor any of the Pure Power recruits were aware that Lee was Fell's girlfriend.

50. Since 2006, all employees of Pure Power have been required to sign a confidentiality and non-competition agreements (the "Agreement").

51. Brenner began to develop plans for franchising the Pure Power concept in 2006 and created a Startup Manual, an Operations Manual, and a Business Plan.

52. Brenner hired a new D.I., Nicio Evertz ("Evertz"), in early 2007.

53. In mid-2007, Belliard informed Brenner that he and his wife were divorcing.

54. In or around July 2007, recruit, Baynard, approached Brenner and informed her that she was having marital problems and asked if Brenner could help her find an apartment.

55. Brenner looked for and helped Baynard find an apartment.

8

56. In 2007, Fell broke off his engagement and began dating a woman shortly thereafter whom he described as an asian woman named "Shannon".

57. In 2007, Brenner began promoting the franchise, generating additional business and publicity for Pure Power, and finalizing her plan to open other Pure Power facilities.

58. Brenner was constantly being approached by Venture Capitalists ("V.C.s") regarding national expansion of Pure Power.

59. When approached by a V.C., Brenner made sure that she stipulated that Belliard was to be the National D.I.

60. Brenner decided not to get the V.C.s involved in Pure Power at this junction.

61. Brenner entrusted Belliard and Fell with her clientele at the New York Pure Power facility.

62. Brenner told Belliard and Fell that updates must be given to her on a regular basis to ensure that the Pure Power clients continued to be motivated and inspired.

63. In October 2007, Belliard admitted to Brenner that he had been dating Baynard and had moved in with Baynard. He claimed that he hadn't told Brenner at first because he didn't want to lose his job.

64. Although this was against the Pure Power rules, Belliard was Brenner's top D.I. and most trusted employee.

65. In or around October 2007, Brenner wanted to hire another D.I.; however, Belliard, Fell and Evertz told Brenner that they wanted the hours and could handle all of the clients and classes.

66. The client renewal rate was approximately 94%.

67. In or around November 2007, Brenner began preparing for her annual holiday party taking place on December 14, 2007, and finalize the plans for the Long Island facility.

68. On or about November 24, 2007, Brenner asked Belliard if he wanted to become partners in the Long Island Pure Power facility; however, Belliard turned down the opportunity, stating that he did not have the money to invest.

69. Unbeknownst to Brenner, Belliard, Fell and Lee had already been looking for locations for Warrior Fitness; however, they were not happy with the realtor and on December 5, 2007, terminated the realtor's services.

70. The holiday party was held every year for the clients, to thank the clients for their loyalty and support.

71. The Long Island facility was set to open on February 25, 2008, with the grand opening party to be held on February 7, 2008.

72. Belliard also agreed to help paint and build at the Long Island facility, then called Brenner and cancelled the day prior.

73. Beginning in December 2007, Fell became more and more difficult when told to perform a task by Brenner and became more and more belligerent to Brenner.

74. Defendants were still looking for a location for Warrior Fitness throughout the month of February 2008.

75. On February 27, 2008, a lease was drawn up for a location that Defendants found for Warrior Fitness.

76. In February 2008, Defendants were also shopping for prices on flooring.

77. The location that Defendants' leased was located on 29th Street, 14 blocks away from Pure Power utilizing the same operating hours as Pure Power.

78. Evertz contacted Brenner regularly to report on the progress of the clients; however, Fell did not.

79. Unbeknownst to Brenner, Defendants stole Pure Power's business/corporate documents and brochure to draft Defendants' business plan, using Pure Power's concepts and ides, including, but not limited to, obstacles, guarantee, principles, programs, clothing, projections, and pricing matrix.

80. While reviewing the New York facility schedule on March 16, 2008, Brenner realized that one (1) D.I. might not be needed for the March 17, 2008 7:30 a.m. class.

81. Since Evertz or Belliard were always the D.I.s to leave, and Fell had not been reporting to Brenner regarding the clients as he was told, Brenner decided that Evertz would run the 7:30 a.m. class on March 17, 2008 if a D.I. needed to leave.

82. On March 16, 2008, Brenner contacted Fell to inform him that he would not be needed for the 7:30am class if one (1) D.I. was not needed, and that Evertz would be the D.I. instructing the class since he was always the D.I. to leave.

83. Fell became irate and said, "That's not my fucking problem." He then threatened to go to the Department of Labor if Brenner allowed Evertz to instruct the class.

84. Brenner stated, "Did you just threaten me? I am not asking you. You will be leaving at 7:30 a.m."

85. Fell replied, "Who the fuck do you think you are? You better learn who you are speaking to."

86. Brenner replied, "Who owns this business, you or me?"

87. Fell stated, "What are you going to do, fire me?"

88. Brenner replied, "How dare you. You are not a team player. Keep it up and you will be suspended for a week."

89. Fell again threatened Brenner by stating, "You take me off for a week and the Department of Labor will be at your door."

90. Brenner replied, "You are leaving at 7:30 a.m."

91. Fell stated, "I am not." Then again stated, "What are you going to do, fire me?"

92. Brenner then replied, "Alex, you are fired."

93. Brenner spoke to Belliard thereafter.

94. Brenner asked Belliard where he stood regarding his loyalties to Pure Power and Belliard responded, "I am here 100%."

95. On March 17, 2008, Fell and Lee admitted to their conspiracy in emails to each other.

96. During Brenner's meeting with Belliard, Belliard told Brenner that he would not have a problem with Fell's firing because there were a lot of things that Fell did that he shouldn't have done.

97. Brenner began instructing in the New York facility in the mornings, then traveling to Long Island to instruct in the afternoon.

98. Shortly after, Belliard began showing up to work late.

99. Lee and Baynard attended classes regularly at Pure Power after Fell's termination in order to befriend, manipulate and solicit as many of Pure Power's recruits as possible, and spread lies about Brenner and Pure Power, in order to entice Pure Power's recruits to leave Pure Power and sign up with Warrior Fitness.

100. Brenner met with Belliard to discuss his tardiness and asked him if there was a problem.

12

101. Belliard stated that there was no problem.

102. On March 25, 2008, in furtherance of their plan to conspire and sabotage Pure Power, Defendants stole a partial list of Pure Power's clients and began soliciting them to leave Pure Power and come to Warrior Fitness.

103. On March 31, 2008 at 9:09 p.m., Brenner received a phone call from Belliard.

104. Belliard told Brenner that he was giving his resignation with Pure Power, effective immediately, without notice because he was going into the construction business with his uncle.

105. Brenner asked him to give her two weeks notice, but Belliard stated that he could not.

106. Unbeknownst to Brenner, that same day, the Defendants signed the lease for the 29 West 35th Street location.

107. Upon information and belief, during the period from March 21, 2008 though March 31, 2008, the Defendants stole several business/corporate documents from Pure Power. Included in those documents were the original signed confidentiality & non-compete agreements. Also included in those documents was Pure Power's client list. Once Belliard gave the Pure Power client list to Baynard, Baynard updated the Warrior Fitness client list using the Pure Power client list.

108. Since Belliard's departure from Pure Power, Defendants have furthered their conspiracy by contacting Pure Power clients with the intent to steal them and continuing to misappropriate Pure Power's trade dress by constructing the same indoor obstacle/confidence course.

109. Lee continued to attend classes at Pure Power after Fell was terminated for the purpose of converting new Pure Power recruits to Warrior Fitness.

110.     In comparing the Defendants' facility and Pure Power's facility, it is obvious that the Defendants have misappropriated Pure Power's trade secrets and Trade Dress. It is clear on its face.

111.     In comparing the Recruit Contracts, Additional Terms and Conditions and Waiver and Release forms of Pure Power and Warrior Fitness, there is virtually no difference. Warrior Fitness copied Pure Power's documents word for word.

112.     The Defendants stole all of Pure Power's programs and curriculum verbatim, but changed the names. For example, Defendants "Operation Warrior" program is the same as Pure Power's "Tour of Duty" program. Pure Power has a corporate team challenge program in its Business Plan and Operations Manual and the Defendants copied it verbatim, but changed the pricing slightly. Even Defendants' pricing is structured the same way as Pure Power's.

113.     In comparing Defendants' Business Plan to Pure Power's Business Plan, Start-Up Manual, Operations Manual, Brochure, client list and clients list, it is abundantly clear that the Defendants simply stole everything from Pure Power (Pure Power's clients, concepts, curriculum, programs, pricing matrix, design, good will, and everything else about Pure Power) and made it their own by engaging in a conspiracy to willfully and maliciously sabotage and destroy Brenner and Pure Power.

14

## FIRST COUNT
### (Conversion)

114. Plaintiffs repeat, reiterate and re-allege all of the allegations contained in the Statement of Facts above as if fully set forth at length herein.

115. Plaintiffs' trade secrets, trade dress, client list, business/corporate documents, and other confidential, secret and proprietary information are represented and evidenced by the tangible documentation and other tangible property.

116. Plaintiffs are informed and believe, and thereon allege that Defendants, Warrior Fitness, Belliard, Fell, Lee and Baynard, intentionally and deliberately, with full knowledge that such property is owned by Plaintiffs, misappropriated and converted such Plaintiffs' property to their own use and benefit without any compensation to Plaintiffs.

117. The aforementioned acts of Defendants were, upon information and belief, willful and malicious and intended to cause harm to Plaintiffs.

118. As a result of the foregoing, Plaintiffs have incurred damages in the millions of dollars, the extent not yet ascertained and is entitled to have returned to it all of the property Defendants have wrongfully converted to their own use.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Warrior Fitness Boot Camp, LLC; Alexander Kenneth Fell a/k/a Alex Fell, Individually; Ruben Dario Belliard a/k/a Ruben Belliard, Individually; Jennifer J. Lee, Individually; and Nancy Baynard, Individually, jointly and severally for:

      a. Injunctive relief, enjoining the Defendants from directly and/or indirectly contacting Plaintiffs' clients, misappropriating Plaintiffs' trade secrets and infringing on Plaintiffs' trade dress;

      b. Equitable relief demanding the immediate return of Plaintiffs' property wrongfully converted by Defendants;

      c. Money damages in the millions of dollars, the amount of which to be determined by a jury of Plaintiffs' peers;

      d. Consequential damages;

      e. Incidental damages;

      f. Punitive damages;

      g. Reasonable attorney's fees, filing fees, costs of suit; and

      h. Any further relief which the Court may deem just and proper.

## SECOND COUNT
### (Unjust Enrichment)

119. Plaintiffs repeat, reiterate and re-allege all of the allegations contained in the Statement of Facts and the First Count above as if fully set forth at length herein.

120. Defendants have been unjustly enriched by, inter alia, using Plaintiffs' intellectual property, client list, trade secrets, trade dress, business/corporate documents, and other confidential, secret and proprietary information.

121. As a result of the foregoing, Plaintiffs have incurred damages in the millions of dollars, the extent not yet ascertained.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Warrior Fitness Boot Camp, LLC; Alexander Kenneth Fell a/k/a Alex Fell, Individually; Ruben Dario Belliard a/k/a Ruben Belliard, Individually; Jennifer J. Lee, Individually; and Nancy Baynard, Individually, jointly and severally for:

      a. Injunctive relief, enjoining the Defendants from directly and/or indirectly contacting Plaintiffs' clients, misappropriating Plaintiffs' trade secrets and infringing on Plaintiffs' trade dress;

      b. Equitable relief demanding the immediate return of Plaintiffs' property wrongfully converted by Defendants;

      c. Money damages in the millions of dollars, the amount of which to be determined by a jury of Plaintiffs' peers;

      d. Consequential damages;

      e. Incidental damages;

      f. Punitive damages;

      g. Reasonable attorney's fees, filing fees, costs of suit; and

      h. Any further relief which the Court may deem just and proper.

### THIRD COUNT
**(Theft of Trade Secrets, Theft of Trade Dress, and Theft by Deception)**

122. Plaintiffs repeat, reiterate and re-allege all of the allegations contained in the Statement of Facts, First and Second Counts above as if fully set forth at length herein.

123. Defendants solicited, manipulated, and stole Plaintiffs' clients with the intent to deceive and injure Plaintiffs, and with the intent to economically benefit the Defendants.

124. Defendants stole the Pure Power client accounts, Plaintiffs' information, client files and client files with the intent to deceive and injure Plaintiffs, and with the intent to economically benefit the Defendants.

125. Defendants stole Plaintiffs' intellectual property, client list, trade secrets, trade dress, business/corporate documents, and other confidential, secret and proprietary information with the intent to deceive and injure Plaintiffs, and with the intent to economically benefit the Defendants.

126. Defendants misappropriated Plaintiffs' trade secrets and trade dress with the intent to deceive and injure Plaintiffs, and with the intent to economically benefit the Defendants.

127. As a result of the foregoing, Plaintiffs have incurred damages to an extent not yet ascertained.

**WHEREFORE,** Plaintiffs demand judgment against Defendants, Warrior Fitness Boot Camp, LLC; Alexander Kenneth Fell a/k/a Alex Fell, Individually; Ruben Dario Belliard a/k/a Ruben Belliard, Individually; Jennifer J. Lee, Individually; and Nancy Baynard, Individually, jointly and severally for:

        a. Injunctive relief, enjoining the Defendants from directly and/or indirectly contacting Plaintiffs' clients, misappropriating Plaintiffs' trade secrets and infringing on Plaintiffs' trade dress;

        b. Equitable relief demanding the immediate return of Plaintiffs' property wrongfully converted by Defendants;

18

    c.   Money damages in the millions of dollars, the amount of which to be determined by a jury of Plaintiffs' peers;

    d.   Consequential damages;

    e.   Incidental damages;

    f.   Punitive damages;

    g.   Reasonable attorney's fees, filing fees, costs of suit; and

    h.   Any further relief which the Court may deem just and proper.

## FOURTH COUNT
### (Civil Conspiracy)

128. Plaintiffs repeat, reiterate and re-allege all of the allegations contained in the Statement of Facts, First, Second and Third Counts above as if fully set forth at length herein.

129. Defendants conspired to cause irreparable harm and maliciously interfere with the Plaintiffs' contractual relations and usurp Plaintiffs' prospective economic advantage with the Plaintiffs' client accounts, trade secrets and trade dress.

130. As a result of the foregoing civil conspiracy, Plaintiffs' client accounts, trade secrets and trade dress have been stolen along with invaluable and unrecoverable confidential, propriety and secretive information and Plaintiffs have incurred damages to an extent not yet ascertained.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Warrior Fitness Boot Camp, LLC; Alexander Kenneth Fell a/k/a Alex Fell, Individually; Ruben Dario Belliard a/k/a Ruben Belliard, Individually; Jennifer J. Lee, Individually; and Nancy Baynard, Individually, jointly and severally for:

    a.   Injunctive relief, enjoining the Defendants from directly and/or indirectly

19

contacting Plaintiffs' clients, misappropriating Plaintiffs' trade secrets and infringing on Plaintiffs' trade dress;

b.  Equitable relief demanding the immediate return of Plaintiffs' property wrongfully converted by Defendants;

c.  Money damages in the millions of dollars, the amount of which to be determined by a jury of Plaintiffs' peers;

d.  Consequential damages;

e.  Incidental damages;

f.  Punitive damages;

g.  Reasonable attorney's fees, filing fees, costs of suit; and

h.  Any further relief which the Court may deem just and proper.

**FIFTH COUNT**
**(Tortious Intentional Interference With Prospective Economic Advantage)**

131.  Plaintiffs repeat, reiterate and re-allege all of the allegations contained in the Statement of Facts, First, Second, Third and Fourth Counts above as if fully set forth at length herein.

132.  For nearly 5 years, Plaintiffs have established themselves in the fitness community as the only indoor obstacle/confidence boot camp in the U.S.A. by developing a unique, comprehensive indoor obstacle confidence program with options for different programs to suit each client's needs, along with customized nutrition plans, customized nutrition shakes, and a guarantee. As such, the Plaintiffs have gained national and international acclaim and have developed ongoing relationships with clients, specifically the clients referred to above. Because of these efforts, Plaintiffs have every reason to expect many

of these existing relationships to grow and new clients to be obtained through the references of the relationships.

133. Defendants, at all times relevant herein, have known of Plaintiffs' ongoing and continuous businesses and professional relationships as alleged herein.

134. As a result of Defendants' intentional, malicious interference and without justification or excuse, the Defendants stole many of the Pure Power clients and are continuing to do so.

135. Plaintiffs have been damaged by the wrongful acts of Defendants as alleged above. Such conduct does not enhance nor promote Plaintiffs' professional standing in the fitness community, but rather detracts, tarnishes and injures Plaintiffs and Plaintiffs' reputation and goodwill.

136. The aforementioned unlawful and unfair conduct by Defendants has disrupted Plaintiffs' economic relationship with those clients named above and has resulted in, and will continue to result in, preclusion of Plaintiffs' successful continued relationship with these clients.

137. The aforementioned acts of Defendants were, upon information and belief, willful and malicious and were intended to induce or cause a breach or termination of Plaintiffs' relationships and expectancies.

138. As a result of the foregoing wrongful conduct, Plaintiffs have been damaged in an amount as yet unknown but to be proven at Trial. Plaintiffs have no adequate remedy at law for the continuing violations of its rights as set forth above.

21

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Warrior Fitness Boot Camp, LLC; Alexander Kenneth Fell a/k/a Alex Fell, Individually; Ruben Dario Belliard a/k/a Ruben Belliard, Individually; Jennifer J. Lee, Individually; and Nancy Baynard, Individually, jointly and severally for:

      a. Injunctive relief, enjoining the Defendants from directly and/or indirectly contacting Plaintiffs' clients, misappropriating Plaintiffs' trade secrets and infringing on Plaintiffs' trade dress;

      b. Equitable relief demanding the immediate return of Plaintiffs' property wrongfully converted by Defendants;

      c. Money damages in the millions of dollars, the amount of which to be determined by a jury of Plaintiffs' peers;

      d. Consequential damages;

      e. Incidental damages;

      f. Punitive damages;

      g. Reasonable attorney's fees, filing fees, costs of suit; and

      h. Any further relief which the Court may deem just and proper.

### SIXTH COUNT
**(Unfair Competition and NY GBL §360, *et seq.*)**

139. Plaintiffs repeat, reiterate and re-allege all of the allegations contained in the Statement of Facts, First, Second, Third, Fourth, and Fifth Counts above as if fully set forth at length herein.

140. By the acts alleged above, Defendants have engaged in unfair competition including unlawful, unfair, and fraudulent business practices, deception, theft of trade secrets, theft of trade dress, theft of business/corporate documents and use of confidential

22

information by former employees and third parties to solicit customers in violation of NY GBL §360, *et seq*.

141. The acts of Defendants are in violation and derogation of Plaintiffs' rights and are likely to cause confusion, mistake, and deception among consumers and the public as to the source, origin, sponsorship or quality of Defendants' product, thereby causing loss, damage, and injury to Plaintiffs and to the purchasing public.

142. Defendants knew or in the exercise of reasonable care, should have known that their conduct would likely so mislead the public and injure the business reputation of Pure Power.

143. The wrongful acts, as alleged above, have permitted or will permit Defendants to make substantial sales and profits on the artwork, corporate documents and efforts of Plaintiffs.

144. As a result of the foregoing wrongful conduct, Plaintiffs have been and will be deprived of substantial sales in an amount as yet unknown but to be proven at Trial. Plaintiffs have no adequate remedy at law for the continuing violations of its rights as set forth above.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Warrior Fitness Boot Camp, LLC; Alexander Kenneth Fell a/k/a Alex Fell, Individually; Ruben Dario Belliard a/k/a Ruben Belliard, Individually; Jennifer J. Lee, Individually; and Nancy Baynard, Individually, jointly and severally for:

> a. Injunctive relief, enjoining the Defendants from directly and/or indirectly contacting Plaintiffs' clients, misappropriating Plaintiffs' trade secrets and infringing on Plaintiffs' trade dress;

23

b.  Equitable relief demanding the immediate return of Plaintiffs' property wrongfully converted by Defendants;

c.  Money damages in the millions of dollars, the amount of which to be determined by a jury of Plaintiffs' peers;

d.  Consequential damages;

e.  Incidental damages;

f.  Punitive damages;

g.  Treble damages;

h.  Reasonable attorney's fees, filing fees, costs of suit; and

i.  Any further relief which the Court may deem just and proper.

## SEVENTH COUNT
### (Breach of Duty of Loyalty)

145. Plaintiffs repeat, reiterate and re-allege all of the allegations contained in the Statement of Facts, First, Second, Third, Fourth, Fifth, and Sixth Counts above as if fully set forth at length herein.

146. By the acts alleged above, Defendants, Belliard and Fell, have breached their duty of loyalty, trust and confidence to Plaintiffs. Defendants, Belliard and Fell, purloined protected information from Plaintiffs' files while still employed by Plaintiffs for the sole purpose of effecting an advantage in competing with Plaintiffs immediately upon their conspiracy and decision to commence an indoor obstacle/confidence boot camp, namely, Warrior Fitness.

147. As a result of the foregoing wrongful conduct, Plaintiffs have been and will be deprived of substantial sales in an amount as yet unknown but to be proven at Trial. Plaintiffs

24

have no adequate remedy at law for the continuing violations of its rights as set forth above.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Warrior Fitness Boot Camp, LLC; Alexander Kenneth Fell a/k/a Alex Fell, Individually; Ruben Dario Belliard a/k/a Ruben Belliard, Individually; Jennifer J. Lee, Individually; and Nancy Baynard, Individually, jointly and severally for:

    a.  Injunctive relief, enjoining the Defendants from directly and/or indirectly contacting Plaintiffs' clients, misappropriating Plaintiffs' trade secrets and infringing on Plaintiffs' trade dress;

    b.  Equitable relief demanding the immediate return of Plaintiffs' property wrongfully converted by Defendants;

    c.  Money damages in the millions of dollars, the amount of which to be determined by a jury of Plaintiffs' peers;

    d.  Consequential damages;

    e.  Incidental damages;

    f.  Punitive damages;

    g.  Reasonable attorney's fees, filing fees, costs of suit; and

    h.  Any further relief which the Court may deem just and proper.

## EIGHTH COUNT
### (Misappropriation of Confidential and Proprietary Information)

148. Plaintiffs repeat, reiterate and re-allege all of the allegations contained in the Statement of Facts, First, Second, Third, Fourth, Fifth, Sixth and Seventh Counts above as if fully set forth at length herein.

149. By the acts alleged above, Defendants improperly disclosed the confidential and proprietary information of Plaintiffs. Specifically, Defendants improperly disclosed and used for their personal financial benefit without Plaintiffs' authorization, Plaintiffs' trade secrets, trade dress, corporate/business documents, D.I. Agreements, Operations Manual, Business Plan, Startup Manual, clients, and client files.

150. As a result of the foregoing wrongful conduct, Plaintiffs has been and will be deprived of substantial sales in an amount as yet unknown but to be proven at Trial. Plaintiffs have no adequate remedy at law for the continuing violations of Plaintiffs' rights as set forth above.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Warrior Fitness Boot Camp, LLC; Alexander Kenneth Fell a/k/a Alex Fell, Individually; Ruben Dario Belliard a/k/a Ruben Belliard, Individually; Jennifer J. Lee, Individually; and Nancy Baynard, Individually, jointly and severally for:

a. Injunctive relief, enjoining the Defendants from directly and/or indirectly contacting Plaintiffs' clients, misappropriating Plaintiffs' trade secrets and infringing on Plaintiffs' trade dress;

b. Equitable relief demanding the immediate return of Plaintiffs' property wrongfully converted by Defendants;

c. Money damages in the millions of dollars, the amount of which to be determined by a jury of Plaintiffs' peers;

d. Consequential damages;

e. Incidental damages;

f. Punitive damages;

26

     g.  Reasonable attorney's fees, filing fees, costs of suit; and

     h.  Any further relief which the Court may deem just and proper.

## NINTH COUNT
### (Tortious Intentional Interference With Contractual Relations)

151.  Plaintiffs repeat, reiterate and re-allege all of the allegations contained in the Statement of Facts, First, Second, Third, Fourth, Fifth, Sixth, Seventh and Eighth Counts above as if fully set forth at length herein.

152.  For nearly 5 years, Plaintiffs have established themselves in the fitness community as the only indoor obstacle/confidence boot camp in the U.S.A. by developing a unique, comprehensive indoor obstacle confidence program with options for different programs to suit each client's needs, along with customized nutrition plans, customized nutrition shakes, and a guarantee. As such, the Plaintiffs have gained national and international acclaim and have developed ongoing relationships with clients, specifically the clients referred to above. Because of these efforts, Plaintiffs have every reason to expect many of these existing relationships to grow and new clients to be obtained through the references of the relationships.

153.  Defendants, at all times relevant herein, have known of Plaintiffs' ongoing and continuous contractual relationships as alleged herein.

154.  With knowledge of the existing contractual relations with Pure Power's clients, Defendants intentionally and maliciously and without justification or excuse interfered with the aforementioned contractual relationships.

155.  The aforementioned unlawful and unfair conduct by Defendants has disrupted Plaintiffs' economic relationship with those clients and has resulted in, and will

continue to result in, preclusion of Plaintiffs' successful continued relationship with these clients.

156. As a result of Defendants' intentional, malicious interference and without justification or excuse, Pure Power's clients were stolen by Defendants.

157. The aforementioned acts of Defendants were, upon information and belief, willful and malicious and were intended to induce or cause a breach or termination of Plaintiffs' relationships and expectancies.

158. As a result of the foregoing wrongful conduct, Plaintiffs have been damaged in an amount as yet unknown but to be proven at Trial. Plaintiffs have no adequate remedy at law for the continuing violations of Plaintiffs' rights as set forth above.

**WHEREFORE,** Plaintiffs demand judgment against Defendants, Warrior Fitness Boot Camp, LLC; Alexander Kenneth Fell a/k/a Alex Fell, Individually; Ruben Dario Belliard a/k/a Ruben Belliard, Individually; Jennifer J. Lee, Individually; and Nancy Baynard, Individually, jointly and severally for:

> a. Injunctive relief, enjoining the Defendants from directly and/or indirectly contacting Plaintiffs' clients, misappropriating Plaintiffs' trade secrets and infringing on Plaintiffs' trade dress;
>
> b. Equitable relief demanding the immediate return of Plaintiffs' property wrongfully converted by Defendants;
>
> c. Money damages in the millions of dollars, the amount of which to be determined by a jury of Plaintiffs' peers;
>
> d. Consequential damages;
>
> e. Incidental damages;

    f.  Punitive damages;

    g.  Reasonable attorney's fees, filing fees, costs of suit; and

    h.  Any further relief which the Court may deem just and proper.

## TENTH COUNT
### (Breach of Contract, Breach of Restrictive Covenant, Breach of Confidentiality and Non-Competition Agreement)

159. Plaintiffs repeat, reiterate and re-allege all of the allegations contained in the Statement

of Facts, First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth and Ninth Counts

above as if fully set forth at length herein.

160. Defendants, Belliard and Fell, were salaried employees for Pure Power.

161. Defendant, Belliard, was employed with Pure Power as a D.I. for approximately four

(4) years.

162. Defendant, Fell, was employed with Pure Power as a D.I. for approximately three (3)

years.

163. Defendants, Belliard and Fell, signed confidentiality and non-competition agreements

on September 26, 2006 with Pure Power.

164. The Commitment to Full Effort Sections of the Agreement specifically states the

following:

> You agree that during the period of your employment you shall devote
> your skills and best efforts to the Company; you shall work to further the
> best interests of the Company; and you shall not do anything to undermine
> or disparage the reputation of the Company or do anything that is
> otherwise detrimental to the Company. You shall not, directly or
> indirectly, assist any competitors of the Company while you are employed
> by the Company.

165. The Confidential Information Section of the Agreement specifically states the following:

> You shall not disclose, either orally or in writing, to anyone outside the Company any confidential or commercially sensitive information made known to you or acquired by you in the course of your employment, including but not limited to all such information relating to marketing or strategic plans, products and/or services under development, suppliers, customers, inventions, discoveries, improvements, methods, processes, know-how, trade secrets, pricing methods, personnel information and any other information that, if disclosed, might be profitable to a competitor or other third party or detrimental to the Company.

166. The Intellectual Property Section of the Agreement specifically states the following:

> (a)    You acknowledge that the Company's PURE POWER BOOT CAMP obstacle-confidence courses and related environments, and the marketing thereof, embody and/or reflect inventions, discoveries, concepts, ideas, developments, improvements, methods, processes, know-how, trade secrets, designs, trademarks (including but not limited to the marks PURE POWER and PURE POWER BOOT CAMP), trade dress, textual and graphic material, and a distinctive overall look and feel (collectively, "Intellectual Property"). You agree that all such Intellectual Property, regardless of whether or not it is capable of patent, trademark, trade dress, trade secret or copyright protection, is exclusively owned by the Company. You shall not, during the course of your employment or at any time thereafter, challenge the Company's ownership of any Intellectual Property or the validity or enforceability thereof, nor shall you use any Intellectual Property in any competing business, or in any other way without the Company's express written permission, during or after your employment with the Company.

> (b)    You further agree that all Intellectual Property that you may conceive, develop, create or reduce to tangible form while you are employed by the Company that relates in any way to the business of the Company or that results from or is suggested by work that you do for the Company is and shall be exclusively owned by the Company. You hereby irrevocably assign to the Company all right, title and interest that you may have in and to any and all Intellectual Property. You agree that, during and after your employment with the Company, you shall execute documents of assignment or such other documents as may be necessary to effectuate the assignment set forth herein and to confirm or maintain the Company's ownership of any Intellectual Property, and you shall otherwise reasonably

cooperate with the Company in obtaining, maintaining and enforcing its rights in and to the Intellectual Property.

167.  The Non-Compete Section of the Agreements specifically states the following:

"You agree that, during the term of your employment and for ten (10) years thereafter:

(a)     you shall not, and shall not assist any third party to, conduct any business or be employed by any business that competes directly with the Company. A business that competes directly with the Company shall include, but shall not be limited to, any physical exercise program, confidence program or gym: (i) that uses obstacle courses; (ii) that uses methods or exercises derived from military training; (iii) that uses a military theme in any way; or (iv) that employs the term "boot camp" in the name or description of the program or gym;

(b)     you shall not, and shall not assist any third party to, hire any employee of the Company or seek to persuade any employee of the Company to discontinue employment with the Company or to become employed by or otherwise engaged in any business that competes directly with the Company; and

(c)     you shall not, and shall not assist any third party to, solicit any client or customer of the Company to discontinue his or her use of the Company's products and services or to use the competing products or services of another business."

168.  The General Provisions Section of the Agreement specifically states the following:

"This Agreement shall continue in effect after the termination of your employment by the Company and shall be binding upon and inure to the benefit of both parties and their respective successors, assigns and representatives. You hereby represent that you have read and understand all of the provisions of this Agreement and you agree that the provisions of this Agreement are reasonable and necessary for the protection of the business and goodwill of the Company and the Company's Intellectual Property. It is the intent of the parties hereto that if in the opinion of any court of competent jurisdiction any provision set forth in this Agreement is not reasonable and by reason thereof is not enforceable, such provision shall be modified to the extent necessary to render it enforceable to the maximum extent allowed by applicable law, and the validity, legality and enforceability of the remainder of the Agreement shall not in any way be affected or impaired thereby. This Agreement sets forth the entire

agreement between the parties with respect to its subject matter and supersedes all prior discussions, agreements and understandings concerning the subject matter hereof. This Agreement may be amended only by an instrument in writing signed by both parties. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to the conflict of laws provisions thereof. You agree to accept the exclusive jurisdiction and venue of the courts of the State of New York, and the federal district courts situated in New York, New York for the adjudication of any dispute, controversy or claim arising in connection with or related to this Agreement."

169.  With knowledge of said contracts, the terms and conditions agreed to therein, and based upon the foregoing Statement of Facts and Counts, Defendants, Belliard and Fell, maliciously, willfully and without justification breached every Section of the Agreement by creating Warrior Fitness and collectively conspiring to steal Pure Power's clients, corporate/business documents, proprietary and confidential information, trade secrets, and trade dress from Pure Power.

170.  Belliard and Fell, directly and indirectly, continue to maliciously, willfully and without justification or excuse, interfere with Pure Power's current clients and current employees, namely Nicio Evertz, a D.I.

171.  Due to the Defendants' willful and malicious interference, Pure Power has lost clients and Evertz may soon be pirated and force Pure Power to pay other employees substantially higher salaries to prevent them from joining Warrior Fitness.

172.  As a result of the foregoing wrongful conduct, Plaintiffs have been damaged in an amount as yet unknown, but to be proven at Trial. Plaintiffs have no adequate remedy at law for the continuing violations of its rights as set forth above.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Warrior Fitness Boot Camp, LLC; Alexander Kenneth Fell a/k/a Alex Fell, Individually; Ruben Dario Belliard a/k/a Ruben Belliard, Individually; Jennifer J. Lee, Individually; and Nancy Baynard, Individually, jointly and severally for:

    a.    Injunctive relief, enjoining the Defendants from directly and/or indirectly contacting Plaintiffs' clients, misappropriating Plaintiffs' trade secrets and infringing on Plaintiffs' trade dress;

    b.    Equitable relief demanding the immediate return of Plaintiffs' property wrongfully converted by Defendants;

    c.    Money damages in the millions of dollars, the amount of which to be determined by a jury of Plaintiffs' peers;

    d.    Consequential damages;

    e.    Incidental damages;

    f.    Punitive damages;

    g.    Reasonable attorney's fees, filing fees, costs of suit; and

    h.    Any further relief which the Court may deem just and proper.

### ELEVENTH COUNT
### (Breach of Good Faith and Fair Dealing)

173. Plaintiffs repeat, reiterate and re-allege all of the allegations contained in the Statement of Facts, First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Counts above as if fully set forth at length herein.

174. Every contract in the State of New York contains an implied covenant of good faith and fair dealing.

175. Defendants, Belliard and Fell, signed confidentiality and non-competition agreements on September 26, 2006 with Pure Power.

176. Defendants breached the implied covenant by failing to conduct themselves in good faith and in failing to carry out their contractual obligations to Pure Power.

177. As a result of the foregoing, Plaintiffs have incurred damages to an extent not yet ascertained.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Warrior Fitness Boot Camp, LLC; Alexander Kenneth Fell a/k/a Alex Fell, Individually; Ruben Dario Belliard a/k/a Ruben Belliard, Individually; Jennifer J. Lee, Individually; and Nancy Baynard, Individually, jointly and severally for:

    a. Injunctive relief, enjoining the Defendants from directly and/or indirectly contacting Plaintiffs' clients, misappropriating Plaintiffs' trade secrets and infringing on Plaintiffs' trade dress;

    b. Equitable relief demanding the immediate return of Plaintiffs' property wrongfully converted by Defendants;

    c. Money damages in the millions of dollars, the amount of which to be determined by a jury of Plaintiffs' peers;

    d. Consequential damages;

    e. Incidental damages;

    f. Punitive damages;

    g. Reasonable attorney's fees, filing fees, costs of suit; and

    h. Any further relief which the Court may deem just and proper.

34

## TWELFTH COUNT
### (Fraud and Misrepresentation)

178. Plaintiffs repeat, reiterate and re-allege all of the allegations contained in the Statement of Facts, First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Counts above as if fully set forth at length herein.

179. For approximately the past nine (9) months, since July 2007, the Defendants posed as loyal employees and clients and solicited, manipulated, and stole Plaintiffs' clients with the intent to deceive and injure Plaintiffs, and with the intent to economically benefit the Defendants.

180. Defendants have stolen Pure Power's intellectual property, client list, trade secrets, trade dress, business/corporate documents, and other confidential, secret and proprietary information with the intent to deceive and injure Plaintiffs, and with the intent to economically benefit the Defendants.

181. The Plaintiffs detrimentally relied upon the Defendants' misrepresentations to Plaintiffs' detriment.

182. As a result of the Defendants fraud and misrepresentations aforementioned, the Plaintiffs have incurred damages to an extent not yet ascertained.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Warrior Fitness Boot Camp, LLC; Alexander Kenneth Fell a/k/a Alex Fell, Individually; Ruben Dario Belliard a/k/a Ruben Belliard, Individually; Jennifer J. Lee, Individually; and Nancy Baynard, Individually, jointly and severally for:

      a.  Injunctive relief, enjoining the Defendants from directly and/or indirectly contacting Plaintiffs' clients, misappropriating Plaintiffs' trade secrets and infringing on Plaintiffs' trade dress;

35

b. Equitable relief demanding the immediate return of Plaintiffs' property wrongfully converted by Defendants;

c. Money damages in the millions of dollars, the amount of which to be determined by a jury of Plaintiffs' peers;

d. Consequential damages;

e. Incidental damages;

f. Punitive damages;

g. Reasonable attorney's fees, filing fees, costs of suit; and

h. Any further relief which the Court may deem just and proper.

## THIRTEENTH COUNT
### (Breach of Fiduciary Duty)

183. Plaintiffs repeat, reiterate and re-allege all of the allegations contained in the Statement of Facts, First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and Twelfth Counts above as if fully set forth at length herein.

184. By the acts alleged above, Defendants, Belliard and Fell, have breached their fiduciary duty to Plaintiffs. Defendants, Belliard and Fell, purloined protected information from Plaintiffs' files while still employed by Plaintiffs for the sole purpose of effecting an advantage in competing with Plaintiffs immediately upon their conspiracy and decision to commence an indoor obstacle/confidence boot camp, namely, Warrior Fitness.

185. As a result of the foregoing wrongful conduct, Plaintiffs have been and will be deprived of substantial sales in an amount as yet unknown but to be proven at Trial. Plaintiffs have no adequate remedy at law for the continuing violations of its rights as set forth above.

36

**WHEREFORE,** Plaintiffs demand judgment against Defendants, Warrior Fitness Boot Camp, LLC; Alexander Kenneth Fell a/k/a Alex Fell, Individually; Ruben Dario Belliard a/k/a Ruben Belliard, Individually; Jennifer J. Lee, Individually; and Nancy Baynard, Individually, jointly and severally for:

    a. Injunctive relief, enjoining the Defendants from directly and/or indirectly contacting Plaintiffs' clients, misappropriating Plaintiffs' trade secrets and infringing on Plaintiffs' trade dress;

    b. Equitable relief demanding the immediate return of Plaintiffs' property wrongfully converted by Defendants;

    c. Money damages in the millions of dollars, the amount of which to be determined by a jury of Plaintiffs' peers;

    d. Consequential damages;

    e. Incidental damages;

    f. Punitive damages;

    g. Reasonable attorney's fees, filing fees, costs of suit; and

    h. Any further relief which the Court may deem just and proper.

### FOURTEENTH COUNT
#### (Trade Dress Infringement, Violation of 15 U.S.C. §1125 and Lanham Act §43)

186. Plaintiffs repeat, reiterate and re-allege all of the allegations contained in the Statement of Facts, First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, and Thirteenth Counts above as if fully set forth at length herein.

187. Defendants solicited, manipulated, and stole Plaintiffs' clients with the intent to deceive and injure Plaintiffs, and with the intent to economically benefit the Defendants.

37

188. Defendants stole the Pure Power client accounts, Plaintiffs' information, client files and client files with the intent to deceive and injure Plaintiffs, and with the intent to economically benefit the Defendants.

189. Defendants stole Plaintiffs' intellectual property, client list, trade secrets, trade dress, business/corporate documents, and other confidential, secret and proprietary information with the intent to deceive and injure Plaintiffs, and with the intent to economically benefit the Defendants.

190. Defendants misappropriated Plaintiffs' trade secrets and trade dress with the intent to deceive and injure Plaintiffs, and with the intent to economically benefit the Defendants.

191. As a result of the foregoing, Plaintiffs have incurred damages to an extent not yet ascertained.

**WHEREFORE,** Plaintiffs demand judgment against Defendants, Warrior Fitness Boot Camp, LLC; Alexander Kenneth Fell a/k/a Alex Fell, Individually; Ruben Dario Belliard a/k/a Ruben Belliard, Individually; Jennifer J. Lee, Individually; and Nancy Baynard, Individually, jointly and severally for:

    a. Injunctive relief, enjoining the Defendants from directly and/or indirectly contacting Plaintiffs' clients, misappropriating Plaintiffs' trade secrets and infringing on Plaintiffs' trade dress;

    b. Equitable relief demanding the immediate return of Plaintiffs' property wrongfully converted by Defendants;

    c. Money damages in the millions of dollars, the amount of which to be determined by a jury of Plaintiffs' peers;

    d.  Consequential damages;

    e.  Incidental damages;

    f.  Punitive damages;

    g.  Treble damages;

    h.  Reasonable attorney's fees, filing fees, costs of suit; and

    i.  Any further relief which the Court may deem just and proper.

Dated: Staten Island, New York
      May 5, 2008

                    CALCAGNO & ASSOCIATES
                    Attorneys At Law, LLC
                    Attorneys For Plaintiffs

BY: ANDREW JOHN CALCAGNO
                    *Main Office*
                    213 South Avenue East
                    Cranford, NJ 07016
                    (908) 272-7300

                    *Satellite Office*
                    404 Manor Road
                    Staten Island, New York 10314
                    (718) 815-0200

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

PURE POWER BOOT CAMP, INC., PURE    :
POWER BOOT CAMP FRANCHISING    :
CORPORATION, PURE POWER BOOT    :    08 CIV. 4810 (JGK)(THK)
CAMP JERICHO INC., and    :
LAUREN BRENNER,    :
   :
                     **Plaintiffs,**    :    **FIRST AMENDED COMPLAINT**
         **-against-**    :
   :
WARRIOR FITNESS BOOT CAMP, LLC,    :
ALEXANDER KENNETH FELL,    :
RUBEN DARIO BELLIARD,    :
JENNIFER J. LEE,  and NANCY BAYNARD,    :
   :
                     **Defendants.**    :

-----------------------------------------------------------------x

Plaintiffs Pure Power Boot Camp, Inc., Pure Power Boot Camp Franchising Corporation,

Pure Power Boot Camp Jericho Inc., and Lauren Brenner, by their attorneys, Mintz & Gold LLP,

as and for their First Amended Complaint, allege as follows:

## INTRODUCTION

1.      This action involves the blatant, wholesale theft of a business's concept,

methodology, look and feel, and proprietary information by two former employees who had no

prior experience in the industry before working for Plaintiffs.  Plaintiff Pure Power Boot Camp

("Pure Power") is a gym facility utilizing a unique philosophy, approach, training method, with a

distinctive and recognizable look and feel, that was first developed in 2003 by Plaintiff Lauren

Brenner ("Brenner").  Pure Power is the only indoor obstacle/confidence course in the United

States designed to train civilians in a military-style setting, but with positive reinforcement.

2.      Brenner's concept has become wildly popular and she has appeared on a myriad of media outlets including FOX, CNN, MSNBC, WB11 and ABC, that have showcased her and her training regimen. In fact, Brenner was the fitness contributor on a weekly basis for NBC's Today Show for seven months, and has been the celebrity fitness expert in over twenty-two reality shows on television. As a result of the publicity she received, as well as the unique aspects of Brenner's concept and look and feel of her facility, Pure Power has become synonymous with the concept of a military-style, obstacle course training center.

3.      Brenner's ideas, methods and facility configuration have become so popular and widely acknowledged, that she is licensed to franchise Pure Power in over forty-six states, and has been approached by numerous venture capitalists interested in expanding the business.

4.      Unfortunately, two of her employees, ex-Marines who were taught by Brenner how to train civilians in her methodology, decided to unfairly compete with Pure Power. Although Brenner welcomes fair competition, the two ex-Marines -- who had no prior training in the fitness industry – plotted to set up a competing facility while still employed by Pure Power that would copy all of Brenner's concepts, methodologies and trade dress. Apparently egged on by one of their girlfriends, the two ex-Marines broke into Brenner's private office, took Pure Power's computerized client list, business plan, operation manual, and start-up manual, and even stole a portion of Brenner's personal book transcript. Not satisfied with misappropriating this proprietary and confidential information, one of the employees went so far as to destroy a copy of the employment agreements that the ex-Marine defendants had signed.

5.      While still working for Pure Power, Defendants plotted to unfairly compete with Pure Power. They purposely alienated Pure Power's customers to Brenner, and constantly lied to Brenner about their future plans. One of the Defendants even made up a story about going to

2

work for a family construction business in order to deceive Brenner. In addition, the two ex-Marines surreptitiously had their girlfriends pose as Pure Power clients in order to denigrate Brenner and solicit customers to the competing business. The Defendants then opened their own competing business, Defendant Warrior Fitness Boot Camp ("Warrior Fitness"), a mere few blocks away from Pure Power. Not only is Warrior Fitness a blatant copy of Pure Power, but the Defendants use Pure Power and Brenner's proprietary and confidential information to solicit and unfairly compete with Pure Power.

6.      Plaintiffs now bring this action alleging breach of the employment agreements, trade-dress infringement, copyright infringement, defamation, unjust enrichment, breach of the duty of loyalty, and unfair competition. Plaintiffs seek damages, as well as injunctive relief.

## THE PARTIES

7.      Plaintiff Pure Power is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 38 West 21st Street, New York, New York 10010.

8.      Plaintiff Pure Power Boot Camp Franchising Corporation ("Pure Power Franchising") is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 38 West 21st Street, New York, New York 10010. Brenner is the president and founder of Pure Power Franchising.

9.      Plaintiff Pure Power Boot Camp Jericho, Inc. ("Pure Power Jericho") is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 50 S. Service Road, Jericho, New York 11753. Pure Power Jericho, which was incorporated on November 29, 2007, and has been open for business since February 25,

3

2008, is the second boot camp facility operating on the Pure Power model that Brenner created. Brenner is the president and founder of Pure Power Jericho.

10.     Plaintiff Brenner is a citizen of the State of New York residing in the County and State of New York.

11.     Upon information and belief, defendant Warrior Fitness is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 29 West 35th Street, 3rd Floor, New York, New York 10001. Upon further information and belief, Warrior was incorporated on February 28, 2008. Warrior Fitness, which operates an indoor obstacle/confidence course, opened for business in or about May, 2008.

12.     Upon information and belief, the individual defendant Alexander Kenneth Fell ("Fell") resides at 3205 Oxford Avenue, Apt. 8, Bronx, New York 10463. Fell is a former employee of Pure Power and, upon information and belief, is a co-owner and co-CEO of Warrior Fitness.

13.     Upon information and belief, the individual defendant Ruben Dario Belliard ("Belliard") resides at 201 West 83rd Street, Apt. 1D, New York, New York 10024. Belliard is a former employee of Pure Power and, upon information and belief, is a co-owner and co-CEO of Warrior Fitness.

14.     Upon information and belief, the individual defendant Jennifer J. Lee ("Lee") resides at 55 West 26th Street, Apt. 11A, New York, New York 10010. Lee, who was and/or still is Fell's girlfriend, became a client of Pure Power on or about March 13, 2006 and left on March 28, 2008. Upon information and belief, Lee is now a co-owner and co-CEO of Warrior Fitness.

4

15.    Upon information and belief, the individual defendant Nancy Baynard ("Baynard") resides at 201 West 83rd Street, Apt. 1D, New York, New York 10024. Baynard who was and/or still is Belliard's girlfriend, is a former client of Pure Power.

## JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, as this action arises under the laws of the United States. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1338(a) and (b), as this action arises under Acts of Congress relating to copyrights, trademarks and unfair competition. Finally, this Court has subject matter jurisdiction over the non-federal claims pursuant to 29 U.S.C. §1367(a), as those claims form part of the same case or controversy as the claims based on the laws of the United States.

17.    Venue lies in this District pursuant to 28 U.S.C. §1391(b).

## DEVELOPMENT OF PURE POWER

18.    Brenner, a Wall Street trader and lifelong athlete, was moved by the events of September 11, 2001, to create a facility that would instill in others the values of accountability and respect. Wishing to combine her interest in sports, entertainment and business, Brenner developed a plan for the creation of an indoor obstacle/confidence course boot camp. She trademarked the names "Pure Power Boot Camp" and "Train Military Style" on or about April 19, 2004.

19.    After investing months of research and hundreds of thousands of dollars, Brenner devised the Pure Power concept. In November 2003, she found a location in Chelsea and designed an indoor facility containing twelve obstacles which could be used in different ways depending on the user's fitness level. The obstacles include monkey bars, barbed wire crawl,

5

high hurdles, an intensity wall, a traverse wall, a cargo net, a rope climb and a tire run, as well as

obstacles entitled "swing to beam," "commando crawl" and "belly robbers" (collectively, the

"Equipment"). Brenner invited eight Marines who had just returned from Iraq to test the

obstacle/confidence course and received a very favorable response. While there are other gyms

that styled themselves as "boot camps," Pure Power was the first, and upon information and

belief, the only facility employing an indoor obstacle course combined with a military style and

positive reinforcement.

      20.     In addition to the Equipment at the facility, Brenner installed several design

features that were intended to convey the distinctive look and feel of a military training facility

(the "Design Features"). The Design Features include walls that are covered with green

camouflage netting, changing rooms that are World War II tents, flooring that is bordered by

military-looking sandbags, and a flooring surface of the obstacle course that is a crushed-rubber,

recycled surface that has the look and feel of dirt. Eleven standing pillars stenciled with

principles of leadership are also part of the Design Features. Finally, individuals entering the

Pure Power facility are greeted with a life-size statue of a screaming marine carrying a machine

gun. The Equipment and the Design Features are referred to as "Pure Power's Trade Dress."

Pure Power's Trade Dress gives the facility a distinctive appearance and a unique look and feel.

      21.     In addition to the Trade Dress, there are other unique aspects of the Pure Power

concept developed by Brenner. For example, Pure Power's trainers are called "drill instructors"

("DIs) and are all former soldiers who served in combat. The trainers are given extensive

training in fitness instruction and are helped to obtain certification as fitness instructors, enabling

them to develop meaningful careers in the industry.

22. Pure Power clients are called "recruits" and are referred to only with their last names. They wear standard-issue military fatigues and dog tags while in class. All recruits must sign a "recruit contract" and "recruit waiver," and all are give Pure Power Boot Camp Rules.

23. Recruits sign up for "tours of duty" consisting of hourly sessions several times a week over a six- or eight-week period. Pure Power also has a "weekend warrior" program for clients called "weekend reserves," consisting of two-hour sessions on Saturdays and Sundays. Recruits are assigned to 16-member "platoons" with training programs designed to suit the recruits' personal fitness levels. All programs are based on military-style regimens.

24. In order to protect its interests, on or about February 2, 2006, Pure Power filed for trade dress protection for the design of the facility, the terms used in the facility and the indoor obstacle/confidence course used in the facility. Pure Power has been informed that the United States Patent and Trademark Office will approve the application to register Pure Power's Trade Dress on or about November 2, 2008, the fifth year anniversary of the first public use of Pure Power's Trade Dress.

25. Once it opened its doors to the public after extensive testing and training on February 4, 2004, Pure Power was an instant success. The facility and Brenner received considerable favorable publicity through various newspapers, magazines and television shows. For example, Brenner became the fitness contributor on NBC's Today Show. Brenner was designated the "Number One Entrepreneur" on CNN's Anderson Cooper's show On The Rise. She has appeared on a number of other networks and has been the celebrity fitness expert in over twenty-two reality shows on television. As a result of this publicity and its status as the nation's only indoor obstacle/confidence course, Pure Power now has a glowing national and even international reputation, and is recognized by the public as a distinctive type of exercise facility.

7

26.     Over the nearly five years of its existence, Pure Power has attracted
approximately 1,730 clients. The facility had a client renewal rate of approximately 94%, an
extremely high rate for the industry.

27.     As part of the Pure Power concept developed by Brenner, Pure Power keeps a
very detailed list of its clients that contains proprietary information not available publicly (the
"Client List"). The Client List is stored through a web-based program entitled Mybody.com.
Pure Power paid approximately $40,000 to a computer consultant to adapt this program to the
particular needs of Pure Power's business.

28.     The information on Pure Power's Client List is not public knowledge and is not
readily obtainable. In addition to the names of the clients, the Client List contains their credit
card information, addresses, phone numbers, e-mail addresses, birthdates, weights, heights,
fitness levels, and preferences. This information is not available through any public sources.
Upon information and belief, Defendants obtained the Client List while still employed by Pure
Power by breaking into Brenner's private office and accessing her computer. The pricing
structure and class scheduling developed by Brenner is also part of the Pure Power concept, and
gives Pure Power a competitive advantage.

29.     As a result of Pure Power's success, Brenner began to develop plans for
franchising the Pure Power concept in or about 2006. To implement the franchising plan, she
retained a consultant who helped her to create a "start-up manual," an "operations manual" and a
business plan (collectively, these three documents, the Client List, the pricing structure, and the
class scheduling structure are referred to as the "Pure Power Proprietary Information"). Pure
Power spent in excess of $150,000 on the development of the three highly detailed and

8

comprehensive business documents. The Pure Power Proprietary Information gives Pure Power
a competitive advantage.

30.     In 2007, Brenner began promoting the franchise concept, generating additional
business for Pure Power and finalizing her plan to open new facilities. To date, Brenner has
received over two hundred inquiries from prospective franchisees.

31.     Additionally, she worked toward the establishment of a second facility on Long
Island, i.e., Pure Power Jericho, which officially opened on February 25, 2008. Brenner had
hosted a grand opening party on February 7, 2008.

### DEFENDANT FELL'S AND BELLIARD'S EMPLOYMENT WITH PURE POWER

32.     Belliard was hired in or about August, 2004.

33.     Fell was hired by Pure Power in or about July, 2005.

34.     At the time they were hired, Belliard and Fell knew nothing about the fitness
industry. Pure Power invested substantial time and money in training them and obtaining fitness
certifications for them. As a result of the training that Pure Power sponsored, Belliard and Fell
obtained the credentials they needed to commence careers as fitness instructors with the ability to
earn far more than they could have earned with the skills they previously possessed. Moreover,
the skills necessary to be a successful trainer for Pure Power are not learned in the United States
military. Indeed, as members of the Marine Corp, Fell and Belliard were exposed to training
methods diametrically opposed to the methods of Pure Power. Brenner and Pure Power spent
substantial time and resources teaching Fell and Belliard the Pure Power methodology of training
and encouraging civilian clients through, among other things, positive reinforcement.

35.     Ultimately, Fell and Belliard became DIs and trusted Pure Power employees.   As
a result, they were given substantial responsibility to work closely with Pure Power's clients to

9

train, motivate and inspire. Thus, Belliard and Fell were placed in a position of developing close

relationships and trust with the clients.

36.     In 2006, at the instruction of its franchise consultant, Pure Power required all of

its employees to sign employment agreements that contained confidentiality and non-compete

clauses. Pure Power made signing the employment agreements a condition of continuing to be

employed by Pure Power, because Brenner and Pure Power were exploring the establishment of

franchises, and confidentiality was required by those interested in investing in the franchise

concept.

37.     With respect to the duty of loyalty, the employment agreement that both Belliard

and Fell signed, (the "Employment Agreement") stated as follows:

> You agree that during the period of your employment you shall devote
> your skills and best efforts to the Company; you shall work to further the
> best interests of the Company; and you shall not do anything to undermine
> or disparage the reputation of the Company or do anything that is
> otherwise detrimental to the Company. You shall not, directly or
> indirectly, assist any competitors of the Company while you are employed
> by the Company (the "Loyalty Clause").

38.     With respect to the issue of confidentiality, the Employment Agreement stated as

follows:

> You shall not disclose, either orally or in writing, to anyone outside the
> Company any confidential or commercially sensitive information made
> known to you or acquired by you in the course of your employment,
> including but not limited to all such information relating to marketing or
> strategic plans, products and/or services under development, suppliers,
> customers, inventions, discoveries, improvements, methods, processes,
> know-how, trade secrets, pricing methods, personnel information and any
> other information that, if disclosed, might be profitable to a competitor or
> other third part pr detrimental to the Company (the "Confidentiality
> Clause").

39.     With respect to the issue of intellectual property, the Employment Agreement

stated as follows:

(a)     You acknowledge that the Company's PURE POWER BOOT
CAMP  obstacle-confidence courses and related environments and the
marketing thereof, embody and/or reflect inventions, discoveries,
concepts, ideas, developments, improvements, methods, processes, know-
how, trade secrets, designs, trademarks (including, but not limited to the
marks PURE  POWER and PURE POWER BOOT CAMP), trade dress,
textual and graphic material, and a distinctive overall look and feel
(collectively, "Intellectual Property"). You agree that such Intellectual
Property, regardless of whether or not it is capable of patent, trademark,
trade dress, trade secret or copyright protection, is exclusively owned by
the Company.  You shall not during the course of your employment or at
any time thereafter challenge the Company's ownership of any Intellectual
Property or the validity or enforceability thereof, nor shall you use any
Intellectual Property in any competing business, or in any other way
without the Company's express written permissions, during or after your
employment with the Company (the "Intellectual Property Clause").

40.     With respect to competition from other businesses, the Employment Agreement

stated as follows:

(a)     [Y]ou shall not, and shall not assist any third party to conduct any
business or be employed by any business that competes directly with the
Company.  A business that competes directly with the Company includes,
but shall not be limited to, any physical exercise program, confidence
program or gym: (i) that uses obstacle courses; (ii) that uses methods or
exercises derived from military training; (iii) that uses a military theme in
any way; or (iv) that employs the term "boot camp" in the name or
description of the program or gym;

(b)     [Y]ou shall not, and shall not assist any third party to, hire any
employee of the Company or seek to persuade any employee of the
Company to discontinue employment with the company or to become
employed by or otherwise engaged in any business that competes directly
with the Company; and

(c)     [Y]ou shall not, and shall not assist any third party to, solicit any
client or customer of the Company to discontinue his or her use of the
Company's products and services or to use the competing products or
services of another business (the "Non-compete Clause").

41.     The Employment Agreement also stated that "[t]his Agreement shall continue in

effect after the termination of your employment with the Company . . ." (the "General Clause").

The General Clauses of the agreement further provided that "if in the opinion of an court of

11

competent jurisdiction any provision set forth in this Agreement is not reasonable any by reason

thereof is no enforceable, such provision shall be modified to the extent necessary to render it

enforceable to the maximum extent allowed by applicable law, and the validity, legality and

enforceability of the remainder of the Agreement shall not in any way be affected or impaired

thereby." Finally, the contracts were to be "governed by and construed in accordance with the

laws of the State of New York."

### DEFENDANTS' PLAN TO OPEN A COMPETING BUSINESS

42.     Even though Belliard and Fell owed their entire careers as trainers to Brenner and

the opportunities Pure Power had provided to them, they decided to open their own competing

facility at the apparent urging of Fell's girlfriend, defendant Lee.

43.     Rather than merely compete with Pure Power, the Defendants decided to engage

in wholesale theft of Pure Power's business, while at the same time engage in a number of

deceptive acts.

44.     For example, Pure Power has a well-established policy against DIs dating

customers. This policy was well known to Belliard and Fell. Thus, Belliard and Fell lied to

Brenner about their respective relationships with two clients, defendants Lee and Baynard.

45.     Not only did Belliard and Fell lie to Brenner about their girlfriends, these ex-

Marines surreptitiously had Lee and Baynard denigrate Pure Power and Brenner, in order to

solicit and encourage clients to leave Pure Power, and sign up at the new facility they were

secretly planning to open.

46.     In addition, Defendant Lee defamed Brenner. Lee told at least one customer that

Brenner hates homosexuals and told at least three customers that Brenner treats all of her

employees like garbage, fires them at will, and does not pay them. These false statements were

12

made by Lee in order to harm Brenner, and to steal clients away from Brenner and Pure Power. Lee also continued to pose as a client of Pure Power even after Belliard and Fell were no longer employed by Pure Power in order to secretly solicit Pure Power's customers.

47.     Upon information and belief, Fell and Belliard took steps to set up their competing business while they were still employed by Pure Power, as evidenced by the closeness in time between Belliard's resignation and the opening of Warrior Fitness.

48.     Upon information and belief, Fell and Belliard were using Pure Power's telephones and computers to assist them in creating their competing business.

49.     In addition to using Pure Power's facilities to set up their competing business while still employed at Pure Power, Belliard and Fell lied and were insubordinate to Brenner in order to hide the fact they were planning to compete with Pure Power, and in order to harm Pure Power's business.  For example:

  a) Belliard and Fell refused to issue daily reports to Brenner intentionally creating a rift between Brenner and Pure Power's clients;

  b) Belliard and Fell refused and gave false reasons for refusing to help Brenner set up Pure Power Jericho;

  c) Belliard and Fell lied about having girlfriends that were clients;

  d) Belliard lied to Brenner about his loyalty to her, his loyalty to Pure Power, and his desire to stay on with Pure Power even after Fell's employment was terminated;

  e) Belliard and Fell lied about Pure Power not needing additional DIs, and convinced Brenner not to hire and train additional DIs which ultimately left Pure Power understaffed when Fell provoked his termination and Belliard left without giving Brenner any notice;

13

f) Belliard lied to Brenner about being "here 100%" after Fell was terminated;

g) Belliard lied about going to work for a family member when he resigned, leaving Brenner understaffed when he provided Pure Power with absolutely no notice; and

h) Fell essentially got himself fired for insubordination and belligerence.

50.     In furtherance of Defendants' plan to open a competing boot camp facility, Fell and Belliard improperly entered Brenner's office on or about March 25, 2008, and stole a number of important documents proprietary to Pure Power, including hard copies of Pure Power's operation manual, startup manual, business plan and DI employment agreements. Belliard also deleted some of these documents from Pure Power's computer.

51.     Additionally, Belliard downloaded -- from the computer in Brenner's personal office -- the names and personal information, including credit card information, of 1760 Pure Power clients. Upon information and belief, they selected 330 names of active clients from the list of 1760 that they had stolen and targeted the customers as candidates to be wooed away from Pure Power. Further, the information on the Client List they stole has enabled Defendants to obtain an unearned competitive benefit, in that they will have access to information about individual clients, including their fitness levels and preferences, that is not available to the general public, that was obtained by Pure Power in the development of its business, at great expense, and that provides Pure Power with a competitive advantage.

52.     In addition to their theft of Pure Power's Proprietary Information, defendant Belliard took and then shredded Belliard's written employment agreement with Pure Power.

53.     After purloining the documents, and deleting them from Pure Power's computer, defendants Fell and Belliard used Pure Power's Proprietary Information, including the start-up

14

manual, operations manual and business plan that Pure Power created at great expense as part of running their competing business, Warrior Fitness. In fact, Warrior Fitness uses Pure Power's concept, programs, and curriculum verbatim, changing only the titles. For example, Warrior Fitness uses the phrase "Operation Warrior" instead of "Tour of Duty," but the programs are identical. Finally, Defendants' business plan, start-up manual and brochure are also virtually identical to those of Pure Power.

54.     By stealing Pure Power's Proprietary Information and then using practically verbatim versions for defendant Warrior Fitness's business program, Defendants violated copyright laws and unfairly gained the benefit Pure Power's considerable investment in the preparation of these documents. They also avoided significant start-up costs normally associated with opening a fitness facility. Finally, Defendants' actions have hindered Plaintiffs' franchising prospects.

55.     In addition to all of the corporate documents they stole, Fell and Belliard stole a hard copy of a portion of the book Brenner had been writing (tentatively entitled "Warrior Goddess").

56.     The document that Fell and Belliard stole is irreplaceable, since it contains Brenner's extensive handwritten notes.

57.     Not content with purloining Pure Power's Proprietary Information, the Defendants also copied the entire Pure Power concept developed by Brenner. Thus, Defendants are using Pure Power's training methods, pricing structure, and the concept of an indoor obstacle/confidence course.

58.     Moreover, the Defendants have copied and infringed upon Pure Power's Trade Dress by duplicating the look and feel of Pure Power's facility.

15

59.     For example, in addition to copying the course itself, Defendants are using crushed-rubber matting for the floor identical to that of Pure Power, a set of three climbing walls, pillars with military tenets, and in essence, the Warrior Fitness facility has the same look and feel as does Pure Power's facility.

60.     The virtual similarities between the two facilities have led to confusion on the part of Pure Power's customers, and have diluted Pure Power's Trade Dress.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract Against Fell and Belliard)

61.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 60 above as if fully set forth at length herein.

62.     Belliard and Fell each executed valid and enforceable employment contracts with Pure Power entitled "Pure Power Boot Camp Employee Agreement" (the "Agreement").

63.     Belliard and Fell breached their respective Agreements in, without limitation, the following manner:

    a) Breached Paragraph 1 of the Agreement by failing to devote their skills and best efforts to Pure Power and by disparaging and undermining the reputation of Pure Power;

    b) Breached Paragraph 1 of the Agreement by assisting a competitor of Pure Power while still employed by Pure Power;

    c) Breached Paragraph 2 of the Agreement by disclosing confidential and commercially sensitive information;

    d) Breached Paragraph 3 of the Agreement by using Pure Power's Intellectual Property (as defined in the Agreement) in a competing business;

16

e)  Breached Paragraph 4 of the Agreement by competing directly with Pure Power within ten years of being employed by Pure Power; and

f)  Breached Paragraph 4 of the Agreement by soliciting Pure Power's customers.

64.  Pure Power has been damaged by Belliard and Fell's breaches.

65.  Pure Power has complied with any conditions required to bring a claim under the Agreements.

66.  By reason of the foregoing, Pure Power is entitled to an award of damages in an amount to be determined at trial, plus interest.

## SECOND CLAIM FOR RELIEF
### (Breach of the Common Law Duty of Loyalty against Belliard, Fell, Lee and Baynard)

67.  Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 66 above as if fully set forth at length herein.

68.  An employee is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties.

69.  Belliard and Fell breached the common law duty of loyalty they owed to Pure Power.

70.  Lee and Baynard knowingly and willingly participated in the breach by Belliard and Fell of Belliard and Fell's duty of loyalty owed to Pure Power.

71.  Pure Power has suffered damages by reason of the actions of Belliard, Fell, Lee and Baynard in violating and participating in the violation of the duty of loyalty.

72.  By reason of the foregoing, Pure Power is entitled to an award of damages in an amount to be determined at trial, plus interest.

17

### THIRD CLAIM FOR RELIEF
### (Unjust Enrichment against All Defendants)

73.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through

72 above as if fully set forth at length herein.

74.     Defendants have been enriched by using the materials, concepts, Proprietary

Information and Trade Dress developed at great cost by Brenner and Pure Power in Defendants'

competing facility Warrior Fitness.

75.     Defendants misappropriated the materials, concepts, Proprietary Information and

Trade Dress developed by Brenner and Pure Power without permission, justification and without

paying for them.

76.     It is against equity and good conscience to permit the Defendants to retain the

materials and concepts without compensating Brenner and Pure Power.

77.     By reason of the foregoing, Plaintiffs are entitled to an award of damages in an

amount to be determined at trial, plus interest.

### FOURTH CLAIM FOR RELIEF
### (Common Law Unfair Competition Against All Defendants)

78.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through

77 above as if fully set forth at length herein.

79.     Defendants have, in bad-faith, misappropriated the labors and expenditures of

Pure Power and are using the fruits of those labors and expenditures to unfairly compete with

Pure Power, Pure Power Franchising and Pure Power Jericho.

80.     Defendants have also misappropriated, in bad-faith, the intellectual property of

Pure Power, including without limitation, Pure Power's concepts, Trade Dress, and Proprietary

Information (collectively, the "Intellectual Property").

18

81.     Defendants' use of Pure Power's Intellectual Property is likely to cause confusion and/or deceive prospective clients as to the origin of Defendants' facility.

82.     Plaintiffs have been harmed by Defendants misappropriation and use of the labors of Brenner and Pure Power.

83.     By reason of the foregoing, Plaintiffs are entitled to an award of damages in an amount to be determined at trial, plus interest.

## FIFTH CLAIM FOR RELIEF
### (Violation of GBL §360 Against All Defendants)

84.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 83 above as if fully set forth at length herein.

85.     Defendants have in bad-faith misappropriated and used a commercial advantage belonging to Pure Power and Brenner by exploiting proprietary information and/or trade secrets.

86.     Defendants have physically taken, copied and/or are using confidential information of Brenner and Pure Power.

87.     Defendants have also diluted Pure Power's Trade Dress by blurring and/or tarnishing the Trade Dress owned and developed by Pure Power.

88.     Pure Power has no adequate remedy at law.

89.     By reason of the foregoing, Pure Power is entitled to a permanent injunction enjoining Defendants and any of them from using Pure Power's Intellectual Property, including Pure Power's Trade Dress, Proprietary Information, and from soliciting any of Pure Power's clients.

## SIXTH CLAIM FOR RELIEF
### (Statutory Trade Dress Infringement)

90.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 89 above as if fully set forth at length herein.

91.    Pure Power's Trade Dress is inherently distinctive as to the source of the product/service.

92.    Pure Power's Trade Dress is not functional, but is distinctive.

93.    The Trade Dress has acquired secondary meaning through extensive promotion, unsolicited publicity and public recognition over the course of nearly five years.

94.    Defendants have willfully copied and employed the distinctive look and feel of Pure Power in their own facility and are in violation of Section 43(a) of the Lanham Trademark Act, 15 U.S.C. §1125(a) ("Section 43(a)").

95.    There is a likelihood of confusion between source of the services being offered by Pure Power and the services being offered by Warrior Fitness.

96.    Plaintiffs have been damaged by Defendants' violation of Section 43(a).

97.    By reason of the foregoing, Plaintiffs are entitled to an injunction and an award of damages in an amount to be determined at trial, plus interest.

## SEVENTH CLAIM FOR RELIEF
### (Copyright Infringement)

98.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 97 above as if fully set forth at length herein.

99.    Pure Power is the owner of the copyright in four original works entitled "Pure Power Boot Camp Operations Manual," "Pure Power Boot Camp Start-Up Manual," "Pure

20

Power Boot Camp Corporate Business Plan," and "Pure Power Boot Camp Brochure" (the "Works").

100.    On May 9, 2008, Pure Power applied to register the Works with the Register of Copyrights of the United States of America.

101.    The work entitled Pure Power Boot Camp Brochure was registered with the Copyright Office on May 13, 2008, Reg. No. TX0006840319.

102.    The work entitled Pure Power Boot Camp Corporate Business Plan was registered with the Copyright Office on May 13, 2008, Reg. No. TX0001574597.

103.    The works entitled Pure Power Boot Camp Start-Up Manual and Operations Manual were registered with the Copyright Office on May 13, 2008, Reg. No. TX0001575489.

104.    Subsequent to May 13, 2008, Defendants made unauthorized copies of the Works, have created derivative works based on the Works, and are distributing such items to the public and to potential franchisees and others. Defendants' unauthorized copying of the Works and creation of derivative works based on the Works constitutes infringement of the Plaintiffs' exclusive rights under Section 106 of the Copyright Act, 17 U.S.C. §106. Defendants' distribution of these infringing items is causing Plaintiffs irreparable harm, and Defendants are profiting unjustly from their unlawful distribution of these infringing items.

105.    By reason of the foregoing, Plaintiffs are entitled to an injunction, an award of damages, including Defendants' profits, in an amount to be determined at trial, plus interest or statutory damages in lieu of actual damages and Defendants' profits, plus attorneys' fees.

## EIGHTH CLAIM FOR RELIEF
### (Conversion against Belliard and Fell)

106.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 105 above as if fully set forth at length herein.

21

107.    Brenner had the legal ownership of a certain transcript of a book she was writing, including handwritten notes (the "Transcript").

108.    Defendants Belliard and Fell intentionally and with moral turpitude took the Transcript from Brenner's private office, exercising unauthorized dominion over the Transcript, to the exclusion of Brenner's rights.

109.    Brenner has been damaged by Defendants' conversion of the Transcript, which contained handwritten notes that are irreplaceable.

110.    By reason of the foregoing, Brenner is entitled to an award of damages in an amount to be determined at trial, plus interest.  Brenner is also entitled to an award of punitive damages.

## NINTH CLAIM FOR RELIEF
### (Defamation against Lee)

111.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 110 above as if fully set forth at length herein.

112.    Lee told at least one client of Pure Power that Brenner hated homosexuals and treated all of her employees like garbage (the "Statement").

113.    By making the Statement, Lee exposed Brenner to hatred, contempt or aversion.

114.    Lee published the Statement to at least one client of Pure Power, and upon information and belief published the Statement to other clients or former clients of Pure Power.

115.    As a result of Lee's publishing the Statement, Brenner has suffered direct economic harm to her reputation and business interests.

116.    By reason of the foregoing, Plaintiffs are entitled to an award of damages in an amount to be determined at trial, plus interest.

22

### TENTH CLAIM FOR RELIEF
**(Tortious Interference with Prospective Economic Advantage Against All Defendants)**

117.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 116 above as if fully set forth at length herein.

118.    Plaintiffs had business relations with a number of clients and potential clients. Plaintiffs also had business relations with a number of venture capitalists who were interested in investing in Pure Power franchises.

119.    Defendants interfered with the business relations Plaintiffs had developed.

120.    Defendants acted with the sole purpose of harming Plaintiffs.

121.    Defendants used dishonest, unfair or improper means to interfere with Plaintiffs' business relations.

122.    Plaintiffs have been damaged by Defendants' interference because by copying and using Pure Power's Intellectual Property, the ability to create Pure Power Franchises has been compromised, and the value of potential franchises has diminished.

123.    Plaintiffs have also been damaged by Defendants' interference because the interference has diminished Pure Power's relations with its clients and potential clients.

124.    By reason of the foregoing, Plaintiffs are entitled to an award of damages in an amount to be determined at trial, plus interest.

### ELEVENTH CLAIM FOR RELIEF
**(Tortious Interference With Contract Against Lee and Baynard)**

125.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 124 above as if fully set forth at length herein.

126.    Pure Power had valid and enforceable employment agreements with Belliard and Fell.

127.    Upon information and belief, Defendants Lee and Baynard had knowledge of the employment agreements that Belliard and Fell had with Pure Power.

128.    Defendants Lee and Baynard intentionally induced Belliard and Fell to breach their respective employment agreements.

129.    Plaintiffs have been damaged by Lee and Baynard's intentional interference with the employment agreements.

130.    By reason of the foregoing, Plaintiffs are entitled to an award of damages in an amount to be determined at trial, plus interest.

## TWELFTH CLAIM FOR RELIEF
### (INJUNCTIVE RELIEF)

131.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 130 above as if fully set forth herein.

132.    Plaintiffs have been harmed and continue to be harmed by the actions of Defendants.

133.    While some of the harm may be quantifiable and could be compensated through an award of money damages, much of the harm suffered by Plaintiffs is not easily quantifiable and is irreparable.

134.    Plaintiffs do not have an adequate remedy at law.

135.    By reason of the foregoing, Plaintiffs are entitled to a permanent injunction enjoining the Defendants and each of them from i) using any of the Intellectual Property, Proprietary Information, Client List, the Works and the Trade Dress, ii) soliciting or servicing any of Pure Power's current or past clients for a reasonable period of time; iii) competing with Pure Power for a reasonable period of time within a reasonable geographic region; and iv) damaging and impugning Plaintiffs' reputation.

24

**WHEREFORE,** Plaintiff respectfully demands judgment as follows:

i)    On its First Claim for Relief, an award of damages in an amount to be determined at trial, plus interest;

ii)    On its Second Claim for Relief, an award of damages in an amount to be determined at trial, plus interest;

iii)    On its Third Claim for Relief, an award of damages in an amount to be determined at trial, plus interest;

iv)    On its Fourth Claim for Relief, an award of damages in an amount to be determined at trial, plus interest;

v)    On its Fifth Claim for Relief, a permanent injunction enjoining Defendants and any of them from using Pure Power's Intellectual Property, including Pure Power's Trade Dress, Proprietary Information, and from soliciting any of Pure Power's clients;

vi)    On its Sixth Claim for Relief, an injunction and an award of damages in an amount to be determined at trial, plus interest;

vii)    On its Seventh Claim for Relief, an award of damages including Defendants' profits in an amount to be determined at trial, plus interest, or statutory damages in lieu of actual damages and Defendants' profits, and attorneys fees;

viii)    On its Eighth Claim for Relief, an award of damages in an amount to be determined at trial, plus interest and punitive damages;

ix)    On its Ninth Claim for Relief, an award of damages in an amount to be determined at trial, plus interest;

25

x)    On its Tenth Claim for Relief, an award of damages in an amount to be determined at trial, plus interest;

xi)   On its Eleventh Claim for Relief, an award of damages in an amount to be determined at trial, plus interest;

xii)  On its Twelfth Claim for Relief, granting a permanent injunction enjoining the Defendants and each of them from:

> a) using any of the Intellectual Property, Proprietary Information, Client List, the Works and the Trade Dress,
>
> b) soliciting or servicing any of Pure Power's current or past clients for a reasonable period of time;
>
> c) competing with Pure Power for a reasonable period of time within a reasonable geographic region; and
>
> d) damaging and impugning Plaintiffs' reputation.

xii)  Awarding Plaintiff's reasonable their attorneys' fees, costs and disbursements;

and

xiii) Such other and further relief as the Court deems just and proper.

Dated: New York, New York

    September 19, 2008                  **MINTZ & GOLD LLP**

                                      /s/

By:   Steven G. Mintz  (SG- 5428)
      Mark S. Pomerantz (MP-9601)
      470 Park Avenue South,
      10th Floor North
      New York, NY 10016
      *Attorneys for Plaintiffs*

26