UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PURE POWER BOOT CAMP, INC., PURE POWER
BOOT CAMP FRANCHISING CORPORATION,
PURE POWER BOOT CAMP JERICHO INC., and
LAUREN BRENNER,

                 Plaintiffs,

    - against –

WARRIOR FITNESS BOOT CAMP, LLC;
ALEXANDER KENNETH FELL a/k/a ALEX FELL,
Individually; RUBEN DARIO BELLIARD
a/k/a RUBEN BELLIARD, Individually;
JENNIFER J. LEE, Individually;
and NANCY BAYNARD, Individually,

                Defendants.

**ECF Case**
**Case No. 08-cv-4810 (JGK) (THK)**

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT IN ITS ENTIRETY AND/OR FOR SUMMARY JUDGMENT

---

Daniel A. Schnapp, Esq. (DS-3484)
Carolyn D. Richmond, Esq. (CR-0993)
Eli Z. Freedberg, Esq. (EF-6854)
**FOX ROTHSCHILD LLP**
100 Park Avenue, 15th Floor
New York, NY 10017
Tel: (212) 878-7900
Fax: (212) 692-0940

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………….…………………….....i, ii, iii

PRELIMINARY STATEMENT…………………………………………………….…1

PROCEDURAL HISTORY …………………………………………………………...3

STATEMENT OF FACTS………………………………………………………….4

A.    Plaintiffs' Concept is Anything but Unique.………………………...……....4

B.    Plaintiffs' Restrictive Covenants are Unenforceable…………………………....5

C.    Plaintiffs Do Not Have Any Trade Secrets.……………...………….…….…....6

D.    Plaintiffs Do Not and Cannot Show that there is a Likelihood of Consumer Confusion……………………………………………….………...……….....7

E.    Plaintiffs Do Not Allege That Baynard and Lee Owed Any Duties to Them.…………………………………………...……….……….....……….....8

ARGUMENT

POINT I

ALL OF PLAINTIFFS' CLAIMS MUST BE DISMISSED WITH PREJUDICE………………………………….……….……...……….......9

A.    Plaintiffs Have Failed to State A Claim For Breach of Contract Against Fell and Belliard.……………………………….……..….9

B.    Plaintiffs Have Failed to State A Claim For Breach of Duty of Loyalty against Belliard, Fell, Lee and Baynard…………….….11

C.    Plaintiffs Have Failed to State A Claim For Unjust Enrichment...12

D.    Plaintiffs Have Failed to State A Claim For Unfair Competition.…………………………………………….…..12

E.    Plaintiffs Have Failed to State A Violation of NY GBL § 360.....15

F.    Plaintiffs Have Failed to State A Claim For Statutory Trade Dress Infringement………………………..………...………...………...15

1.    Plaintiffs' Purported Trade Dress is Functional…...…....15

2.    Plaintiffs Have Not Alleged Facts To Support A Claim That Their Trade Dress Acquired Secondary Meaning…………………………………….…..…....16

3.    Plaintiffs Have Not Pled Facts That Demonstrate That There Will Be a Likelihood of Confusion…………….....17

G.    Plaintiffs Have Failed to State A Claim For Copyright Infringement…………………………………….…..…….…...17

H.    Plaintiffs Have Failed to State A Claim For Conversion against Belliard and Fell……………………………....……....…….…..18

I.    Plaintiffs Have Failed to State A Claim For Defamation Against Lee……………………………………….…..…..……….…...19

J.    Plaintiffs Have Failed to State A Claim For Tortious Interference with Prospective Economic Advantage…………….…..………..21

K.    Plaintiffs Have Failed to State A Claim For Tortious Interference with Contract Against Lee and Baynard………….…...………..22

L.    Plaintiffs Have Failed to State A Claim For Injunctive Relief......22

POINT II

PLAINTIFFS HAVE FAILED TO STATE ANY CLAIMS AS TO WARRIOR……...……………………...……………………………...……......23

POINT III

THE COURT MAY CONVERT THIS MOTION TO DISMISS TO A MOTION FOR SUMMARY JUDGMENT………………….....…...…......23

CONCLUSION……………………………………………….…………..…………....24

# TABLE OF AUTHORITIES

## CASES

*AD Rendon Communications, Inc. v. Lumina Americas, Inc.*, 2007 WL 2962591
(S.D.N.Y. 2007) .................................................................................................................18

*Abercrombie v. Andrews College*, 438 F.Supp.2d 243, 275 (S.D.N.Y. 2006) .........................11

*Amodei v. New York State Chiropractic Assn.*, 160 A.D.2d 279, 280 (1st Dep't 1990) ..............20

*Apfel v. Prudential-Bache Sec., Inc.,* 81 N.Y.2d 470; 616 N.E.2d 1095; 600 N.Y.S.2d
433 (N.Y. 1993) .................................................................................................................12

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007) .................................17

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007) ...................................... 9, 14, 17-18

*Blue Tree Hotels Inc. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369
F.3d 212, 217 (2d Cir. 2004) ...........................................................................................24

*Briarpatch Ltd. L.P. v. Geisler Roberdeau, Inc.*, 148 F.Supp.2d 321, 328-329 (S.D.N.Y.
2001) ....................................................................................................................................18

*BroadVision Inc. v. GE,* 2008 U.S. Dist. Lexis 81863 (S.D.N.Y. Oct. 15, 2008) ........................18

*Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000)....................................19

*Dillion v. City of New York*, 261 A.D.2d 34, 704 N.Y.S.2d 1, 5 (1st Dep't 1999).........................19

*Duraco Prods Inc. v. Joy Plastics Enter. Ltd.*, 40 F.3d 1431 (3d Cir. 1994) ...............................16

*ENV Servs., Inc. v. Alesia,* 10 Misc.3d 1054(A), 809 N.Y.S.2d 481 (Sup.Ct. Nassau Co.
2005) ....................................................................................................................................10

*Ferreira v. Unirubio Music Publishing*, 2002 WL 1303112(S.D.N.Y. 2002) ................................9

*Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 153 (2d. Cir. 2002) ....................................20

*Geritex Corp. v. Dermarite Indus., LLC*, 910 F.Supp. 955, 966 (S.D.N.Y. 1996) .......................22

*Giant Supply Corp. v. City of New York*, 248 A.D.2d 231, 235, 670 N.Y.S.2d 29 (1st
Dep't 1998).........................................................................................................................12

*Global Network Communications v. City of New York*, 458 F.3d 150 (2d Cir. 2006)..................24

i

*Heartland Sec. Corp. v. Gerstenblatt*, 2000 WL 303274 (S.D.N.Y. 2000) ....................................9

*Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413 (1996) ..................................................22

*Laureyssens v. Idea Group Inc.*, 964 F.2d 131, 136 (2d Cir. 1992) ..............................................17

*Long Island Univ. v. Grucci For Congress, Inc.*, 10 A.D.3d 412, 781 N.Y.S.2d 148 (2d Dep't 2004) ................................................................................................................................21

*Malletier v. Dooney & Bourke, Inc.,* 2008 WL 2245814 (S.D.N.Y. 2008)....................................13

*Marketplace LaGuardia Ltd. Partnership v. Harkey Enterprises, Inc.*, 2008 WL 905188 (E.D.N.Y. 2008)..........................................................................................................................12

*Mosello v. Ali, Inc.*, 190 B.R. 165, 168 (Bankr. S.D.N.Y. 1995) ....................................................9

*Park v. Capital Cities Communications*, 181 A.D.2d 192, 195-196 (4th Dept. 2002)..................20

*Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 452 N.Y.S.2d 599 (1st Dep't 1982) ................................................................................................................................19

*Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820 (1961)..........................................................................................................................17

*Primo Enters. v. Bachner*, 148 A.D.2d 350, 351, 59 N.Y.S.2d 320, 321 (1st Dep't 1989) ..........10

*Priolo Communications, Inc. v. MCI Telecommunications Corp.*, 248 A.D.2d 453, 669 N.Y.S.2d 376 (2d Dep't 1998) .................................................................................................19

*Production Resource Group, LLC v. Oberman*, 2003 WL 22350939, at *7 (S.D.N.Y. 2003) .......................................................................................................................................22

*Prudential Secs., Inc. v. Plunkett*, 8 F.Supp.2d 514, 519 (E.D. Va. 1998)............................... 10-11

*Rinaldi v. Holt, Rinehart & Winston*, 42 N.Y.2d 369, 380 (1977) ................................................19

*Schneider Leasing Plus, Inc. v. Stallone*, 172 A.D.2d 739, 741, 569 N.Y.S.2d 126 (2d Dep't 1991) ................................................................................................................................11

*Scott, Stackrow & Co. v. Skavina*, 9 A.D.3d 805, 806, 780 N.Y.S.2d 675, 676 (3d Dep't 2004)..........................................................................................................................................10

*Shared Communication Services of ESR, Inc. v. Goldman Sachs & Co.*, 23 A.D.3d 162, 162, 803 N.Y.S.2d 512, 513 (1st Dep't 2006) ...........................................................................21

*Silipos, Inc. v. Bickel*, 2006 WL 2265055 (S.D.N.Y. 2006)...........................................................10

*Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236, 240 (2d Cir. 2002) ...................................9

*Snyder v. Sony Music Entertainment, Inc.*, 252 A.D.2d 294, 300, 684 N.Y.S.2d 235 (1st Dep't 1999) ...............................................................................................................................21

*Steinhilber v. Alphonse*, 68 N.Y.2d 283, 292 (1986).......................................................................20

*Tasso v. Platinum Guild Int'l,* 1998 U.S. Dist. Lexis 18908 at *5-6 (S.D.NY. Dec. 3 1998) ...............................................................................................................................................20

*Todd Chemical Co. v. Di Stefano,* 30 A.D.2d 879, 292 N.Y.S.2d 811 (2d Dep't 1968)...............10

*Traffix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32 (2001) ...................................15

*Two Pesos, Inc. v. Taco Cabana*, Inc. 505 U.S. 763, 769 (1992) ...................................................15

*Wait v. Beck's North America Inc.*, 241 F.Supp.2d 172, 184 (N.D.N.Y. 2003) ............................20

*Yurman Design Inc. v. PAJ, Inc.*, 262 F.3d 101, 109 (2d Cir. 2001) .............................................17

## STATE STATUTES

NY GBL § 360.....................................................................................................................................15

## FEDERAL STATUTES

15 U.S.C. § 1052(f).............................................................................................................................17

FRCP § 12(b)(6) .......................................................................................................... 1, 23-24

FRCP § 12(d) ................................................................................................................ 1, 23-24

iii

Defendants hereby move to dismiss Plaintiffs' Amended Complaint (the "Amended Complaint") in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") and/or for summary judgment pursuant to FRCP Rule 12(d).

## PRELIMINARY STATEMENT

By now this Court is well-aware of many of the details of this case.

In their relentless attempt to destroy Defendants' business, and in disregard for the integrity of the judicial process, Plaintiffs illegally hacked into Defendants' private email accounts and stole at least thirty four of Defendants' emails. Accordingly, this Court has ruled that Plaintiffs' actions violated the Stored Communications Act and that Plaintiffs could not use any of the emails they stole from Defendants as direct evidence in this case. The Court also directed Plaintiffs to return or destroy an attorney-client privileged email and so certify. To date, Plaintiffs have failed to do so.

The Court also denied Plaintiffs' Motion for Preliminary Injunction without prejudice. The Court apparently found that, despite examining Plaintiffs' initial Complaint which had far more claims and allegations than the extant Amended Complaint, and after reviewing multiple sworn affidavits and exhibits, Plaintiffs had failed to establish: (1) a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation; (2) the risk of irreparable harm; and (3) a balance of the hardships in Plaintiffs' favor.

Defendants also moved to dismiss the Plaintiffs' initial Complaint in its entirety. Instead of responding in a timely or meaningful way to Defendants' Motion to Dismiss, Plaintiffs informed the Court that they wished to amend their complaint to allege "specific clients which were lost or diverted and resulting damages" based upon information that supposedly became apparent "after the Complaint was filed." Instead of amending their Complaint to include these

1

allegations, as represented to the Court, Plaintiffs instead filed an Amended Complaint which suffers from many of the same legal infirmities that plagued Plaintiffs' initial Complaint. Although Plaintiffs prudently dropped a notable number of claims from their Complaint, including fraud, breach of fiduciary duty, theft of trade secrets, theft of trade dress, theft by deception, civil conspiracy, and breach of good faith and fair dealing, Plaintiffs did not add the represented allegations concerning "specific clients," but instead repeated many of their baseless allegations, and have piled on claims for copyright infringement and defamation.

For example, Plaintiffs still allege that they have a proprietary right in the concept of indoor obstacle courses and boot camp training techniques, this despite the fact that Plaintiffs have admitted that they copied their allegedly unique concept, design, and layout directly from the United States military, and that their application for trade dress protection was rejected.

Plaintiffs' newest claims are similarly unavailing. For example, Plaintiffs assert a claim for defamation based upon an alleged statement by Defendant Lee to at least one client of Pure Power that Plaintiff Brenner "hated homosexuals and treated all of her employees like garbage." However, these allegedly defamatory statements are non-actionable statements of opinion related only to Plaintiff Brenner's professional and ethical conduct.

Ultimately, Plaintiffs' Amended Complaint simply adds insult to injury. Plaintiffs' unscrupulous conduct and intellectually disingenuous arguments demonstrate that Plaintiffs' goal is not--and never has been--to protect any of their purported interests, but simply to extinguish any perceived competition and to vanquish their former employees--no matter the costs, or consequences.

Thus as demonstrated below, Plaintiff's Amended Complaint must not only be dismissed in its entirety since it fails to state any cause of action, but this Motion should be converted to

2

one under FRCP Rule 12(d), and Plaintiffs' case should be summarily disposed of.

## PROCEDURAL HISTORY

Plaintiffs commenced their action in the Supreme Court, State of New York, County of New York (the "New York Court") on May 5, 2008, at the same time, seeking a wide-ranging 11-point temporary restraining order ("TRO") and preliminary injunction. On May 6, 2008, the New York Court struck half of the proposed TRO. After oral argument two days later, the New York Court determined that the Plaintiffs' alleged non-compete clause was unenforceable as drafted, and then dissolved the TRO in its entirety. *See* Declaration of Daniel A. Schnapp, dated October 24, 2008, ("Schnapp Decl.") ¶ 4. During the same oral argument, Plaintiffs' attorney conceded that Plaintiffs could not stop Defendants from operating a boot-camp. Schnapp Decl., ¶ 5. The New York Court refused to restrain Defendants from opening their business. Subsequently, Defendants removed the action to this Court. Schnapp Decl. ¶ 7.

In the present federal action, Plaintiffs wrote to the Court on May 28, 2008, submitting a list of their purported client names allegedly purloined by Defendants. Schnapp Decl., ¶ 12. Although counsel for Plaintiffs requested that this information be placed under seal, counsel did not attempt to place this information under seal before first making it a public record. *Id.* In addition, Plaintiffs' owner, Lauren Brenner, has recently encouraged her clients to read her "court papers" which she stated are a "public document." *See* Schnapp Decl., ¶ 13. This contrasts sharply with Plaintiffs' allegation that these materials are confidential and proprietary.

Moreover, since the removal of this case to this Court, Plaintiffs have been found by this Court to have violated Defendants' privacy rights by violating the Stored Communications Act. The Court also denied Plaintiffs' Motion for Preliminary Injunction without prejudice to its renewal.

3

Plaintiffs' newly filed Amended Complaint fails to state a single cause of action.

## STATEMENT OF FACTS[1]

### A.    Plaintiffs' Concept is Anything but Unique

Plaintiffs operate gyms that are capitalizing on the popular fad of military style, boot camp training techniques.  As Plaintiffs repeatedly admit, their gyms are modeled after United States military training facilities, and their gyms, like the military facilities they resemble, come complete with obstacle courses and drill instructors.  In particular, Plaintiffs' owner, Lauren Brenner ("Brenner"),  stated that she visited Fort Knox and copied the layout and design of the United States' military's boot camps in designing Pure Power. *See* Schnapp Decl., ¶ 10, Ex. "D" at ¶ 11.[2]

Although Brenner's gyms closely resemble military facilities, she, unlike Defendants Fell and Belliard, never actually served in the armed forces.  Rather, in order to preserve the "authenticity" of her facility, she hired actual military personnel who were expected to train her customers as they themselves had been trained in boot camps. *See* Complaint, ¶ 21.

After opening the Manhattan facility, Plaintiffs subsequently opened Pure Power Jericho, another boot-camp style gym, in Jericho, New York. There are significant differences between Plaintiffs' two gyms. *See* Affidavit of Alexander Fell, initially submitted in opposition to Plaintiffs' Motion for Preliminary Injunction, sworn to on July 3, 2008, and annexed to the Schnapp Decl. as Exhibit "H" ("Fell Aff."), ¶ 20.

---

[1] A copy of the initial Complaint and Amended Complaint are collectively attached as Exhibit "A" to the Schnapp Decl.
[2] Lauren Brenner's affidavit submitted in support of Plaintiffs' Motion for Preliminary Injunction will be referred to as "Brenner Aff.," followed by reference to the corresponding paragraph.

For example:

- Pure Power's obstacle course has fewer obstacles than Pure Power Jericho's obstacle course. Pure Power's course starts with hurdles and is followed by a cargo net, rope swing, abdominal hurdles, walls, monkey bars, a rock wall, belly robbers, a boxing drill, an intensity wall, a tire run and finally, a rope climb. On the other hand, Pure Power Jericho's course starts with hurdles, and is followed by a ramp/slide, cargo net, rope swing, barbed wire crawl, abdominal hurdles, monkey bars, walls, rock wall, belly robbers, boxing drill, intensity wall, rope climb, hurdles and a tire run;

- Pure Power's hurdles are designed and look different than Pure Power Jericho's hurdles. For example, Pure Power Jericho has three sets of hurdles, while Pure Power has only two sets, and each gym's hurdles are located in different parts of the gym.

*Id.*

## B.    Plaintiffs' Restrictive Covenants are Unenforceable

Brenner hired Belliard in 2004 and Fell in 2005. *See* Complaint, ¶ 32-33. They both worked for Plaintiffs as "Drill Instructors." Fell and Belliard were at-will employees and could have been fired, or could have quit, at any time.

Plaintiffs allege that all of their employees were required to sign an employment agreement (the "the Purported Agreement.") *See* Complaint, ¶ 36. According to Plaintiffs, the Purported Agreement required employees not to disclose any "confidential or commercially sensitive information" that they learned during their employment. *See* Complaint, ¶ 38. The Purported Agreement, however, fails to define what information is to be considered confidential.

5

Neither the Purported Agreement, the Complaint, nor Plaintiffs, have provided a basis to support the claim that any of these documents or ideas were confidential or secret in the first place. In fact, much of this information is publicly available, distributed to prospective clients, or easily ascertainable simply by walking into Plaintiffs' gyms. Brenner herself has invited hundreds of her clients to view these documents in her office. Schnapp Decl. at ¶ 13. These documents were also submitted to this Court without first being placed under seal. Schnapp Decl. at ¶ 12.

On its face, the Purported Agreement would have prohibited anyone who signed it from disclosing the names of Plaintiffs' physical trainers to third parties even though that information was discoverable simply by entering Plaintiffs' gym. It would also prohibit the disclosure of Plaintiffs' rates to third parties even though that was discoverable to any person who approached Plaintiffs' front desk seeking membership information.

Additionally, the Purported Agreement forbids post-termination employment anywhere in the world, in any job in the fitness industry, for a period of ten years. *See* Complaint, ¶ 41. Plaintiffs have admitted that these terms of the Purported Agreement are unenforceable.

## C. **Plaintiffs Do Not Have Any Trade Secrets**

Plaintiffs claim that they possess information entitled to protection. However, what Plaintiffs claim as confidential are brochures, marketing materials, and franchise documents that are available to the public.

Indeed, Plaintiffs' owner has invited her present, and previous clients to her office to read her "court papers," which she called a "public document." Schnapp Decl. ¶ 13. By doing so, Plaintiffs have made their so-called proprietary information, including a detailed description of their trade dress, operations manual, business plan, client lists and startup manual, available to Plaintiffs' customers and to members of the public. Similarly, Plaintiffs have submitted their list

6

of client names to this Court without first ensuring that this information was placed under seal. Schnapp Decl. at ¶ 12.

**D.**     **Plaintiffs Do Not and Cannot Show that there is a Likelihood of Consumer Confusion**

Plaintiffs make a conclusory allegation that Defendants' gym resembles Plaintiffs' gyms and that consumers are likely to join Defendants' gym under the mistaken belief that it is operated by Plaintiffs. *See* Complaint, ¶¶ 81-95. Yet, Fell and Belliard designed their gym based upon their extensive and personal experiences as soldiers in the military. Fell Aff., ¶ 27. In addition, Fell and Belliard used, as a guide, materials published by the United States Marine Corps concerning the design and layout of obstacle courses. Fell Aff., ¶ 22. As a result, the Warrior obstacle course and training techniques are more faithful to military techniques than those offered by Pure Power. Fell Aff., ¶ 27.

Defendants' gym — Warrior Fitness — does not resemble Plaintiffs' gyms in any material respect. For example:

- Defendants' gym has stall bars, medicine balls, and resistance bands whereas Plaintiffs' gyms do not. On the other hand, Plaintiffs' gyms have a rock climbing wall, a belly robber obstacle, an intensity wall (tall slanted wall with a rope on it); abdominal hurdles, a cargo net, a tire run and a bob and weave rope obstacle, while Defendants' gym does not have these features. Fell Aff., ¶ 18;

- Defendants' gym is painted in red, yellow and white - - the Marine Corps' colors. Plaintiffs' gyms are painted in green, and the colors of her columns are in camouflage. Fell Aff., ¶ 18;

- Defendants' gym has no netting anywhere, while Plaintiffs' gym has netting covering her ceilings. Fell Aff., ¶ 18;

7

- Defendants' gym has changing rooms bordered by walls with cubby holes and a vanity, while Plaintiffs use large military tents as changing areas and locker rooms. Fell Aff., ¶ 18;

- The floor beneath the Defendants' obstacle course is red/dirt colored while the floor beneath Plaintiffs' obstacle course is black. Fell Aff., ¶ 18;

- Defendants' customers can wear workout clothing of their own choosing, whereas Plaintiffs' "recruits" are required to wear an olive t-shirt and camouflage pants. Fell Aff., ¶ 18.

The gyms also have different pricing points and packages, different terminology (*e.g.* Defendants calls their classes "training days" and Plaintiffs call them "sessions," Defendants call their clients "warriors" and Plaintiffs call them "recruits"), Defendants call their clients by their first names and Plaintiffs call their clients by their last names, Defendants offer two half-hour power lunch training sessions, whereas Plaintiff does not, and the gyms have different hours of operation. Fell Aff., ¶ 19.

In addition, there are many fundamental differences in appearance between Plaintiffs' two locations that mitigate against a finding of brand recognition by consumers. Fell Aff., ¶ 20.

### E.    Plaintiffs Do Not Allege That Baynard and Lee Owed Any Duties to Them

Defendants Baynard and Lee are former members of Plaintiffs' gym. *See* Complaint, ¶ 14-15. Plaintiffs do not allege that either Baynard or Lee were ever employed by Plaintiffs or that they ever owed any special duties to Plaintiffs. Plaintiffs do not allege that Baynard or Lee entered into any contract or agreement with Plaintiffs, other than their membership agreements.

8

### ARGUMENT

### POINT I

### ALL OF PLAINTIFFS' CLAIMS MUST BE DISMISSED WITH PREJUDICE

This Court need accept only well-pleaded allegations and not conclusory allegations or "sweeping and unwarranted averments of fact." *Mosello v. Ali, Inc.*, 190 B.R. 165, 168 (Bankr. S.D.N.Y. 1995). "'[B]ald assertions and conclusions of law will not suffice to state a claim.'" *Ferreira v. Unirubio Music Publishing*, 2002 WL 1303112, at *1 (S.D.N.Y. 2002).

This Court may grant a motion to dismiss where the plaintiff has not pled enough facts to state a claim for relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007) (requiring plaintiff to plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [his claim]"). Additionally, the factual allegations of the Amended Complaint must present more than a speculative claim for relief. *Id.* at 1959. In that regard, bald legal conclusions dressed up as factual allegations are similarly insufficient to raise a plausible claim. *See Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002).

Under these standards, Plaintiffs' own allegations show that there is no basis for their claims.

**A.    Plaintiffs Have Failed to State A Claim For Breach of Contract Against Fell and Belliard.**

Courts will dismiss Complaints alleging the existence of onerous, overboard and burdensome restrictive covenants. *Heartland Sec. Corp. v. Gerstenblatt*, 2000 WL 303274 (S.D.N.Y. 2000) (declining to "blue pencil" an overbroad restrictive covenant where Plaintiffs failed to allege that the purpose of the covenant was to protect a legitimate business interest).

In addition, restrictive covenants that prohibit employees from obtaining employment in a vocation of their choosing are disfavored under New York law, and are enforced only to the

9

extent necessary to protect the disclosure of any trade secrets. *See, e.g., Primo Enters. v. Bachner*, 148 A.D.2d 350, 351, 59 N.Y.S.2d 320, 321 (1st Dep't 1989).

Here, the purported restrictive covenant in this case, drafted exclusively by Plaintiffs, purports to prevent Defendants Fell and Belliard from competing in the vocation of their choosing anywhere in the world, and for a ten-year period. Plaintiffs have previously admitted that such a covenant cannot be upheld, and, in any event, cases are legion where similar agreements have been found unenforceable. *See, e.g., Todd Chemical Co. v. Di Stefano*, 30 A.D.2d 879, 292 N.Y.S.2d 811 (2d Dep't 1968) (restrictive covenant with a ten year term is unenforceable); *Silipos, Inc. v. Bickel*, 2006 WL 2265055, at * 6 (S.D.N.Y. 2006) (worldwide restrictions on competition are not reasonable).

Plaintiffs' restrictive covenant is invalid because it improperly purports to prohibit Defendants from soliciting or providing services to clients who they know outside of their relationship with Pure Power. *See, e.g., Scott, Stackrow & Co. v. Skavina*, 9 A.D.3d 805, 806, 780 N.Y.S.2d 675, 676 (3d Dep't 2004). Additionally, Plaintiffs' restrictive covenant is overbroad because it purports to prohibit Defendants from maintaining relationships with clients who are loyal to Defendants and their personal training expertise. New York courts have repeatedly held that a former employee whose clients are loyal to him personally, rather to an employer, should not be enjoined from servicing those clients in a new business. *See, e.g., ENV Servs., Inc. v. Alesia*, 10 Misc.3d 1054(A), at *5, 809 N.Y.S.2d 481 (Sup.Ct. Nassau Co. 2005).

Also, such covenants are enforceable only to the extent that they afford an employer demonstrably necessary protection against unfair competition stemming from the use or disclosure of trade secrets. *Prudential Secs., Inc. v. Plunkett*, 8 F.Supp.2d 514, 519 (E.D. Va.

10

1998).  As set forth herein, Plaintiffs have not alleged any meaningful facts supporting their contention that they possessed trade secrets.

## B.    Plaintiffs Have Failed to State A Claim For Breach of Duty of Loyalty against Belliard, Fell, Lee and Baynard

Plaintiffs allege that Fell and Belliard breached fiduciary duties owed to them because they began forming a competing business while employed by Plaintiffs.    Former at-will employees do not breach duties of loyalty owed to their employer, however, by setting up competing business, provided that the employee does not improperly use the employer's time, facilities or trade secrets.  *See, e.g., Schneider Leasing Plus, Inc. v. Stallone*, 172 A.D.2d 739, 741, 569 N.Y.S.2d 126 (2d Dep't 1991) ("An employee may create a competing business prior to leaving his employer without breaching any fiduciary duty unless he makes improper use of the employer's time, facilities or proprietary secrets in doing so.").

There are no allegations that Defendants actually worked on their competing business while they were "on the clock" at Plaintiffs' business, other than a brand-new conclusory allegation that "[u]pon information and belief, Fell and Belliard were using Pure Power's telephones and computers to assist them in creating their competing business."  This is nonsense. Despite numerous sworn affidavits and exhibits, Plaintiffs did not produce a shred of evidence to show that Defendants worked on their business while "on the clock."

In addition, Plaintiffs have not pled any facts to establish that Lee or Baynard owed them a duty of loyalty.  There is no legal support that a member of a gym owes its gym a duty of loyalty.  *See Abercrombie v. Andrews College*,  438 F.Supp.2d 243, 275 (S.D.N.Y. 2006) (a mere close relationship or friendship, such as between an alumnae and her alma mater does not establish a fiduciary relationship).  Therefore, Plaintiffs' claim for breach of duty of loyalty must be dismissed as to Lee and Baynard.

11

**C.    Plaintiffs Have Failed to State A Claim For Unjust Enrichment**

The elements of an unjust enrichment claim are: (1) the defendant was enriched; (2) such enrichment was at the expense of the plaintiff; and (3) the circumstances were such that in equity, and good conscience the defendant should make restitution. *Marketplace LaGuardia Ltd. Partnership v. Harkey Enterprises, Inc.*, 2008 WL 905188, at *6 (E.D.N.Y. 2008).

Here, Plaintiffs have failed to state a claim for unjust enrichment, because they have failed to allege both that Defendants benefited, and that this benefit was conferred at Plaintiffs' expense. *See Id.* Plaintiffs have merely alleged that Defendants used their client lists, business, and corporate documents, and trade secrets, but have not alleged that this purported use resulted in Defendants having obtaining any measure of profit, or customers that was not otherwise received by Plaintiffs. *Giant Supply Corp. v. City of New York*, 248 A.D.2d 231, 235, 670 N.Y.S.2d 29 (1st Dep't 1998) (Complaint must be dismissed where plaintiff fails to allege that defendant's benefit came at plaintiff's expense).

For example, despite their promise to do so, Plaintiffs have failed to identify specific customers who terminated their relationship with the Plaintiffs to patronize Defendants' gym. Plaintiffs have also not specifically alleged that Baynard and Lee were enriched in any way at the expense of Plaintiffs.

This claim must also be dismissed, because Plaintiffs allege the existence of available contractual remedies based upon an allegedly explicit contract between Plaintiffs, and Fell, and Belliard. *Apfel v. Prudential-Bache Sec., Inc.*, 81 N.Y.2d 470, 616 N.E.2d 1095, 600 N.Y.S.2d 433 (N.Y. 1993).

**D.    Plaintiffs Have Failed to State A Claim For Unfair Competition**

The essence of an unfair competition claim under New York law is the bad faith misappropriation by one business of another's expenditures of labors, skill and money in a way

12

that is likely to cause confusion or to deceive purchasers as to the origin of the goods. Thus, in order to prevail on an unfair competition claim, a plaintiff must: (1) show the existence of actual confusion, if seeking damages, or a likelihood of confusion in order to obtain equitable relief, and (2) show that Defendant acted in bad faith. *See, e.g., Malletier v. Dooney & Bourke, Inc,.* 2008 WL 2245814 (S.D.N.Y. 2008).

Here, the design of the parties' respective gyms are wholly distinct:

- Defendants' obstacle course has stall bars, medicine balls, and resistance bands whereas Plaintiffs' gyms do not. On the other hand, Plaintiffs' gyms have a rock climbing wall, a belly robber obstacle, an intensity wall (tall slanted wall with a rope on it); abdominal hurdles, a cargo net, a tire run and a bob and weave rope obstacle, while Defendants' gym does not have these features;

- Defendants' gym is painted in red, yellow and white - - the Marine Corps' colors. Plaintiffs gyms are painted in green and the colors of her columns are in camouflage;

- Defendants gym has no netting anywhere, while Plaintiffs' gym has netting covering her ceilings;

- Defendants' gym has changing rooms bordered by walls with cubby holes and a vanity while Plaintiffs use large military tents as changing areas and locker rooms;

- The floor beneath the Defendants' obstacle course is red/dirt colored while the floor beneath Plaintiffs' obstacle course is black;

- The border around Defendants' obstacle course is made of wood and painted black while the border around Plaintiffs' obstacle course is comprised of

13

- sandbags;

- Defendants' obstacle course is located in the center of the gym and comprises about half of the entire floor whereas Plaintiffs' obstacle course is located throughout the entire gym and comprises 90% of the gym;

- Defendants' monkey bars are in ascending and descending order while all of Plaintiffs' monkey bars are flat;

- Defendants' hurdles are not adjustable and each hurdle has a different height while Plaintiffs' hurdles are adjustable;

- Defendants' obstacles are painted black while Plaintiffs' obstacles are painted green and camouflage;

- Defendants have a rubber track surrounding their obstacle course and rubber flooring is laid throughout their space while Plaintiffs' gym does not have rubber flooring laid anywhere; and

- Defendants' customers wear black t-shirts provided by Defendants and can wear bottoms of their own choosing, whereas, Plaintiffs' "recruits" wear an olive t-shirt and camouflage pants.

Plaintiffs cannot make any showing of likelihood of confusion among purchasers as to the origin of the parties' products and services, and have not tried to do so--despite the fact that this action has been pending for almost six months. Again, Plaintiffs are required, but have not filed, to plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [their claim]"). *Twombly*, 127 S.Ct. at 1974.

Plaintiffs' claims for unfair competition must be dismissed as against Lee and Baynard as well, because Plaintiffs have not specifically alleged that Lee or Baynard actually

14

misappropriated trade secrets, trade dress, or corporate documents.

Thus, Plaintiffs have failed to allege a likelihood of confusion or actual confusion, and their claims must fail.

**E.    Plaintiffs Have Failed to State A Violation of NY GBL § 360**

To state a claim for a violation of NY GBL § 360, Plaintiffs must set forth the same facts as to prove a claim of Unfair Competition. Therefore, as established in section D, *supra*, the Plaintiffs have failed to state a violation of NY GBL § 360.

**F.    Plaintiffs Have Failed to State A Claim For Statutory Trade Dress Infringement**

To state a claim for trade dress infringement, the Plaintiff must establish that: (i) the trade dress is primarily non-functional; (ii) the trade dress is either inherently distinctive or has become distinctive because it has acquired secondary meaning; and (iii) there is a likelihood of confusion between the trade dresses at issue. *See Two Pesos, Inc. v. Taco Cabana*, Inc., 505 U.S. 763, 769 (1992).

**1.    Plaintiffs' Purported Trade Dress is Functional**

The Lanham Act does not protect functional trade dress, because that would, in effect, create a perpetual patent at the expense of competition. *Traffix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32 (2001). A design feature is functional if it is not "merely an ornamental, incidental, or arbitrary aspect of the device," but rather is "essential to the use or purpose of the device or if it affects the cost or quality of the device." *Id*.

Here, Plaintiffs' "indoor obstacle course" is not entitled to trade dress protection, because it is a functional design. Plaintiffs' claim that their gyms feature an obstacle course containing hurdles, a series of walls to ascend and descend, a tire run, a barbed wire netting to crawl under, monkey bars, dip bars, rolling logs, a wrap-around climbing wall, a cargo net climb, bob-and-

15

weave boxing ropes, a rope climb, a ramp with a tunnel to shoot through, and a rope swing over a water pit. *See* Complaint ¶ 16. The gym also apparently has men's and women's tents in lieu of changing rooms, and ceiling netting to enhance the boot-camp feel. *See* Complaint ¶ 14. This equipment, which is what Plaintiffs claim is entitled to trade dress protection, is functional, because it is necessary for Plaintiffs' patrons' use in their workouts.

### 2. Plaintiffs Have Not Alleged Facts To Support A Claim That Their Trade Dress Acquired Secondary Meaning

Plaintiffs have not alleged facts to support a claim that their trade dress has acquired secondary meaning.

To demonstrate secondary meaning, courts have generally inquired into: (1) the trade dress owner's advertising expenditures, measured primarily with regard to those advertisements that reflect the trade dress in issue; (2) consumer surveys linking the trade dress to a particular single source; (3) sales volume; and (4) exclusive and continuous use of the trade dress in commerce for a period of five years. *Duraco Prods Inc. v. Joy Plastics Enter. Ltd.*, 40 F.3d 1431 (3d Cir. 1994).

Here, Plaintiffs have not pled that there is any evidence establishing that consumers associate the concept of indoor obstacle courses and military-style training with Plaintiffs. Plaintiffs have also not pled facts demonstrating that their sales volume is so large that consumers link the trade dress to a particular source.

In addition, Plaintiffs have not pled that they have used their trade dress exclusively, and continuously for at least five years. In fact, Plaintiffs acknowledge that they have not, in fact, used the trade dress exclusively, because they admit that the United States Military operates obstacle courses with boot camps. Many courts have held that failure to do so is evidence

16

pointing strongly away from a finding of secondary meaning. *See, e.g.*, 15 U.S.C. § 1052(f);

*Laureyssens v. Idea Group Inc.*, 964 F.2d 131, 136 (2d Cir. 1992).

In fact, Plaintiffs and their attorney *admit* in sworn testimony that it is impossible to

establish secondary meaning without having exclusive use of trade dress for at least five years,

and that they cannot establish this element of trade dress protection. *See* Brenner Aff., ¶ 17;

Douglass Aff. ¶ 7.

### 3.    Plaintiffs Have Not Pled Facts That Demonstrate That There Will Be a Likelihood of Confusion

In order to state a claim for trade dress infringement, Plaintiffs must allege that there

exists a likelihood of confusion between Plaintiffs' and Defendants' trade dress. *See Polaroid*

*Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820 (1961).

Here, Plaintiffs do not even attempt to describe Defendants' gym in any detail.

Therefore, Plaintiffs have not satisfied their requirement to allege likelihood of confusion.

Plaintiffs have also not alleged that any named consumer has been actually confused as to the

source of Defendants' gym.

Finally, Plaintiffs' final claim for trade dress infringement must be dismissed as to Lee

and Baynard, because Plaintiffs have not alleged that either Lee or Baynard, took or used for

themselves any proprietary information purportedly owned by Plaintiffs.

### G.    Plaintiffs Have Failed to State A Claim For Copyright Infringement

To establish a copyright infringement cause of action a plaintiff must establish both:

(1) ownership of a valid copyright; and (2) infringement of the copyright on the part of the

defendant. *Yurman Design Inc. v. PAJ, Inc.*, 262 F.3d 101, 109 (2d Cir. 2001).

The standard set forth in *Twombly* is applicable in copyright infringement cases. *ATSI*

*Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (declining to limit

17

*Twombly's* "plausibility standard" only to antitrust cases); *BroadVision Inc. v. GE*, 2008 U.S. Dist. LEXIS 81863 (S.D.N.Y. Oct. 15, 2008).

Under the *Twombly* standard, the Plaintiffs' claim for copyright infringement must be dismissed, because the Complaint does not allege sufficient facts to state a plausible claim for relief. The Complaint alleges that sometime subsequent to May 13, 2008, Defendants made unauthorized copies of Plaintiffs' alleged Operations Manual, Start-Up Manual, Business Plan, and Brochure. *See* Complaint ¶¶ 99, 104. Yet, Plaintiffs also allege that these documents were allegedly taken and used at the time that Defendants set up their business, or long before May 13, 2008. *See* Complaint ¶¶ 50, 104. Indeed, Plaintiffs claim that Defendants could not have started their business without infringing the copyright in these documents but claim that the infringement did not begin until Defendants' business had been open for two months.

This is little more than a speculative claim of infringement that fails the *Twombly* standard. Moreover, Plaintiffs accuse Defendants of distributing the infringed works to "potential franchisees"; however, Defendants have never had any potential franchisees, nor have any present plans to franchise their business. This portion of Plaintiffs' copyright infringement claim also fails the *Twombly* standard.

**H.    Plaintiffs Have Failed to State A Claim For Conversion against Belliard and Fell**

Conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights, which includes a denial or violation of the owner's dominion, rights, or possession over the owner's property. *AD Rendon Communications, Inc. v. Lumina Americas, Inc.*, 2007 WL 2962591 at * 4 (S.D.N.Y. 2007).

Plaintiffs' claim for conversion must fail, because it is duplicative of their breach of contract claim. *See AD Rendon,* 2007 WL, 4; *Briarpatch Ltd. L.P. v. Geisler Roberdeau, Inc.*, 148 F.Supp.2d 321, 328-329 (S.D.N.Y. 2001) (refusing to allow plaintiff to amend Complaint to

add conversion claim because the remedy sought, damages for failure to produce certain goods, was identical in both the conversion and breach of contract claims); *see also Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 884, 452 N.Y.S.2d 599 (1st Dep't 1982).

In addition, Plaintiffs seek identical remedies for the conversion and breach of contract claims. Therefore, the conversion claim must be dismissed. *Priolo Communications, Inc. v. MCI Telecommunications Corp.*, 248 A.D.2d 453, 457, 669 N.Y.S.2d 376 (2d Dep't 1998).

**I.     Plaintiffs Have Failed to State A Claim For Defamation Against Lee**

In New York, a plaintiff bringing a defamation cause of action must allege: (1) a defamatory statement of fact concerning the plaintiff; (2) publication to a third party by the defendant; (3) falsity of the defamatory statement; (4) some degree of fault; and (5) special damages, or per se actionability. *See Dillon v. City of New York*, 261 A.D.2d 34, 704 N.Y.S.2d 1, 5 (1st Dep't 1999); *Celle*, 209 F.3d at 176.

If the alleged statements are mere statements of opinion, the statements are protected under New York law. *See Celle v. Filipino Reporter Enters.,* 209 F.3d 163, 178 (2d Cir. 2000). Further, opinions "false or not, libelous or not, are constitutionally protected and may not be the subject of private damage actions, provided that the facts supporting the opinions are set forth." *Rinaldi v. Holt, Rinehart & Winston,* 42 N.Y.2d 369, 380 (1977).

New York courts employ a four-part test to determine whether alleged defamatory statements are protected opinion or imply actionable facts. The factors are: (1) an assessment of whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous; (2) a determination of whether the statement is capable of being objectively characterized as true or false; (3) an example of the full context of the communication in which the statement appears; and (4) a consideration of the broader social

19

context or setting surrounding the communication including the existence of any applicable customs or conventions, which might signal to readers or listeners that what is being read or heard is likely to be opinion, not fact. *Steinhilber v. Alphonse,* 68 N.Y.2d 283, 292 (1986). The court should not apply a mechanical enumeration of each factor in this test, but instead should look to the overall context in which the statement was made. *Flamm v. Am. Ass'n of Univ. Women,* 201 F.3d 144, 153 (2d. Cir. 2000).

New York courts have consistently viewed statements regarding one's professional, and ethical conduct to be statements of opinion. *See, e.g., Tasso v. Platinum Guild Int'l,* 1998 U.S. Dist. LEXIS 18908 at *5-6 (S.D.N.Y. Dec. 3, 1998) (statement that Plaintiff was "unethical, untrustworthy and unprofessional were statements of opinion); *Amodei v. New York State Chiropractic Assn.*, 160 A.D.2d 279, 280 (1st Dep't 1990) (statement that chiropractor engaged in "unprofessional conduct" was statement of opinion); *Park v. Capital Cities Communications,* 181 A.D.2d 192, 195-196 (4th Dept. 2002) (characterization of surgeon as "rotten apple" was opinion).

Within this context, it is apparent that Defendant Lee's alleged statements are mere statements of opinion. Plaintiffs allege that Lee told at least one client of Pure Power that Plaintiff Brenner "hated homosexuals and treated all of her employees like garbage." *See* Complaint ¶ 112. These alleged statements are statements of opinion as they are related to Plaintiff Brenner's professional and ethical conduct as to how she treats her employees and clients.

Additionally, these alleged statements do not have a precise meaning and are not capable of being objectively verified as true or false. *See Wait v. Beck's North America Inc.,* 241 F.Supp.2d 172, 184 (N.D.N.Y. 2003). There is no precise meaning as to what "treats employees

like garbage" or "hates homosexuals" truly means.  Moreover, there is no way to objectively verify whether Plaintiff Brenner truly "treats employees like garbage" or "hates homosexuals." As a result, Defendant Lee's alleged statements are statements of opinion, and are protected from defamation claims under New York law.

## J.   Plaintiffs Have Failed to State A Claim For Tortious Interference with Prospective Economic Advantage

Plaintiffs' cause of action alleging tortious interference with prospective economic advantage must be dismissed.  To establish such a claim, Plaintiffs must allege that, through Defendants' intentional and wrongful acts, identified third parties were prevented from entering into a business relationship with Plaintiffs. *Snyder v. Sony Music Entertainment, Inc.*, 252 A.D.2d 294, 300, 684 N.Y.S.2d 235 (1st Dep't 1999).  Plaintiffs must also allege that, but for Defendants' wrongful interference, the contract would have been entered into. *Long Island Univ. v. Grucci For Congress, Inc.*, 10 A.D.3d 412, 781 N.Y.S.2d 148 (2d Dep't 2004).

Here, Plaintiffs have failed to satisfy a single element of this tort.  Not only does the Amended Complaint fail to specifically identify the third parties with whom Plaintiffs were *prevented* from doing business with, but it also fails to allege the wrongful means that Defendants allegedly employed to *prevent* third parties from contracting or doing business with Plaintiffs.   At worst, Defendants' alleged acts were clearly to help their new business grow – but such allegations amount to no more than an intent to enhances one's own economic interest. Such economic motivation does not amount to the intentional tortious interference required to sustain a cause of action. *See Shared Communication Services of ESR, Inc. v. Goldman Sachs & Co.*, 23 A.D.3d 162, 162, 803 N.Y.S.2d 512, 513 (1st Dep't 2006).

21

**K.**    **Plaintiffs Have Failed to State A Claim For Tortious Interference with Contract Against Lee and Baynard**

To survive a motion to dismiss for tortious interference with contract, a party must allege: (1) the existence of a valid and enforceable contract between plaintiff *and a third party*; (2) the defendant's knowledge of that contract; (3) the defendant's intentional interference with that contract; and (4) resulting breach and damages. *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 424 (1996) (emphasis supplied).

Here, the Complaint fails to allege that Plaintiffs had any outstanding contracts with any identified third parties, which is a prerequisite for establishing a tortious interference with contract claim. Plaintiffs ignore this requirement and allege that Pure Power had employment agreements with Belliard and Fell, who are parties to this action, not third parties as is required to sustain a claim.

**L.**    **Plaintiffs Have Failed to State A Claim For Injunctive Relief**

Plaintiffs have only alleged claims that, construed most broadly in Plaintiffs' favor, resulted in a loss of revenue. Plaintiffs have not put forth any evidence that demonstrated that they do not have an adequate remedy at law for their claims. Moreover, in the event that the Court finds that Defendants are liable on any of the claims alleged by Plaintiffs, damages are readily ascertainable and quantifiable. *See, e.g., Production Resource Group, LLC v. Oberman*, 2003 WL 22350939, at *7 (S.D.N.Y. 2003); *Geritrex Corp. v. Dermarite Indus., LLC*, 910 F.Supp. 955, 966 (S.D.N.Y. 1996) (declining to enjoin competitor's sale of hygiene products because any potential lost sales to Plaintiffs could be determined by comparing customer lists and sales information).

22

## POINT II

## PLAINTIFFS HAVE FAILED TO STATE ANY CLAIMS AS TO WARRIOR

Plaintiffs have failed to allege any facts that could support any claim against Warrior. For example, Plaintiffs have failed to allege that Warrior resembles Plaintiffs' own gyms, an allegation that is crucial to a claim for trade dress infringement. Plaintiffs have also failed to allege that Fell, Belliard, Lee and Baynard acted on behalf of Warrior, an allegation that is necessary in order to impute any claim alleged to have been committed by any of the Individual Defendants onto Warrior. Plaintiffs also failed to allege, even upon information and belief, when the agency relationships, if any, were consummated.

In addition to failing to plead facts sufficient to demonstrate that the Individual Defendants were acting as agents of Warrior, Plaintiffs' allegations are insufficient to impute any liability on Warrior directly. For example, Plaintiffs have pled no facts concerning Warrior's alleged interference with contracts, misappropriation of trade secrets, establishment of a fiduciary relationship with Plaintiffs, or consummation of a contractual relationship with Plaintiffs. For these reasons, all claims against Warrior must be dismissed in their entirety, with prejudice.

## POINT III

## THE COURT MAY CONVERT THIS MOTION TO DISMISS TO A MOTION FOR SUMMARY JUDGMENT

Although Defendants initially filed this motion pursuant to FRCP Rule 12(b)(6), the Court may, at its discretion, convert this motion to a motion for summary judgment pursuant to FRCP Rule 12(d), and consider the parties' filings concerning the previously filed Motion for a Preliminary Injunction and Motion to Preclude the Use of Emails that Plaintiffs illegally

23

misappropriated. *See* FRCP Rule 12(d); *see also, Global Network Communications v. City of New York*, 458 F.3d 150 (2d Cir. 2006).

Alternatively, the Court, at its discretion, may consider allegations contained in the Complaint, exhibits attached to or otherwise incorporated in the Complaint, matters of public records, orders of record in the lawsuit, and other materials subject to judicial notice without converting the motion to one for summary judgment. *See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).

Plaintiffs' entire Complaint consists of vague and conclusory assertions without providing any substantive and Plaintiffs fail to include any detail upon which any claims can be based. This Court should summarily dispose of all claims.

## CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss must be granted in its entirety pursuant to FRCP Rule 12 (b)(6) and this Court should summarily dismiss of the Complaint pursuant to FRCP Rule 12(d).

Dated:    New York, New York
          October 24, 2008

> FOX ROTHSCHILD, LLP
> Attorneys for Defendants
>
> By: _____
> Daniel A. Schnapp (DS-3484)
> Carolyn D. Richmond, Esq. (CR-0993)
> Eli Z. Freedberg, Esq. (EF-6854)
> 100 Park Avenue
> New York, New York 10017
> (212) 878-7900

24