UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------X

PURE POWER BOOT CAMP, INC., PURE         :
POWER BOOT CAMP FRANCHISING              :
CORPORATION, PURE POWER BOOT CAMP        :        **ECF Case**
JERICHO INC., and LAUREN BRENNER,        :
                                         :        **Case No. 08-cv-4810 (JGK) (THK)**
            Plaintiffs,                  :
                                         :
        - against-                       :
                                         :
WARRIOR FITNESS BOOT CAMP, LLC;          :
ALEXANDER KENNETH FELL a/k/a ALEX        :
FELL, Individually; RUBEN DARIO          :
BELLIARD a/k/a RUBEN BELLIARD,           :
individually; JENNIFER J. LEE, Individually; :
and NANCY BAYNARD, Individually,         :
                                         :
            Defendants.                  :

--------------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

MINTZ & GOLD LLP
Steven G. Mintz
Mark S. Pomerantz
470 Park Avenue South
10th Floor North
New York, NY 10016
Tel:  (212) 696-4848
Fax: (212) 696-1231
*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS .................................................................................................... 3

    A.  DEVELOPMENT OF PURE POWER ............................................................... 3

    B.  PURE POWER OPENS FOR BUSINESS ....................................................... 4

    C.  FELL AND BELLIARD ARE EMPLOYED BY PURE POWER ....................... 5

    D.  DEFENDANTS CONSPIRE TO UNFAIRLY COMPETE WITH
        PURE POWER ............................................................................................... 7

    E.  THE ACTION .................................................................................................. 8

ARGUMENT ......................................................................................................................... 9

  DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED IN
  ITS ENTIRETY ................................................................................................................ 9

    A.  THE APPLICABLE STANDARD ................................................................... 9

    B.  THE COMPLAINT ALLEGES A VALID CLAIM FOR BREACH
        OF THE RESTRICTIVE COVENANTS IN THE EMPLOYMENT
        AGREEMENT .............................................................................................. 10

    C.  THE COMPLAINT ALLEGES A VALID CLAIM FOR BREACH
        OF DUTY OF LOYALTY AGAINST ALL OF THE DEFENDANTS ............... 12

    D.  THE COMPLAINT STATES A VALID CLAIM FOR UNJUST
        ENRICHMENT .............................................................................................. 13

    E.  THE COMPLAINT STATES A VALID CLAIM FOR UNFAIR
        COMPETITION ............................................................................................. 14

    F.  THE COMPLAINT STATES A VALID CLAIM UNDER
        NY GBL § 360 ............................................................................................... 15

    G.  THE COMPLAINT PLEADS A VALID CLAIM OF STATUTORY
        TRADE DRESS INFRINGEMENT ................................................................ 15

i

1. PLAINTIFFS' TRADE DRESS IS DISTINCTIVE NOT FUNCTIONAL .......................................................... 16

2. PLAINTIFFS' TRADE DRESS HAS ACQUIRED SECONDARY MEANING .......................................................... 16

3. PLAINTIFFS HAVE ADEQUATELY PLED A LIKELIHOOD OF CONFUSION .......................................................... 17

H. THE COMPLAINT PLEADS A VALID CLAIM FOR COPYRIGHT INFRINGEMENT .......................................................... 18

I. THE COMPLAINT PLEADS A VALID CLAIM OF CONVERSION AGAINST BELLIARD AND FELL .......................................................... 18

J. THE COMPLAINT PLEADS A VALID CLAIM OF DEFAMATION AGAINST LEE .......................................................... 19

K. THE COMPLAINT PLEADS A VALID CLAIM OF TORTOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE .......................................................... 22

L. THE COMPLAINT ALLEGES A VALID CLAIM FOR TORTOUS INTERFERENCE WITH CONTRACT AGAINST LEE AND BAYNARD .......................................................... 23

M. THE COMPLAINT PLEADS ELEMENTS SUFFICIENT TO OBTAIN INJUNCTIVE RELIEF .......................................................... 23

N. THE COMPLAINT PLEADS VALID CLAIMS AGAINST WARRIOR .......................................................... 24

CONCLUSION .......................................................... 25

**TABLE OF AUTHORITIES**

## Cases

A. E. Hotchner v. Castillo-Puche,
  551 F.2d 910 (2d Cir. 1977 ..............................................................19

Adelphia Communications Corp.,
  2007 WL 2403553 (S.D.N.Y. 2007) ................................................13

American Building Maint. Co. v. Acme Prop. Servs., Inc.,
  515 F.Supp.2d 298 (N.D.N.Y. 2007..........................................12, 13

American Home Products Corp. v. Johnson and Johnson,
  577 F.2d 160 (2d Cir. 1978) ............................................................24

Amodei v. New York State Chiropractic Assoc.,
  160 A.D. 2d 279 (1st Dept. 1990)......................................................21

BDO Seidman v. Hirschberg,
  93 N.Y.2d 382 (1999) ................................................................10, 11

CBS Corp. v. Dumsday,
  268 A.D.2d 350 (1st Dept. 2000) ......................................................12

Coach Leatherware Co. v. AnnTaylor, Inc.,
  933 F.2d 162 (2d Cir. 1991) ............................................................17

Cohen v. Koenig,
  25 F.3d 1168 (2d Cir. 1994) ............................................................10

Colavito v. New York Organ Donor Network, Inc.,
  8 N.Y.3d 43, 827 N.Y.S.2d 96 (2006) .............................................18

Comprehensive Community Development Corp. v. Lehach,
  223 A.D.2d 399, 636 N.Y.S.2d 755 (1st Dept. 1996) .......................14

Czech Beer Imports, Inc. v. C. Haven Imports, LLC,
  2005 WL 1490097 (June 23, 2005) ..................................................14

Dupler v. Costco Wholesale Corp.,
  249 F.R.D. 29 (E.D.N.Y. 2008) .......................................................13

Ecolab, Inc. v. Paolo,
  753 F.Supp. 1100 (E.D.N.Y. 1991) ..................................................11

Freddie Fuddruckers, Inc. v. Ridgeline, Inc.,
    223 U.S.P.Q. 1139 (N.D. Tex. 1984), aff'd,
    783 F.2d 1062 (5th Cir. 1986) ...........................................................................16, 17

Giffuni v. Feingold,
    299 A.D.2d 265 (1st Dept. 2002) ............................................................................20

Globaldata Mgmt. Corp. v. Pfizer Inc.,
    2005 WL 3487845 (Sup. Ct. N.Y. Co. Nov. 23, 2005) ...........................................11

Goldman v. Belden,
    754 F.2d 1059 (2d Cir. 1985) ...................................................................................9

Grandon v. Merrill Lynch & Co.,
    147 F.3d 184 (2d Cir. 1998) .....................................................................................9

Grant v. Wallingford Bd. Of Educ.,
    69 F.3d 669 (2d Cir. 1995) .......................................................................................9

Guerrero v. Carva,
    10 A.D.3d 105 (1st Dept. 2004) ..............................................................................19

Holzer Watch Co. v. Montres Universal S.A.,
    1984 WL 285 (S.D.N.Y. May 29, 1984) .................................................................24

Innovative Networks, Inc. v. Satellite Airlines Ticketing Centers,
    871 F.Supp 709 (S.D.N.Y. 1995) ...................................................................*Passim*

Lamdin v. Broadway Surface Adv. Corp.,
    272 N.Y. 133 (1936) ...............................................................................................12

Milkovich v. Lorain Journal Co.,
    110 S.Ct. 2695 (1990) ..............................................................................................19

Nakamura v. Fujii,
    253 A.D.2d 387, 677 N.Y.S.2d 113 (1st Dept. 1998) .............................................14

P3 Int'l v. Weitech, Inc.,
    52 U.S.P.Q.2d 158 (S.D.N.Y. 1999) .......................................................................16

Park v. Capital Cities Communications,
    181 A.D.2d 192, 585 N.Y.S.2d 902 (4th Dept. 1992) .............................................21

Peer Int'l Corp. v. Luna Records, Inc.,
    887 F.Supp. 560 (S.D.N.Y. 1995) ...........................................................................23

Polaroid Corp. v. Polaroid Express. Corp.,
    287 F.2d 492 (2d Cir.), cert. denied, 368 U.S. 820 (1961) . ......................................................17

Purgess v. Sharrock,
    33 F.3d 134 (2d Cir. 1994) ...........................................................................................22

Saratoga Vicky Spring Co. v. Lehman,
    625 F.2d 1037 (2d Cir. 1980) ......................................................................................14

Schneider Leasing Plus, Inc. v. Stallone,
    172 A.D.2d 739, 569 N.Y.S.2d 126 (2d Dept. 1991) ..................................................12

SEC v. Simpson Capital Mgmt., Inc.,
    2008 WL 4093046 (S.D.N.Y. Sept. 3, 2008) .................................................................9

Shared Communications Servs. v. Goldman, Sachs & Co.,
    23 A.D.2d 162, 803 N.Y.S.2d 512 (1st Dept. 2005) ...................................................22

Shred-It USA, Inc. v. Mobile Data Shred, Inc.,
    228 F.Supp.2d 455 (S.D.N.Y. 2002) ...........................................................................24

Steinhilber v. Alfonse,
    68 N.Y.2d 283 (1986) ..................................................................................................19

Sterling Drug, Inc. v. Boyer AG,
    14 F.3d 733 (2d Cir. 1994).............................................................................................23

Tasso v. Platinum Guild Intl.,
    1998 WL 841489 (S.D.N.Y., Dec. 3, 1998) ...........................................................20, 21

Teleyne Indus., Inc.,
    696 F.2d 968 (Fed. Civ. 1982) ....................................................................................16

Thompson Medical Co. v. Pfizer, Inc.,
    753 F.2d 208 (2d Cir. 1985) .........................................................................................17

Ticor Title Ins. Co. v. Cohen,
    173 F.3d 63 (2d Cir. 1999) .....................................................................................10, 24

Town & Country & H.S. v. Newbury,
    3 N.Y.2d 554, 170 N.Y.S.2d 328 (1958) . ...................................................................10

Two Pesos, Inc. v. Taco Cabana, Inc.,
    505 U.S. 763 (1992) .....................................................................................................16

<u>Twombley v. Bell Atl. Corp.</u>,
   127 S. Ct. 1955 (2007) ...................................................................................................9

<u>United States v. Flamm</u>,
   201 F.3d 144 (2d Cir. 2000) .......................................................................................20

<u>Universal City Studios Inc. v. Nintendo Co.</u>,
   746 F.2d 112 (2d Cir. 1984) .......................................................................................18

<u>Vuitton et Fils S.A. v. J. Young Euters, Inc.</u>,
   644 F.2d 769 (9th Cir. 1981) ...................................................................................16

**Statutes**

15 U.S.C. §1057(b)...........................................................................................................17

15 U.S.C. §1125(a)......................................................................................................15, 16

17 U.S.C. §106 .................................................................................................................18

Fed. R. Civ. P. 12(b)(6) ................................................................................................3, 9

Fed. R. Civ. P. 12(d)..........................................................................................................3

Local Civil Rule 56.1..........................................................................................................3

New York's General Business Law § 360 ..................................................................15, 24

**Other Authorities**

Restatement (Second) of Torts § 566, comment a.........................................................20

Restatement (Second) of Torts § 566, comment c.........................................................20

## **PRELIMINARY STATEMENT**

This action involves two dishonorable ex-Marines and their clandestine girlfriends who conspired to steal plaintiffs' business and clients. Defendants do not and indeed cannot deny that they broke into plaintiffs' private office, took certain documents, destroyed others, copied plaintiffs' facility, and essentially breached every single provision of employment agreements they signed. Instead, they have moved to dismiss asserting technical defenses that are not even applicable to the claims in the complaint. Alternatively, in seeking dismissal, they fail to recognize the critical difference at this stage of the litigation stage between establishing claims, which a plaintiff need not do until trial, versus merely pleading sufficient facts so that the plaintiff may ultimately be able to prove the claim. The motion is premature, baseless and should be denied in its entirety.

The ex-Marines, defendants Alexander Fell ("Fell") and Ruben Belliard ("Belliard") had no prior experience in the fitness industry before they came to work for Lauren Brenner ("Brenner") and the unique fitness program she developed and named Pure Power Boot Camp ("Pure Power"). Brenner taught Fell and Belliard how to train civilians in her methods and even paid for their certificates as trainers. After working for Pure Power, learning the entire business, developing relationships with Pure Power's clients, and pretending to be loyal employees, Fell and Belliard secretly began to conspire to open their own fitness center.

The actions of Belliard and Fell were improper and illegal because:

* They both violated signed employment agreements with restrictive covenants that enforced protectable interests of Pure Power;

* They surreptitiously used their girlfriends to solicit Pure Power's customers both during and after their employment;

* They broke into Brenner's office and stole Pure Power's intellectual property, including Pure Power's client list;

* They used Pure Power's copyrighted and proprietary information to unfairly compete with

Pure Power;

* They violated trademark laws because they blatantly copied Pure Power's unique philosophy, approach, training method, distinctive look and feel (collectively the "Trade Dress");

* They libeled Brenner, telling her customers that Brenner is a homophobe; and

* They continually misrepresented their intentions to Brenner forcing Brenner to be woefully understaffed at a time when she was expanding Pure Power.

In essence, defendants were able to open a competing business, a few blocks away from Pure Power, without incurring the costs commonly associated with starting up a business. They used Pure Power's client list, Pure Power's business plan, Pure Power's business manual and Pure Power's Trade Dress. They simply misappropriated everything that Brenner had painstakingly developed over four years in creating a unique and successful business, and did so and continue to do so with impunity.

The law is clear that Fell and Belliard were free – even under the terms of the restrictive covenants they signed – to work in the fitness industry or even open up a competing facility. What they were not free to do was to immediately open up the same facility as Pure Power, after stealing Pure Power's intellectual property and clients, while using Pure Power's own proprietary client list, materials, and entire concept, program and methodology.

Not only did Fell and Belliard, aided and abetted by Lee and Baynard, violate their contractual and common law duties owed to Pure Power, they violated the Lanham Act. Contrary to defendants' arguments, Pure Power's Trade Dress has recently been recognized by the United States Patent and Trademark Office as having acquired secondary meaning and has been approved for Trade Dress registration. Thus, defendants' entire argument regarding plaintiffs' Trade Dress claims is meritless and should be rejected.

Defendants also copied and used materials created and copyrighted by Pure Power to run their competing business. Defendants' contention that they opened their facility before the materials were

2

copyrighted belies the plaintiffs' allegations that defendants are still using and distributing the materials. Defendants' remaining arguments are nothing more than inappropriate assertions and denials that have not been tested through discovery, and should be rejected at this stage of the action.

## STATEMENT OF FACTS[1]

### A. DEVELOPMENT OF PURE POWER

Following the events of September 11, 2001, Brenner, who was a Wall Street trader, decided to create a fitness facility that would instill in others the values of accountability and respect. Complaint ¶ 18. Brenner developed the idea of an indoor obstacle/confidence course in a boot camp setting. Id. The names "Pure Power Boot Camp" and "Train Military Style" were trademarked on April 19, 2004. Id.

While some gyms styled themselves as "Boot Camps," Pure Power is believed to be the first facility to employ an indoor obstacle course combined with a military style and feel and that uses a positive reinforcement methodology. Complaint ¶ 19. Brenner also conceived a number of design features intending to convey the look and feel of a military training facility, as well as military-based equipment. The entire Trade Dress of Pure Power gives the facility a recognizable, distinctive look and feel. Complaint ¶ 20.

In order to protect its interests and investment, Pure Power filed for trade dress protection for the design of the facility, the terms used in the facility and the indoor obstacle/confidence course used in the facility. Complaint ¶ 24. On October 30, 2008, the United States Patent and Trademark Office

---

[1] This statement is taken from Plaintiffs' First Amended Complaint, dated September 15, 2008 (the "Complaint"). Although defendants' have styled their motion as a motion to dismiss and/or for summary judgment, plaintiffs will not present facts outside of the Complaint in opposing this motion, other than (i) the employment agreement that is considered a part of the pleadings, and (ii) publicly available information relating to the Trade Dress, and are responding as though the motion is made under Rule 12(b)(6). In the event that the Court rules that it will treat the motion as one for summary judgment under Fed. R. Civ. P. 12(d), then on sufficient notice, plaintiffs will take the opportunity to present evidence outside of the pleading. Defendants' request to alter the motion should be denied. They failed to provide a statement pursuant to local Rule 56.1, a pre-requisite for a motion for summary judgment. Moreover, the parties are already engaged in expedited discovery, and if defendants elect to do so, they can file a proper motion for summary judgment at the close of discovery that will afford plaintiffs a full and fair opportunity to respond to such a motion.

approved the application to register Pure Power's Trade Dress, bearing the Serial Number 78805804,

finding that the Trade Dress had acquired its own secondary meaning and recognizable distinctiveness.

Notice of Publication of the mark was sent on November 19, and the mark will be published on

December 9, 2008. A copy of the Notice is annexed as Exhibit A to this brief. Information is publicly

available at www.uspto.gov/web/trademarks or

http://tmportal.uspto.gov/external/portal/tow?SRCH=Y&isSubmitted=true&details=&SELECT=US+S

erial+No&TEXT=78805804#.

B. PURE POWER OPENS FOR BUSINESS

  After extensive testing and training of its instructors, Pure Power opened for business on

February 4, 2004. It was a quick and huge success. Complaint ¶ 25. The facility and Brenner

received considerable and favorable publicity, and the facility has become recognizable to the public.

Complaint ¶ 25. The facility attracted over 1,700 clients, and before Fell and Belliard stole Pure

Power's ideas and property, the facility had a renewal rate of 94%. Complaint ¶ 26.

  In order to better serve her clients and optimize the business, Pure Power developed and

maintains a highly-specialized client list (the "Client List"). The Client List is stored through a web-

based program MindBody.com, and Pure Power paid approximately $40,000 to a corporate consultant

to adapt the program for Pure Power. Complaint ¶ 27. The information contained in the Client List is

proprietary, not readily obtainable, and not public knowledge. It includes credit card information,

addresses, phone numbers, email addresses, birthdates, weights, heights, fitness levels and preferences.

The Client List gives Pure Power a competitive advantage because it allows Pure Power access to

information regarding renewals and potential clients not otherwise available. Complaint ¶ 28. The

clients that Pure Power attracts are extremely limited, both as to ability to pay the high fees and as to

the willingness to be subjected to intense personal motivational training in a group environment. In

other words, people who join New York Sports Club are not likely to become clients of Pure Power.

Thus, the Client List is extremely important to Pure Power and explains why Fell and Belliard copied it for their own use.

As the business continued to grow, Brenner developed plans to franchise Pure Power in or about 2006. Complaint ¶ 29. With the help of a consultant costing $150,000, Pure Power developed a "start-up manual," an "operations manual," and a "business plan." These three documents (collectively, the "Manuals"), are highly detailed, comprehensive documents that give Pure Power a competitive advantage over its competitors. Id.

Finally, Brenner opened another facility in Jericho, Long Island on February 25, 2008. Complaint ¶ 31-33.

C. FELL AND BELLIARD ARE EMPLOYED BY PURE POWER

Belliard was hired by Pure Power in or about August of 2004, and Fell in or about July of 2005. Complaint ¶ 32- 33.   Fell and Belliard had no experience in the fitness industry before they came to Pure Power. As a result, Pure Power and Brenner invested substantial time and money to train and obtain training certifications for them. Complaint ¶ 34. As a result of the training and sponsorship provided by Pure Power, Belliard and Fell obtained the skills and credentials necessary to commence careers as fitness instructors; and to earn far more money than they had been previously capable of earning. Complaint ¶ 34.

The skills necessary to be a fitness trainer with Pure Power are not learned in the United States military, especially the Marine Corp whose methods are diametrically opposite to the positive reinforcement principles used at Pure Power. Id. Ultimately, Fell and Belliard became trusted employees of Pure Power. Complaint ¶ 35. In 2006, at the instructions of Pure Power's franchise consultant, all employees were required to execute employment agreements containing confidentiality and non-compete clauses. Complaint ¶ 36.

With respect to the duty of loyalty, the employment agreement that both Belliard and Fell

signed, (the "Employment Agreement" a copy of which is annexed as Exhibit B to this memorandum)

stated as follows:

> You agree that during the period of your employment you shall devote your
> skills and best efforts to the Company; you shall work to further the best
> interests of the Company; and you shall not do anything to undermine or
> disparage the reputation of the Company or do anything that is otherwise
> detrimental to the Company. You shall not, directly or indirectly, assist any
> competitors of the Company while you are employed by the Company (the
> "Loyalty Clause"). See Complaint ¶ 37; Ex. B ¶ 1.

With respect to the issue of confidentiality, the Employment Agreement stated as follows:

> You shall not disclose, either orally or in writing, to anyone outside the
> Company any confidential or commercially sensitive information made known
> to you or acquired by you in the course of your employment, including but not
> limited to all such information relating to marketing or strategic plans, products
> and/or services under development, suppliers, customers, inventions,
> discoveries, improvements, methods, processes, know-how, trade secrets,
> pricing methods, personnel information and any other information that, if
> disclosed, might be profitable to a competitor or other third part pr detrimental
> to the Company (the "Confidentiality Clause"). See Complaint ¶ 38, Ex. B . ¶2.

With respect to the issue of intellectual property, the Employment Agreement stated as follows:

> (a)    You acknowledge that the Company's PURE POWER BOOT CAMP
> obstacle-confidence courses and related environments and the marketing
> thereof, embody and/or reflect inventions, discoveries, concepts, ideas,
> developments, improvements, methods, processes, know-how, trade secrets,
> designs, trademarks (including, but not limited to the marks PURE POWER and
> PURE POWER BOOT CAMP), trade dress, textual and graphic material, and a
> distinctive overall look and feel (collectively, "Intellectual Property"). You
> agree that such Intellectual Property, regardless of whether or not it is capable of
> patent, trademark, trade dress, trade secret or copyright protection, is exclusively
> owned by the Company. You shall not during the course of your employment or
> at any time thereafter challenge the Company's ownership of any Intellectual
> Property or the validity or enforceability thereof, nor shall you use any
> Intellectual Property in any competing business, or in any other way without the
> Company's express written permissions, during or after your employment with
> the Company (the "Intellectual Property Clause"). Complaint ¶ 39, Ex. B ¶ 3.

With respect to competition from other businesses, the Employment Agreement stated as

follows:

(a)    [Y]ou shall not, and shall not assist any third party to conduct any business or be employed by any business that competes directly with the Company.  A business that competes directly with the Company includes, but shall not be limited to, any physical exercise program, confidence program or gym: (i) that uses obstacle courses; (ii) that uses methods or exercises derived from military training; (iii) that uses a military theme in any way; or (iv) that employs the term "boot camp" in the name or description of the program or gym; ... and

(b)    [Y]ou shall not, and shall not assist any third party to, solicit any client or customer of the Company to discontinue his or her use of the Company's products and services or to use the competing products or services of another business (the "Non-compete Clause").  Complaint ¶ 40, Ex. B ¶ 4.

The Employment Agreement also stated that "[t]his Agreement shall continue in effect after the termination of your employment with the Company . . ."  The agreement further provided that "if in the opinion of an court of competent jurisdiction any provision set forth in this Agreement is not reasonable and by reason thereof is no enforceable, such provision shall be modified to the extent necessary to render it enforceable to the maximum extent allowed by applicable law, and the validity, legality and enforceability of the remainder of the Agreement shall not in any way be affected or impaired thereby."  Finally, the contracts were to be "governed by and construed in accordance with the laws of the State of New York."  Complaint ¶ 41, Ex. B ¶ 5.

## D. DEFENDANTS CONSPIRE TO UNFAIRLY COMPETE WITH PURE POWER

Even though Belliard and Fell owed their entire careers as trainers to Brenner and Pure Power, they decided to open their own facility to directly compete with Pure Power.  Complaint ¶ 42.  Rather than merely competing with Pure Power, Fell and Belliard, with the aid of their girlfriends Baynard and Lee, decided to engage in a course of conduct that included deception and outright theft.

Defendants' deceptive acts included:

i)  Lying about the relationships between Belliard and Baynard, and Fell and Lee, knowing that Pure Power had a policy against trainers dating clients;

ii) Belliard and Fell not only lied about their relationships, but used their girlfriends, Pure Power clients, to surreptitiously denigrate Brenner and solicit clients away from Pure Power;

iii) Belliard and Fell were using Pure Power's computers and phones to create their competing business;

iv) Belliard and Fell were intentionally insubordinate in order to disrupt the relationships between Pure Power and its clients;

v) Belliard and Fell lied to Brenner about their future plans and intentionally made misrepresentations in order to leave Pure Power understaffed when Pure Power Jericho was opened; and

vi) Belliard lied about going to work for a family member leaving Pure Power intentionally short-staffed when he left without notice.  Complaint ¶ 46-49.

Most egregiously, Belliard and Fell broke into Brenner's private office and stole hard copies of the Manuals and deleted files from Pure Power's computer.  Complaint ¶ 50.  Then, Belliard downloaded the Client List from the Pure Power computer located in Brenner's private office.  Finally, ·Belliard stole and shredded the copy of his Employment Agreement that was kept at Pure Power in Brenner's private office.  Complaint ¶ 51.

After stealing the Manuals and the Client List, Fell and Belliard used those proprietary documents to open an almost identical facility, a few blocks away from Pure Power.  Complaint ¶ 53.

E.  THE ACTION

As a result of defendants' actions, Pure Power commenced an action in the Supreme Court of the State of New York, New York County.  Pure Power simultaneously sought to enjoin defendants from competing with their own fitness center Warrior Fitness.  Admittedly, Pure Power's prior counsel did not present Pure Power's positions adequately, and in regard to the Temporary Restraining Order, Justice Freedman ruled only that Warrior Fitness had to change some of the characteristics of their facility that copied Pure Power, and defendants had to return stolen documents.

8

Before Justice Freedman could rule on the pending Preliminary Injunction motion, defendants removed the action to this Court on May 27, 2008. A hearing was held on Pure Power's request for a preliminary injunction. Thereafter, Pure Power's current counsel appeared and filed the Amended Complaint. The Court denied Pure Power's motion for a preliminary injunction, without prejudice to renew, based in large part that Pure Power was precluded from relying on certain emails obtained improperly. The Court also granted the parties the right to conduct expedited discovery which is being engaged in currently.

Defendants have not answered the Complaint. Instead, they have now moved to dismiss pursuant to Rule 12(b)(6), yet styling their motion as one to dismiss and/or for summary judgment. For the reasons set forth below, defendants' motion should be denied.

## ARGUMENT

## DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED IN ITS ENTIRETY

### A. THE APPLICABLE STANDARD

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the allegations in the complaint are accepted as true. Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998); SEC v. Simpson Capital Mgmt., Inc., 2008 WL 4093046, at *1 (S.D.N.Y. Sept. 3, 2008). In deciding such a motion, all reasonable inferences must be drawn in the plaintiff's favor. Grant v. Wallingford Bd. Of Educ., 69 F.3d 669, 673 (2d Cir. 1995).

The court's function on a motion to dismiss is not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient. SEC v. Simpson Capital Mgmt., Inc., 2008 WL 4093046, at *1 (S.D.N.Y. Sept. 3, 2008) (quoting Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985)).

The court should not dismiss the complaint if the plaintiff has stated enough facts to state a claim to relief that is plausible on its face. Twombley v. Bell Atl. Corp., 127 S. Ct. 1955, 1974 (2007);

9

see also Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994) ("court must not dismiss the action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

Here, there is little doubt that the Complaint states facts sufficient to state claims that are "plausible" on their face. Defendants' motion is replete with statements that merely contradict allegations in the Complaint and that, at most, create factual issues that must be resolved at trial and not on a motion to dismiss.

### B.  THE COMPLAINT ALLEGES A VALID CLAIM FOR BREACH OF THE RESTRICTIVE COVENANTS IN THE EMPLOYMENT AGREEMENT

The Complaint alleges the existence of the Employment Agreement that is drafted to protect valid business interests of Pure Power. Defendants do not deny that they breached practically every single provision in the agreement, but contend that the restrictive covenants are invalid because the restrictions i) attempt to prevent Fell and Belliard from ever engaging in their chosen vocation, ii) attempt to prevent them from soliciting clients who they know outside of their relationship with Pure Power, and iii) do not exclusively seek to prevent the use of trade secrets. None of these contentions have merit.

Here, Pure Power's legitimate interest was to protect itself from Fell and Belliard's unfairly competing through the use of confidential information obtained while they were working at Pure Power. See BDO Seidman v. Hirschberg, 93 N.Y.2d 382, 391 (1999); see also Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 71 (2d Cir. 1999); Town & Country & H.S. v. Newbury, 3 N.Y.2d 554, 170 N.Y.S.2d 328 (1958). Indeed, the Complaint clearly alleges that Pure Power developed a highly sophisticated and extensive client list that gave it a competitive advantage over other fitness facilities. In addition, Fell and Belliard did not have any "loyal" clients before they joined Pure Power, and Pure Power had the legitimate interest of protecting its client base for a reasonable period of time – at least

to allow Pure Power to preserve its good will by allowing its clients to transition to new trainers. Finally, Fell and Belliard were not prohibited from working in the fitness industry, but were only prohibited from competing in a military-style fitness center.

Moreover, since Pure Power developed the concept of an indoor obstacle course/confidence program, Pure Power had the legitimate interest of preventing the wholesale copying of its facility, again for at least a reasonable period of time after Fell and Belliard ended their employment. Courts will and should prevent former employees from exploiting or appropriating good will that had been created and maintained at the employers' expense. See Globaldata Mgmt. Corp. v. Pfizer, Inc., 2005 WL 3487845, at *4 (Sup. Ct. N.Y.Co. Nov. 23, 2005).

To the extent that the restrictions in the Employment Agreement may have been geographically or durationally overbroad, the Court has the ability to enforce the restrictions to the extent necessary to reasonably protect the employer. See BDO Seidman v. Hirschberg, 93 N.Y.2d 382, 394-95 (1999); Globaldata Mgmt. Corp. v. Pfizer Inc., 2005 WL 3487845, at *5 (Sup. Ct. N.Y. Co. Nov. 23, 2005). The Employment Agreement itself states that its provisions should be modified to the extent allowed by applicable law.

Contrary to defendants' position, New York law does not require that a former employee take or use "trade secrets" in order for there to be a violation of a restrictive covenant. See, e.g., Innovative Networks, Inc. v. Satellite Airlines Ticketing Centers, 871 F.Supp. 709, 729 n.18 (S.D.N.Y. 1995); Ecolab, Inc. v. Paolo, 753 F.Supp. 1100, 1113 (E.D.N.Y. 1991).

Finally, to the extent defendants' have legitimate factual contentions concerning the reasonableness of the restrictive covenants, those concerns are not appropriately raised on a motion to dismiss.

C.  THE COMPLAINT ALLEGES A VALID CLAIM FOR BREACH OF DUTY OF <u>LOYALTY</u> <u>AGAINST ALL OF THE DEFENDANTS</u>

The Complaint alleges that while still employed by Pure Power, Fell and Belliard did not exercise good faith and loyalty, including using Pure Power's facilities to set up their own business, misappropriating and using confidential information to use in their competing business, employing their secret girlfriends to solicit Pure Power clients, and lied and were insubordinate to Brenner in order to intentionally leave Pure Power understaffed.  In response, defendants contend that there is no evidence that they used Pure Power's time or facilities to set up their own business and that defendants Lee and Baynard did not owe any duty of loyalty to Pure Power.  Both contentions lack any merit.

New York law is well-settled that "an employee is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties." <u>CBS Corp. v. Dumsday</u>, 268 A.D.2d 350, 353, 702 N.Y.S.2d 248 (1st Dept. 2000) (quoting <u>Lamdin v. Broadway Surface Adv. Corp.</u>, 272 N.Y. 133, 138 (1936)); <u>see also</u> <u>American Building Maintenance Co. v. Acme Property Servs.</u>, 515 F. Supp.2d 298, 312-313 (N.D.N.Y. 2007).  Even if the court were to accept defendants' factual assertion that they did not use Pure Power's facilities or computers to help them set-up their own business, the remaining allegations concerning breaking into a private office, misappropriation, insubordination, and solicitation easily defeat their contention that that Complaint fails to allege a valid breach of loyalty claim.  <u>See</u> <u>American Building Maintenance Co.</u>, 515 F.Supp.2d at 312-313.

Moreover, the fact that Lee and Baynard were not employees of Pure Power does not preclude a claim against them for aiding Fell and Belliard's breaches.  The Complaint alleges that both Lee and Baynard knowingly participated in the breaches and caused damage to Pure Power by reason of their participation.  These allegations are sufficient to state a claim against Lee and Baynard.  <u>Schneider</u> <u>Leasing Plus, Inc. v. Stallone</u>, 172 A.D.2d 739, 741, 569 N.Y.S.2d 126 (2d Dept. 1991) ("Where such

a breach of fiduciary duty has been established, third parties who have knowingly participated in the breach may be held accountable."); see also American Building Maint. Co. v. Acme Prop. Servs., Inc., 515 F.Supp.2d 298, 317-318 (N.D.N.Y. 2007); Innovative Networks, Inc. v. Satellite Airlines Ticketing Centers, 871 F.Supp. 709, 731 (S.D.N.Y. 1995).

D. THE COMPLAINT STATES A VALID CLAIM FOR UNJUST ENRICHMENT

Plaintiffs allege that defendants have been unjustly enriched through the misappropriation and use of Pure Power's intellectual property and the Manuals. In response, defendants contend that the Complaint fails to allege that defendants benefitted from that use. They further contend that because plaintiffs also allege the existence of a contract, no claim for unjust enrichment can be asserted. Once again, defendants miss the mark.

At this stage of the litigation, it is more than sufficient for plaintiffs to allege that defendants use Pure Power's confidential and proprietary information (Par. 5), use Pure Power's Client List to solicit customers (Par. 28), use Pure Power's business Manuals (Par. 50), use Pure Power's concept, program and curriculum (Par. 53), all to unfairly compete and also have "avoided significant start-up costs normally associated with opening a fitness facility." (Par. 54). See American Building Maintenance Co. v. Acme Property Servs., 515 F.Supp.2d 298, 313 (N.D.N.Y. 2007). As far as the specifics concerning the extent to which the defendants have benefitted, such information will be developed during discovery.

Defendants' other contention also lacks merit. At this stage of the action, there is no requirement that plaintiffs must elect to plead either breach of contract or unjust enrichment. While perhaps recovery cannot be had on both claims, it is proper to plead them both in the alternative, especially since defendants dispute the enforceability of the Employment Agreements. See Dupler v. Costco Wholesale Corp., 249 F.R.D. 29, 46 (E.D.N.Y. 2008); In re Adelphia Communications Corp.,

2007 WL 2403553, at *7 (S.D.N.Y. 2007).  Nakamura v. Fujii, 253 A.D.2d 387, 677 N.Y.S.2d 113,

116 (1st Dept. 1998).

E.  THE COMPLAINT STATES A VALID CLAIM FOR UNFAIR COMPETITION

      Plaintiffs allege that defendants have misappropriated the labors and expenditures of Pure

Power and this are unfairly competing with Pure Power.  In response, defendants graft the unwarranted

additional requirement onto a claim of unfair competition that the misappropriation must lead to

confusion by consumers.  Defendants are incorrect.  Further, even if consumer confusion is an element,

then defendants' arguments fails because they are simply making factual assertions, inappropriate on a

motion to dismiss.

      New York law regarding unfair competition is extremely flexible, and the essence of such a

claim is that the defendant, in bad faith, misappropriated the labors and expenditures of another.  See

Saratoga Vichy Spring Co. v. Lehman, 625 F.2d 1037 1044 (2d Cir. 1980); Czech Beer Imports, Inc. v.

C. Haven Imports, LLC, 2005 WL 1490097, at *6 (June 23, 2005).  Indeed, in Comprehensive

Community Development Corp. v. Lehach, 223 A.D.2d 399, 636 N.Y.S.2d 755, 757 (1st Dept. 1996),

the Appellate Division upheld a claim remarkably similar to that being asserted by Pure Power:

> The fourth cause of action is legally sufficient as it is therein alleged that
> defendant engaged in unfair competition with plaintiff by misappropriation and
> exploitation of confidential information in abuse of her relationship of trust with
> plaintiff and improper use of their information to solicit plaintiff's patients for
> her own behalf.

      Defendants appear to be confusing a statutory or federal claim of unfair competition with such

a claim under the common law of New York.  Finally, even if confusion or dilution was a necessary

element, defendants' argument is comprised of untested factual assertions that at best raise issues that

are not properly resolved on a motion to dismiss.  Moreover, the "differences" cited between the two

facilities are miniscule and insignificant in contrast to what was copied by defendants.  Changing a

color here or there or eliminating one or two features does not alter the overall "look and feel" of the facility, and does not insulate Warrior Fitness from being an improper and blatant copy of Pure Power.

F.   THE COMPLAINT STATES A VALID CLAIM UNDER NY GBL §360

Plaintiffs' allegations are sufficient to support a claim for injunctive relief for trademark dilution under New York's General Business Law.  Defendants argue that because the Complaint fails to allege facts to support a claim of Unfair Competition, it likewise fails to assert a claim under Section §360.  However, as argued above, plaintiffs do adequately plead a claim of Unfair Competition, so defendants' argument should be rejected.

It is also important to note that the only relief available under this statute is injunctive relief, and that plaintiffs are not seeking such relief at this time.  As a result, it is simply premature for defendants to seek dismissal of their claim based on untested factual assertions prior to the completion of discovery.

G.   THE COMPLAINT PLEADS A VALID CLAIM OF STATUTORY TRADE DRESS
     INFRINGEMENT

Plaintiffs have alleged all of the elements required to state a claim under Section 43(a) of the Lanham Trademark Act, 15 U.S.C. §1125(a) ("Section 43(a)), for Trade Dress Infringement. Basically, plaintiffs have clearly alleged that defendants willfully copied and employed the distinctive look and feel of Pure Power in their own facility, and that there is a likelihood of confusion between the source of services being offered by Pure Power and the services being offered by Warrior Fitness. Complaint ¶ 94, 95.  Defendants' contentions concern whether plaintiffs have already proved their claims, rather whether plaintiffs can ultimately establish the elements of the claim.  Defendants' arguments are appropriate at trial or at a hearing and not on a motion to dismiss.  Moreover, defendants' contentions are belied by reality, let alone by the allegations in the Complaint.

1. Plaintiffs' Trade Dress is Distinctive, Not Functional

Defendants' first contention is that because Pure Power's Trade Dress is functional, it is not entitled to protection under Section 43(a). Defendants, however, fail to cite any authority and conveniently omit many of the non-functional features that provide Pure Power with an overall "look and feel" that is protectable.

Simply put, defendants' contention that because a number of the features comprising Pure Power's Trade Dress are individually functional, there can be no protection, is a red-herring. The determination is not whether each individual component of the trade dress is functional, but whether the trade dress as a whole is functional. See In re Teleyne Indus., Inc., 696 F.2d 968, 971 (Fed. Civ. 1982); P3 Int'l v. Weitech, Inc., 52 U.S.P.Q.2d 1508 (S.D.N.Y. 1999). It is the way the facility is set up, not the individual exercise equipment pieces that create a distinctive "look and feel." In other words, the fact that the trade dress also serves a useful purpose does not deprive it of trademark status. See Vuitton et Fils S.A. v. J. Young Enters, Inc., 644 F.2d 769, 74 (9th Cir. 1981); Freddie Fuddruckers, Inc. v. Ridgeline, Inc., 589 F. Supp. 72 (N.D. Tex. 1984), aff'd, 783 F.2d 1062 (5th Cir. 1986). Finally, the issue of functionality has been consistently treated as a question of fact. See Innovative Networks, Inc. v. Satellite Airlines Ticketing Centers, Inc., 871 F.Supp.709, 722 (S.D.N.Y.1995).

2. Plaintiffs' Trade Dress Has Acquired Secondary Meaning

Defendants second contention relating to the claim under §43(a) is that plaintiffs have failed to allege facts that support a claim that the Trade Dress has acquired secondary meaning.

First, because the Trade Dress is inherently distinctive, there is no need to prove acquired distinctiveness or secondary meaning. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769-770 (1992). In Taco Cabana, the issue involved the décor of a Mexican restaurant. The entire "look and feel" of the restaurant's décor was found to be inherently distinctive by the jury, and that finding

was not upset by the Supreme Court.  Likewise, in <u>Freddie Fuddruckers, Inc. v. Ridgeline, Inc.</u>, 223 U.S.P.Q. 1139 (N.D. Tex. 1984), the overall appearance of the restaurant was found to be inherently distinctive.  Likewise, Pure Power's overall appearance, despite incorporating common items (as did the restaurants cited above), is inherently distinctive.

Moreover, even if acquisition of secondary meaning was needed, the United States Patent Office recently found that the Pure Power Trade Dress had in fact acquired secondary meaning when it accepted the Trade Dress for registration.  Registration is <u>prima facie</u> evidence of (i) the validity of the registered work and registration, (ii) the registrant's ownership of the mark, and (iii) the exclusive right to use the mark in commerce in connection with the specified services.  <u>See</u> 15 U.S.C. §1057(b).  As a result, defendants' contentions hold very little sway, especially at the pleading stage.  <u>See</u> <u>Innovative Networks</u>, 871 F.Supp. at 723 (citing <u>Thompson Medical Co. v. Pfizer, Inc.</u>, 753 F.2d 208, 217 (2d Cir. 1985)); <u>see also</u> <u>Coach Leatherware Co. v. AnnTaylor, Inc.</u>, 933 F.2d 162, 169 (2d Cir. 1991) ("The careful weighing of evidence necessary to determining secondary meaning renders it an unlikely candidate for summary judgment.")

3.  <u>Plaintiffs Have Adequately Pled a Likelihood of Confusion</u>

Once again defendants improperly argue that plaintiffs have not established likelihood of confusion, rather than whether plaintiffs ultimately can establish this element.

Determining whether there is a likelihood of confusion involves the extremely factual multi-factor test set forth in <u>Polaroid Corp. v. Polaroid Express. Corp.</u>, 287 F.2d 492, 495 (2d Cir.), <u>cert. denied</u>, 368 U.S. 820 (1961).  The eight factors are: (1) the strength of the mark, (2) degree of similarity between the two marks, (3) proximity of the products, (4) likelihood that the prior owner will bridge the gap, (5) degree of actual confusion, (6) defendants' good faith, (7) quality of the defendants' product, and (8) sophistication of the buyers.  <u>Id.</u> Resolution of this highly factual issue is usually not proper for summary judgment, let alone on a motion to dismiss.  <u>See</u> <u>Innovative Networks, Inc. v.</u>

Satellite Airlines Ticketing Centers, Inc., 871 F.Supp. 709, 724 (S.D.N.Y. 1995) (citing Universal City Studios Inc. v. Nintendo Co., 746 F.2d 112, 116 (2d Cir. 1984)).

### H.  THE COMPLAINT PLEADS A VALID CLAIM FOR COPYRIGHT INFRINGMENT

In the Complaint, plaintiffs allege that defendants took and copied the Manuals, and subsequently used Pure Power's documents "as part of running their competing business."  Complaint ¶¶ 101-103.  Finally, the Complaint alleged that after May 13, 2008, defendants made copies, created derivative works and are distributing the works  in violation of Section 106 of the Copyright Act, 17 U.S.C. §106.  Complaint ¶ 104.

In response, defendants point out that the Complaint also alleges that the documents were taken in March and were used prior to May 13 to help set-up their competing business.  Somehow, defendants contend that such allegations preclude any claim that defendants continued to copy, use and distribute the documents subsequent to May 13.  This argument makes no sense and should be rejected out-of-hand.

### I.  THE COMPLAINT PLEADS A VALID CLAIM OF CONVERSION AGAINST BELLIARD AND FELL

After breaking into Brenner's private office, Belliard and Fell are alleged to have taken an irreplaceable portion of a book Brenner was writing, including handwritten notes (the "Transcript").  They are alleged to have exercised dominion over the Transcript, to the exclusion of Brenner's rights.  Complaint ¶¶ 107-109.  As a result, the Complaint pleads a valid claim of conversion under New York law.  See Colavito v. New York Organ Donor Network, Inc., 8 N.Y.3d 43, 49-50, 827 N.Y.S.2d 96 (2006).

In response, defendants contend that no cause of action for conversion can apply because it is duplicative of plaintiffs' breach of contract action.  As noted above, a party may plead in the

alternative even if it cannot recover on each of the claims after trial. Moreover, there is no contract governing or relating to the Transcript or the ex-Marines' pilfering of Brenner's personal effects.

J.   THE COMPLAINT PLEADS A VALID CLAIM OF DEFAMATION AGAINST LEE

The Complaint alleges that Lee defamed Brenner by telling at least one Pure Power client that Lauren Brenner hates homosexuals and telling at least three other clients that Brenner treats all of her employees like garbage, fires them at will, and does not pay them. Complaint ¶¶ 46, 112-115. Defendants offer no defense of Lee's clearly factual statements that Brenner fires employees at will and does not pay them. Instead, Defendants only contend that Lee's statements were merely opinion and therefore constitutionally protected. Defendants only address the factors employed by New York courts to distinguish between protected expressions of opinion and actionable assertions of fact. This contention, however, is premature and inappropriate at the pleading stage.

Moreover, "even in cases where a statement falls within the protective shield of expressions of opinion, such opinions will lose their protection and become actionable where the statement of opinion implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it." Guerrero v. Carva, 10 A.D. 3d 105, 115, 779 N.Y.S.2d 12 (1st Dept. 2004); see also Steinhilber v. Alfonse, 68 N.Y.2d 283, 289, 508 N.Y.S.2d 901 (1986) (where "a statement of opinion implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, it is a 'mixed opinion' and is actionable"); accord A. E. Hotchner v. Castillo-Puche, 551 F.2d 910, 913 (2d Cir. 1977) ("Liability for libel may attach...when a negative characterization of a person is coupled with a clear but false implication that the author is privy to facts about the person that are unknown to the general reader"). The U.S. Supreme Court has rejected a "wholesale defamation exemption for anything that might be labeled 'opinion,'" because "expressions of opinion may often imply an assertion of objective fact." Milkovich v. Lorain Journal Co., 110 S.Ct. 2695, 2705 (1990).

Thus, "an expression of opinion c[an] be defamatory if the expression was sufficiently derogatory

of another as to cause harm to his reputation, so as to lower him in the estimation of the community or *to deter third persons from associating or dealing with him,*" particularly where the statement implies underlying facts unknown to the listener.  Restatement (Second) of Torts § 566, comment a (emphasis added).  The distinction between "pure opinion" and mixed opinion "lies in the effect upon the recipient of the communication."  Restatement § 566, comment c.    Ultimately, both federal and state courts have consistently focused their analysis of alleged defamation on "the overall context in which the complained-of assertions were made." United States v. Flamm, 201 F.3d 144, 153 (2d Cir. 2000).

Lee's statement that Ms. Brenner hates homosexuals implies, at the very least, that Lee is privy to some incident in which Brenner demonstrated a hatred for homosexuals.  Similarly, Lee's comment that Brenner "treated her staff like garbage" implies that Lee has seen or heard Brenner in fact treat members of her staff in a degrading, disrespectful, or abusive manner.  Both statements "imply the existence of undisclosed underlying facts" supporting Lee's opinion to Brenner's detriment.  Giffuni v. Feingold, 299 A.D.2d 265, 266, 749 N.Y.S. 2d 716 (1st Dept. 2002).  These assertions cannot be considered "loose, figurative or hyperbolic statements," particularly given Lee's alleged position as a secret investor in Warrior Fitness, her hidden relationship with a former employee/competitor of Pure Power, and her efforts to discredit Brenner while soliciting Pure Power's clients on behalf of Warrior Fitness. See id.

Lee's statements of mixed opinion are distinguishable from the statements of pure opinion at issue in the cases upon which defendants rely to support the overbroad generalization that New York courts have consistently viewed statements regarding one's professional and ethical conduct to be statements of opinion.  That assertion misstates New York law.  For example, in the unreported decision, Tasso v. Platinum Guild Intl., 1998 WL 841489 (S.D.N.Y., Dec. 3, 1998), the District Court found that a former public relations consultant was not defamed by the president of a company she had formerly worked who said that she "was dishonest, unethical, untrustworthy and unprofessional...and

that she was incompetent." 1998 WL 841489, at *5. In <u>Tasso</u>, the District Court held that these were "non-actionable statements of opinion *based on disclosed facts.*" <u>Id.</u> (emphasis added). The court was not addressing a statement of mixed opinion in <u>Tasso</u>. The defendant had disclosed the factual basis for his opinion, while Lee has merely stated that Brenner hates homosexuals and treats her staff like garbage without disclosing the underlying basis for her opinion.

Likewise, in <u>Park v. Capital Cities Communications</u>, the Fourth Department found that an ophthalmologist had not been defamed by the local ophthalmologic society's statement, "we share the concern being expressed in the community about possible unnecessary or inappropriate eye surgery." 181 A.D. 2d 192, 194, 585 N.Y.S.2d 902 (4th Dept. 1992). Contrary to defendants' characterization of the decision, the court did not dismiss the defamation claim because the statement concerned the plaintiff's professional and ethical conduct, but because there was no evidence that the statement was actually directed at the plaintiff. <u>Id.</u> at 195 ("the average viewer would interpret the highlighted portion of the resolution as an innocuous expression of concern by a professional organization about the general problem of possible unnecessary or inappropriate eye surgery."). Unlike the statement in <u>Park</u>, Lee's statement was clearly directed at Brenner.

Finally, in <u>Amodei v. New York State Chiropractic Assoc.</u>, 160 A.D. 2d 279, 281, 553 N.Y.S.2d 713 (1st Dept. 1990), a chiropractor accused the state chiropractic association of defamation based on the association's characterization of patient complaints against him as charges of "unprofessional conduct." The First Department provides little discussion of the defamation claim. The court dismissed the claim after describing the use of the term as "a constitutionally protected expression of opinion, describing the nature of the complaints lodged against plaintiff" <u>Id.</u> <u>Amodei</u> is distinguishable from this action. The basis for the association's charge of "unprofessional conduct" was "the complaints arising out of a consulting examination of one Janice L. Fine, performed for Geico Insurance Company, which were received from both the patient and her treating chiropractor." <u>Id.</u> at 280. Like <u>Tasso</u> and unlike the fact

in this action, the factual basis for the association's statement was disclosed, and the court did not address the issue of mixed opinion.

K. THE COMPLAINT PLEADS A VALID CLAIM OF TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

Plaintiffs' allege that Pure Power had business relations with clients, potential clients, and potential investors, and that defendants interfered with these prospective relationships employing dishonest, unfair or improper means. Complaint ¶¶ 118-121. Defendants contend that the Complaint fails to identify the third parties and the wrongful means employed preventing the third parties from doing business with plaintiffs. Defendants also contend that because the Complaint only alleges acts intended to help defendants' new business, no claim of tortuous interference is stated. Defendants' contentions reflect a conscious effort to simply ignore the allegations in the Complaint.

The Complaint describes in vivid detail the wrongful acts of defendants, including employing secret girlfriends to solicit and lie to existing customers, pilfering a client list in order to solicit existing and prospective clients, defaming Brenner, and stealing proprietary business materials to unfairly compete. Moreover, by copying and using Pure Power's proprietary and unique Trade Dress and Manuals, the value and attractiveness of investing in Pure Power franchises has been severely lowered. Once again, plaintiffs at the pleading stage, do not have to establish their claims, and do not have to identify every single potential client or investor. The Complaint does, however, sufficiently allege each of the elements necessary to state a claim for tortuous interference with prospective economic advantage. See Purgess v. Sharrock, 33 F.3d 134, 141 (2d Cir. 1994). Finally, the contention that because defendants were acting for their own economic benefit, the Complaint fails to state a claim, is incorrect. The third element of an interference claim requires that "defendants acted with the sole purpose of harming the plaintiff or used dishonest, unfair or improper means." Id. (emphasis added). Even the case cited by defendants, Shared Communications Servs. v. Goldman, Sachs & Co., 23

A.D.3d 162, 803 N.Y.S.2d 512 (1st Dept. 2005), noted that a party cannot "inflict injury by unlawful means." Id. at 163.

L.  THE COMPLAINT ALLEGES A VALID CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT AGAINST LEE AND BAYNARD

The Complaint alleges that Lee and Baynard were aware of the respective Employment Agreements that Pure Power had with Fell and Belliard, and that Lee and Baynard intentionally induced Fell and Belliard to breach those agreements, thereby damaging Pure Power.  Complaint ¶¶ 127-129.  Defendants inexplicably contend that the Complaint fails to identify the contracts that were allegedly interfered with, yet in the very next sentence acknowledge that the Complaint alleges the existence of the Fell and Belliard employment agreements.  Moreover, to the extent that defendants' are making the argument, there is no rule and defendants do not cite any authority prohibiting a claim against a defendant for tortuously interfering with a contract to which a co-defendant was a party.

M.  THE COMPLAINT PLEADS ELEMENTS SUFFICIENT TO OBTAIN INJUNCTIVE RELIEF

Once again, defendants confuse establishing the right to injunctive relief with pleading facts sufficient to indicate the possibility of obtaining such relief.  Plaintiffs' acknowledge that a portion of the harm being suffered can be compensated through an award of money damages.  Therefore, the Complaint (¶ 135) limits the injunctive relief sought to the following areas were such relief is commonly available:

   i)  Use of intellectual property, proprietary information, client lists, copyright protected materials and Trade Dress. See Sterling Drug, Inc. v. Boyer AG, 14 F.3d 733, 744-747 (2d Cir. 1994) (Lanham Act); Peer Int'l Corp. v. Luna Records, Inc., 887 F.Supp. 560, 570 (S.D.N.Y. 1995) (Copyright Act);

ii) Soliciting or servicing Pure Power's clients for a reasonable period of time. See Shred-It USA, Inc. v. Mobile Data Shred, Inc., 228 F.Supp.2d 455, 466 (S.D.N.Y. 2002) (enjoining continued solicitation);

iii) Competing with Pure Power for a reasonable period of time within a reasonable geographic area. See Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 69-70 (2d Cir. 1999) (covenant not to compete)); and

iv) Damaging and impugning plaintiffs' reputation. See American Home Products Corp. v. Johnson and Johnson, 577 F.2d 160, 164 (2d Cir. 1978) (Upholding injunction against advertising based in part on finding by District Court that ads are "injuring, and will continue to injure, Tylenol's reputation among consumers."); Holzer Watch Co. v. Montres Universal S.A., 1984 WL 285, at * (S.D.N.Y. May 29, 1984)(granting injunction based in part on potential damage to plaintiffs' reputation in the relevant industry).

N.    THE COMPLAINT PLEADS VALID CLAIMS AGAINST WARRIOR

Defendants assert that the Complaint fails to allege any claims against defendant Warrior Fitness Boot Camp, LLC. However, many of the Claims for Relief do not name Warrior Fitness as a defendant. However, the claims that do name Warrior Fitness all sufficiently allege potential liability against the entity.

a)    Unjust Enrichment – Warrior Fitness is alleged to be using the materials, concepts, proprietary information and Trade Dress in competing with Pure Power.

b)    Unfair competition – Warrior Fitness is alleged to be using the intellectual property and the fruits of Pure Power's labors to unfairly compete with Pure Power.

c)    NY GBL § 360 – Warrior Fitness has copied, is employing, and is benefitting from the use of Pure Power's Trade Dress.

d) <u>Trade Dress Infringement</u> – Warrior Fitness has copied and employed the distinctive look and feel of Pure Power in Warrior Fitness' own facility.

e) <u>Copyright Infringement</u> – Warrior Fitness is using and distributing improperly copied material protected under the Copyright Laws.

f) <u>Tortuous Interference</u> – Warrior Fitness, by using proprietary information and copying Pure Power's Trade Dress, had diminished the value of plaintiffs' relationships with prospective franchisees and investors.

## **CONCLUSION**

For all of the foregoing reasons, defendants' motion should be denied in its entirety.

Dated: New York, New York
       December 2, 2008

                    MINTZ & GOLD LLP

                    Steven G. Mintz, Esq.
                    Mark S. Pomerantz, Esq.
                    470 Park Avenue South, 10th Floor North
                    New York, NY 10016
                    (212) 696-4848
                    mintz@mintzandgold.com
                    pomerantz@mintzandgold.com
                    *Attorneys for Plaintiffs*

# EXHIBIT A

Document Description: **Notice of Publication**
Mail / Create Date: **19-Nov-2008**



Side - 1



**NOTICE OF PUBLICATION UNDER §12(a)**
**MAILING DATE: Nov 19, 2008**
**PUBLICATION DATE:  Dec 9, 2008**

The mark identified below will be published in the Official Gazette on Dec 9, 2008.  Any party who believes
they will be damaged by registration of the mark may oppose its registration by filing an opposition to
registration or a request to extend the time to oppose within thirty (30) days from the publication date on this
notice.  If no opposition is filed within the time specified by law, the USPTO may issue a Certificate of
Registration.

To view the Official Gazette online or to order a paper copy, visit the USPTO website at
http://www.uspto.gov/web/trademarks/tmog/ any time within the five-week period after the date of
publication.  You may also order a printed version from the U.S. Government Printing Office (GPO) at
http://bookstore.gpo.gov or 202-512-1800.  To check the status of your application, go to
http://tarr.uspto.gov/.

**SERIAL NUMBER:**    78805804
**MARK:**        **DESIRE COURAGE**
**OWNER:**        **Pure Power Boot Camp, Inc.**

Side - 2

UNITED STATES PATENT AND TRADEMARK OFFICE
COMMISSIONER FOR TRADEMARKS
P.O. BOX 1451
ALEXANDRIA, VA  22313-1451

FIRST-CLASS
MAIL
U.S POSTAGE
PAID

SUSAN UPTON DOUGLASS
FROSS ZELNICK LEHRMAN & ZISSU PC
866 UNITED NATIONS PLZ
NEW YORK, NY  10017-1822

TDR Home

This document may be displayed as a PDF file containing images without text. You may view online or save the entire document by clicking on the file download icon in the upper right corner of this page. [required PDF viewer]

FAQ: Are you seeing only the first page of this PDF document?

*If you need help:*

- **General trademark information**: *Please e-mail* TrademarkAssistanceCenter@uspto.gov, *or telephone either 571-272-9250 or 1-800-786-9199.*
- **Technical help**: *For instructions on how to use TDR, or help in resolving* **technical** *glitches, please e-mail* TDR@uspto.gov. *If outside of the normal business hours of the USPTO, please e-mail* Electronic Business Support, *or call 1-800-786-9199.*
- **Questions about USPTO programs**: *Please e-mail* USPTO Contact Center (UCC).

**NOTE**: *Within any e-mail, please include your telephone number so we can talk to you directly, if necessary. Also, include the relevant serial number or registration number, if existing.*

# EXHIBIT B

DRAFT 1/31/06

## PURE POWER BOOT CAMP EMPLOYEE AGREEMENT

[Name and address
of employee] Alex Fell
2750 Johnson Ave 5G
Bronx NY 10463

Dear Alex Fell            :

In consideration of your continued employment with Pure Power Boot Camp, Inc. (the "Company"), you agree to the following terms and conditions:

1.    Commitment to Full Effort

You agree that during the period of your employment you shall devote your skills and best efforts to the Company; you shall work to further the best interests of the Company; and you shall not do anything to undermine or disparage the reputation of the Company or do anything that is otherwise detrimental to the Company. You shall not, directly or indirectly, assist any competitors of the Company while you are employed by the Company.

2.    Confidential Information

You shall not disclose, either orally or in writing, to anyone outside the Company any confidential or commercially sensitive information made known to you or acquired by you in the course of your employment, including but not limited to all such information relating to marketing or strategic plans, products and/or services under development, suppliers, customers, inventions, discoveries, improvements, methods, processes, know-how, trade secrets, pricing methods, personnel information and any other information that, if disclosed, might be profitable to a competitor or other third party or detrimental to the Company.

3.    Intellectual Property

(a)    You acknowledge that the Company's PURE POWER BOOT CAMP obstacle-confidence courses and related environments, and the marketing thereof, embody and/or reflect inventions, discoveries, concepts, ideas, developments, improvements, methods, processes, know-how, trade secrets, designs, trademarks (including but not limited to the marks PURE POWER and PURE POWER BOOT CAMP), trade dress, textual and graphic material, and a distinctive overall look and feel (collectively, "Intellectual Property"). You agree that all such Intellectual Property, regardless of whether or not it is capable of patent, trademark, trade dress, trade secret or copyright protection, is exclusively owned by the Company. You shall not, during the course of your employment or at any time thereafter, challenge the Company's ownership of any Intellectual Property or the validity or enforceability thereof, nor shall you use any

Intellectual Property in any competing business, or in any other way without the Company's express written permission, during or after your employment with the Company.

(b)    You further agree that all Intellectual Property that you may conceive, develop, create or reduce to tangible form while you are employed by the Company that relates in any way to the business of the Company or that results from or is suggested by work that you do for the Company is and shall be exclusively owned by the Company. You hereby irrevocably assign to the Company all right, title and interest that you may have in and to any and all Intellectual Property. You agree that, during and after your employment with the Company, you shall execute documents of assignment or such other documents as may be necessary to effectuate the assignment set forth herein and to confirm or maintain the Company's ownership of any Intellectual Property, and you shall otherwise reasonably cooperate with the Company in obtaining, maintaining and enforcing its rights in and to the Intellectual Property.

4.    Non-Competition

You agree that, during the term of your employment and for ten (10) years thereafter:

(a)    you shall not, and shall not assist any third party to, conduct any business or be employed by any business that competes directly with the Company. A business that competes directly with the Company shall include, but shall not be limited to, any physical exercise program, confidence program or gym: (i) that uses obstacle courses; (ii) that uses methods or exercises derived from military training; (iii) that uses a military theme in any way; or (iv) that employs the term "boot camp" in the name or description of the program or gym;

(b)    you shall not, and shall not assist any third party to, hire any employee of the Company or seek to persuade any employee of the Company to discontinue employment with the Company or to become employed by or otherwise engaged in any business that competes directly with the Company; and

(c)    you shall not, and shall not assist any third party to, solicit any client or customer of the Company to discontinue his or her use of the Company's products and services or to use the competing products or services of another business.

5.    General Provisions

This Agreement shall continue in effect after the termination of your employment by the Company and shall be binding upon and inure to the benefit of both parties and their respective successors, assigns and representatives. You hereby represent that you have read and understand all of the provisions of this Agreement and you agree that the provisions of this Agreement are reasonable and necessary for the protection of the business and goodwill of the Company and the Company's Intellectual Property. It is the

intent of the parties hereto that if in the opinion of any court of competent jurisdiction any provision set forth in this Agreement is not reasonable and by reason thereof is not enforceable, such provision shall be modified to the extent necessary to render it enforceable to the maximum extent allowed by applicable law, and the validity, legality and enforceability of the remainder of the Agreement shall not in any way be affected or impaired thereby.  This Agreement sets forth the entire agreement between the parties with respect to its subject matter and supersedes all prior discussions, agreements and understandings concerning the subject matter hereof.  This Agreement may be amended only by an instrument in writing signed by both parties.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to the conflict of laws provisions thereof.  You agree to accept the exclusive jurisdiction and venue of the courts of the State of New York, and the federal district courts situated in New York, New York for the adjudication of any dispute, controversy or claim arising in connection with or related to this Agreement.

PURE POWER BOOT CAMP, INC.

By: _____
      Lauren Brenner
      President

Agreed and accepted:

_____    Date: 9/26/06
[Employee]

I:\zhilden\ppbc\Non-Competition Agreement.doc