UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                     :

PURE POWER BOOT CAMP, INC.,          :
PURE POWER BOOT CAMP FRANCHISING   :
CORPORATION, PURE POWER BOOT CAMP :   08 CV 4810 (JGK)(THK)
JERICHO, INC., and LAUREN BRENNER,   :   ECF CASE
                                       :

        Plaintiffs,                      :
                                       :   **SECOND AMENDED**
         -against-                  :   **COMPLAINT**
                                       :

WARRIOR FITNESS BOOT CAMP, LLC,     :
ALEXANDER KENNETH FELL, RUBEN     :
DARIO BELLIARD, JENNIFER J. LEE, and    :
NANCY BAYNARD,                   :
                                       :

        Defendants.                    :
------------------------------------------------------------ x

      Plaintiffs Pure Power Boot Camp, Inc., Pure Power Boot Camp Franchising

Corporation, Pure Power Boot Camp Jericho Inc., and Lauren Brenner, by their attorneys,

Reiss Eisenpress LLP, as and for their Second Amended Complaint, allege upon personal

knowledge as to their own acts and status and upon information and belief as to the acts

of status of others, as follows:

## INTRODUCTION

      1.    This action involves the blatant, wholesale theft of a business's concept,

methodology, look and feel, and proprietary information by two former employees who

had no prior experience in the industry before working for Plaintiffs. Plaintiff Pure Power

Boot Camp ("Pure Power") is a gym facility utilizing a unique philosophy, approach,

training method, with a distinctive and recognizable look and feel, that was first

developed in 2003 by Plaintiff Lauren Brenner ("Brenner"). Pure Power is the only indoor obstacle/confidence course in the United States designed to train civilians in a military-style setting, but with positive reinforcement.

2.      Brenner's concept has become wildly popular and she has appeared on a myriad of media outlets including FOX, CNN, MSNBC, WB11 and ABC, that have showcased her and her training regimen. In fact, Brenner was the fitness contributor on a weekly basis for NBC's Today Show for seven months, and has been the celebrity fitness expert in over twenty-two reality shows on television. As a result of the publicity she received, as well as the unique aspects of Brenner's concept and look and feel of her facility, Pure Power has become synonymous with the concept of a military-style, obstacle course training center.

3.      Brenner's ideas, methods and facility configuration have become so popular and widely acknowledged, that she is licensed to franchise Pure Power in over forty-six states, and has been approached by numerous venture capitalists interested in expanding the business.

4.      Unfortunately, two of her employees, ex-Marines who were taught by Brenner how to train civilians in her methodology, decided to unfairly compete with Pure Power. Although Brenner welcomes fair competition, the two ex-Marines — who had no prior training in the fitness industry — plotted to set up a competing facility while still employed by Pure Power that would copy all of Brenner's concepts, methodologies and trade dress. Apparently egged on by one of their girlfriends, the two ex-Marines broke into Brenner's private office, took Pure Power's computerized client list, business plan,

operation manual, and start-up manual, and even stole a portion of Brenner's personal

book transcript. Not satisfied with misappropriating this proprietary and confidential

information, one of the employees went so far as to destroy a copy of the employment

agreements that the ex-Marine defendants had signed.

5.    While still working for Pure Power, Defendants plotted to unfairly compete

with Pure Power**.** They purposely alienated Pure Power's customers to Brenner, and

constantly lied to Brenner about their future plans. One of the Defendants even made up a

story about going to work for a family construction business in order to deceive Brenner.

In addition, the two ex- Marines surreptitiously had their girlfriends pose as Pure Power

clients in order to denigrate Brenner and solicit customers to the competing business. The

Defendants then opened their own competing business, Defendant Warrior Fitness Boot

Camp ("Warrior Fitness"), a mere few blocks away from Pure Power. Not only is

Warrior Fitness a blatant copy of Pure Power, but the Defendants use Pure Power and

Brenner's proprietary and confidential information to solicit and unfairly compete with

Pure Power.

6.    Plaintiffs now bring this action alleging breach of the employment

agreements, trade-dress infringement, copyright infringement defamation, unjust

enrichment, breach of the duty of loyalty, and unfair competition. Plaintiffs seek

damages, as well as injunctive relief.

## THE PARTIES

7.    Plaintiff Pure Power is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 38 West 21st Street, New York, New York 10010.

8.    Plaintiff Pure Power Boot Camp Franchising Corporation ("Pure Power Franchising" is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 38 West 21st' Street, New York, New York 10010.  Brenner is the president and founder of Pure Power Franchising.

9.    Plaintiff Pure Power Boot Camp Jericho, Inc. ('Pure Power Jericho") is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 50 S. Service Road, Jericho, New York 11753. Pure Power Jericho, which was incorporated on November 29, 2007, and has been open for business since February *25,* 2008, is the second boot camp facility operating on the Pure Power model that Brenner created. Brenner is the president and founder of Pure Power Jericho.

10.    Plaintiff Brenner is a citizen of the State of New York residing in the County and State of New York.

11.    Upon information and belief, defendant Warrior Fitness is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 29 West 35th Street, 3rd Floor, New York, New York 10001. Upon further information and belief, Warrior was incorporated on February 28, 2008. Warrior Fitness,

which operates an indoor obstacle/confidence course, opened for business in or about May, 2008.

12.   Upon information and belief, the individual defendant Alexander Kenneth Fell ("Fell") resides at 3205 Oxford Avenue, Apt 8, Bronx, New York 10463. Fell is a former employee of Pure Power and, upon information and belief, is a co-owner and co-CEO of Warrior Fitness.

13.   Upon information and belief, the individual defendant Ruben Dario Belliard ("Belliard") resides at 201 West 83rd Street, Apt ID, New York, New York 10024. Belliard is a former employee of Pure Power and, upon information and belief, is a co-owner and co-CEO of Warrior Fitness.

14.   Upon information and belief, the individual defendant Jennifer J. Lee ("Lee") resides at 55 West 26th Street, Apt. 11A, New York, New York 10010. Lee, who was and/or still is Fell's girlfriend, became a client of Pure Power on or about March 13, 2006 and left on March 28, 2008. Upon information and belief Lee is now a co-owner and co-CEO of Warrior Fitness.

15.   Upon information and belief, the individual defendant Nancy Baynard ("Baynard") resides at 201 West 83rd Street, Apt. 1D, New York, New York 10024. Baynard who was and/or still is Belliard's girlfriend, is a former client of Pure Power.

## JURISDICTION AND VENUE

16.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States. This Court also

5

has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(a) and (b), as this action arises under Acts of Congress relating to copyrights, trademarks and unfair competition. Finally, this Court has subject matter jurisdiction over the non-federal claims pursuant to 29 U.S.C. § 1367(a), as those claims form part of the same case or controversy as the claims based on the laws of the United States.

17.   Venue lies in this District pursuant to 28 U.S.C. § 1391(b).

## DEVELOPMENT OF PURE POWER

18.   Brenner, a Wall Street trader and lifelong athlete, was moved by the events of September 11, 2001, to create a facility that would instill in others the values of accountability and respect. Wishing to combine her interest in sports, entertainment and business, Brenner developed a plan for the creation of an indoor obstacle/confidence course boot camp. She trademarked the names "Pure Power Boot Camp" and "Train Military Style" on or about April 19, 2004.

19.   After investing months of research and hundreds of thousands of dollars, Brenner devised the Pure Power concept. In November 2003, she found a location in Chelsea and designed an indoor facility containing twelve obstacles which could be used in different ways depending on the user's fitness level. The obstacles include monkey bars, barbed wire crawl, high hurdles, an intensity wall, a traverse wall, a cargo net, a rope climb and a tire run, as well as obstacles entitled "swing to beam," "commando crawl" and "belly robbers" (collectively, the "Equipment"). Brenner invited eight Marines who had just returned from Iraq to test the obstacle/confidence course and received a very favorable response. While there are other gyms that styled themselves as

"boot camps," Pure Power was the first, and upon information and belief, the only facility employing an indoor obstacle course combined with a military style and positive reinforcement.

20.   In addition to the Equipment at the facility, Brenner installed several design features that were intended to convey the distinctive look and feel of a military training facility (the "Design Features"). The Design Features include walls that are covered with green camouflage netting, changing rooms that are World War II tents, flooring that is bordered by military-looking sandbags, and a flooring surface of the obstacle course that is a crushed-rubber, recycled surface that has the look and feel of dirt. Eleven standing pillars stenciled with principles of leadership are also part of the Design Features. Finally, individuals entering the Pure Power facility are greeted with a life-size statue of a screaming marine carrying a machine gun. The Equipment and the Design Features are referred to as "Pure Power's Trade Dress." Pure Power's Trade Dress gives the facility a distinctive appearance and a unique look and feel.

21.   In addition to the Trade Dress, there are other unique aspects of the Pure Power concept developed by Brenner. For example, Pure Power's trainers are called "drill instructors" ("DIs") and are all former soldiers who served in combat. The trainers are given extensive training in fitness instruction and are helped to obtain certification as fitness instructors, enabling them to develop meaningful careers in the industry.

22.   Pure Power clients are called "recruits" and are referred to only with their last names. They wear standard-issue military fatigues and dog tags while in class. All

recruits must sign a "recruit contract" and "recruit waiver," and all are give Pure Power Boot Camp Rules.

23.   Recruits sign up for "tours of duty" consisting of hourly sessions several times a week over a six- or eight-week period. Pure Power also has a "weekend warrior" program for clients called "weekend reserves," consisting of two-hour sessions on Saturdays and Sundays. Recruits are assigned to 16-member "platoons" with training programs designed to suit the recruits' personal fitness levels. All programs are based on military-style regimens.

24.   In order to protect its interests, on or about February 2, 2006, Pure Power filed for trade dress protection for the design of the facility, the terms used in the facility and the indoor obstacle/confidence course used in the facility. Pure Power has been informed that the United States Patent and Trademark Office will approve the application to register Pure Power's Trade Dress on or about November 2, 2008, the fifth year anniversary of the first public use of Pure Power's Trade Dress.

25.   Once it opened its doors to the public after extensive testing and training on February 4, 2004, Pure Power was an instant success. The facility and Brenner received considerable favorable publicity through various newspapers, magazines and television shows. For example, Brenner became the fitness contributor on NBC's Today Show. Brenner was designated the "Number One Entrepreneur" on CNN's Anderson Cooper's show On The Rise. She has appeared on a number of other networks and has been the celebrity fitness expert in over twenty-two reality shows on television. As a result of this publicity and its status as the nation's only indoor obstacle/confidence course, Pure

Power now has a glowing national and even international reputation, and is recognized by the public as a distinctive type of exercise facility.

26.   Over the nearly five years of its existence, Pure Power has attracted approximately 1,730 clients. The facility had a client renewal rate of approximately 94%, an extremely high rate for the industry.

27.   As part of the Pure Power concept developed by Brenner, Pure Power keeps a very detailed list of its clients that contains proprietary information not available publicly (the "Client List"). The Client List is stored through a web-based program entitled Mybody.com. Pure Power paid approximately $40,000 to a computer consultant to adapt this program to the particular needs of Pure Power's business.

28.   The information on Pure Power's Client List is not public knowledge and is not readily obtainable. In addition to the names of the clients, the Client List contains their credit card information, addresses, phone numbers, e-mail addresses, birthdates, weights, heights, fitness levels, and preferences. This information is not available through any public sources. Upon information and belief, Defendants obtained the Client List while still employed by Pure Power by breaking into Brenner's private office and accessing her computer. The pricing structure and class scheduling developed by Brenner is also part of the Pure Power concept, and gives Pure Power a competitive advantage.

29.   As a result of Pure Power's success, Brenner began to develop plans for franchising the Pure Power concept in or about 2006. To implement the franchising plan, she retained a consultant who helped her to create a "start-up manual," an "operations manual" and a business plan (collectively, these three documents, the Client List the

pricing structure, and the class scheduling structure are referred to as the "Pure Power

Proprietary Information"). Pure Power spent in excess of $150,000 on the development of

the three highly detailed and comprehensive business documents. The Pure Power

Proprietary Information gives Pure Power a competitive advantage.

30.   In 2007, Brenner began promoting the franchise concept, generating

additional business for Pure Power and finalizing her plan to open new facilities. To date,

Brenner has received over two hundred inquiries from prospective franchisees.

31.   Additionally, she worked toward the establishment of a second facility on

Long Island, i.e., Pure Power Jericho, which officially opened on February 25, 2008.

Brenner had hosted a grand opening party on February 7, 2008.

## DEFENDANT FELL'S AND BELLIARD'S
## EMPLOYMENT WITH PURE POWER

32.   Belliard was hired in or about August, 2004.

33.   Fell was hired by Pure Power in or about July, 2005.

34.   At the time they were hired, Belliard and Fell knew nothing about the fitness

industry. Pure Power invested substantial time and money in training them and obtaining

fitness certifications for them. As a result of the training that Pure Power sponsored,

Belliard and Fell obtained the credentials they needed to commence careers as fitness

instructors with the ability to earn far more than they could have earned with the skills

they previously possessed. Moreover, the skills necessary to be a successful trainer for

Pure Power are not learned in the United States military. Indeed, as members of the

Marine Corp. Fell and Belliard were exposed to training methods diametrically opposed to the methods of Pure Power. Brenner and Pure Power spent substantial time and resources teaching Fell and Belliard the Pure Power methodology of training and encouraging civilian clients through, among other things, positive reinforcement.

35.   Ultimately. Fell and Belliard became DIs and trusted Pure Power employees. As a result, they were given substantial responsibility to work closely with Pure Power's clients to train, motivate and inspire. Thus, Belliard and Fell were placed in a position of developing close relationships and trust with the clients.

36.   In 2006, at the instruction of its franchise consultant, Pure Power required all of its employees to sign employment agreements that contained confidentiality and non-compete clauses. Pure Power made signing the employment agreements a condition of continuing to be employed by Pure Power, because Brenner and Pure Power were exploring the establishment of franchises, and confidentiality was required by those interested in investing in the franchise concept.

37.   With respect to the duty of loyalty, the employment agreement that both Belliard and Fell signed, (the "Employment Agreement") stated as follows:

> You agree that during the period of your employment you shall devote your skills and best efforts to the Company; you shall work to further the best interests of the Company; and you shall not do anything to undermine or disparage the reputation of the Company or do anything that is otherwise detrimental to the Company. You shall not, directly or indirectly, assist any competitors of the Company while you are employed by the Company (the "Loyalty Clause").

38.   With respect to the issue of confidentiality, the Employment Agreement stated as follows:

11

You shall not disclose, either orally or in writing, to anyone outside the Company any confidential or commercially sensitive information made known to you or acquired by you in the course of your employment, including but not limited to all such information relating to marketing or strategic plans, products and/or services under development, suppliers, customers, inventions, discoveries, improvements, methods, processes, know-how, trade secrets, pricing methods, personnel information and any other information that, if disclosed, might be profitable to a competitor or other third part pr detrimental to the Company (the "Confidentiality Clause").

39.   With respect to the issue of intellectual property, the Employment

Agreement stated as follows:

    (a) You acknowledge that the Company's PURE POWER BOOT CAMP obstacle-confidence courses and related environments and the marketing thereof, embody and/or reflect inventions, discoveries, concepts, ideas, developments, improvements, methods, processes, know-how, trade secrets, designs, trademarks (including, but not limited to the marks PURE POWER and PURE POWER BOOT CAMP), trade dress, textual and graphic material, and a distinctive overall look and feel (collectively, "Intellectual Property"). You agree that such Intellectual Property, regardless of whether or not it is capable of patent trademark, trade dress, trade secret or copyright protection, is exclusively owned by the Company. You shall not during the course of your employment or at any time thereafter challenge the Company's ownership of any Intellectual Property or the validity or enforceability thereof, nor shall you use any Intellectual Property in any competing business, or in any other way without the Company's express written permissions, during or after your employment with the Company (the " Intellectual Property Clause").

40.   With respect to competition from other businesses, the Employment

Agreement stated as follows:

    (a) [Y]ou shall not and shall not assist any third party to conduct any business or be employed by any business that competes directly with the Company. A business that competes directly with the Company includes, but shall not be limited to, any physical exercise program, confidence program or gym: (i) that uses obstacle courses; (ii) that uses methods or exercises derived from military training; (iii) that uses a military theme in any way; or (iv) that employs the term "boot camp" in the name or description of the program or gym;

(b) [Y]ou shall not and shall not assist any third party to, hire any employee of the Company or seek to persuade any employee of the Company to discontinue employment with the company or to become employed by or otherwise engaged in any business that competes directly with the Company; and

(c) [Y]ou shall not, and shall not assist any third party to, solicit any client or customer of the Company to discontinue his or her use of the Company's products and services or to use the competing products or services of another business (the "Non-compete Clause").

41.   The Employment Agreement also stated that "(t)his Agreement shall continue in effect after the termination of your employment with the Company..." (the "General Clause"). The General Clauses of the agreement further provided that "if in the opinion of an court of competent jurisdiction any provision set forth in this Agreement is not reasonable any by reason thereof is no enforceable, such provision shall be modified to the extent necessary to render it enforceable to the maximum extent allowed by applicable law, and the validity, legality and enforceability of the remainder of the Agreement shall not in any way be affected or impaired thereby." Finally, the contracts were to be "governed by and construed in accordance with the laws of the State of New York."

## **DEFENDANTS' PLAN TO OPEN A COMPETING BUSINESS**

42.   Even though Belliard and Fell owed their entire careers as trainers to Brenner and the opportunities Pure Power had provided to them, they decided to open their own competing facility at the apparent urging of Fell's girlfriend, defendant Lee.

43.   Rather than merely compete with Pure Power, the Defendants decided to engage in wholesale theft of Pure Power's business, while at the same time engage in a number of deceptive acts.

44.   For example, Pure Power has a well-established policy against DIs dating customers. This policy was well known to Belliard and Fell. Thus, Belliard and Fell lied to Brenner about their respective relationships with two clients, defendants Lee and Baynard.

45.   Not only did Belliard and Fell lie to Brenner about their girlfriends, these ex-Marines surreptitiously had Lee and Baynard denigrate Pure Power and Brenner, in order to solicit and encourage clients to leave Pure Power, and sign up at the new facility they were secretly planning to open.

46.   Moreover, Defendant Lee in or about September to October 2007 and again in April to May 2008 defamed Brenner. Upon information and belief, in or about September to October 2007, Lee told at least Christine Maddock during runs the two of them took together and/or in Pure Power's changing tent in front of other people that Brenner hates homosexuals, treats all of her employees like garbage, fires them at will, does not pay them and fired one or her drill instructors because he was gay.

47.   In addition, in or about April-May 2008, Defendant Lee told Christine Maddock and others that Brenner was lying when Brenner said that Defendants had stolen Plaintiffs' property and that Lee's name was on the Defendants' new lease.

48.   These false statements were made by Lee in order to harm Brenner, and to steal clients away from Brenner and Pure Power. Lee also continued to pose as a client of Pure Power even after Belliard and Fell were no longer employed by Pure Power in order to secretly solicit Pure Power's customers.

49.   Upon information and belief, Fell and Belliard took steps to set up their competing business while they were still employed by Pure Power, as evidenced by the closeness in time between Belliard's resignation and the opening of Warrior Fitness.

50.   Upon information and belief, Fell and Belliard were using Pure Power's telephones and computers to assist them in creating their competing business.

51.   In addition to using Pure Power's facilities to set up their competing business while still employed at Pure Power, Belliard and Fell lied and were insubordinate to Brenner in order to hide the fact they were planning to compete with Pure Power, and in order to harm Pure Power's business. For example:

a)   Belliard and Fell refused to issue daily reports to Brenner intentionally creating a rift between Brenner and Pure Power's clients;

b)   Belliard and Fell refused and gave false reasons for refusing to help Brenner set up Pure Power Jericho;

c)   Belliard and Fell lied about having girlfriends that were clients;

d)   Belliard lied to Brenner about his loyalty to her, his loyalty to Pure Power, and his desire to stay on with Pure Power even after Fell's employment was terminated;

e)   Belliard and Fell lied about Pure Power not needing additional DIs, and convinced Brenner not to hire and train additional DIs which ultimately left Pure Power understaffed when Fell provoked his termination and Belliard left without giving Brenner any notice;

f)   Belliard lied to Brenner about being "here 100%" after Fell was terminated;

g)   Belliard lied about going to work for a family member when he resigned, leaving Brenner understaffed when he provided Pure Power with absolutely no notice; and

h)   Fell essentially got himself fired for insubordination and belligerence.

52.   In furtherance of Defendants' plan to open a competing boot camp facility, Fell and Belliard improperly entered Brenner's office on or about March 25, 2008, and stole a number of important documents proprietary to Pure Power, including hard copies of Pure Power's operation manual, startup manual, business plan and DI employment agreements. Belliard also deleted some of these documents from Pure Power's computer.

53.   Additionally, Belliard downloaded — from the computer in Brenner's personal office -- the names and personal information, including credit card information, of 1760 Pure Power clients. Upon information and belief, they selected 330 names of active clients from the list of 1760 that they had stolen and targeted the customers as candidates to be wooed away from Pure Power. Further, the information on the Client List they stole has enabled Defendants to obtain an unearned competitive benefit, in that they will have access to information about individual clients, including their fitness levels and preferences, that is not available to the general public, that was obtained by Pure Power in the development of its business, at great expense, and that provides Pure Power with a competitive advantage.

54.   In addition to their theft of Pure Power's Proprietary Information, defendant Belliard took and then shredded Belliard's written employment agreement with Pure Power.

55.   After purloining the documents, and deleting them from Pure Power's computer, defendants Fell and Belliard used Pure Power's Proprietary Information, including the start-up manual, operations manual and business plan that Pure Power created at great expense as part of running their competing business, Warrior Fitness. In

16

fact, Warrior Fitness uses Pure Power's concept, programs, and curriculum verbatim, changing only the titles. For example, Warrior Fitness uses the phrase "Operation Warrior" instead of "Tour of Duty" but the programs are identical. Finally, Defendants' business plan, start-up manual and brochure are also virtually identical to those of Pure Power.

56.   By stealing Pure Power's Proprietary Information and then using practically verbatim versions for defendant Warrior Fitness's business program, Defendants violated copyright laws and unfairly gained the benefit Pure Power's considerable investment in the preparation of these documents. They also avoided significant start-up costs normally associated with opening a fitness facility. Finally, Defendants' actions have hindered Plaintiffs' franchising prospects.

57.   In addition to all of the corporate documents they stole, Fell and Belliard stole a hard copy of a portion of the book Brenner had been writing (tentatively entitled "Warrior Goddess").

58.   The document that Fell and Belliard stole is irreplaceable, since it contains Brenner's extensive handwritten notes.

59.   Not content with purloining Pure Power's Proprietary Information, the Defendants also copied the entire Pure Power concept developed by Brenner. Thus, Defendants are using Pure Power's training methods, pricing structure, and the concept of an indoor obstacle/confidence course.

60.   Moreover, the Defendants have copied and infringed upon Pure Power's Trade Dress by duplicating the look and feel of Pure Power's facility.

61.   For example, in addition to copying the course itself, Defendants are using crushed-rubber matting for the floor identical to that of Pure Power, a set of three climbing walls, pillars with military tenets, mid in essence, the Warrior Fitness facility has the same look and feel as does Pure Power's facility.

62.   The virtual similarities between the two facilities have led to confusion on the part of Pure Power's customers, and have diluted Pure Power's Trade Press.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract Against Fell and Belliard)

63.   Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 62 above as if fully set forth at length herein.

64.   Belliard and Fell each executed valid and enforceable employment contracts with Pure Power entitled "Pure Power Boot Camp Employee Agreement" (the "Agreement").

65.   Belliard and Fell breached their respective Agreements in, without limitation, the following manner:

    a)    Breached Paragraph 1 of the Agreement by failing to devote their skills and best efforts to Pure Power and by disparaging and undermining the reputation of Pure Power;

    b)    Breached Paragraph 1of the Agreement by assisting a competitor of Pure Power while still employed by Pure Power;

    c)    Breached Paragraph 2 of the Agreement by disclosing confidential and commercially sensitive information;

      d)     Breached Paragraph 3 of the Agreement by using Pure Power's Intellectual Property (as defined in the Agreement) in a competing business;

      e)     Breached Paragraph 4 of the Agreement by competing directly with Pure Power within ten years of being employed by Pure Power; and

      f)     Breached Paragraph 4 of the Agreement by soliciting Pure Power's customers.

66. Pure Power has been damaged by Belliard and Fell's breaches.

67. Pure Power has complied with any conditions required to bring a claim under the Agreements.

68. By reason of the foregoing, Pure Power is entitled to an award of damages in an amount to be determined at trial, plus interest.

## SECOND CLAIM FOR RELIEF
**(Breach of the Common Law Duty Loyalty against Ballard, Fell, Lee and Baynard)**

69. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 68 above as if fully set forth at length herein.

70. An employee is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties.

71. Belliard and Fell breached the common law duty of loyalty they owed to Pure Power.

72. Lee and Baynard knowingly and willingly participated in the breach by Belliard and Fell of Belliard and Fell's duty of loyalty owed to Pure Power.

19

73.   Pure Power has suffered damages by reason of the actions of Belliard, Fell, Lee and Baynard in violating and participating in the violation of the duty of loyalty.

74.   By reason of the foregoing, Pure Power is entitled to an award of damages in an amount to be determined at trial, plus interest.

### THIRD CLAIM FOR RELIEF
### (Unjust Enrichment against All Defendants)

75.   Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 74 above as if fully set forth at length herein.

76.   Defendants have been enriched by using the materials, concepts, Proprietary Information and Trade Dress developed at great cost by Brenner and Pure Power in Defendants' competing facility Warrior Fitness.

77.   Defendants misappropriated the materials, concepts, Proprietary Information and Trade Dress developed by Brenner and Pure Power without permission, justification and without paying for them.

78.   It is against equity and good conscience to permit the Defendants to retain the materials and concepts without compensating Brenner and Pure Power.

79.   By reason of the foregoing, Plaintiffs are entitled to an award of damages in an amount to be determined at trial, plus interest.

### FOURTH CLAIM FOR RELIEF
### (Common Law Unfair Competition Against All Defendants)

80.   Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 79 above as if fully set forth at length herein.

81.   Defendants have, in bad-faith, misappropriated the labors and expenditures of Pure Power and are using the fruits of those labors and expenditures to unfairly compete with Pure Power, Pure Power Franchising and Pure Power Jericho.

82.   Defendants have also misappropriated, in bad-faith, the intellectual property of Pure Power, including without limitation, Pure Power's concepts, Trade Dress, and Proprietary Information (collectively, the "Intellectual Property").

83.   Defendants' use of Pure Power's Intellectual Property is likely to cause confusion and/or deceive prospective clients as to the origin of Defendants' facility.

84.   Plaintiffs have been harmed by Defendants misappropriation and use of the labors of Brenner and Pure Power.

85.   By reason of the foregoing, Plaintiffs are entitled to an award of damages in an amount to be determined at trial, plus interest.

## FIFTH CLAIM FOR RELIEF
### (Violation of GBL §360 Against MI Defendants)

86.   Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 85 above as if fully set forth at length herein.

87.   Defendants have in bad-faith misappropriated and used a commercial advantage belonging to Pure Power and Brenner by exploiting proprietary information and/or trade secrets.

88.   Defendants have physically taken, copied and/or are using confidential information of Brenner and Pure Power.

89.   Defendants have also diluted Pure Power's Trade Dress by blurring and/or tarnishing the Trade Dress owned and developed by Pure Power.

90.   Pure Power has no adequate remedy at law.

91.   By reason of the foregoing, Pure Power is entitled to a permanent injunction enjoining Defendants and any of them from using Pure Power's Intellectual Property, including Pure Power's Trade Dress, Proprietary Information, and from soliciting any of Pure Power's clients.

## SIXTH CLAIM FOR RELIEF
### (Statutory Trade Dress Infringement)

92.   Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 91 above as if filly set forth at length herein.

93.   Pure Power's Trade Dress is inherently distinctive as to the source of the product/service.

94.   Pure Power's Trade Dress is not functional, but is distinctive.

95.   The Trade Dress has acquired secondary meaning through extensive promotion, unsolicited publicity and public recognition over the course of nearly five years.

96.   Defendants have willfully copied and employed the distinctive look and feel of Pure Power in their own facility and are in violation of Section 43(a) of the Lanham Trademark Act *15* U.S.C. *§1125(a)* ("Section 43(a)").

97.   There is a likelihood of confusion between source of the services being offered by Pure Power and the services being offered by Warrior Fitness.

98.   Plaintiffs have been damaged by Defendants' violation of Section 43(a).

99.   By reason of the foregoing, Plaintiffs are entitled to an injunction and an award of damages in an amount to be determined at trial, plus interest.

## SEVENTH CLAIM FOR RELIEF
### (Copyright Infringement)

100. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 99 above as if fully set forth at length herein.

101. Pure Power is the owner of the copyright in four original works entitled "Pure Power Boot Camp Operations Manual," "Pure Power Boot Camp Start-Up Manual," "Pure Power Boot Camp Corporate Business Plan," and "Pure Power Boot Camp Brochure" (the "Works").

102. On May 9, 2008, Pure Power applied to register the Works with the Register of Copyrights of the United States of America.

103. The work entitled Pure Power Boot Camp Brochure was registered with the Copyright Office on May 13, 2008, Reg. No. TX0006840319.

104. The work entitled Pure Power Boot Camp Corporate Business Plan was registered with the Copyright Office on May 13, 2008, Reg. No. TX0001574597.

105. The works entitled Pure Power Boot Camp Start-Up Manual and Operations Manual were registered with the Copyright Office on May 13, 2008, Reg. No. TX0001575489.

106. Subsequent to May 13, 2008, Defendants made unauthorized copies of the Works, have created derivative works based on the Works, and are distributing such items to the public and to potential franchisees and others. Defendants' unauthorized copying of the Works and creation of derivative works based on the Works constitutes infringement of the Plaintiff' exclusive rights under Section 106 of the Copyright Act, 17 U.S.C. § 106. Defendants' distribution of these infringing items is causing Plaintiff irreparable harm, and Defendants are profiting unjustly from their unlawful distribution of these infringing items.

107. By reason of the foregoing, Plaintiffs are entitled to an injunction, an award of damages, including Defendants' profits, in an amount to be determined at trial, plus interest or statutory damages in lieu of actual damages and Defendants' profits, plus attorneys' fees.

## EIGHTH CLAIM FOR RELIEF
### (Conversion against Belliard and Fell)

108. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 107 above as if filly set forth at length herein.

109. Brenner had the legal ownership of a certain transcript of a book she was writing, including handwritten notes (the "Transcript").

110. Defendants Belliard and Fell intentionally and with moral turpitude took the Transcript from Brenner's private office, exercising unauthorized dominion over the Transcript, to the exclusion of Brenner's rights.

111. Brenner has been damaged by Defendants' conversion of the Transcript, which contained handwritten notes that are irreplaceable.

112. By reason of the foregoing, Brenner is entitled to an award of damages in an amount to be determined at trial, plus interest. Brenner is also entitled to an award of punitive damages.

## NINTH CLAIM FOR RELIEF
### (Defamation against Lee)

113. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 112 above as if fully set forth at length herein.

114. During September to October 2007, among other times, on numerous occasions Lee and Christine Maddock went running together by themselves and in addition spent time talking with each other in front of other people, in Pure Power's changing tents.

115. On multiple occasions during this September to October 2007 time period, on their runs alone and in Pure Power's changing tent in front of other people, Lee told at least Christine Maddock that Brenner hated homosexuals, treated all of her employees like garbage, was a loose cannon, and fired one of her drill instructors because he was gay (the "Statement").

116. In addition, in or about April-May 2008, Defendant Lee told Christine Maddock and others that Brenner was lying when Brenner said that Defendants stole Plaintiffs' property and that Lee's name was on Defendants' new lease (along with the Statement, the "Statements").

117. By making the defamatory Statements, Lee exposed Brenner to hatred, contempt or aversion.

118. Lee published the Statements to at least Christine Maddock, and upon information and belief published the Statements to other clients or former clients of Pure Power.

119. As a result of Lee's publishing the Statements Brenner has suffered direct economic harm to her reputation and business interests.

120. By reason of the foregoing, Plaintiffs are entitled to an award of damages in an amount to be determined at trial, plus interest.

**TENTH CLAIM FOR RELIEF**
**(Tortious Interference with Prospective Economic Advantage against All Defendants)**

121. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 120 above as if fully set forth at length herein.

122. Plaintiffs had business relations with a number of clients and potential clients. Plaintiffs also had business relations with a number of venture capitalists who were interested in investing in Pure Power franchises.

123. Defendants interfered with the business relations Plaintiffs had developed.

26

124. Defendants acted with the sole purpose of harming Plaintiffs.

125. Defendants used dishonest, unfair or improper means to interfere with Plaintiffs' business relations.

126. Plaintiffs have been damaged by Defendants' interference because by copying and using Pure Power's Intellectual Property, the ability to create Pure Power Franchises has been compromised, and the value of potential franchises has diminished.

127. Plaintiffs have also been damaged by Defendants' interference because the interference has diminished Pure Power's relations with its clients and potential clients.

128. By reason of the foregoing, Plaintiffs are entitled to an award of damages in an amount to be determined at trial, plus interest.

### ELEVENTH CLAIM FOR RELIEF
**(Tortious Interference with Contract against Lee and Baynard)**

129. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 128 above as if fully set forth at length herein.

130. Pure Power had valid and enforceable employment agreements with Belliard and Fell.

131. Upon information and belief, Defendants Lee and Baynard had knowledge of the employment agreements that Belliard and Fell had with Pure Power.

132. Defendants Lee and Baynard intentionally induced Belliard and Fell to breach their respective employment agreements.

27

133. Plaintiffs have been damaged by Lee and Baynard's intentional interference with the employment agreements.

134. By reason of the foregoing, Plaintiffs are entitled to an award of damages in an amount to be determined at trial, plus interest.

## TWELFTH CLAIM FOR RELIEF
### (Injunctive Relief)

135. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 134 above as if filly set forth herein.

136. Plaintiffs have been harmed and continue to be harmed by the actions of Defendants.

137. While some of the harm may be quantifiable and could be compensated through an award of money damages, much of the harm suffered by Plaintiffs is not easily quantifiable and is irreparable.

138. Plaintiffs do not have an adequate remedy at law.

139. By reason of the foregoing, Plaintiffs are entitled to a permanent injunction enjoining the Defendants and each of them from i) using any of the Intellectual Property, Proprietary Information, Client List, the Works and the Trade Dress, ii) soliciting or servicing any of Pure Power's current or past clients for a reasonable period of time; iii) competing with Pure Power for a reasonable period of time within a reasonable geographic region; and iv) damaging and impugning Plaintiffs' reputation.

**WHEREFORE**, Plaintiff respectfully demands judgment as follows:

i)   On its First Claim for Relief, an award of damages in an amount to be determined at trial, plus interest,

ii)  On its Second Claim for Relief, an award of damages in an amount to be determined at trial, plus interest;

iii) On its Third Claim for Relief; an award of damages in an amount to be determined at trial, plus interest;

iv)  On its Fourth Claim for Relief, an award of damages in an amount to be determined at trial, plus interest;

v)   On its Fifth Claim for Relief; a permanent injunction enjoining Defendants and any of them from using Pure Power's Intellectual Property, including Pure Power's Trade Dress, Proprietary Information, and from soliciting any of Pure Power's clients;

vi)  On its Sixth Claim for Relief; an injunction and an award of damages in an amount to be determined at trial, plus interest;

vii) On its Seventh Claim for Relief, an award of damages including Defendants' profits in an amount to be determined at trial, plus interest, or statutory damages in lieu of actual damages and Defendants' profits, and attorneys fees;

viii) On its Eighth Claim for Relief, an award of damages in an amount to be determined at trial, plus interest and punitive damages;

ix)  On its Ninth Claim for Relief, an award of damages in an amount to be determined at trial, plus interest,

x)  On its Tenth Claim for Relief, an award of damages in an amount to be determined at trial, plus interest;

xi)  On its Eleventh Claim for Relief, an award of damages in an amount to be determined at trial, plus interest;

xii)  On its Twelfth Claim for Relief, granting a permanent injunction enjoining the Defendants and each of them from:

    a)  using any of the Intellectual Property, Proprietary Information, Client List, the Works and the Trade Dress,

    b)  soliciting or servicing any of Pure Power's current or past clients for a reasonable period of time;

    c)  competing with Pure Power for a reasonable period of time within a reasonable geographic region; and

    d)  damaging and impugning Plaintiffs' reputation.

xiii) Awarding Plaintiff's reasonable their attorneys' fees, costs and disbursements; and

xiv) Such other and further relief as the Court deems just and proper.

Dated: New York, New York
    July 20, 2009

**REISS EISENPRESS LLP**

**/s**
Sherri L. Eisenpress (SLE – 2531)
Matthew Sheppe (MS-9406)
425 Madison Avenue
New York, New York 10017
Tel: (212) 753-2424

*Attorneys for Plaintiffs*

31