UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PURE POWER BOOT CAMP, INC.
PURE POWER BOOT-CAMP FRANCHISING
CORPORATION, and PURE POWER BOOT
CAMP JERICHO INC., and LAUREN BRENNER

         Plaintiffs,

      - against –

WARRIOR FITNESS BOOT CAMP, LLC;
ALEXANDER KENNETH FELL a/k/a ALEX FELL,
Individually; RUBEN DARIO BELLIARD
a/k/a RUBEN BELLIARD, Individually;
JENNIFER J. LEE, Individually;
and NANCY BAYNARD, Individually,

              Defendants.

**ECF Case**
**Case No.  08-cv-4810 (JGK) (THK)**

WARRIOR FITNESS BOOT CAMP, LLC;
ALEXANDER KENNETH FELL a/k/a ALEX FELL,
Individually; RUBEN DARIO BELLIARD
a/k/a RUBEN BELLIARD, Individually;
JENNIFER J. LEE, Individually;
and NANCY BAYNARD, Individually,

Defendants, Counterclaim Plaintiffs, and Third Party
Plaintiffs,

      - against –

PURE POWER BOOT CAMP, INC.
PURE POWER BOOT-CAMP FRANCHISING
CORPORATION, and PURE POWER BOOT
CAMP JERICHO INC., and LAUREN BRENNER,

Plaintiffs, and  Counterclaim Defendants,

        -and-

ELIZABETH LORENZI and CHERYL DUMAS,

        Third Party Defendants.

**COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
COUNTERCLAIM DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
AND IN SUPPORT OF COUNTERCLAIM  DEFENDANTS' CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT**

Carolyn D. Richmond, Esq.
Daniel A. Schnapp, Esq.
Oksana G. Wright, Esq.
**FOX ROTHSCHILD LLP**
100 Park Avenue, 15th Floor
New York, NY 10017
Tel: (212) 878-7900
Fax: (212) 692-0940

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................... i

PRELIMINARY STATEMENT ....................................................................................................1

PROCEDURAL HISTORY..............................................................................................................2

    A.    Plaintiffs' Illegal Acts ............................................................................................2

    B.    The August 22, 2008 Report and Recommendation................................................3

    C.    The Disclosure of the Additional Stolen Emails.....................................................3

STANDARD OF REVIEW ..............................................................................................................4

ARGUMENT.....................................................................................................................................5

POINT I

    UNDER THE STORED COMMUNICATIONS ACT, DEFENDANTS ARE
    ENTITLED TO ACTUAL, STATUTORY, AND PUNITIVE DAMAGES,
    COSTS, AND ATTORNEY'S FEES ......................................................................5

        A.    Under the SCA, Defendants Are Not Required To Prove Actual
            Damages In Order To Recover Statutory Damages.........................6

        B.    Plaintiffs Erroneously Claim That Defendants Failed To Allege
            "Any Actual Damages".................................................................10

        C.    Defendants Are Entitled To Punitive Damages.............................13

        D.    Defendants Are Entitled To Costs And Attorney's Fees..............16

        E.    Plaintiffs Violated The SCA Each Time They Accessed
            Defendants' Electronic Communication Service Or Obtained Their
            Electronic Communication While It Was Still In Electronic
            Storage .........................................................................................17

POINT II

    PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE
    CLAIM ARISING UNDER THE ELECTRONIC COMMUNICATIONS
    PRIVACY ACT ....................................................................................................19

POINT III

DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR
COUNTERCLAIMS FOR VIOLATION OF THE SCA ......................................21

CONCLUSION..............................................................................................................................22

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Anderson v. Liberty Lobby*,
477 U.S. 242, 106 S. Ct. 2505 (1986)...................................................................................4, 5

*Arizona v. California*,
460 U.S. 605, 103 S.Ct. 1382 (1983)........................................................................................20

*Blazy v. Tenet*,
194 F.3d 90 (Ca. D.C. 1999)......................................................................................................8

*Cardinal Health 414, Inc. v. Adams*,
582 F. Supp. 2d 967 (M.D. Tenn. 2008).....................................................................................6

*Cedar Hills Assocs., Inc. v. Paget*,
No. 04cv0557, 2005 WL 3430562 (N.D. Ill. 2005)............................................................6, 7, 9

*Celotex Corp. v. Catrett*,
477 U.S. 317, 106 S. Ct. 2548 (1986)........................................................................................4

*Doe v. Chao*,
540 U.S. 614 (2004)...................................................................................................................8

*First Nat'l Bank of Hollywood v. American Foam Rubber Corp.*,
530 F.2d 450 (2d Cir.)..............................................................................................................20

*Fischer v. OBG Cameron Banfill LLP*,
No. 08 Civ. 7707, 2010 WL 3733882 (S.D.N.Y Sept. 24, 2010).......................................10, 20

*Freedman v. Town of Fairfield*,
No. 3:03cv01048, 2006 WL 2684347 (D. Conn. 2006) .........................................................6, 8

*Gallo v. Prudential Residential Svcs., L.P.*,
22 F.3d 1219 (2d Cir. 1994)........................................................................................................5

*Henke v. United States Dep't of Commerce*,
83 F.3d 1453 (D.C. Cir. 1996)....................................................................................................9

*In re DoubleClick Inc. Privacy Litigation*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001).......................................................................................9.

*In re Hawaiian Airlines, Inc. v. Konop*,
355 B.R. 225 (D. Hawaii 2006). .................................................................................................6

*In re Hawaiian Airlines, Inc. v. Konop*,
355 B.R. 225 (D. Hawaii 2006)...........................................................................6, 9, 10, 17, 18

*McClellan v. Smith,*
439 F.3d 137 (2d Cir. 2006)........................................................................................................5

*Pietrylo v. Hillstone Restaurant Group*, No. 06-5754, 2009 WL 3128420 (D. N.J. 2009) ..............

..................................................................................................................6, 7, 13, 14, 15

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp,*
587 F. Supp. 2d 548 (S.D.N.Y. 2008)..................................7, 11, 13, 14, 16, 17, 18, 21, 22, 23

*Siddiqui v. United States*,
359 F.3d 1200 (9th Cir. 2004) ..................................................................................................15

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) ...............................21

*State Farm Mutual Automobile Ins. Co. v. Cambell*, 538 U.S. 408, 123 S.Ct. 1513 (2003) ........15

*State Wide Photocopy Corp. v. Tokai Fin. Serv., Inc.,*
909 F.Supp. 137 (S.D.N.Y.1995) ...............................................................................................9

*Van Alstyne v. Electronic Scriptorium, Ltd.*,
560 F.3d 199 (4th Cir. 2009) ...............................................................................................8, 15

*Virgin Atlantic Airways, Ltd. v. National Mediation Bd.*,
956 F.2d 1245 (2d Cir. 1992)..............................................................................................20, 22

## STATUTES

The Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2501 *et al.* .......................20

The Stored Communications Act ("SCA"), 18 U.S.C. § 2701 *et al.*.................5, 7, 8, 9, 11, 13, 16

## LEGISLATIVE HISTORY

S. Rep. 99-541, p. 43 (1986)...........................................................................................................10

U.S. Code Cong. & Admin. News, pp. 3555, 3597 (1986) ...........................................................10

Counterclaim Plaintiffs, Warrior Fitness Boot Camp, LLC, Alexander Kenneth Fell, Ruben Dario Belliard, Jennifer J. Lee, and Nancy Baynard (collectively, "**Defendants**"), respectfully submit the following memorandum of law in opposition to motion for partial summary judgment of Counterclaim Defendants, Pure Power Boot Camp, Inc., Pure Power Boot Camp Franchising Corporation, Pure Power Boot Camp Jericho, Inc., and Lauren Brenner (collectively, "**Plaintiffs**"), and in support of Defendants' cross-motion for partial summary judgment.

## PRELIMINARY STATEMENT

Plaintiffs' motion is nothing but an attempt to avoid compensating Defendants for stealing 546 of Defendants' private communications, many of which involve communications of the most sensitive and private nature. For example, in PP 001634 and PP 001635, both of which are emails stolen by Plaintiffs, Jennifer Lee Fell describes, in detail, to her now-husband, Alex Fell, Lee's anguish over a conversation Lee has just had with her suicidal brother. It is against this backdrop of the severe invasion of Defendants' privacy that Plaintiffs claim -- incredibly -- that Defendants have suffered no actual damages under the Stored Communications Act and therefore are not entitled to statutory damages.

Plaintiffs make their dubious argument that statutory damages are not available based upon a *single* opinion which is not binding upon this Court. As Defendants demonstrate in Point I, the only Court within the Second Circuit to pointedly examine that issue has expressly ruled that statutory damages are available even in the absence of actual damages. Moreover, as Plaintiffs admit, all other courts which have examined the issue have found that statutory damages are available even in the absence of actual damages.

As Defendants also show below in Point I, and as demonstrated in the emails attached to the accompanying Declaration of Jennifer Lee Fell, the deposition testimony of Alex Fell, and

1

the allegations set forth in the Counterclaims, Defendants have suffered actual damages. Thus, Defendants are entitled to *both* actual and statutory damages.

Further, as Defendants establish below in Point I, Defendants are entitled to punitive damages and attorney's fees and costs regardless of whether actual damages are awarded. Plaintiffs do not and cannot offer a shred of precedent to support their arguments that neither punitive damages nor attorney's fees is available here.    To the contrary, the Stored Communications Act explicitly provides for an award of punitive damages, attorney's fees, and costs.

Subsequent to the Court's Report and Recommendation, Plaintiffs, through their principal Lauren Brenner, testified under oath at her deposition that Defendants' emails were stolen contemporaneously with their transmission on the day of the hearing before the New York State Court. Brenner's testimony, together with the time and date of the stolen emails, create issues of fact concerning Plaintiffs' violations of the Electronic Communications Privacy Act. Thus, as we show below in Point II, issues of fact exist which justify denying Plaintiffs' motion for summary judgment on Defendants' Counterclaims under the Electronic Communications Privacy Act.

As Defendants show below in Point III,  Defendants' cross-motion should be granted in its entirety.  Plaintiffs' liability under the Stored Communications Act is now far beyond dispute and Defendants are entitled to statutory damages.

Accordingly, Plaintiffs' motion should be denied in its entirety and Defendants' cross-motion should be granted in its entirety.

## PROCEDURAL HISTORY

### A.    Plaintiffs' Illegal Acts

After Ruben Belliard ("**Belliard**") and Alex Fell ("**Fell**") were no longer employed at Plaintiffs' gym, Plaintiffs hacked into Defendants' personal e-mail accounts, and, without their

2

consent, illegally accessed, obtained, read, downloaded, printed, and showed to Plaintiffs' clients and Plaintiffs' counsel a number of e-mails sent and received by Defendants from July 2007 through May 2008.

## B. The August 22, 2008 Report and Recommendation

In this Court's decision dated August 22, 2008, and adopted by Judge Koeltl on October 23, 2008 (the **"SCA Decision"**), Plaintiffs' actions were found to have violated the Stored Communications Act (**"SCA"**). This Court exercised its broad equitable powers to preclude Plaintiffs from using 34 of the stolen emails except for impeachment purposes at trial and directed Plaintiffs to return or destroy any copy of attorney-client privileged emails. Plaintiffs did not object or otherwise appeal the SCA Decision. The SCA decision is now law of the case.

## C. The Disclosure of the Additional Stolen Emails

On or about October 27, 2008, approximately three months after the SCA decision, Plaintiffs served their Rule 26 disclosures. Plaintiffs' Rule 26 disclosures did not identify nor make mention of additional stolen e-mails. To date, Plaintiffs still have not amended their Rule 26 disclosures.

On February 23, 2009, nearly 10 months after filing their Complaint, six months after the Court's SCA Decision, and four months after Plaintiffs' filed their Rule 26 disclosures, Plaintiffs, in connection with their responses to Defendants' Request for Documents, produced another 43 e-mails to Defendants that were stolen from Defendants' e-mail accounts.

Then, during Defendants' deposition of Plaintiff Lauren Brenner ("**Brenner**"), conducted on March 4, 2009, Brenner made a number of revelations and testified that the extent of her violations of the SCA were far greater than had been previously represented to Defendants or to this Court. In her deposition, Plaintiff Brenner admitted to actually accessing somewhere between 200-250 emails from Defendants' accounts.

Additionally, Plaintiff Brenner admitted at her deposition that not only had she hacked into the accounts that were identified in the SCA Decision, but that Brenner also illegally accessed Defendant Jennifer Lee Fell's ("**Lee**") corporate "Bold Food LLC/Bobby Flay" e-mail account, based on the login information contained in one of the stolen e-mails. This account is wholly unrelated to the emails accounts previously identified in the SCA Decision.

These admissions, coupled with Plaintiffs' ongoing failure to produce responsive documents, precipitated an application to the Court for a pre-motion conference pursuant to Fed. R. Civ. P. 37.

On March 23, 2009, following the Court's direction, Plaintiffs disclosed and produced an additional 788 bates stamped pages consisting of 454 illegally obtained e-mails to Defendants. On March 24, 2009, 15 additional e-mails that Plaintiffs stole from the "Bold Food LLC/Bobby Flay" account were also produced to Defendants.

The parties appeared before the Court on June 17, 2009 in connection with Defendants' request that the Court issue additional sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure and the Court's broad equitable powers due to Plaintiffs' illegal actions and abuse of the discovery process.   The Court held that additional stolen emails should be treated in the same manner as the initial emails.

## **STANDARD OF REVIEW**

Summary judgment, pursuant to Fed. R. Civ. Pro. Rule 56, may be granted where the pleadings, discovery and disclosure materials, as well any affidavits, show that there are no genuine issues of material fact, thereby entitling movant to judgment as a matter of law. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-50, 106 S. Ct. 2505 (1986).

The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). A genuine factual

issue exists if a reasonable jury could return a verdict in the non-movant's favor. *Anderson*, 477 U.S. at 248.

In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the Court must resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought. *Id. at* 255; *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006). Moreover, the Court does not weigh the evidence and ascertain the truth, but rather, discerns whether any genuine issues of fact exist necessitating trial. *Anderson*, 477 U.S. at 249; *see also Gallo v. Prudential Residential Svcs., L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994) (reversing and remanding summary judgment).

## ARGUMENT

### POINT I

### UNDER THE STORED COMMUNICATIONS ACT, DEFENDANTS ARE ENTITLED TO ACTUAL, STATUTORY, AND PUNITIVE DAMAGES, COSTS, AND ATTORNEY'S FEES

The explicit language of the SCA provides that an aggrieved party is entitled to "the sum of the actual damages suffered by the [Defendants] and any profits made by [Plaintiffs] as a result of the violation." 18 U.S.C. § 2707(c). The statute also provides: "But in no case shall a person entitled to recover receive less than the sum of $1,000." *Id.*

Further, where violations are "willful and intentional," a party is entitled to punitive damages. *Id.* ("If the violation is willful or intentional, the court may assess punitive damages.")

A party is also entitled to "costs of the action, together with reasonable attorney fees determined by the court." *Id.* ("In the case of a successful action to enforce liability under this section, the court may assess the costs of the action, together with reasonable attorney fees determined by the court.").

5

## A. Under the SCA, Defendants Are Not Required To Prove Actual Damages In Order To Recover Statutory Damages

In their motion, Plaintiffs cite to a single case from another jurisdiction to support their claim that "[w]hithout any actual damages, [Counterclaim Plaintiffs] are not entitled to statutory damages under the SCA." *See* Defendants' Motion at page 12. An overwhelming majority of the courts that have examined this issue, however, including a court in the Second Circuit, have held that the SCA permits recovery of statutory damages even in the absence of actual damages. *See Freedman v. Town of Fairfield*, No. 3:03cv01048, 2006 WL 2684347, \*3 (D. Conn. 2006) (SCA permits recovery of statutory minimum despite the absence of proven actual damages); *see also Cardinal Health 414, Inc. v. Adams*, 582 F. Supp. 2d 967, 976 (M.D. Tenn. 2008) ("[T]he [claimant] is statutorily entitled to no less than $1,000, whether or not the [claimant] can prove actual damages."); *see also Pietrylo v. Hillstone Restaurant Group*, No. 06-5754, 2009 WL 3128420, at \*2-3 (D. N.J. 2009) (holding that in order to prevail on the claimants' statutory claim under the SCA, the claimants' were only required to offer sufficient evidence to allow the jury to conclude that the violators knowingly, intentionally, or purposefully accessed the claimants' chat group on MySpace.com and the claimants' MySpace passwords and accounts); *In re Hawaiian Airlines, Inc. v. Konop*, 355 B.R. 225, 229-230 (D. Hawaii 2006) (finding that claimant "need not prove that he suffered actual damages or that [violator] profited from its violation in order to be eligible to receive statutory damages."); *Cedar Hills Assocs., Inc. v. Paget*, No. 04cv0557, 2005 WL 3430562, \*2-3 (N.D. Ill. 2005) (holding that "actual damages are not required to recover under the [SCA]").

In *Pietrylo*, the Court held that in order to succeed on the SCA statutory claim, the claimants were only "required to offer sufficient evidence to allow the jury to conclude that [a violator] knowingly, intentionally, or purposefully accessed" the claimants' electronic communications service, or obtained an electronic communication while it is still in electronic

6

storage, without authorization. *See* 2009 WL 3128420, at *2-3 (upholding the jury verdict in favor of the claimants on their statutory claims under the SCA). Contrary to Plaintiffs' allegations, the Court did not require the claimants to prove any actual damages first in order to succeed on their statutory claims. *See id.*

Further, in *Cedar Hill*, under strikingly similar facts, the defendant accessed 1,098 messages in his co-workers' email accounts without authorization. *Cedar Hill Assocs., Inc.*, 2005 WL 3430562, at *1. As plaintiffs did here, defendant brought a summary judgment motion arguing that plaintiffs have not shown any actual damages, and therefore, they are not entitled to any relief. *Id.* at *3. The Court denied defendant's motion in its entirety by holding that "from a plain reading of the statute, it appears clear that actual damages are not required to recover under [the SCA], as long as a [violator] intentionally access without authorization a facility through which an electronic communication is provided." *Cedar Hill Assocs., Inc.*, 2005 WL 3430562, at *2 (citing 18 U.S.C. §2707(a)(1)).

Similarly, here, Plaintiffs accessed at least 546 e-mails from Fell's personal accounts, the Warrior account, and Lee's corporate "Bold Food LLC/Bobby Flay" e-mail account. *See Pure Power Boot Camp, Inc.*, 587 F. Supp. at 556 ("Thus, Brenner accessed three separate electronic communication services, and she obtained Fell's emails while they were in storage on those service providers' systems."); *see also* Counterclaim Defendants' ("Plaintiffs'") Rule 56.1 at ¶ 7; *see also* Defendants' Counterclaims dated July 29, 2009 ("**Counterclaims**") at ¶ 23, 62; *see also* Deposition of Lauren Brenner dated April 23, 2009 ("**Brenner Dep.**") at 226:9 - 226:14 ("Q. At some point, however, Jen Lee's Bowl Food e-mails came into your possession; is that correct? A. Not all of them, no. Q. Some did, correct? A. Bobby Flay's account, yes.").

As already found by the Court and unopposed by Plaintiffs, Defendants' actions "violated federal law and offend general notions of personal privacy," and therefore entitle Defendants to recover statutory damages. *See Pure Power Boot Camp, Inc.,* 587 F. Supp. 2d at 569.

Moreover, the holding in *Van Alstyne v. Electronic Scriptorium, Ltd.*, 560 F.3d 199 (4th Cir. 2009), the single case cited by plaintiffs in support of their motion, to support their claim that Defendants are not entitled to statutory damages, should not control here. Plaintiffs' Motion at page 12-15.

In *Van Alstyne*, the Fourth Circuit interpreted the damages provision of the SCA on par with the Supreme Court's interpretation of the Privacy Act in *Doe v. Chao*, 540 U.S. 614 (2004), a statute with completely different structure, legislative history, and purpose. *See Van Alstyne*, 560 F.3d at 205.

Even the majority in *Doe*, however, declined to use the language and legislative history of the SCA in its interpretation of the Privacy Act. *See Doe*, 540 U.S. at 626-27 (recognizing that the SCA "is a completely separate statute"); *see also Doe*, 540 U.S. at 639 (Ginsberg, J., dissenting) (referring to the SCA as an example of a statute which permitted recovery of a statutory minimum despite the absence of proven actual damages); *see also Freedman*, 2006 WL 2684347 at *3 (finding that "*Doe* is dubious authority for the proposition that Section 2707(c) does not mean what it provides, recovery of minimum statutory damages of $1,000" and "if *Doe* cited Section 2707(c) as authority for Congress' intention as to damages recoverable under the earlier enacted Privacy Act, it would have said so as dicta, instead of rejecting its history as not determinative.").

Indeed, the SCA and the Privacy Act have entirely different purposes and goals which may warrant different type of damages. The Privacy Act protects the public from the federal government's "unwarranted collection, maintenance, use, and dissemination of personal information contained in [federal] agency records ... by allowing an individual to participate in ensuring that his records are accurate and properly used." *Blazy v. Tenet*, 194 F.3d 90, 95 - 96 (Ca. D. 1999). One of the main purposes of the Privacy Act "is to allow individuals on whom information is being compiled and retrieved the opportunity to review the information and

8

request that the agency correct any inaccuracies." *Henke v. United States Dep't of Commerce,* 83 F.3d 1453, 1456-57 (D.C. Cir. 1996).

In contrast to the Privacy Act, the SCA "aims to prevent hackers from obtaining, altering or destroying certain stored electronic communications." *In re DoubleClick Inc. Privacy Litigation,* 154 F. Supp. 2d 497, 507 (S.D.N.Y. 2001); *State Wide Photocopy Corp. v. Tokai Fin. Serv., Inc.,* 909 F.Supp. 137, 145 (S.D.N.Y. 1995) (finding the SCA "was primarily designed to provide a cause of action against computer hackers"). The SCA creates both criminal sanctions and a civil right of action against any persons who gain unauthorized access to communications facilities and thereby access electronic communications stored incident to their transmission. *In re DoubleClick Inc.*, 154 F. Supp. 2d at 507. Thus, the SCA seeks to prevent an actual invasion of privacy and theft of private information. *See Cedar Hill Assocs., Inc.*, 2005 WL 3430562, at *3 (distinguishing the SCA from the Privacy Act and finding that the damage the SCA "seeks to prevent is an invasion of privacy, not merely instances where a transgressor capitalizes on such an invasion."). Specifically, an aggrieved party in a civil action may recover from any person or entity, other than the United States. 18 U.S.C. § 2707(a).

Further, as found by the Court in *In re Hawaiian Airlines, Inc.*, "[n]otwithstanding the similar language found in the two statutes, the overall structure of the [SCA] and its legislative history differ from the Privacy Act." 355 B.R. at 230. The Court further explained:

In *[Doe],* the Supreme Court concluded that the statutory language "person entitled to recovery" referred to the provision for actual damages found earlier in the same sentence. Thus, a "person entitled to recovery" was a person who suffered some actual damages, no matter how little. The Stored Communications Act, on the other hand, states that "any provider of electronic communication service, subscriber, or other person aggrieved by a violation of this chapter ... may, in a civil action, recover from the person or entity ... which engaged in that violation." *See* 18 U.S.C. § 2707(a). Thus, unlike the Privacy Act, the Stored Communications Act explicitly states that a person aggrieved by a violation of the Act may recover and this recovery is not tied to actual damages or profits. Given this different language, the construction of the Privacy Act in *[Doe]* does not assist in interpreting the statutory damage provision in the Stored Communications Act.

355 B.R. at 230.

Finally, the legislative history of the SCA suggests that Congress intended that a party aggrieved by a violation of the SCA could obtain the minimum statutory award without proving actual damages. *See* S. Rep. 99-541, p. 43 (1986), U.S.Code Cong. & Admin. News 1986, pp. 3555, 3597 ("[D]amages under [§ 2707(c)] includ[e] the sum of actual damages suffered by the plaintiff and any profits made by the violator as the result of the violation ... with minimum statutory damages of $1,000 [.]"); see also *In re Hawaiian Airlines, Inc.*, 225 B.R. at 231.

Therefore, under the SCA, Defendants are not required to prove actual damages in order to recover statutory damages.

## B. Plaintiffs Erroneously Claim That Defendants Failed To Allege "Any Actual Damages"

Plaintiffs wrongly claim that "Paragraph 62 of Defendants' SCA counterclaim does not allege any actual damages, just statutory damages." *See* Plaintiffs' Motion at page 3. Even a cursory reading of the counterclaims demonstrates Plaintiffs' error. Defendants allege that they "are entitled to *compensatory damages in the amount of no less than* $546,000.00 representing $1,000.00 for each of the 546 emails stolen from Counterclaim Plaintiffs' accounts." *See* Counterclaims at ¶ 62 (emphasis added). It is well-established that "[a]ctual damages are also termed compensatory damages." *Fischer v. OBG Cameron Banfill LLP*, No. 08 Civ. 7707, 2010 WL 3733882 (S.D.N.Y Sept. 24, 2010).

Plaintiffs have also not submitted any evidence that Defendants did not suffer any actual damages. Nor could they. As set forth in the accompanying Declaration of Jennifer Lee Fell ("**Lee Decl.**"), Defendants have suffered a severe invasion of privacy for which Defendants should be entitled to significant actual damages. The emails stolen by Plaintiffs contain highly sensitive communications including sexually intimate conversations between Lee and Fell, Lee's anguish over her suicidal brother, Lee's private financial information, as well as attorney-client

10

privileged communications and information concerning the start-up of the Warrior business. *See* Lee Decl at ¶¶ 2-5. Stolen emails were also read by Brenner to Plaintiffs' clients. *Id.* at ¶ 2.

Under the SCA Defendants are also entitled to any profits made by Plaintiffs as a result of the violation. 18 U.S.C. § 2707(c). For example, Defendants should be permitted to inquire at trial as to whether Plaintiffs improperly used Defendants' property and confidential information. *See* Exhibits "F" and "G" attached to Lee Decl. As the Court found, the emails were used to plead and argue their case. *Id.* at ¶¶ 6, 8, 10.

As this Court already ruled:

> [Plaintiff Brenner's] actions – accessing of Fell's Hotmail account, and using that access to open his Gmail account, and then resorting to "guessing" a password in order to gain access to Fell's WFBC account – *violated federal law and offend general notions of personal privacy.* Furthermore, her use of that information in this litigating taints the judicial process. Thus even though Brenner's improper actions take place prior to the filing of the litigation, the fruits of Brenner's improper conduct have been heavily relied upon by [Counterclaim Defendants] in pleading and arguing the merits of their case. *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp,* 587 F. Supp. 2d 548, 569 (S.D.N.Y. 2008) (emphasis added).

Moreover, and omitted from Plaintiffs' brief, Fell testified that he suffered actual damages. *See* Fell Dep. at page 263:21 -263:23 ("Q. Well, have you incurred any actual damages with respect to those violations? A. Yes.")

In their Preliminary Statement, Plaintiffs weakly argue that, despite the stolen emails, the Court's prior ruling, the plain language of the Counterclaims, the testimony by Fell, the stolen emails, the statement by counsel for Defendants to the Clerk during the continued (and last) Deposition of Alex Fell (**"Fell Dep."**) is grounds for the denial of Defendants' entitlement to both actual and statutory damages.[1]  However, Plaintiffs offer no case law whatsoever to suggest

---

[1] The statement was made in reference to a cursory reading of the counterclaims in which Defendants alleged both actual and statutory damages after being asked whether defendants had suffered "personal damages." Despite the statement, the counterclaims allege both compensatory and statutory damages and Fell had already testified that he

11

that any statement made by counsel for this purpose is *res judicata* on this issue. Nor are Defendants aware of a single case that holds that a statement made by counsel during the deposition could waive claims already asserted by Defendants.[2]

Prior to Fell's continued deposition, Plaintiffs took the deposition of all five defendants. Not once during any of these depositions did Plaintiffs ever inquire about Defendants' actual damages. Moreover, the deposition question was only directed at Fell in his individual capacity As Plaintiffs' counsel stated to the Clerk on the record: "Here's the issue: I have asked Mr. Fell, who's being deposed, to describe for me what, if any, actual damages *he's* suffered..." (emphasis supplied). *See* Fell Dep. at page 263:21 -263:23 ("Q. Well, have *you* incurred any actual damages with respect to those violations? A. Yes.") (emphasis added).

Nor can Plaintiffs articulate what prejudice they have suffered due to the statement by counsel particularly since they had the opportunity to take multiple other depositions and never raised the issue. Plaintiffs only claim in their Preliminary Statement that they "relied" on this statement but Plaintiffs fail to articulate how they relied or how they have been prejudiced as the result of such reliance. If Plaintiffs failed to investigate these counterclaims prior to Fell's deposition, then it is Plaintiffs who should be held accountable, not Defendants, particularly where Defendants have suffered a severe invasion of privacy and have established a compelling case for actual damages to be presented to a jury.[3]

In any event the statement by counsel was clarified on the record during the conference with Judge Koeltl as set forth in the motion papers submitted by Plaintiffs:

---

had suffered actual damages. In no way was the statement by counsel intended to waive any claims which Defendants have for actual damages. *See* Declaration of Daniel A. Schnapp ("Schnapp Decl."), ¶8.

[2] It is respectfully submitted that the Court could resolve this issue, if it deems advisable, by permitting Plaintiffs to examine Fell prior to trial on this limited issue.

[3] Plaintiffs' counsel also made an erroneous statement to the Court on the record that under the SCA and case law "if you have no actual damages you're not entitled to statutory damages. And there's a significant amount of case law that supports that." *See* Fell Dep. at 269:3-269:15. Contrary to counsel's statement, Plaintiffs could only cite one case from another Circuit that supports this allegation. *See* Plaintiffs' Motion at 12-15.

   Mr. Schnapp: Well, I don't know why Miss Eisenpress says we don't have actual damages. What I think I've said in the past was that on the motion for summary judgment we can show that we're entitled to statutory damages and reasonable attorney's fees. So my understanding is that the statute provides for a statutory amount of $500 to $1,000 for each and every violation of the Act. In this case we can then (inaudible) 546 emails were taken, and therefore, we can assess statutory damages. We can also show to the court via motion what attorney's fees are.

The Court: Do you have any actual damages?

Mr. Schnapp: Yes, we do, Your Honor. We do have actual damages.

The Court: What are they?

Mr. Schnapp: Some of the damages result from the fact that certain emails were private emails or private communications that Miss Lee had, for example, that involves her personal family matters. I believe that there is a legal invasion of privacy which would give us a right to actual damages.

April 15, 2010 Conference before Judge Koeltl, p. 10-11.

   Accordingly, Defendants should be entitled to establish the amount of their actual damages at trial.

## C. Defendants Are Entitled To Punitive Damages

   The language of the SCA explicitly provides that "[i]f the violation is willful or intentional, the court may assess punitive damages." 18 U.S.C., § 2707(c); *see also Pure Power Boot Camp, Inc.*, 587 F. Supp. 2d at 570, n.3 (finding the SCA permits punitive damages if the violation was willful); *see also Pietrylo*, 2009 WL 3128420, at *5 (upholding the jury's award of punitive damages because [Plaintiffs'] conduct was malicious).

   Here, as this Court found even before the extent of the theft was revealed, Plaintiffs' conduct "violated federal law and offend general notions of privacy" and was willful and intentional. 587 F. Supp. 2d at 569. As initially found by this Court, Plaintiffs, through Brenner, accessed and printed e-mails from three of Fell's e-mail accounts, including his work account. *Id.* at 552. It is obvious that Brenner did not access "three separate electronic communication services" and "obtained Fell's emails" by mistake but with the intent to intrude upon Fell's

13

privacy and to use these emails against Defendants. *Id.* at 556. In fact, Brenner accessed Fell's work account by purposefully "guessing" his password which directly shows Brenner's culpable state of mind and intent to access Fell's emails. *Id.* at 556. Further, Brenner admitted that she "was able to access Fell's Gmail account because the username and password for the Gmail account were sent to Fell's Hotmail account, which Brenner [also] accessed." *Id.* at 556.

Brenner admitted during her deposition that Plaintiffs also accessed, without any authorization, Lee's "Bold Food/Bobby Flay" accounts. Brenner Dep. at 245:17 – 245:19 and 246:2 – 246:11.

Later it was determined that Plaintiffs stole at least *546* emails from the various email accounts. *See* Counterclaim Plaintiffs' ("Defendants'") Rule 56.1 Statement, at ¶ II.4. Certain of the emails were also read to Pure Power clients. *See* Lee Decl. ¶ 2. Thus, Defendants are entitled to punitive damages because they established under the SCA that Plaintiffs' violations were "willful" and "intentional."

Plaintiffs' assertion that there is no basis for punitive damages because they were already sanctioned for their actions and because of Defendants' allegedly improper conduct is without merit. Plaintiffs' Motion at page 15-16. As found by this Court, who also sanctioned Plaintiffs, the SCA permits the imposition of punitive damages as long as the violation was willful. *Pure Power Boot Camp, Inc.*, 587 F. Supp. 2d at 570, n.3. Further, Plaintiffs' tortured argument that Brenner's established wrongdoing should be somehow "counter-balanced" by Defendants' alleged (but not yet proven) misconduct, for which Brenner "has adequate legal remedies," has no legal support under the SCA or case law. *See id.* at 568-69; 571.

For example, in *Pietrylo*, the managers of a restaurant, who accessed the employees private chat group, passwords, and accounts on numerous occasions, unsuccessfully argued (as Plaintiffs here) that jury's award of punitive damages should be stricken because they violated the SCA only to protect "the core values of the restaurant" and "to protect its employees and managers

14

from harassment and humiliation" caused by the claimants. *Id.* at *5. The Court upheld the jury's award of punitive damages finding that "[a]lthough [the employer] certainly does have a right and obligation to protect its employees and managers from harassment or humiliation, and to protect the core values of the restaurant, the jury's findings indicate that the jury did not believe that the method used by [the employer] to protect those values was proper conduct, finding that [the employer] knowingly accessed the stored communications five times." *Id.*

Similarly, here, Plaintiffs can not avoid liability and award of punitive damages because they intentionally, willfully, and maliciously chose to hack into four of Defendants' email accounts and steal, access, read, download, and print 546 of Defendant's private communications in order to protect Plaintiffs' interests. *See* Plaintiffs' Motion at 16.

Further, Plaintiffs' claim that "as the Defendants here are not entitled to any compensatory damages, no punitive damages should be awarded either" is contrary to the express language of the SCA and unsupported by any case law. Plaintiffs' Motion at page 18. "[P]unitive damages are recoverable in the absence of actual damages where authorized by statute." *See Siddiqui v. United States*, 359 F.3d 1200, 1203 (9th Cir. 2004) (explaining that punitive damages are available where "Congress has expressly authorized an award of punitive damages in the absence of proof of actual damages").[4]

Thus, Plaintiffs' claim that no punitive damages can be awarded is without merit.

---

[4] Plaintiffs' curiously ignore the holding in *Van Alstyne*, the case relied by them in the preceding section, which expressly found that the SCA permits an award of punitive damages in the absence of an award of actual damages. *Van Alstyne v.*, 560 F.3d at 209.

Further, in order to support their claim that Defendants' are not entitled to punitive damages, Plaintiffs cite to cases that do not address the application of punitive damages as expressly provided for by Congress in the SCA. *See* Plaintiffs' Motion, at 17 (citing *State Farm Mutual Automobile Ins. Co. v. Cambell*, 538 U.S. 408, 414-429, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003) and other unrelated cases).

15

**D. Defendants Are Entitled To Costs And Attorney's Fees**

The language of the SCA explicitly provides that "[i]n the case of a successful action to enforce liability under this section, the court may assess the costs of the action, together with reasonable attorney fees determined by the court." 18 U.S.C. § 2707(c); 18 U.S.C. § 2707(b)(3) ("In a civil action under [18 U.S.C. § 2707], appropriate relief includes – a reasonable attorney fee and other litigation costs reasonably incurred."). This Court has also ruled in this case that attorney's fees and costs are available. *See Pure Power Boot Camp, Inc.*, 587 F. Supp. 2d at 570, n.3 ("The SCA permits awarding fees and costs.").

Here, Plaintiffs' liability has been already established by this Court. *Pure Power Boot Camp, Inc.*, 587 F. Supp. at 562. As already found by the Court and unopposed by Plaintiffs, Plaintiffs violated the SCA by accessing Fell's email accounts and obtaining Fell's emails without authorization. *Id.* at 556 ("Brenner accessed three separate electronic communication services, and she obtained Fell's emails while they were in storage on those service providers' systems."); *see also* Plaintiffs' 56.1 Statement, at ¶ 7.

"Either of those actions, if done without authorization, would be a violation of the SCA." *Id* at 562 ("the Court concludes that Brenner's access to Fell's Hotmail account violated the SCA and Fell's privacy."); at 568-569 (holding that Brenner's actions "violated federal law and offend general notions of personal privacy."); at 571 ("Brenner's wrongdoing has been established.").

Brenner also admitted during her deposition that Plaintiffs accessed additional emails including emails from "Bold Food LLC/Bobby Flay" e-mail account. Brenner Dep. at 245:17 – 245:19 and 246:2 – 246:11. Ultimately Plaintiffs stole at least 546 emails. Defendants' Rule 56.1 Statement at ¶ II.4.

Because Defendants had already successfully established Brenner's liability, Defendants are entitled to recover costs and reasonable attorneys' fees under the SCA.

16

**E.      Plaintiffs Violated The SCA Each Time They Accessed Defendants'
         Electronic Communication Service Or Obtained Their Electronic
         Communication While It Was Still In Electronic Storage**

Plaintiffs incorrectly claim that any alleged SCA violations were on a per account access

basis or per day basis. Plaintiffs' Motion at page 18.  As found by this Court, "a person violates

the SCA if she accesses an electronic communications service, *or* obtains an electronic

communication while it is still in electronic storage, without authorization." *Pure Power Boot*

*Camp, Inc.*, 587 F. Supp. 2d at 555 (emphasis Court's own).  The Court also found that "[t]he

majority of courts which have addressed the issue have determined that e-mail stored on an

electronic communication service provider's systems after it has been delivered, as opposed to e-

mail stored on a personal computer, is a stored communication subject to the SCA." *Id.*

Here, "Brenner accessed three separate electronic communication services, and she

obtained Fell's emails while they were in storage on those service providers' systems" and

"[e]ither of those actions…would be a violation of the SCA." *Id.* at 556.

Specifically, Plaintiffs, without permission or authorization, illegally accessed, obtained,

downloaded, read and printed out approximately 546 emails while they were in storage on the

service providers' system.  Counterclaims at ¶ 23, 62.  Moreover, Brenner accessed three of

Fell's emails accounts, perhaps on multiple occasions. *See Pure Power Boot Camp, Inc.*, 587 F.

Supp. 2d at 555.  Plaintiffs also later admitted that they accessed Lee's "Bold Food LLC/Bobby

Flay" e-mail account.  Brenner Dep. at 245:17 – 245:19 and 246:2 – 246:11.  Thus, under the

SCA and this Court's decision, Plaintiffs violated the SCA each time they accessed an electronic

communications service, *or* obtained an electronic communication while it is still in electronic

storage (546 violations).

Further, Plaintiffs cite *In re Hawaiian Airlines*, to support their position that any alleged

SCA violations were on a per day basis or per account access basis.  Plaintiffs' Motion at page

18.

17

First, *In re Hawaiian Airlines*, the Court specifically found that the SCA "does not create a per-day rather than per-violation method of calculating damages." 355 B.R. at 231.

Next, as to Plaintiffs' claim that e-mails were accessed during a short period of time, the 546 separate admitted invasions over a nine day period justify damages for each invasion. As Plaintiffs admit, Plaintiffs could not make further invasions because Defendants changed their passwords but it does appear that Plaintiffs may have done so if the passwords were not changed, only adding to the willful and intentional nature of the violation. *See* Plaintiffs' Memorandum at 19-20.

At a minimum, even assuming the veracity of Plaintiffs' claim that they stole all 546 emails in a nine day period, the Court should award statutory damages (and a trier of fact should award actual damages) on a per-violation basis. In *In re Hawaiian Airlines*, a single SCA case cited by Plaintiffs, the Court held that "based on the language of the Act and the need for the damage provision to provide deterrence for would-be violators, multiple violation of the [SCA] may warrant multiplying the $1,000 minimum statutory award." *Id.* at 232.

To support their claim, Plaintiffs solely rely on dicta in *In re Hawaiian Airlines* where the Court noted that "if [violator] logged into [claimant's] website several times in short successions, it might be appropriate to aggregate those intrusions if they functionally constituted a single visit to the website. At the other end of the spectrum, violations that were significantly separated in time and that accessed different information would clearly constitute separate violations of the [SCA] entitled to separate damage awards." *Id.* In *In re Hawaiian Airlines*, defendant unlawfully accessed on 36 occasions a password-protected website that plaintiff maintained to post bulletins critical of defendant.

Here, Plaintiffs not only accessed four of Defendants' password-protected email accounts but also stole, read, accessed, and printed 546 of Defendants' private emails from these email accounts, many of which involved extremely sensitive and private family matters. *Pure Power*

*Boot Camp, Inc.*, 587 F. Supp. 2d at 556. Thus, since Plaintiffs obtained 546 electronic communication while these communications were still in electronic storage, without authorization, Plaintiffs committed 546 independent violations of the SCA. *Id.* at 556.

## POINT II

### PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE CLAIM ARISING UNDER THE ELECTRONIC COMMUNICATIONS PRIVACY ACT

Plaintiffs argue in their motion that they are entitled to summary judgment on Defendants' counterclaim under the ECPA because there was no contemporaneous interception of the stolen emails. Plaintiffs' Motion at 10-12. Issues of fact exist however which should result in the denial of the motion.

Subsequent to the Court's decision, Plaintiffs, through their principal Lauren Brenner, testified under oath that Defendants' emails were stolen contemporaneously with their transmission on the day of the hearing before the New York State Court:

> Question: What about on the same day of the hearing, did you review
> emails between Mr. Buterman and any of the Defendants?
> Brenner: Yes.
> Question: Was that after or before the hearing or during the hearing?
> Answer: During the hearing. I didn't review them. I did not review them.
> Question:     You say during the hearing, what are you referring to?
> Answer:     I need to change my testimony. I did not review the e-
> mails.
> Question:     What did you do?
> Answer:     I'm not sure if it was Elizabeth Lorenzi or Cheryl Dumas.
> Question:     How do you know they reviewed those e-mails?
> Answer:     They were writing to me on the Blackberry.
> Question:     While the hearing was going on; is that correct?
> Answer:     Yes.

Brenner Dep. at 276:22-277:23.

Moreover, several stolen emails were written and sent on May 6, 2008, the same date as the hearing on the TRO before the New York State Court. *See* Exhibit "C" attached to Schnapp

19

Decl. These emails include communications sent to, or received from, Defendants' attorney Lawrence Buterman, Esq., concerning this case. *See* Exhibit "D" attached to Lee Decl..

Thus, Brenner's testimony, together with the time and date of the stolen emails, create issues of fact concerning Plaintiffs' violations of the Electronic Communications Privacy Act.

Nor does the law of the case doctrine preclude a finding that this new evidence establishes that Plaintiffs violated the ECPA. The law of the case doctrine is discretionary and does not limit the Court's power to reconsider its own decisions prior to final judgment. *See Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391 (1983) ("Law of the case directs a court's discretion, it does not limit the tribunal's power."); *First Nat'l Bank of Hollywood v. American Foam Rubber Corp.*, 530 F.2d 450, 453 n. 3 (2d Cir. 1976) ("In this Circuit, the law of the case is a discretionary doctrine that need not be applied when no prejudice results from its omission.").

"The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atlantic Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

Here, the availability of new evidence warrants reconsideration of the Court's decision regarding Brenner's liability under the Electronic Communications Privacy Act.

Plaintiffs, yet again, erroneously claim that Defendants have suffered no actual damages *See* Plaintiffs' Motion at page 21. Contrary to Plaintiffs' wrongful allegations, Defendants allege that they "are entitled to *compensatory damages in the amount of no less than* \$100,000.00." *See* Counterclaims at ¶ 67 (emphasis added). As pointed out above, "[a]ctual damages are also termed compensatory damages." *Fischer v. OBG Cameron Banfill LLP*, No. 08 Civ. 7707, 2010 WL 3733882 (S.D.N.Y Sept. 24, 2010).

20

Plaintiffs have also not submitted any evidence that Defendants did not suffer any actual damages. In addition, as stated by Brenner during her deposition, the emails were used to plead, argue, and prepare Plaintiffs' case. In fact, these emails were so important to Plaintiffs' case that Brenner was reviewing the emails between Defendants and their attorneys during the hearing in the New York State Court. Brenner Dep. 276:22-277:20; *see also* Lee Decl ¶¶ 6 and 8b.

Accordingly, Defendants should be entitled to establish the amount of their actual damages under the ECPA at trial.

## POINT III

### DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR COUNTERCLAIMS FOR VIOLATION OF THE SCA

In this Court's decision dated August 22, 2008, and adopted by Judge Koetl on October 23, 2008, Plaintiffs' actions were found to have violated the SCA. As found by this Court and unopposed by Plaintiffs, Plaintiffs violated the SCA by accessing Fell's email accounts and obtaining Fell's emails without authorization. *Pure Power Boot Camp,* 587 F. Supp. 2d at 569 ("[Plaintiffs'] actions – accessing of Fell's Hotmail account, and using that access to open his Gmail account, and then resorting to "guessing" a password in order to gain access to Fell's WFBC account – *violated federal law and offend general notions of personal privacy.* Furthermore, her use of that information in this litigating taints the judicial process."); at 562 ("the Court concludes that Brenner's access to Fell's Hotmail account violated the SCA and Fell's privacy."); at 571 ("Brenner's wrongdoing has been established."); *see also* Defendants' Rule 56.1 Statement, at ¶ II.1..

Plaintiffs did not object or oppose this Court's ruling establishing Plaintiffs' violations of the SCA. *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the

magistrate's decision."). No objection was made and no appeal was taken from the Court's adoption of the Report and Recommendation. *See* Defendants' Rule 56.1 Statement, at ¶ II.2.

Moreover, none of the grounds justifying reconsideration, including "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," are applicable here. *See Virgin Atlantic Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

In fact, the majority of the stolen emails was produced after the Court's decision. Also, Brenner's admission of accessing and stealing emails, including emails from Lee's "Bold Food/Bobby Flay" account, establish Plaintiffs' liability even further. Brenner Dep. at 245:17 – 245:19 and 246:2 – 246:11. Moreover, Plaintiffs' production of the 546 emails is a conclusive evidence that Plaintiffs stole the emails in violation of the SCA. *See* Exhibit "D" attached to Schnapp Decl.

Therefore, Defendants are entitled to Summary Judgment on their Counterclaims for Plaintiffs' violations of the SCA.

As further established by this Court, "a person violates the SCA if she accesses an electronic communications service, *or* obtains an electronic communication while it is still in electronic storage, without authorization." *Pure Power Boot Camp, Inc.*, 587 F. Supp. 2d at 555 (emphasis Court's own).

In particular, this Court found that "Brenner accessed three separate electronic communication services, and she obtained Fell's emails while they were in storage on those service providers' systems" and "[e]ither of those actions…would be a violation of the SCA." *Id.* at 556. Plaintiffs, without permission or authorization, illegally accessed, obtained, downloaded, read and printed out approximately 546 emails while they were in storage on the service providers' system. Counterclaims at ¶ 23, 62. Moreover, Plaintiffs accessed three of Fell's emails accounts and Lee's "Bold Food/Bobby Flay" account on multiple occasions. *See*

*Pure Power Boot Camp, Inc.*, 587 F. Supp. at 555; Brenner Dep. at 245:17 – 245:19 and 246:2 – 246:11. Thus, under the SCA and this Court's decision, Plaintiffs violated the SCA each time they accessed an electronic communications service, *or* obtained an electronic communication while it is still in electronic storage. *Pure Power Boot Camp, Inc.*, 587 F. Supp. at 555. As Plaintiffs stole 546 of Defendants' emails, they violated the SCA 546 times.

Therefore, Defendants respectfully ask this Court to find that Plaintiffs committed 546 violations of the SCA and award $546,000.00 in statutory damages plus interest.[5]

## CONCLUSION

For the reasons stated above, Counterclaim Plaintiffs respectfully request that Court deny Counterclaim Defendants' motion for partial summary judgment in its entirety and grant Defendants' motion for partial summary judgment in its entirety.

Carolyn D. Richmond, Esq.
Daniel A. Schnapp, Esq.
Oksana G. Wright, Esq.
**FOX ROTHSCHILD LLP**
100 Park Avenue, 15th Floor
New York, NY 10017
Tel: (212) 878-7900
Fax: (212) 692-0940

---

[5] Defendants reserve until trial their request for actual and punitive damages, attorney's fees and costs.