UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
:
PURE POWER BOOT CAMP, INC.,                                   :
PURE POWER BOOT CAMP FRANCHISING                              :
CORPORATION, PURE POWER BOOT CAMP                             :   08 CV 4810 (JGK)(THK)
JERICHO, INC., and LAUREN BRENNER,                            :   ECF CASE
:
             Plaintiffs,                                      :
:
      -against-                                               :
:
WARRIOR FITNESS BOOT CAMP, LLC,                               :
ALEXANDER KENNETH FELL, RUBEN                                 :
DARIO BELLIARD, JENNIFER J. LEE, and                          :
NANCY BAYNARD,                                                :
:
             Defendants.                                      :
------------------------------------------------------------- x
WARRIOR FITNESS BOOT CAMP, LLC,                               :
ALEXANDER KENNETH FELL a/k/a ALEX                             :
FELL, Individually, RUBEN DARIO BELLIARD,:
a/k/a RUBEN BELLIARD, Individually,                           :
JENNIFER J. LEE, Individually, and NANCY                      :
BAYNARD, Individually,                                        :
:
             Counterclaim and Third Party                     :
             Plaintiffs,                                      :
:
      -against-                                               :
:
PURE POWER BOOT CAMP, INC., PURE                              :
POWER BOOT CAMP FRANCHISING                                   :
CORPORATION, PURE POWER BOOT CAMP                             :
JERICHO, INC., and LAUREN BRENNER,                            :
:
             Counterclaim Defendants,                         :
:
      -and-                                                   :
:
ELIZABETH LORENZI and CHERYL DUMAS,                           :
:
             Third Party Defendants.                          :
------------------------------------------------------------- x

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 2

FACTUAL BACKGROUND ....................................................................................... 4

ARGUMENT ................................................................................................................ 4

    I.   DEFENDANTS' DID NOT ALLEGE ACTUAL DAMAGES ............. 4

    II.  STATUTORY DAMAGES ARE NOT ALLOWED ABSENT ACTUAL DAMAGES .......................................................................... 8

    III. DEFENDANTS ARE NOT ENTITLED TO PUNITIVE DAMAGES, ATTORNEYS' FEES OR COSTS ................................. 10

    IV. ACCESS OF EACH E-MAIL CANNOT BE A SEPARATE VIOLATION UNDER THE SCA ........................................................ 11

    V.  PLAINTIFFS' ARE ENTITLED TO SUMMARY JUDGMENT ON DEFENDANTS' ECPA CLAIM .................................................... 12

    VI. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THEIR SCA CLAIM .............................................. 15

CONCLUSION .......................................................................................................... 16

COUNTERCLAIM DEFENDANTS' REPLY/OPPOSITION MEMORANDUM OF
LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY
JUDGMENT AND IN OPPOSITION TO COUNTERCLAIM PLAINTIFFS'
CROSS-MOTION FOR SUMMARY JUDGMENT

Counterclaim Defendants Pure Power Boot Camp, Inc. ("Pure Power"), Pure Power Boot Camp Franchising Corporation, Pure Power Boot Camp Jericho, Inc. and Lauren Brenner ("Brenner" and together with Pure Power, Pure Power Boot Camp Franchising Corporation, Pure Power Boot Camp Jericho, Inc. "Plaintiffs"), by their attorneys Reiss Eisenpress & Sheppe LLP, hereby submit the following reply memorandum of law in further support of their motion for summary judgment on Counterclaim Plaintiffs' Warrior Fitness Boot Camp, LLC ("Warrior"), Alexander Kenneth Fell ("Fell"), Ruben Dario Belliard ("Belliard"), Jennifer J. Lee ("Lee") and Nancy Baynard ("Baynard", and together with Warrior, Fell, Belliard and Lee "Defendants") claims under the Stored Communications Act, 18 U.S.C. §2701, *et. seq.* and the Electronic Communications Privacy Act, 18 U.S.C. 2510, *et. seq.* and in opposition to Defendants' cross-motion for summary judgment.

## PRELIMINARY STATEMENT

There is no real dispute as to 1) whether or not Defendants' counterclaim under the Stored Communications Act ("SCA") sought actual damages – it did not; and 2) whether or not Defendants' advised this Court that they were not seeking actual damages on their SCA claim – they did. The only real issues that remain for the Court to determine are 1) whether the SCA allows for statutory damages when there are no actual damages – it does not; and 2) whether Defendants are entitled to attorneys' fees or punitive damages on their SCA claim – they are not.

During the course of this litigation, Defendants made a strategic decision to allege only statutory damages and not actual damages in their SCA counterclaim. They continued with this strategy during depositions when they represented to the Court that they were not seeking actual damages, thus successfully preventing Plaintiffs from taking discovery about any actual damages. After realizing that this strategic decision would prevent them from recovering statutory damages on their SCA claim, Defendants now try to reverse that decision.

Here, Defendants efforts to reverse their strategy range from 1) claiming they cannot be bound by their counsel's statements to the Court's law clerk – which statements prevented Plaintiffs' discovery efforts; 2) claiming Plaintiffs stole Defendants' proprietary information; 3) claiming Defendants are entitled to Plaintiffs' profits from the alleged SCA violation – although Defendants fail to state what profits those could be except the damages Plaintiffs will recover from Defendants in this action; and 4) Defendants inundating the Court with more than 1,000 pages of e-mails in the hopes that the Court will be persuaded by Defendants' arguments due to the sheer volume of their exhibits.

Tellingly, however, nowhere in their opposition papers do Defendants explain what their actual damages are, other than amorphous, unsubstantiated statements about invasions of privacy and violations of the attorney client privilege. Of course, Defendants cannot establish any invasion of privacy damages as all of the admissible evidence shows that none of these emails were ever published and the alleged violations of the attorney-client privilege do not give rise to damages in that the SCA was not designed to reward perpetrators of illicit acts, which is exactly what Defendants are here.

3

The Court should not be persuaded by Defendants' totally transparent attempts – long after discovery ended and right before the pre-trial order is due -- to undo their strategic error and allow them to pursue actual damages.

With respect to Defendants' cross motion for summary judgment on liability on their SCA Claim, discovery has shown that, in fact, to the extent anyone violated the SCA by accessing Defendants' email accounts, it was Cheryl Dumas – an unrelated third party – and Elizabeth Lorenzi – an employee acting outside the scope of her employment. There is, in fact, no evidence that Ms. Brenner accessed Defendants' email accounts or any evidence that Ms. Brenner instructed anyone to access Defendants' email accounts. As such, and assuming arguendo that the Court denies Plaintiffs' motion for summary judgment, the issue as to whether Plaintiffs should be responsible for the accessing of Defendants' email accounts – as opposed to Ms. Dumas and Ms. Lorenzi -- should be determined at trial.

## FACTUAL BACKGROUND

For a recitation of the factual background concerning Plaintiffs' motion, Plaintiffs respectfully refer the Court to Plaintiffs' moving brief. To the extent there are any facts relevant to this reply/opposition motion that are not contained in Plaintiffs' moving brief they are set forth in the argument section below.

## ARGUMENT

### I. DEFENDANTS DID NOT ALLEGE ACTUAL DAMAGES

The same way Defendants still manage to claim they did not steal any of Plaintiffs' client lists, business plans and employment agreements in spite of their clear admissions during their depositions that they did so, Defendants now claim that they have

4

always claimed actual damages under the SCA claim in spite of their clear statements to the Court to the contrary.

<u>First</u>, in spite of the plain language in Defendants' SCA claim stating they were seeking damages of $1,000 for each of the 546 email alleged stolen -- $1,000 being the maximum amount of statutory damages per violation to which Defendants would be entitled should they prevail on their claim – Defendants now try to claim that because they used the term "compensatory" in their claim, it meant they were asserting actual damages because compensatory damages include actual damages. Of course, statutory damages are also considered compensatory damages. *See Cass County Music Co. v. Khalifa*, 914 F.Supp. 30, 34-35 (N.D.N.Y.); *aff'd* 112 F.3d 503 (1996)(statutory damages combine compensatory and punitive damages), thus rendering Defendants' use of the term "compensatory" in their SCA claim irrelevant to their argument that their SCA claim always alleged actual damages.

<u>Second</u>, Defendants claim that Plaintiffs' offered no evidence that Defendants did not suffer any actual damages. However, Plaintiffs offered both the absence of any allegation of actual damages in the Counterclaims and Defendants' counsel's statement to the Court, which Defendants now argue has no binding effect on them.

<u>Third</u>, assuming arguendo that the Court accepts that Defendants are entitled to actual damages if they can show them, Defendants offer completely conclusory, mostly inadmissible statements in support of their claims of actual damages. Such conclusory statements of actual damages are insufficient to defeat summary judgment. *Sherman v. Bell Atlantic*, 1996 WL 492985, *7 (S.D.N.Y. 1996)(summary judgment granted against plaintiff for failure to establish necessary element of damage claim); *Maier-Schule GMC,*

5

*Inc. v. General Motors Corp.*, 154 F.R.D. 47, 53 (W.D.N.Y. 1994) (summary judgment on damages appropriate where there is no admissible proof of damages).

For example, Defendants claim they are entitled to actual damages under the SCA for the invasion of their privacy. Of course, as Defendants well know, New York has no private right of action for invasion of privacy; instead any such action must be raised under New York Civil Rights Law, which law has a publication element which Defendants cannot meet here. *Farrow v. Allstate Ins. Co.*, 53 A.D.3d 563, 563-64, 862 N.Y.S. 92 (2d Dep't 2008). Here, the only "evidence" Defendants offer of such publication of the emails is Jen Lee's statement in her affidavit that the emails "…were apparently among the emails that Plaintiffs read to their clients during classes and on the telephone" *Undated Declaration of Jennifer Lee Fell,* ¶ 2. Of course, this statement is hearsay. And, the only actual evidence on this issue provided by Ms. Brenner or anyone else is that Plaintiffs did not read these emails (or any other emails) to their clients. *March 4, 2009 Deposition Transcript of Lauren Brenner pp. 191-93 (attached as Exhibit A to the November 1, 2010 Declaration of Matthew Sheppe ("Sheppe Decl.").*

Defendants also claim that they are entitled to Plaintiffs' profits from the accessing of emails, which purportedly contained both proprietary information and attorney-client communications. But, Defendants offer no evidence of any proprietary information in these emails, let alone Plaintiff's use of such allegedly proprietary information or that Plaintiff profited at all from the alleged use of such allegedly proprietary information.[1] And, to the extent that Defendants claim they are entitled to the profits Plaintiff will recover from this lawsuit due to the accessing of attorney client

---

[1] Defendants' claim that these emails contain proprietary information, but they do not identify what in them is proprietary and even a cursory review of these emails explains why – there is no proprietary information contained in them.

6

communications – a lawsuit brought about by Defendants' illicit conduct – such an argument must fail not only because Defendants cannot benefit from their illicit conduct but also because Plaintiffs' have already been sanctioned for such conduct.[2] *See Western Union Telegraph Co. v. MCI Comm. Corp.*, 1986 WL 2769, *2 (S.D.N.Y. 1986)(if a party's wrongful acts have some nexus with the matter in litigation, unclean hands can bar that party's recovery) *citations omitted; Bambu Sales, Inc. v. Testini*, 1998 WL 138055, *3-4 (E.D.N.Y. 1988)(same).

Finally, while Defendants try to minimize their counsel's statement to the Court's law clerk during Mr. Fell's deposition, the indisputable facts are that Plaintiffs inquired of Mr. Fell as to what, if any, actual damages he suffered as a result of the accessing of Defendants' emails, Mr. Fell refused to answer those questions and upon the Defendants informing the Court that they were not seeking any actual damages, the Court ruled that Plaintiffs' could not ask any questions about such actual damages. Defendants suggest that an easy solution would simply be to allow additional discovery of Mr. Fell. Of course, such a ruling, likely not to be made before the pre-trial order is due and approximately one year from the end of fact discovery, would reward Defendants for intentionally charting a course in this case which they now regret. If the Court believes that Defendants should be allowed to seek actual damages and that the Court's ruling at Mr. Fell's deposition only applied to Mr. Fell and not the other individuals, then given that two of the four email accounts that were accessed were Alex Fell's email accounts and one was the Warrior Fitness account on whose behalf Alex Fell was also testifying during this deposition, Defendants should be precluded from seeking any actual damages

---

[2] As noted in Plaintiffs' moving brief, the Court noted the purpose of the accessing of Defendants' emails – to save Plaintiffs' business.

7

for any emails to or from those accounts. Thus, at best Defendants would only be able to seek actual damages suffered by Jen Lee as hers was the only remaining email account accessed. And, considering that in response to Plaintiffs' document requests for all document concerning damages and Defendants' obligations to produce such information in their Rule 26(a)(1) disclosures, Defendants have not provided a shred of evidence to support any actual damage claims and have provided no expert testimony or disclosure with respect to such damages, which should preclude Defendants from seeking actual damages.

## II. STATUTORY DAMAGES ARE NOT ALLOWED ABSENT ACTUAL DAMAGES

The thrust of Defendants argument as to why this Court should ignore *Van Alstyne* -- the only Circuit Court to address the issue of whether statutory damages are allowed under the SCA absent actual damages -- and, instead follow the approach held by other district courts is that the purpose behind the SCA and the Privacy Act are different and thus reliance on the Supreme Court's analysis in *Doe v. Chao*, 540 U.S. 614, 627 (2004) -- wherein the Supreme Court held that the plain reading of the Privacy act required a finding that there must be actual damages to recover statutory damages under the act – was improper.

However, as noted in Plaintiffs' moving brief, the *Van Alstyne* court addressed these perceived differences between the legislative history and purpose of the SCA and the Privacy Act and rejected the notion that a different result was required under each act on the issue of statutory damages absent actual damages, noting that 1) a plain reading of the SCA, just like the plain reading of the Privacy Act in *Doe v. Chao*, did not require a review of legislative history; 2) the SCA's legislative history on this issue was one

8

sentence – "[t]he mere mention of 'statutory damages' in the legislative history hardly works to conclusively establish that a plaintiff is entitled to minimum statutory damages absent any proof of actual damages."; and 3) had Congress actually intended for recovery of statutory damages absent actual damages, it easily could have provided for such a result – just as it had under the Wiretap Act, 18 U.S.C.A. §2520 – but it chose not to. *Van Alstyne*, 560 F.3d at 204-09. Given these factors, this Court should follow *Van Alstyne* and find that statutory damages under the SCA are unavailable absent actual damages.

Also, as noted in Plaintiffs' moving brief, the district court cases addressing this issue are distinguishable. Moreover, we are compelled to note additional differences here given Defendants' misrepresentation of the facts and holdings of these cases. First, we note that Defendants' reliance on the district court's decision in *Pietrylo v. Hillstone Restaurant Group*, 2009 WL 3128420 (D.N.J. 2009) is totally misplaced as that court's decision contained no discussion at all of whether the plaintiffs could recover statutory damages under the SCA, let alone a discussion of whether the plaintiffs could recover statutory damages absent actual damages. In fact, in *Pietrylo*, all the plaintiffs were awarded at trial were minimal actual damages, totaling approximately $3,400.00 and punitive damages. *Id. at *1*. They were not awarded any statutory damages. *Id.*

Similarly, Defendants suggestion that *Cedar Hill Associates, Inc. v. Paget*, 2005 WL 3430562 is analogous to this case is totally misleading. In *Cedar Hill*, the defendant improperly accessed email accounts of other employees of the firm where he worked in connection with a business dispute he was having with his partner. In one such instance, he stole the company's client list – conduct identical to that of <u>Defendants</u> here, not

9

Plaintiffs. The facts in *Cedar Hill* bear no resemblance to the facts here and Defendants only cite it because of its generic holding that you can have statutory damages absent actual damages, a holding, as noted earlier herein, that Plaintiffs dispute and that the Fourth Circuit rejected in *Van Alstyne*.

Ultimately, to disregard the *Van Alstyne* court's analysis that there can be no statutory damages absent actual damages, one would have to disregard the most basic tenets of statutory construction and instead embark on a tortured analysis to reach a result that would clearly be ends driven. We respectfully submit that whatever the Court may think here of Plaintiffs' alleged conduct undertaken in response to Defendants' bad acts, such an analysis and result cannot be had here.

### III. DEFENDANTS ARE NOT ENTITLED TO PUNITIVE DAMAGES, ATTORNEYS' FEES OR COSTS

Defendants do not dispute 1) that the purpose of punitive damages is to punish the defendant and deter similar conduct in the future; 2) that punitive damages must bear some relationship to compensatory damages awarded; and 3) that the award of punitive damages is discretionary. Rather, Defendants simply argue that because this Court found Plaintiffs' conduct willful, Defendants are entitled to punitive damages. Of course, in a vacuum, that might be true, but fortunately, we are not operating in a vacuum. Here, even with the Court's finding of Plaintiffs' willful conduct, given that 1) the Court also noted the purpose behind the accessing of the emails – protecting Plaintiffs' business; 2) Defendants first lied about and then admitted that they stole Plaintiffs' client list, business plan and other proprietary information; 3) Plaintiffs have already been sanctioned for their alleged conduct; 4) punitive damages must bear a relationship to compensatory damages – of which there are none here; and 5) the discretionary nature of punitive

damages, the Court can determine on summary judgment that Defendants are not entitled to punitive damages on their SCA claim.

Defendants citation to *Pietrylo v. Hillstone Restaurant Group*, 2009 WL 3128420 (D.N.J. 2009) is inapposite. In *Pietrylo*, restaurant employees sued the restaurant for improperly accessing a private chat group of which plaintiffs were members. 2009 WL 3128420 at *1. Although the *Pietrylo* decision only tangentially notes in one clause, without any supporting factual detail, the purpose behind the SCA violation – to prevent harassment and humiliation – the *Pietrylo* plaintiffs did not steal anything from their restaurant or try to destroy the restaurant's business as Defendants' did here.[3] As such, there is no basis for the award of punitive damages here.

With respect to Defendants' claim for attorneys' fees and costs, as noted in Plaintiffs' moving brief, given that Defendant is not entitled to actual damages, statutory damages or punitive damages, they should not be awarded attorneys' fees and costs.

## IV. ACCESS OF EACH E-MAIL CANNOT BE A SEPARATE VIOLATION UNDER THE SCA

Again, Defendants have misread this Court's opinion and opinions of other courts on what constitutes a violation of the SCA. Plaintiffs do not dispute that unauthorized access of emails constitutes a violation of the SCA. What Plaintiffs argue, and what this Court's earlier decision does not address, is when one improperly accesses a facility and obtains multiple emails during that one improper access, whether that constitutes one violation in total or one violation per email. As noted in Plaintiffs' moving brief, what case law there is on this issue – *In re Hawaiian Airlines,* 355 B.R. at 232 – suggests that in examples like this one, where the access took place over a very short, discrete period

---

[3] We also note the total amount of punitive damages awarded in *Pietrylo* was approximately $13,600.00.

11

of time – 9 days – that each access of the <u>facility</u> would be a violation as opposed to each email obtained during that access. That is consistent with the statutory language that says:

> (a) Offense. – Except as provided in subsection (c) of this section whoever –
>
>> (1) intentionally accesses without authorization a <u>facility</u> through which an electronic communication service is provided; or
>>
>> (2) intentionally exceeds an authorization to access the <u>facility</u>....

As it is the improper accessing of the facility and what can result from that that the SCA seeks to prevent.

## V. PLAINTIFFS' ARE ENTITLED TO SUMMARY JUDGMENT ON DEFENDANTS' ECPA CLAIM

Defendants are wrong when they claim that Lauren Brenner admitted to contemporaneously accessing Defendants' email accounts during the TRO hearing before Justice Freedman and purposely failed to include Ms. Brenner's subsequent testimony given later in the same deposition they quoted from clarifying that there were no emails contemporaneously intercepted when they were sent.

Later during the same deposition Defendants cite from, Ms. Brenner clarified her earlier testimony:

> A. I need to clarify something with you on the record that I don't think was stated clearly.
>
> Q. By all means?
>
> A. While I was in court, I think it might have come out that there was no e-mails forwarded to me, either from Lizzi or from Cheryl, that Buterman was writing to any of the clients.
>
> Q. Okay, I think I understood that before, but what I thought you had testified to was not that you had received e-mails, but Elizabeth and Cheryl or one or the other were reading you Buterman's e-mails and forwarding you information?

12

A. That's incorrect.

Q. That's incorrect?

A. Cheryl was actually with me, sitting next to me at both of the hearings and her presence was there. I said I wasn't sure. It's cleared up now. She was next to me the entire time. We were waiting prior to going in, I was texting Lizzi about stuff that's going on at work. When I went into court and Buterman was talking about the obstacle course, talking about dress stuff, I was telling Lizzi in a text or in an e-mail -- I think it's in a text that -- it was in a text, that they're going to say that they're claiming this is not unique, pull off every single boot camp that -- and I was telling her what boot camps they were talking about and I said have all this information ready for me. That was what's going on in court.

Q. I understand you're attempting or you want to clarify your testimony.

A. Right.

Q. But you recognize that that is markedly different testimony than you gave a while ago?

A. Yes, I think it was a misunderstanding, what was being said and what was being understood.

Q. Should I understand then I would not, if I was to review the e-mails that were coming from the Blackberry device and e-mails coming and going from Elizabeth Lorenzi, during all the state court proceedings, I would not find information about e-mails or communications from Mr. Buterman?

A. Say that again.

…

A. On that day?

Q. On the day of the state court hearing, on any of the days of the state court hearing.

A. Going to my Blackberry, yes.

Q. Going to or from the Blackberry.

A. To or from my Blackberry?

13

> Q. Meaning it was either coming from Elizabeth to you or you to Elizabeth?
>
> A. Nothing from Larry Buterman, right, yes.
>
> Q. So, the e-mails from Mr. Buterman to the Defendants, were those accessed on the days of one of the state court hearings? This is where we're getting confused, the previous testimony, the e-mails were accessed during the state court hearing.
>
> A. Right, I don't think they were. It wasn't during. How's this, I did not hear of e-mails going on while I was in court and from what I'm assuming, which I shouldn't assume, I don't think he was e-mailing anybody. I think they were in court with him.
>
> Q. But do you know whether or not Mr. Buterman had a Blackberry device in court with him?
>
> A. No.
>
> Q. Do you know whether or not any e-mails to Mr. Buterman or from Mr. Buterman to the Defendants or from the Defendants were intercepted by Elizabeth or Cheryl around the same time that those e-mails were sent?
>
> A. Cheryl was next to me, so Cheryl didn't intercept anything.
>
> Q. I'm not talking about the state court hearing, at any time. At any time, do you know if e-mails from Mr. Buterman to the Defendants or from the Defendants were intercepted by Elizabeth or Cheryl at or about the same time the e-mails were sent?
>
> A. For the record, they never intercepted anything, so I guess that's your answer.
>
> Q. When I say intercepted, what I mean were they read at or about the same time that the e-mails were sent?
>
> A. I don't know.
>
> *April 23, 2009 Deposition Transcript of Lauren Brenner pp. 297-302 (Sheppe Decl. Ex. B); see April 24, 2009 Deposition Transcript of Elizabeth Lorenzi pp. 231-32 (Sheppe Decl. Ex. C).*

Ms. Brenner thus clarified that she never read any of Defendants emails during the TRO hearing and that neither Ms. Dumas – who was with Ms. Brenner at the TRO hearing – nor Ms. Lorenzi ever intercepted or read any of Defendants' emails during the TRO

14

hearing. Thus, as noted in Plaintiffs' moving brief, with no evidence at all of any contemporaneous interception of Defendants' email, Defendants' ECPA claim must fail.

## VI. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THEIR SCA CLAIM

Plaintiffs and Defendants agree that under the law of the case doctrine, the availability of new evidence is a basis for reconsideration of an earlier decision. *See Virgin Atlantic Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). Here, although this Court found that Lauren Brenner accessed the emails from Defendants accounts, the evidence adduced during discovery and after this Court's decision shows that, in fact, Brenner herself never accessed these email accounts nor instructed anyone to access these email accounts on her behalf. *April 23, 2009 Brenner Dep. Tr. pp. 28, 30, 104, 192, 221 and 231-32 (Sheppe Decl. Ex. B); March 4, 2009 Deposition Transcript of Lauren Brenner, pp. 20, 187 (Sheppe Decl. Ex. A); April 24, 2009 Deposition Transcript of Elizabeth Lorenzi, pp. 230-232 (Sheppe Decl. Ex. C)*. Rather, they were accessed by the two Third Party Defendants, Cheryl Dumas, an unrelated third party, and Elizabeth Lorenzi, who Plaintiffs will contend was acting outside the scope of her employment when she did access these emails. *Id.*

While Plaintiffs anticipate Defendants will dispute these contentions and point to the fact that both Ms. Dumas and Ms. Lorenzi refused to answer any questions concerning their accessing of the Defendants email accounts, invoking their fifth amendment rights and that an adverse inference may be drawn from such testimony, the fact remains that given Ms. Brenner's testimony, there is an issue of fact as to who was responsible for accessing these emails which precludes granting Defendants' summary judgment on this issue. *C.D. of NYC Inc. v. United States Postal Service*, 2004 WL

15

2072032, *4-5 (S.D.N.Y. 2004) (theft by an employee is not within the scope of the employment and employers are not held liable for thefts by employees) *citations omitted.*

## CONCLUSION

For the forgoing reasons, Plaintiffs' respectfully request that the Court 1) grant Plaintiffs' motion for summary judgment and dismiss Defendants claims under the SCA and ECPA; 2) in the alternative, find that a violation under the SCA is limited to each time an email account was accessed and not each time an email was retrieved from an improperly accessed account and that any damages for an ECPA violation would be limited to either $0 or a maximum amount of $10,000.00, 3) deny Defendants cross-motion for summary judgment in its entirety; and 4) award Plaintiffs any additional relief the Court deems just and proper.


Dated: New York, New York
      November 1, 2010

                  REISS EISENPRESS & SHEPPE LLP

                  _____
                  Sherri L. Eisenpress (SLE – 2531)
                  Matthew Sheppe (MS-9406)
                  425 Madison Avenue
                  New York, New York 10017
                  Tel: (212) 753-2424

                  *Attorneys for Counterclaim Defendants*