UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
PURE POWER BOOT CAMP, INC., et. al.,      :
                                          :
                        Plaintiffs,       :        08 Civ. 4810 (THK)
                                          :
        -against-                         :        **MEMORANDUM OPINION**
                                          :          **AND ORDER**
                                          :
WARRIOR FITNESS BOOT CAMP, LLC, et. al,   :
                                          :
                                          :
                        Defendants.       :
----------------------------------------X

**THEODORE H. KATZ, United States Magistrate Judge.**

Plaintiffs/Counterclaim Defendants ("Plaintiffs") brought this action seeking damages and injunctive relief, accusing Defendants/Counterclaim Plaintiffs ("Defendants") of (1) stealing Plaintiffs' business model, customers, and internal documents, (2) breaching employee fiduciary duties, and (3) infringing Plaintiffs' trademarks, trade-dress, and copyrights. Defendants deny Plaintiffs' allegations and bring counterclaims, alleging (1) violations of the New York Labor Law, (2) violations of the Stored Communications Act and the Electronic Communications Privacy Act, (3) attempted sabotage by Plaintiffs of Defendants' business, and (4) unauthorized use of Defendants' images in violation of New York privacy law.

Pretrial discovery has been completed and presently before the Court are the parties' cross-motions for partial summary judgment,

1

brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs seek summary judgment on Defendants' claims under the Stored Communications Act ("SCA") and the Electronic Communications Privacy Act ("ECPA"). Defendants seek summary judgment on the same SCA and ECPA claims. For the reasons that follow, Plaintiffs' motion for partial summary judgment is granted in part and denied in part, and Defendants' motion for summary judgment is granted in part and denied in part.[1]

## BACKGROUND

In 2004, Lauren Brenner ("Brenner") hired Ruben Belliard ("Belliard"), and, in 2005, she hired Alex Fell ("Fell"), two former United States Marines, to work as "drill instructors" at Pure Power Boot Camp ("PPBC"), a physical fitness center owned by Brenner and designed to replicate as closely as possible the experience of training at a military boot camp. In late 2007, some eight months before Fell was fired and Belliard quit his job at PPBC, Defendants began making plans to open a competing fitness center. (See Supplemental Affidavit of Lauren Brenner, dated June 6, 2008 ("Brenner June 6 Aff."), at 8.) Shortly after leaving PPBC, Belliard and Fell, together with their girlfriends (and co-Defendants) Jennifer Lee ("Lee") and Nancy Baynard ("Baynard"),

---

[1] The parties consented to proceed before this Court, pursuant to 28 U.S.C. § 636(c).

2

opened a competing fitness center, Warrior Fitness Boot Camp ("WFBC").

After Fell and Belliard were no longer working at PPBC, Defendants allege that Plaintiffs, on April 28, 2008, and for around one week thereafter,  accessed and printed e-mails from Fell's Hotmail, Gmail, and Warrior Fitness Boot Camp ("WFBC") accounts.[2]  (See Affidavit of Lauren Brenner in Opposition to Motion to Preclude Emails, dated July 10, 2008 ("Brenner July 10 Aff."), ¶ 22; see also Ex. A, annexed to Declaration of Daniel Schnapp, Esq., dated July 1, 2008, ("Schnapp July 1 Decl."), E-mails 1-34; Transcript of Oral Argument, dated July 18, 2008 ("Tr."), at 14-15.) Defendants allege that, over the same period, Plaintiffs also accessed Lee's corporate "Bold Food LLC/Bobby Flay" account ("Bold Food account"), based on login information contained in an email obtained from one of Fell's personal accounts. (See Deposition of Lauren Brenner, dated Mar. 4, 2009 ("Brenner Mar. 4 Dep."), at 226, attached as Ex. B to Declaration of Daniel Schnapp, dated October 15, 2010 ("Schnapp Oct. 15 Decl.").)

---

[2] Defendants' Counterclaims make the same allegations against Elizabeth Lorenzi ("Lorenzi") and Cheryl Dumas ("Dumas") (together, the "Third-Party Defendants"). (See Answer to Amended Complaint, Third Party Complaint, dated July 29, 2009 ("Defs.' Ans. and Countercl."), at 20-21.)  However, Lorenzi and Dumas are not named in the motions now before the Court.

Defendants' emails were accessible because Fell left his username and password information stored on PPBC's computers, such that, when Lorenzi accessed the Hotmail site, the username and password fields were automatically populated with Fell's login information. (See Affidavit of Elizabeth Lorenzi in Opposition to Motion to Preclude Emails, dated July 10, 2008 ("Lorenzi Aff."), ¶ 6; Brenner July 10 Aff. ¶ 25.)  Brenner maintains that she never personally accessed any of the accounts, nor did she instruct anyone to access the accounts on her behalf.  (See Counterclaim Defendants' Reply Memorandum of Law in Support of Motion for Partial Summary Judgment ("Pls.' Reply Mem."), at 15.)  Rather, Plaintiffs allege that Lorenzi and Dumas accessed the Hotmail, Gmail, and WFBC accounts, and then supplied Brenner with printed copies of the accessed emails.  (See id.; Deposition of Lauren Brenner, dated Apr. 23, 2009 ("Brenner Apr. 23 Dep."), at 231-33, attached as Ex. K to Declaration of Matthew Sheppe, dated Sept. 24, 2010 ("Sheppe Sept. 24 Decl.").)  Brenner is unsure of who accessed the Bold Food Account.  (See Brenner Apr. 23 Dep. at 232.)

The emails obtained by Plaintiffs provide a detailed picture of Defendants' efforts to set up the competing business.  The content of many of the emails, portions of which are described in greater detail in an earlier decision of this Court, provided the basis for much of Plaintiffs' original Complaint, including,

4

according to Plaintiffs, support for their allegations that, while still employed at PPBC, Defendants looked for and leased space, purchased equipment, copied and/or stole PPBC customer forms, customer lists, training and instruction materials, and finally, that Defendants solicited and stole PPBC's customers, all in anticipation of establishing a competing business. Defendant Belliard also stole his personnel file from the PPBC files, and shredded the non-compete agreement he had signed. See Pure Power Boot Camp v. Warrior Fitness Boot Camp, 587 F. Supp. 2d 548, 553 (S.D.N.Y. 2008) ("Preclusion Decision").

Approximately a week after gaining access to Defendants' email accounts, Plaintiffs commenced an action in New York State Supreme Court. Plaintiffs simultaneously requested a temporary restraining order ("TRO"), seeking, among other things, to prevent Defendants from opening a competing business. The state court determined that Plaintiffs' non-compete clause was unenforceable as drafted, and allowed Defendants to open their fitness center. (See Transcript, dated May 6, 2008 ("TRO Hr'g"), attached as Ex. B to Declaration of Daniel Schnapp, dated Oct. 24, 2008 ("Schnapp Oct. 24 Decl."), at 28, 43.) However, the court directed Defendants to return certain documents that they had stolen from PPBC. (See id. at 41-42.) Defendants then removed the action to this Court.

Defendants learned that Plaintiffs had obtained their emails through papers filed in the state court proceedings. (See id. at 3.) On the basis of that disclosure, Defendants, who at the time were aware only that Plaintiffs had accessed thirty-four emails stored in Defendants' Hotmail, Gmail, and WFBC accounts, filed a motion with this Court seeking an order precluding the use or disclosure of specific emails obtained by Plaintiffs from those accounts.

In a Report and Recommendation, dated August 22, 2008, this Court recommended that Plaintiffs be precluded from using in this litigation emails obtained outside normal discovery procedures.[3] The Court also recommended that Plaintiffs return or destroy all copies of emails that contained privileged attorney-client communications. The Court concluded that "Brenner accessed Fell's emails without authorization, in what would be a violation of the Stored Communications Act, 18 U.S.C. § 2707, had a cause of action been brought pursuant to that statute."[4] See Pure Power Boot Camp,

---

[3] This action was originally referred to this Court for general pretrial supervision and Reports and Recommendations on dispositive motions, pursuant to 28 U.S.C. § 636(b)(1)(A),(B), and (C).

[4] The Preclusion Decision assumed Brenner was responsible for the SCA violations. However, as will be discussed in more detail infra, the Court's decision to preclude the use of Defendants' emails in this litigation was not predicated on Brenner being personally responsible for accessing the emails.

587 F. Supp. 2d at 551.  The Court further concluded that "the
evidence indicates that Brenner periodically accessed Fell's email
accounts and printed emails after they had been delivered" and,
accordingly, "that Brenner did not access and print Fell's emails
contemporaneous with their transmission." See id. at 557-58.  The
Court, therefore, concluded that Brenner did not violate the ECPA.
See id. at 558.  On October 23, 2008, after the designated period
for objections to the Report and Recommendation had expired without
either party registering an objection, United States District Judge
John G. Koeltl adopted the Report in full.

Subsequent to the Preclusion Decision, Brenner admitted to
accessing somewhere between 200-250 emails from Defendants'
accounts.  Additionally, Brenner admitted that, in addition to the
accounts identified in the Preclusion Decision, Lee's Bold Food
account had also been accessed.  (See Brenner Mar. 4 Dep. at 226.)
Defendants also allege that Brenner admitted to accessing
Defendants' email correspondence as it was exchanged, during the
May 5, 2008 TRO hearing in state court.  (See Schnapp Oct. 15 Decl.
at 2.)

Brenner's testimony as to whether she accessed Defendants'
emails during the TRO hearing changed several times over the course
of her deposition.  Initially, Brenner admitted to reviewing emails
exchanged among the Defendants and their lawyer.  (See Brenner Mar.

7

4 Dep. at 276-77.)   Brenner immediately corrected herself, and stated that it was actually her employee, Elizabeth Lorenzi, or her friend, Cheryl Dumas, who accessed the emails, which she knew because they "were writing to me on the blackberry."   (See id.) Later, during the same deposition, Brenner again changed her testimony, this time claiming that Dumas was sitting next to her throughout the hearing, and that she never instructed anyone to read Defendants' emails during the state court hearing. (See id. at 297-302.)

In response to Defendants' document requests, on February 23, 2009, Plaintiffs turned over an additional 43 emails obtained from Defendants' accounts.  On March 23, 2009, Plaintiffs disclosed and produced an additional 454 emails obtained from Defendants' accounts.  The following day, Plaintiffs surrendered an additional fifteen emails obtained from Lee's Bold Food account.   When combined with the original 34 emails that were the subject of the Preclusion Decision, 546 of Defendants' emails were obtained by Plaintiffs without authorization.  Plaintiffs explained that they could not have produced these additional emails any earlier, as Plaintiffs only obtained control of the emails after copies of the emails were left by Dumas, the person Plaintiffs allege was responsible for printing them, with the doorman to Brenner's apartment building, late on the night of March 11, 2009.   (See

8

Letter from Sherri Eisenpress to the Court, dated Apr. 20, 2009, at 2; Brenner Apr. 29 Dep. at 29-30.)

The parties appeared before the Court on June 17, 2009, in connection with a request by Defendants for sanctions, pursuant to Rule 37 of the Federal Rules of Civil Procedure, related to what Defendants termed "Plaintiffs' illegal actions and abuse of the discovery process."  The Court determined that the additional emails would be subject to the same preclusion order that applied to the initial 34 emails obtained by Plaintiffs.  Neither party objected to this decision.

Defendants filed an answer to Plaintiffs' Amended Complaint on July 29, 2009.  (See Answer to Amended Complaint, Third Party Complaint, dated July 29, 2009 ("Ans. and Countercl.").) Defendants' Third-Party Complaint included counterclaims alleging (1) that Plaintiffs and Third-Party Defendants violated the SCA and the ECPA by accessing Defendants' email without authorization, (2) violations of the New York Labor law, (3) Plaintiffs have attempted to sabotage Defendants' business, and (4) unauthorized use of Defendants' images in violation of New York privacy law. (See id. at 17.)

Pretrial discovery is now complete, and the trial in this action is scheduled to commence on January 24, 2010.

## DISCUSSION

I.   Standard for Summary Judgment

Under Rule 56(c)(2) or the Federal Rules of Civil Procedure, a motion for summary judgment should be granted "if the pleadings the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552-53 (1986); Shannon v. N.Y. City Transit Auth., 332 F.3d 95, 98 (2d Cir. 2003). The burden of demonstrating the absence of any genuine dispute as to material facts rests upon the party seeking summary judgment. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). Once a properly supported motion for summary judgment has been submitted, the burden shifts to the non-moving party to make a sufficient showing to establish the essential elements of the claims on which it bears the burden of proof at trial. See Hayut v. State Univ. of N.Y., 352 F.3d 733, 743 (2d Cir. 2003); Peck v. Pub. Serv. Mut. Ins. Co., 326 F.3d 330, 337 (2d Cir. 2003) (citing Celotex, 477 U.S. at 323, 106 S. Ct. at 2553).

In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, courts are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986); McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006). However, the non-moving party must put forth "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). A summary judgment "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). The non-moving party may not rely on its pleadings, mere allegations, simple denials, conclusory statements, or conjecture to create a genuine issue for trial. See Anderson, 477 U.S. at 256-57, 106 S. Ct. at 2514; Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is . . . insufficient to defeat summary judgment. Niagra Mohawk Power Corp. v. Jones Chem. Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Anderson, 477 U.S. at 252, 106 S. Ct. 2505).

## I.   Stored Communications Act

The SCA provides that "whoever intentionally accesses without authorization a facility through which an electronic communication service is provided; or intentionally exceeds an authorization to access that facility; and thereby obtains . . . access to a wire or electronic communication while it is in electronic storage in such system shall be punished . . ." See 18 U.S.C. § 2701(a). The SCA also creates a civil cause of action, allowing any person who is the victim of a violation of the SCA to seek damages from the violator. See 18 U.S.C. § 2707(a). The Court may assess as damages "the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, but in no case shall a person entitled to recover receive less than the sum of $1,000." 18 U.S.C. § 2707(c). Other appropriate relief may include attorney's fees and litigation costs and, "[i]f the violation was willful or intentional, the court may assess punitive damages." 18 U.S.C. § 2707(b)(3); 18 U.S.C. § 2707(c).

This Court previously held in its Preclusion Decision that the accessing of Defendants' Hotmail, Gmail, and WFBC accounts, done without authorization, was a violation of the SCA. See Pure Power Boot Camp, 587 F. Supp. 2d at 556. Because there were no SCA claims in the case at the time, in the context of supervising pretrial discovery, the Court only concluded that Defendants were

12

entitled to an order precluding the use of the emails. This Court further concluded that the additional emails obtained by Plaintiffs without authorization would be treated in the same manner. Defendants now move for summary judgment on their SCA counterclaim, arguing that the Court's finding that Plaintiffs violated the SCA is now the law of the case. Plaintiffs oppose Defendants' motion by arguing that Brenner never, in fact, accessed the email accounts in question, nor did she instruct anyone else to access the accounts on her behalf. (See Pls.' Reply Mem. at 16.) Because this Court has already determined that the SCA has been violated, that is the law of the case. However, there remains a material question of fact, sufficient to defeat a motion for summary judgment, as to who among the Plaintiffs and Third-Party Defendants accessed Defendants' email accounts and, in doing so, violated the SCA.

A.   Law of the Case

"As most commonly defined, the doctrine [of law of the case] posits that when a court decides upon a rule of law, that decision should generally continue to govern the same issues in subsequent stages in the same case."[5]   Arizona v. California, 460 U.S. 605,

---

[5] A Report and Recommendation prepared by a magistrate judge and adopted by a district judge, constitutes the law of the case for all issues addressed in the report. See, e.g., Bey v. I.B.E.W. Local Union No. 3, No. 05 Civ. 7910 (JSR)(MHD), 2009 WL

618, 103 S. Ct. 1382, 1391 (1983). The primary grounds justifying reconsideration of a previous decision are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." See Atlantic Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478, at 790 (1981)). "Application of the law of the case doctrine is discretionary and does not limit a court's power to reconsider its own decisions prior to judgment." Aramony v. United Way of America, 254 F.3d 403, 410 (2d Cir. 2001); RSL Communications, PLC v. Bildirci, 649 F. Supp. 2d 184, 204 (S.D.N.Y. 2009).

For purposes of applying the law of the case doctrine, courts have long recognized the distinction between pre-discovery motions, based on an undeveloped record, and post-discovery motions for summary judgment. See, e.g., DiLaura v. Power Authority, 982 F.2d 73, 76-77 (2d Cir. 1992)(findings made by a court for the purpose of injunctive relief are not the law of the case for subsequent litigation on the merits); Cialit Health Serv. v. Israel Humanitarian Found., 385 F. Supp. 2d 392, 398 n.8 (S.D.N.Y.

73113, at *1. (S.D.N.Y. Jan. 7, 2009); Yash Raj Films (USA), Inc. v. Bobby Music Co. & Sporting Goods. Inc., No. 01-CV-8378 (JFB)(CLB), 2006 WL 2853874, at *4 (E.D.N.Y. Sept. 29, 2006).

2005)(pre-discovery determination on a motion to dismiss not the law of the case for purposes of summary judgment); <u>Colonial Tanning Corp. v. Home Indem. Co.</u>, 780 F. Supp. 906, 911-12, (N.D.N.Y. 1991)(prior ruling in context of a discovery dispute did not establish law of the case with respect to unrelated issues which court had merely assumed for purposes of addressing the disputes, but which were not critical for resolution of the dispute).

Here, the parties concede that the Preclusion Decision constitutes the law of the case, but disagree as to whether the Court should revisit its previous decision in light of what the Plaintiffs describe as "newly discovered evidence" supporting their contentions. (<u>See e.g.</u>, Counterclaim Defendants' Response to Counterclaim Plaintiffs' Rule 56.1 Statement, dated November 1, 2010, ¶ 7)("Admitted that the Court's [Preclusion Decision] constitutes the law of the case, but denied that the Court may not reconsider this ruling given the evidence adduced during discovery after the Court's ruling.") Plaintiffs contend that, subsequent to the Preclusion Decision, the discovery process revealed that Brenner did not, in fact, personally access Defendants' email accounts, nor did she instruct anyone to access the email accounts on her behalf. (<u>See</u> Pls.' Reply Mem. at 15.)

The Court's Preclusion Decision was delivered at an early stage in the litigation, well in advance of the completion of fact

15

discovery, and prior to Brenner's deposition.  Indeed, at the time
the Court decided the discovery issues that were the subject of the
decision, Defendants had yet to bring a counterclaim against
Plaintiffs alleging that they had violated the SCA and ECPA.  While
it is true that the Court found that a violation of the SCA had
occurred, and based its decision to preclude the use of Defendants'
emails in this litigation on that finding, it was not critical to
the Court's decision that Brenner was necessarily the party who
directly accessed Defendants' email accounts.  Nevertheless, at the
time of the Preclusion Decision, Brenner did not dispute that she
had done so.

To the extent that the Court found in the Preclusion Decision
that Brenner personally violated the SCA, it did so preliminarily,
in the context of deciding a discovery sanction issue, not on the
basis of the substantive SCA claims that are presently before the
Court.  And, the finding was made before there was an opportunity
for pretrial discovery.  Accordingly, that finding was not case-
dispositive with respect to Brenner's liability under the SCA, and
that task remains for the jury.  Accordingly, Defendants' motion
for partial summary judgment on this issue is denied.

B.    Damages Under the Stored Communications Act

Plaintiffs argue that Defendants claim only statutory damages
under the SCA, and that they have failed to allege or offer any

16

evidence of actual damages. (See Pls.' Mem. at 3.) Thus, they contend that, in the absence of actual damages, Defendants are not entitled to statutory damages. Defendants respond that they have suffered actual damages as a consequence of Plaintiffs' violations of the SCA, and that they have properly alleged those damages in their Counterclaim. (See Counterclaim Plaintiffs' Memorandum of Law in Opposition to Motion for Partial Summary Judgment ("Defs.' Mem."), at 11.) In any event, Defendants argue, they are not required to prove actual damages in order to secure statutory damages.

The Court concludes that Defendants are estopped from asserting that they have suffered actual damages.

i.   Waiver of Actual Damages

"Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." New Hampshire v. Maine, 532 U.S. 742, 749, 121 S. Ct. 1808, 1814 (2001)(quoting Davis v. Wakelee, 156 U.S. 680, 689, 15 S. Ct. 555, 558 (1895)). A party may be estopped from pursuing a claim where: "1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will

17

rely upon it; 2) and the other party reasonably relies upon it; 3) to her detriment." <u>Kosakow v. New Rochelle Radiology Assoc.</u>, 274 F.3d 706, 725 (2d Cir. 2001). "Equitable estoppel is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." <u>Apollo Theater Found., Inc. v. W. Int'l Syndication</u>, No. 02 Civ. 10037 (DLC), 2005 WL 1041141, at *17 (S.D.N.Y. May 5, 2005).

During his deposition, Fell was asked by Plaintiffs' counsel to describe what damages he had suffered as a result of the SCA and ECPA violations. (<u>See</u> Deposition of Alex Fell, dated Aug. 26, 2009 ("Fell Dep."), attached at Ex. C to Decl. of Matthew Sheppe, dated Sept. 24, 2010, at 263.) On the advice of counsel, Fell refused to answer, claiming attorney-client privilege. (<u>See</u> <u>id.</u> at 264.) Plaintiffs' counsel sought to compel Fell to answer, and the parties sought a ruling from the Court on the issue. (<u>See</u> <u>id.</u> at 265.) The Court sought clarification from Defendants as to whether they claimed statutory or actual damages. Defendants' counsel confirmed that Defendants were "claiming statutory damages." (<u>See</u> <u>id.</u> at 268.) The Court found, on the basis of Defendants' representation that they sought only statutory and punitive damages, that Fell had no relevant information to convey about actual damages, and, accordingly, that he did not have to respond

18

to the question.  (See id.)  Plaintiffs' counsel immediately sought to clarify whether the Court's finding was predicated on Defendants' claim that their damages were limited to statutory damages.  (See id.)  The Court asked Defendants' attorney directly if Defendants were "only claiming statutory damages," to which he replied "my counterclaim only claims statutory damages.  I read it to you verbatim . . . . I don't see anything in here that's personal damages per se."  (See id. at 269-70.)  On that basis, Plaintiffs' counsel agreed that questions on the issue of actual damages no longer needed to be pursued.  (See id. at 270.)

Having represented to Plaintiffs and to the Court that they claimed only statutory damages,[6] and having objected to producing discovery on actual damages, which the Court sustained on the basis of Defendants' representations that they were only seeking statutory damages, Defendants cannot now, on the eve of trial, change course and argue that they have, in fact, suffered actual damages.  Cf. Fed. R. Civ. P. 37(b)(2)(A) ("If a party . . . fails to obey an order to provide or permit discovery . . ., the court where the action is pending may issue further just orders.  They

---

[6] Defendants argue that the deposition question was directed to Fell in his individual capacity.  (See Defs.' Mem. at 12.) However, it is clear from a review of the deposition transcript that Defendants represented that the counterclaim sought only statutory damages.  (See Fell Dep. at 269-70.)

may include the following: . . .(ii) prohibiting the disobedient party from supporting or opposing designated claims . . . or from introducing designated matters in evidence"); Fed. R. Civ. P. 37(c)(1)("If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence . . . at a trial"). Defendants' representation that they were not claiming actual damages, and their failure to itemize and produce in pretrial discovery evidence of actual damages, bars Defendants from claiming that they are entitled to actual damages.

In any event, Defendants have provided no competent evidence of actual damages on which a jury could make such an award. Conclusory allegations that Defendants have suffered harm, without more, do not create a genuine issue of material fact sufficient to survive a motion for summary judgment.

    ii.  <u>Statutory Damages</u>

Plaintiffs contend that because Defendants have not suffered actual damages, they are not entitled to statutory damages under the SCA, and that, accordingly, Plaintiffs are entitled to summary judgment on Defendants' SCA claim. (<u>See</u> Pls.' Mem. at 12.) Defendants respond that actual damages are not necessary in order to recover statutory damages under the SCA. (Defs.' Mem. at 6, 10.)

In support of their argument that statutory damages under the SCA are recoverable only when a party has suffered actual damages, Plaintiffs cite to the only federal appellate decision to have examined the issue in depth. See Van Alstyne v. Elec. Scriptorium, Ltd., 560 F.3d 199, 204-06 (4th Cir. 2009).   Following a jury verdict, the district court in Van Alstyne awarded the plaintiff damages which consisted solely of statutory damages, punitive damages, and attorney's fees.   The Fourth Circuit reversed and remanded, holding that statutory damages under the SCA are only recoverable where a plaintiff has also suffered actual damages. The Van Alstyne court relied on Doe v. Chao, 540 U.S. 614, 124 S. Ct. 1204 (2004), where the Supreme Court held that statutory damages under the Privacy Act, 5 U.S.C. § 552, et seq., are not recoverable absent actual damages.   The Van Alstyne court reasoned that the relevant provisions of the SCA and the Privacy Act were essentially identical and, accordingly, that a straightforward textual analysis of the SCA mandated the same result as that reached by the Supreme Court in Doe.

However, as recognized by the majority of federal courts to have examined this issue subsequent to the Doe decision, the Privacy Act and the SCA are different statutes, with different purposes, and they penalize different behavior.   See, e.g., Freedman v. Town of Fairfield, No. 3:03CV01048 (PCD), 2006 WL

21

2684347, at *3 (D. Conn. Sept. 19, 2006)("Doe is dubious authority for the proposition that Section 2707(c) does not mean what it provides, recovery of 'minimum statutory damages of $1,000.'"); In re Hawaiian Airlines, Inc. v. Konop, 355 B.R. 225, 230 (D. Haw. 2006) ("Notwithstanding the similar language found in the two statutes, the overall structure of the [SCA] and its legislative history differ from the Privacy Act such that the holding in [Doe] is not directly applicable to the [SCA]"); Cedar Hill Assocs., Inc. v. Paget, No. 04 C 0557, 2005 WL 3430562, at *3 (N.D. Ill. Dec. 9, 2005)(citing to the legislative history of the SCA in determining that Doe is inapplicable to the SCA).

Indeed, the plaintiff in Doe, who hoped to recover statutory damages despite his failure to allege actual damages, cited to Section 2703(c) of the SCA as evidence that Congress does indeed permit the award of true liquidated damages remedies. See Doe, 540 U.S. at 626, 124 S. Ct. at 1212.   When provided with the opportunity to confirm that the language in Section 2707(c) of the SCA, that is identical to that of the Privacy Act, also prohibits the recovery of statutory damages in the absence of actual damages, the Supreme Court majority chose instead to reject the history of the Stored Communications Act as not relevant, distinguishing the SCA as a "completely separate statute[] passed well after the Privacy Act."   See id.   The dissent in Doe went even further,

22

explicitly citing to Section 2707(c) as one of several statutes that "have been understood to permit recovery of the $1,000 statutory minimum despite the absence of proven actual damages." See id. at 639-640, 124 S. Ct. at 1219-20 (Ginsburg, J., dissenting).

Thus, Defendants need not allege actual damages when a plain reading of the statute, and the legislative history associated with the statute, make it clear that Congress intended that damages under Section 2707(c) be at least $1,000 per violation. See H.R. Rep. No. 99-647, p. 74 (1986)("[d]amages [under 18 U.S.C. § 2707(c)] include actual damages, any lost profits but in no case less than $1,000"); see also Hawaiian Airlines, 355 B.R. at 231; Cedar Hill Assocs., 2005 WL 3430562, at *3.   Defendants are accordingly entitled to the statutory minimum of $1,000 per violation of the statute, whether or not they have suffered actual damages.

iii. Number of Violations of the Stored Communications Act

Plaintiffs argue that any violation of the SCA should be measured on a per-account basis or, in the alternative, on a per-day basis.   (See Pls.' Mem. at 18.)   Defendants contend that, because Plaintiffs accessed 546 separate electronic communications while in storage on the electronic communication providers'

23

systems, Plaintiffs committed 546 independent violations of the SCA. (See Defs.' Mem. at 19.)

The SCA itself provides little guidance as to whether the statutory minimum should be awarded for each violation, stating only that "in no case shall a person entitled to recover receive less than the sum of $1,000." 18 U.S.C. § 2707(c). There is similarly little case law and no legislative history to shed light on whether the minimum statutory award should be multiplied by the number of violations or, for that matter, what distinguishes distinct and independent violations of the statute from a single, continuous violation. However, the SCA is clear as to what constitutes a violation of the Act. The SCA provides punishment for anyone who "intentionally accesses without authorization a facility through which an electronic communication service is provided . . . and thereby obtains . . . access to a wire or electronic communication while it is in electronic storage . . ." See 18 U.S.C. § 2701(a). (emphasis added).

Clearly, each accessed email cannot constitute a separate violation of the Act, as the SCA specifically targets the unauthorized access of an electronic communication facility. The access of the stored communication is a necessary element of the violation, not an independent violation unto itself. Defendants argue that the Preclusion Decision already establishes that "a

24

person violates the SCA if she accesses an electronic communication service _or_ obtains an electronic communication while it is still in electronic storage, without authorization." Pure Power Boot Camp, 587 F. Supp. 2d at 555 (emphasis in original). However, in the Preclusion Decision, the Court did not purport to decide the number of times the SCA was violated, only that someone did in fact violate the SCA. Plaintiffs would have violated the SCA by accessing an electronic communications facility and securing a single email in electronic storage, but it does not follow that each email accessed in the facility constitutes an independent violation of the SCA.

Plaintiffs rely on the court's analysis in Hawaiian Airlines in support of the proposition that where an account is accessed multiple times in short succession, it would likely constitute only a single violation of the SCA. See Hawaiian Airlines, 355 B.R. at 232 (holding that it might be appropriate to aggregate intrusions that functionally constitute a single visit). Similarly, "violations that were significantly separated in time and that accessed different information would clearly constitute separate violations of the Act entitled to separate statutory awards."[7] See id.

---

[7] The Hawaiian Airlines court had already considered, and ultimately rejected, the idea that Congress intended the

25

Here, there is no evidence in the record to suggest that Plaintiffs did, or were able to, gain access to Defendants' email accounts outside of the nine-day period from April 28, 2008 to May 6, 2008. Moreover, there is no evidence indicating the number of times Defendants' email facilities were accessed over the nine-day period. A review of the emails accessed by Plaintiffs indicates that the vast majority of them are dated prior to April 28, 2010, and so would have been available to Plaintiffs upon their first intrusion; those emails obtained from Plaintiffs' subsequent intrusions would have been small in number relative to the number of emails that Plaintiffs had already accessed. (See 546 Emails, attached as Ex. D to Schnapp Oct. 15 Decl.) Nor is there any allegation that the emails were accessed by any means other than through the use of misappropriated passwords. Accordingly, because the period over which Defendants' emails were accessed was relatively short, and because there is no evidence indicating the number of times each account was accessed, the Court concludes that it is appropriate to aggregate the intrusions with respect to each individual account and find that there have been four independent violations of the SCA — one violation for each unauthorized access

---

statutory minimum of $1,000 to be a total sum award regardless of the number of intrusions in violation of the SCA. See Hawaiian Airlines, 355 B.R. at 232.

of an electronic communications facility, which allowed access to electronic communications while still in electronic storage.

C.   Punitive Damages

Defendants seek punitive damages for Plaintiffs' violations of the SCA.  (See Defs.' Mem. at 13.)  Plaintiffs contend that, because they have already been sanctioned for their conduct, there is no basis for punitive damages.  (See Pls.' Mem. at 15-16.) Plaintiff's also catalogue a range of Defendants' behavior which, Plaintiffs argue, should bar Defendants from recovering punitive damages under the "clean hands" doctrine.  (See id. at 16-17.)

The SCA provides that in the case of "willful or intentional" violations, "the court may assess punitive damages."  See 18 U.S.C. § 2707(c); see also Wyatt Tech. Corp. v. Smithson, No. CV 05-1309 (DT), 2006 WL 5668246, at *11-12 (C.D. Cal. Aug. 14, 2006)(awarding punitive damages to a counter-claimant under the SCA, because the plaintiff accessed the defendant's personal email on a private foreign server, monitored the personal email, and did not obtain the defendant's authorization to do so), rev'd on other grounds, 345 F. App'x 236 (9th Cir. 2009).  However, because the Court is unable to determine as a matter of law which party accessed Defendants' email accounts, and the surrounding circumstances, there is no basis upon which to decide whether punitive damages are appropriate as a matter of law.

D.    Costs and Attorneys' Fees

Defendants seek to recover costs and attorneys' fees.  (See

Defs.' Mem. at 16.)  Section 2707(c) of the SCA provides that "[i]n

the case of a successful action to enforce liability under this

section, the Court may assess the costs of the action, together

with reasonable attorney fees determined by the court."  See 18

U.S.C. § 2707(c); Wyatt Tech. Corp., 2006 WL 5668246, at *12

(awarding attorneys' fees for violations of the SCA).  However,

even if the Court were inclined to award costs and attorneys' fees,

it could not do so on the basis of the present motion.  Defendants

must first establish which party or parties violated the statute,

and the costs and fees incurred in litigating the issue.

Defendants have submitted no evidence indicating the extent of

their costs and fees, and it will be up to the jury to determine

who among the Plaintiffs and Third-Party Defendants violated the

SCA.  Accordingly, Defendants' motion for summary judgment on costs

and attorneys' fees is denied.

* * *

To sum up, the Court is unable to determine, as a matter of

law, which of the parties named in Defendants' counterclaim is

responsible for the violations of the SCA suffered by Defendants.

As Defendants have moved for summary judgment only with respect to

Plaintiffs, and not the Third-Party Defendants named in Defendants'

28

counterclaims, Defendants' motion for partial summary judgment against Plaintiffs must be denied. The Court finds, however, that four violations of the SCA were committed, and that the appropriate award for each violation is $1,000, for a total of $4,000. The Court further finds that Defendants are estopped from alleging actual damages and, accordingly, Plaintiffs' motion for partial summary judgment with respect to actual damages is granted. Finally, because the Court is presently unable to determine which of the parties named in Defendants' counterclaim is liable for the four violations of the SCA, the determination of punitive damages, costs, and attorneys' fees is premature.

## II.   The Electronic Communications Privacy Act

The ECPA provides for criminal sanctions and a civil cause of action against persons who "intercept" electronic communications.[8] The statute defines an "intercept" as the "aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or

---

[8] 18 U.S.C.A. § 2515 provides;
Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

other device." See 18 U.S.C. § 2510(4).  Virtually every federal
appellate court to have considered the issue has held that an
"intercept" under the ECPA must occur simultaneously with
transmission. See Fraser v. Nationwide Mutual Ins. Co., 352 F.3d
107, 113 (3d Cir. 2004) (collecting cases).  The reasoning behind
these decisions is based on the distinction in the statutory
definitions of "wire communication" and "electronic communication,"
the latter of which does not include electronic storage.[9]  See
United States v. Steiger, 318 F.3d 1039, 1048 (11th Cir. 2003);
Bailey v. Bailey, No. 07-11672, 2008 WL 324156, *4 (E.D. Mich.
2008).  This difference in definition "indicates Congress' intent
that one could 'intercept' a wire communication in storage, but
could not 'intercept' a similarly situated electronic
communication." See Steiger, 318 F.3d at 1048 (citing Steve
Jackson Games, Inc. v. United States Secret Service, 36 F.3d 457
(5th Cir. 1994)).

This Court, applying the definition of "intercept" accepted by
most courts that have examined the issue, concluded in the
Preclusion Order that Brenner did not violate the ECPA. See Pure
Power Boot Camp, 587 F. Supp. 2d at 557-58.  Plaintiffs argue,

---

[9] The USA Patriot Act § 209, Pub. L. No. 107-56, §
209(1)(A), 115 Stat. 272, 283 (2001), amended the definition of
"wire communication" to eliminate electronic storage from the
definition of wire communication.

under the doctrine of law of the case, that this Court should adhere to its original ruling.  Defendants argue that, subsequent to this Court's Preclusion Order, Defendants discovered new evidence justifying the reconsideration of the Court's previous ruling.  Specifically, Defendants contend that Brenner's deposition revealed that "Defendants' emails were stolen contemporaneously with their transmission on the day of the hearing before the New York State Court."  (See Defs.' Mem. at 19.)  Defendants argue that this newly-discovered evidence warrants reconsideration of the Court's decision that Plaintiffs did not violate the ECPA.  (See id.)  Plaintiffs again argue that Brenner never accessed Defendants' emails.

Even accepting the strongest factual and legal arguments in favor of Defendants that Brenner's admittedly confused deposition testimony suggests, Defendants cannot establish a violation of the ECPA.  Defendants essentially make the same argument they made in their previous motion before this Court, when they contended that "Brenner's access to Fell's email was 'contemporaneous' if it occurred during some undefined, short period of time after the e-mail had been delivered."  See Pure Power Boot Camp, 587 F. Supp. 2d at 557.  Defendants did not then, nor do they now, offer any authority in support of that proposition.  Instead, they allege only that Brenner, or her associates, accessed and read emails

31

received by Defendants at, or very near, the time the messages arrived in Defendants' accounts.  Simply put, Defendants argue they have discovered new evidence which they believe supports the allegation that the interval between the delivery of the email to Defendants' accounts, and the subsequent access by Plaintiffs, was shorter than Defendants initially believed.  (See Defs.' Mem. at 19-20.)  Defendants argue, solely on the basis of this increased temporal proximity, that Plaintiffs' access of Defendants' accounts can now be considered an access of electronic communications "contemporaneous with their transmission" and, accordingly, an "interception" in violation of the ECPA.

This Court found in the Preclusion Decision that email messages that had already been delivered to Defendants' accounts were "previously stored electronic communications."  See Pure Power Boot Camp, 587 F. Supp. 2d at 557.  This Court went on to hold that there was no evidence that the emails were intercepted at the same time they were transmitted, and that the evidence indicated instead that the emails were accessed after they had been delivered.  See id.  The law of the case, and, as discussed, the law in the majority of the courts to have examined the issue, is that electronic communications cannot be intercepted for purposes of the ECPA after they have been delivered, at which point they become "stored communications" regulated by the SCA.  See Pure Power Boot

Camp, 587 F. Supp. 2d at 557-58; Hall v. EarthLink Network, Inc., 396 F.3d 500, 504 n.1. (2d Cir. 2005); Fraser, 352 F.3d at 113-14; Steiger, 318 F.3d at 1048-49; Steve Jackson Games, 36 F.3d at 461-62; Bailey, 2008 WL 324156, *4.

Because Plaintiffs did not access Defendants' electronic communications contemporaneously with their transmission, they did not violate the ECPA. Accordingly, Plaintiffs motion for summary judgment with respect to Defendants' ECPA claim is granted.

### CONCLUSION

For the reasons set forth above, the Court grants in part Defendants' motion for partial summary judgment, concluding that they have established four violations of the SCA and are entitled to statutory damages in the amount of $4,000, with the liable party to be determined at trial. The Court also grants Plaintiffs' motion for partial summary judgment, concluding that there has been no violation of the ECPA. In all other respects, the motions are denied.

SO ORDERED

THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated:   December 22, 2010
         New York, New York

33