UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x
PURE POWER BOOT CAMP, INC.,
PURE POWER BOOT CAMP FRANCHISING
CORPORATION, PURE POWER BOOT CAMP
JERICHO INC., and LAUREN BRENNER

                  Plaintiffs,

        - against -

WARRIOR FITNESS BOOT CAMP LLC,
ALEXANDER KENNETH FELL, RUBIN DARIO
BELLARD, JENNIFER J. LEE, and NANCY
BAYNARD

                  Defendants.
------------------------------------------------------------------- x

08 CV 4810 (JGK/THK)
ECF CASE

## JURY INSTRUCTIONS

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   THE LAW ........................................................................................................... 1

    Pure Power's Claims Against Warrior Fitness Defendants................................. 2

    Breach of Contract Against Fell and Bellard...................................................... 2

    Breach of the Common Law Duty of Loyalty against Bellard, Fell, Lee
        and Baynard ............................................................................................. 5

    Unjust Enrichment against All Defendants ...................................................... 14

    Common Law Unfair Competition Against All Defendants............................... 16

    Statutory Trade Dress Infringement Against all Defendants, Including
        Claims Under GBL §360, ........................................................................ 20

        False Designation of Origin Claim ................................................... 21

        Trade Dress Infringement – Elements of Proof ................................ 21

        Unfair Competition.......................................................................... 22

        Functionality ................................................................................... 23

        Inherent Distinctiveness................................................................... 23

        Secondary Meaning ......................................................................... 25

    Likelihood of Confusion ................................................................................ 27

    Confusion - Factors........................................................................................ 27

        Factor No. 1 -- Distinctiveness of the Trade Dress ........................... 28

        Factor No. 2 -- Similarity of Trademarks and Trade Dress ................ 29

        Factor No. 3 -- Proximity in the Marketplace ................................... 29

        Factor No. 4 -- Quality of the Defendants' Services .......................... 30

        Factor No. 5 -- Evidence of Actual Confusion .................................. 30

        Factor No. 6 -- Sophistication of the Consumers ............................... 31

        Factor No. 7 -- Existence of Good Faith or Bad Faith ....................... 31

Balancing the Factors ............................................................................. 31

An Appreciable Number ......................................................................... 32

Ordinarily Prudent Consumers ................................................................. 32

Intent or Knowledge as Evidence of Confusion.......................................... 32

Intent - Willful Deception .............................................................................. 33

Intent - Corporate Party's Agents and Employees ............................... 33

Damages ........................................................................................................ 36

Punitive Damages ........................................................................................... 38

Copyright Infringement Against All Defendants.............................................. 39

The Nature of Copyright ................................................................................. 40

In General ...................................................................................................... 40

Constitutional Basis for a Copyright................................................................ 40

Copyrightable Works ...................................................................................... 41

Definition of Copyright ................................................................................... 41

Elements of Plaintiffs' Copyright Infringement Claim...................................... 42

How Copyright Is Obtained............................................................................. 42

Ownership of Copyright .................................................................................. 42

Employer Owns Copyright in Employee's Work .............................................. 43

Originality....................................................................................................... 43

Testimony Offered .......................................................................................... 44

Prima Facie Evidence ..................................................................................... 45

Works Including Old Matter............................................................................ 45

Copyright Validity .......................................................................................... 45

Infringement ................................................................................................... 46

Copying ......................................................................................................... 46

NY1 488268v1 12/22/10

Access Defined ......................................................................................................... 48

    Literal Copying Not Required ............................................................................ 48

Unconscious Plagiarism Constitutes Infringement ................................................... 49

Substantial Portion Copied ...................................................................................... 49

Ordinary Observer Test ............................................................................................ 50

Presumption of Unlawful Copying ........................................................................... 50

Innocent Infringer .................................................................................................... 51

Willful Infringement ................................................................................................ 51

Damages .................................................................................................................. 52

Damages in General ................................................................................................. 52

    Scope of Damages ............................................................................................. 53

    Compensatory Damages .................................................................................... 53

    Diminution in Value of Material Used ............................................................... 54

    Defendants' Profits ............................................................................................ 54

    Effect of Instructions as to Damages .................................................................. 54

    Defamation Against Lee ..................................................................................... 60

    Tortious Interference with Prospective  Economic Advantage
        against All Defendants .................................................................................. 64

    Tortious Interference with  Contract against Lee and Baynard .......................... 66

Counter Claims by Warrior Fitness Against Pure Power ........................................... 68

III. TRIAL PROCESS .................................................................................................. 78

Burden of Proof--Preponderance of the Evidence ................................................... 78

Role of the Jury ........................................................................................................ 79

Conduct of Counsel .................................................................................................. 79

Role of the Court ...................................................................................................... 80

All Persons Equal Before the Law ............................................................................. 80

NYI 488268v1 12/22/10

Consider Each Defendant Separately ............................................................................ 80

IV. EVALUATION OF EVIDENCE ..................................................................................... 80

Witness Credibility ....................................................................................................... 82

Impeachment of Witness .............................................................................................. 83

Falsus in Uno Falsus in Omnibus ............................................................................... 85

Interest in Outcome ...................................................................................................... 85

All Available Evidence Need Not Be Produced .......................................................... 85

V. DELIBERATION OF THE JURY ..................................................................................... 86

Duty To Deliberate/Unanimous Verdict ...................................................................... 86

Selection of Foreperson ............................................................................................... 87

Special Verdict.............................................................................................................. 87

Return of Verdict .......................................................................................................... 87

Communications Between Court and Jury ................................................................... 88

Juror Oath ..................................................................................................................... 88

## I.      **INTRODUCTION**

Members of the jury, we have now reached that point in the trial where you are about to enter your final function as jurors which, as you all appreciate, is one of the most important duties of citizenship in this country.  You all have given very careful attention to the evidence, and I am confident you will act together with fairness and impartiality and reach a just verdict in this case.

First, I will describe the law to be applied to the facts as <u>you</u> find them to be established by the proof. Second, I will instruct you about the trial process, including the burden of proof. Third, I will give you instructions concerning evaluation of the evidence. The fourth and fifth sections of these instructions will relate to your deliberations.

## II.     **THE LAW**

The law that governs this case has several facets. In an effort to assist you, your verdict in this case will be in the form of a series of questions to be answered by you in the jury room, principally by "Yes" or "No" answers.  My law clerk will distribute this Special Verdict form to you now with the thought that it may help you to follow the instructions I am about to give you.

**[NEED FORM]**

There are two sets of claims in this case. The first set is brought by plaintiffs who I will refer to as the "Pure Power Plaintiffs" against the defendants who I will refer to as the "Warrior Fitness Defendants."  There is a second set of claims brought by the Warrior Fitness defendants against the Pure Power Plaintiffs.

I will describe to you first the set of claims brought by Pure Power against Warrior Fitness.  Then I will describe the claims brought by Warrior Fitness against Pure Power.

- 1 -

<u>Pure Power's Claims Against Warrior Fitness Defendants</u>

<u>Breach of Contract Against Fell and Bellard</u>

To prevail on a breach of contract claim under New York law, a plaintiff must prove: (1) the existence of a valid contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages.

Advanced *Mktg. Group, Inc. v. Bus. Payment Sys., LLC*, 300 Fed. Appx. 48, 79 (2d Cir. 2008); *Terwillinger v. Terwillinger*, 206 F.3d 240, 245-6 (2d Cir. 2004).

Pure Power seeks to recover damages for breach of contract.  Pure Power claims that the Warrior Fitness Defendants Fell and Belliard, breached their employment agreement by: failing to devote their skills and best efforts to Pure Power and by disparaging and undermining the reputation of Pure Power; assisting a competitor of Pure Power while still employed at Pure Power; stealing and then disclosing confidential and commercially sensitive information, by using Pure Power's Intellectual Property (as defined under their employment agreements) in a competing business; competing directly with Pure Power within the length of time specified in their respective employment agreements; and soliciting Pure Power's customers.  Pure Power asserts that employment was extended to Belliard and Fell, and the men were compensated for their employment, based on Belliard and Fell's promise to abide by the polices articulated in the employment agreement each had with Pure Power.

As to each Belliard and Fell, the burden is on Pure Power to prove that each of them signed their respective employment agreements and that the employment of Fell and Belliard was made in reliance on a promise that Belliard and Fell would abide by Pure Power's polices as articulated by their employment agreements.

Adapted from *Brown Bros. Elec. Contractors, Inc. v. Beam Constr. Corp.*, 393 N.Y.S.2d 350, 351 (1977); PJI 4:1.

- 2 -

Defendants assert that the contracts are not enforceable under New York law for a myriad of reasons including the fact that it is overbroad, an illegal restriction on trade, illegally seeks to restrict Belliard from working anywhere in the world for a competing facility for a period of ten years and is not designed to legitimately protect Plaintiffs' purported business interests.  The non-compete also fails for lack of consideration and because Belliard was terminated when he attempted to resign.  Defendants also assert that Fell did not sign a non-compete.  ***PLAINTIFFS DISPUTE THIS PARAGRAPH AS THE ENFORCEABILITY OF THE CONTRACT AND BLUE PENCILING IS AN ISSUE FOR THE COURT, NOT THE JURY AND THE FACTS ARE MISSTATED***

In order to find a breach of a covenant not to compete in a contract the covenant must be reasonable in scope and duration as to which I will instruct you further . You must weigh the need to protect the Pure Power's legitimate business interests against the employees' concern regarding the possible loss of livelihood,  Under New York law, an employee's noncompete covenant must be "reasonable in time and geographic scope" and can only be enforced to the extent necessary (1) to prevent an employee's solicitation or disclosure of trade secrets, (2) to prevent an employee's release of confidential information regarding the employer's customers, or (3) in those cases where the employee's services to the employer are deemed special or unique. *Estee Lauder Companies v. Batra*, 430 F.Supp.2d 158, 177 (S.D.N.V. 2006) (*citing Ticor Title Insurance Co. v. Cohen*, 173 F..3d 63, 70 (2d Cir. 1999); *Purchasing Assocs·, v Weitz*, 13 N.Y.2d 267, 272-73 (1963)) (*citing Purchasing Assocs. v. Weitz*, 13 N.Y.2d 267, 272"73, 246 N.Y.S.2d 600 (1963)). ***INSERTED LANGUAGE NOT AGREED TO BY DEFENDANTS***

In addition, restrictive covenants that prohibit employees from obtaining employment in a vocation of their choosing are disfavored under New York law, and are enforced only to the extent necessary to protect the disclosure of any trade secrets. *See, e.g., Primo Enters. v. Bachner*, 148 A.D.2d 350, 351, 59 N.Y.S.2d 320, 321 (1st Dep't 1989).

I instruct you that the duration of the covenants not to compete contained in the employment agreements at issue are too long. Accordingly, I instruct you that as a matter of law I have reduced the duration to three years [Defendants proposed charge that says that the restrictive covenant is not enforceable as it is too broad in duration and geographic scope and should be blue penciled to a duration of _____ years.] Both parties join in the request to the Court that this issue be resolved by the Court prior to the time the jury is charged.

<u>Damages</u>

My charge to you on the law of damages must not be taken as an intimation that you should decide for Plaintiffs. It is for you to decide on the evidence presented and the rules of law I have given you whether Plaintiffs are entitled to recover from Belliard and Fell for a breach of contract. If you decide Plaintiffs are not entitled to recover, or that the alleged contracts are not enforceable or lacked adequate consideration, your verdict will be for Belliard and Fell and you need go no further. Only if you decide that Plaintiffs are entitled to recover will you consider the measure of damages. ***PLAINTIFFS DO NOT AGREE TO THE HIGHLIGHTED LANGUAGE***

A proper measure of damages for breaching of a covenant not to compete is the net profit which a plaintiff was deprived of by reason of a defendant's improper competition with a plaintiffs.

NY1 488268v1 12/22/10

If you find that Plaintiffs have not lost profits or if such claims of lost profits are based upon undue speculation, you should not award damages to Plaintiffs.

*Earth Alterations, LLC v. Farrel*, 800 N.Y.S.2d 744, 745 (2d Dep't 2005); *World Auto Parts, Inc. v Labenski*, 689 N.Y.S.2d 582, 583 (4th Dep't 1999); *Pencom Sys., Inc. v. Shaprio*, 598 N.Y.S.2d 212, 212 (1st Dep't 1993).

The proper measure for damages for breaching a nondisclosure agreement and non-solicitation agreement is "the amount that will place the nonbreaching party in the same position as if the contract had been fully performed, provided that the parties could, when they entered into the contract, have foreseen that such damages would probably result if the contract was breached."

*Cargill v. Sears Petroleum & Transport Co.*, 388 F. Supp. 2d 37, 71 (N.D.N.Y. 2005), *appeal dismissed by* 163 Fed.Appx. 894 (Fed. Cir. Jan 17, 2006).

You may also award restitution damages for Defendants' violation of their non-disclosure agreement—meaning you can award damages to compensate Plaintiffs for Defendants' exploitation of their confidential information.

*Cargill v. Sears Petroleum & Transport Co.*, 388 F. Supp. 2d 37, 71 (N.D.N.Y. 2005); *Y.J.D. Rest. Supply Co. v. DIB*, 98 Misc. 2d 462, 464, 413 N.Y.S.2d 835, 836 (N.Y. Sup. Ct. 1979).


## Breach of the Common Law Duty of Loyalty against Bellard, Fell, Lee and Baynard

Pure Power, claims that the defendants, Belliard and Fell, breached their duty of loyalty to Pure Power. An employee has a duty to his employer to act in good faith and in the employer's best interests during his period of employment. A fiduciary owes his employer undivided and unqualified loyalty and may not act in any manner contrary to the interests of the employer.

Adapted from *Am. Bldg. Main. Co. of N.Y. v. Acme Prop. Services*, 515 F. Supp. 2d 298, 312 (N.D.N.Y. 2007) quoting *Phansalkar v. Anderson Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003) quoting *W. Elec. Co. v. Brenner*, 41 N.Y.2d 291, 295 (1977); PJI 3:59.

A person acting in a fiduciary capacity is required to make truthful and complete disclosures to those to whom a fiduciary duty is owed and the fiduciary is forbidden to obtain an improper advantage at the other's expense.

Adapted from *Sokoloff v. Harriman Estates Devlp.*, 96 N.Y.2d 409, 416 (2001); *Brenmer Indus., Inc. v. Hattie Carnegie Jewelry Enter., Ltd.*, 71 A.D.2d 597, 597 (1st Dep't 1979); PJI 3:59.

This requires that, while employed, the employee must exert his best efforts on behalf of the company and not compete with it or profit at its expense, or place his private interests in conflict with its interests. An employee does not breach his fiduciary duties by telling clients that he is thinking of leaving and going to a new business. Although an employee may make preparations to compete with his employer while still working for the employer, he may not do so at his employer's expense and may not use his employer's resources, time, facilities, or confidential information. Whether or not the employee has signed an agreement not to compete with the employer, the employee may not, while still employed, solicit clients of his employer to follow him, may not copy his employer's business records for his own use, may not charge expenses to his employer which were incurred while acting on behalf of his own interest, and may not actively divert the employer's business for his own personal benefit or the benefit of others.

Adapted from *Ashaland Mgmt. Incorp. v. Altair Invs. NA*, 869 N.Y.D.2d 465, 473 (1st Dep't 2008); *Calspan Corp. v. Piech,* 458 N.Y.S.2d 211, 213 (4th Dep't 1982); PJI 3:59.

Pure Power claims that defendants, Belliard and Fell, did not act in good faith or in the best interests of Pure Power when each: failed to devote their skills and best efforts to Pure Power and by disparaging and undermining the reputation and facilities of Pure Power; secretly soliciting Pure Power's clients for Warrior Fitness's future business while still in Pure Power's

- 6 -

employ and thereafter; misappropriating Pure Power's customer information for competitive use; disclosing confidential and commercially sensitive information, using Pure Power's Intellectual Property; soliciting Pure Power clients and employees; and; competing directly with Pure Power within the length of time specified in their employment agreements.  Pure Power claims that as a result of Belliard and Fell's breach, Pure Power sustained damages.  Belliard and Fell deny breaching their fiduciary duty to Pure Power and claim that Pure Power has proved no damages.

Defendants assert that Plaintiffs' business plan and non-compete agreements did not contain proprietary information and the documents were not ultimately used in the creation of Warrior.  Defendants assert that there is also nothing in these documents which show that they are so special and unique that they qualify as a "trade secret."  Defendants also assert that the information contained in the customer list does not qualify for protection because the contact information for Pure Power's customers can be readily identified.

Defendants assert that neither Fell nor Belliard solicited any of the Plaintiffs' customers and that Plaintiffs cannot introduce any evidence that any of its customers on the Plaintiffs' customer list actually switched from attending Pure Power to Warrior due to wrongful solicitation. .Although Belliard obtained Pure Power's customer list, Defendants did not use Pure Power's customer list and the list is not a trade secret. Plaintiffs cannot introduce any evidence that Defendants ever distributed or disseminated the allegedly misappropriated customer list.

Plaintiffs cannot present any evidence that Defendants prevented Plaintiffs' customers from patronizing and attending Pure Power.  Any customer of Warrior remains fully capable of attending classes at Pure Power as well.  ***PLAINTIFFS DO NOT AGREE TO THE HIGHLIGHTED LANGUAGE.***

Employees owe a fiduciary duty to their employers which prevent them from enriching themselves at the expense of their employer.  If an employee enriches themselves at their employer's expense, the employee has breached their duty of loyalty to their employer.

*Freedom Call Foundation v.* Bukstel, 2006 WL 845509, at *17 (E.D.N.Y. Mar. 3, 2006); *Alpine Group, Inc. v. Johnson*, 2002 WL 10495, at *3 (S.D.N.Y. Jan 3, 2002); *Sadowy v. Sony*, 496 F. Supp 1071, 1080 (S.D.N.Y. 1980).

In New York, it is well established that a former employee is "'not free to exploit the same trade if the opportunity was facilitated by acts of preparing and disloyalty during his employment' and before his termination and 'by the breach of his obligation to use his best efforts in the interest of the employer.'"  Such acts constitute a breach of fiduciary duty.

*Freedom Call Foundation v.* Bukstel, 2006 WL 845509, at *17 (E.D.N.Y. Mar. 3, 2006) *citing AGA Aktiebolag v. ABA Optical Corp.*, 441 F.Supp. 747, 754 (E.D.N.Y. 1977); *see also Ashland Mgmt. Incorp. v. Altair Investments NA*, 59 A.D.3d 97, 107 (1st Dep't 2008); *Nutronics Imaging, Inc. v. Danan*, 1998 WL 426570, at *2 (E.D.N.Y. Jun 10, 1998); *Q-Co. Indus., Inc. v. Hoffman*, 625 F.Supp. 608, 617 (S.D.N.Y. Dec. 24, 1985).

When a person disparages a business while under a duty to act for its benefit, that person has breached its fiduciary duty to that business.

*Mandelblatt v. Devon Stories, Inc.*, 132 A.D.2d 162, 167-8 (1st Dep't 1987) (company stated a claim for breach of fiduciary duty against former consultant that disparaged its subsidiary while employed by the company).

Even in the absence of a contract not to solicit an employer's clients, an employee is not entitled to solicit customers by fraudulent means, by use of trade secrets or confidential information.

*Reed, Roberts Assoc. v. Strauman*, 40 N.Y.2d 303, 306-308, (1976), *rearg. denied* 389 N.Y.S.2d 1027 (1976); *Support Sys. Assocs., Inc. v Tavolacci*, 522 N.Y.S.2d 604, 706-7 (2d Dep't 1987); Restatement (First) of Torts § 757, cmt. b (1939).

If you find that Belliard and Fell, did not breach their fiduciary duty to Pure Power, you need proceed no further.

If you find that Belliard and Fell did breach their fiduciary duty to Pure Power, you must then decide whether each man's breach was a substantial factor in causing Pure Power to sustain damages.  If you find that it was not a substantial factor in causing Pure Power to sustain damages, you need proceed no further.  If you find that Belliard and Fell's breach was a substantial factor in causing Pure Power to sustain damages, you must then decide the amount of damages Pure Power sustained.

<u>Damages</u>

As already instructed, if you find that Belliard and Fell breached a fiduciary duty, and that breach was a substantial factor in causing Pure Power to sustain damages, you will award Pure Power such an amount as you find to be the actual damages sustained for compensation and expenses that Pure Power paid to Belliard and Fell during the period of their disloyalty and either profits that Warrior Fitness obtained or Pure Power's lost profits, loss of business.

PJI 3:59 (modified); *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 300 (2d Cir. 2006); *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 205 (2d Cir. 2003), *Lamdin v. Broadway Surface Advertising Corp.*, 272 N.Y. 133, 137 (1936); *Henderson v. Rep. Tech., Inc.*, 557 N.Y.S.2d 224, 225 (4th Dep't 1990); *TPL Assocs. v. Helmsley-Spear, Inc.*, 536 N.Y.S.2d 754, 757 (1st Dep't 1989).

For breaches of fiduciary duty which are unrelated to breaches of the restrictive covenant, it is the employer's choice to calculate damages either by an accounting of the disloyal employee's gain or a calculation of what the employer would have made had the employee not breached his duty of loyalty.

*Western Elec. Co. v. Brenner*, 392 N.Y.S.2d 409, 412 (1977), citing Restatement, Agency 2d, § 421A, Comment on Clause [c]; *Gomez v. Bicknell*, 756 N.Y.S.2d 209, 214 (2d Dep't 2002) (distinguishing measure of damages for breach of covenant not to compete where employer must prove its own loss of profits).

<u>Aiding and Abetting Breach of Loyalty</u>

NY1 488268v1 12/22/10

Pure Power also alleges that Lee and/or Baynard aided and abetted Belliard and/or Fell in breaching their duty of loyalty owed to Pure Power.  In order to find that Lee and/or Baynard aided and abetted Bellaird and/or Fell, you must first find that Belliard and/or Fell owed and breached a duty of loyalty to Pure Power.  If you do not find that Fell and/or Belliard breached any duty to Pure Power, you need proceed no further.  If you find that there was a breach of duty, you must then decide whether Lee and/or Baynard knew that Belliard and Fell had a fiduciary obligation to Pure Power.  Pure Power is not required to show that either Lee or Baynard intended harm,.  The second element is "that the defendant knowingly induced or participated in the breach"; and the third element is "that plaintiff suffered damage as a result of the breach." *In re Sharp Intern. Corp.*,  403 F.3d at 49 -50; *Kaufman,* 307 A.D.2d at 125, 760 N.Y.S.2d 157; *Wight v. BankAmerica Corp.,* 219 F.3d 79, 91 (2d Cir.2000); *S & K Sales Co. v. Nike, Inc.,* 816 F.2d 843, 847-48 (2d Cir.1987); *Whitney v. Citibank, N.A.,* 782 F.2d 1106, 1115 (2d Cir.1986). If you find that neither Lee nor Baynard had any knowledge of a duty owed to Pure Power you need proceed no further.  If you find that Lee and/or Baynard knew that Belliard and/or Fell should not have engaged in the conduct that constituted the breach, you must determine whether Lee and/or Baynard knowingly induced or participated in the breach.  If Lee or Baynard either induced Bellaird and Fell to breach their duty to Pure Power or knowingly participated in such breach—then you must find for Pure Power.

A person induces a breach if they entice or persuade another person to commit the breach.

A person knowingly participates in a breach of fiduciary duty when she provides "substantial assistance" to the primary violator.  Substantial assistance is found when someone affirmatively assists or helps conceal a breach fiduciary duty.

*Adapted from Sharp Intn'l v. Corp v. State St. Bank & Trust Co.*, 403 F.3d 43, 49-51 (2d Cir. 2005); *Monaghan v. Ford Motor Co.*, 897 N.Y.S.2d 482, 485 (2d Dep't 2010); *Kaufman v. Cohen*, 125, 760 N.Y.S.2d 157, 169 (1st Dep't 2003).

<u>Examples of Breach of Loyalty</u>

Employees owe a fiduciary duty to their employers which prevent them from enriching themselves at the expense of their employer. If an employee enriches themselves at their employer's expense, the employee has breached their duty of loyalty to their employer.

*Freedom Call Foundation v. Bukstel*, 2006 WL 845509, at *17 (E.D.N.Y. Mar. 3, 2006); *Alpine Group, Inc. v. Johnson*, 2002 WL 10495, at *3 (S.D.N.Y. Jan 3, 2002); *Sadowy v. Sony*, 496 F. Supp 1071, 1080 (S.D.N.Y. 1980).

In New York, it is well established that a former employee is "'not free to exploit the same trade if the opportunity was facilitated by acts of preparing and disloyalty during his employment' and before his termination and 'by the breach of his obligation to use his best efforts in the interest of the employer.'" Such acts constitute a breach of fiduciary duty.

*Freedom Call Foundation v. Bukstel*, 2006 WL 845509, at *17 (E.D.N.Y. Mar. 3, 2006) *citing AGA Aktiebolag v. ABA Optical Corp.*, 441 F.Supp. 747, 754 (E.D.N.Y. 1977); *see also Ashland Mgmt. Incorp. v. Altair Investments NA*, 59 A.D.3d 97, 107 (1st Dep't 2008); *Nutronics Imaging, Inc. v. Danan*, 1998 WL 426570, at *2 (E.D.N.Y. Jun 10, 1998); *Q-Co. Indus., Inc. v. Hoffman*, 625 F.Supp. 608, 617 (S.D.N.Y. Dec. 24, 1985).

When a person disparages a business while under a duty to act for its benefit, that person has breached its fiduciary duty to that business.

*Mandelblatt v. Devon Stories, Inc.*, 132 A.D.2d 162, 167-8 (1st Dep't 1987) (company stated a claim for breach of fiduciary duty against former consultant that disparaged its subsidiary while employed by the company).

Even in the absence of a contract not to solicit an employer's clients, an employee is not entitled to solicit customers by fraudulent means, by use of trade secrets or confidential information.

- 11 -

*Reed, Roberts Assoc. v. Strauman*, 40 N.Y.2d 303, 306-308, (1976), *rearg. denied* 389 N.Y.S.2d 1027 (1976); *Support Sys. Assocs., Inc. v Tavolacci*, 522 N.Y.S.2d 604, 706-7 (2d Dep't 1987); Restatement (First) of Torts § 757, cmt. b (1939).  ***DEFENDANTS DO NOT AGREE WITH THE HIGHLIGHTED LANGUAGE.***

<u>Damages for Breach of Loyalty</u>

My charge to you on the law of damages must not be taken as an intimation that you should decide for Plaintiffs.  It is for you to decide on the evidence presented and the rules of law I have given you whether Plaintiffs are entitled to recover from Belliard and/or Fell.  If you decide Plaintiffs are not entitled to recover, your verdict will be for Belliard and/or Fell and you need go no further.  Only if you decide that Plaintiffs are entitled to recover will you consider the measure of damages.  A proper measure of damages for breaching of a covenant not to compete is the net profit which a plaintiff was deprived of by reason of a defendant's improper competition with a plaintiffs.

*Earth Alterations, LLC v. Farrel*, 800 N.Y.S.2d 744, 745 (2d Dep't 2005); *World Auto Parts, Inc. v Labenski*, 689 N.Y.S.2d 582, 583 (4th Dep't 1999); *Pencom Sys., Inc. v. Shaprio*, 598 N.Y.S.2d 212, 212 (1st Dep't 1993).

For breaches of fiduciary duty that are unrelated to breaches of a restrictive covenant, it is the employer's choice to calculate damages either by an accounting of the disloyal employee's gain or a calculation of what the employer would have made had the employee not breached his duty of loyalty.

*Western Elec. Co. v. Brenner*, 392 N.Y.S.2d 409, 412 (1977), citing Restatement, Agency 2d, § 421A, Comment on Clause [c]; *Gomez v. Bicknell*, 756 N.Y.S.2d 209, 214 (2d Dep't 2002) (distinguishing measure of damages for breach of covenant not to compete where employer must prove its own loss of profits).

Damages for breach of an employee's fiduciary duty also include compensation and expenses that an employer paid to the defendant during the period of the disloyalty and breach as

- 12 -

well as profits that defendant obtained.  However the employer is not entitled to repayment of

compensation during periods of loyalty.

*Design Strategy, Inc. v. Davis*, 469 F.3d 284, 300 (2d Cir. 2006); *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 205 (2d Cir. 2003); *Lamdin v. Broadway Surface Adver. Corp.*, 272 N.Y. 133, 137 (1936); *Henderson v. Rep. Tech., Inc.*, 557 N.Y.S.2d 224, 225 (4th Dep't 1990); *TPL Assocs. v. Helmsley-Spear, Inc.*, 536 N.Y.S.2d 754, 757 (1st Dep't 1989).

Punitive Damages for Breach of Loyalty

Employees can be liable for punitive damages relating to their breach of duty by as a

result of their "diversion of assets to a secretly created competitive organization."

*Wrap-n-Pack, Inc. v. Kaye*, 528 F. Supp. 2d 119, 126 (E.D.N.Y. 2007) quoting *Don Buchwald & assoc., Inc. v. Rich*, 723 N.Y.S.2d 8, 8 (1st Dep't 2001).

"Putative damages are allowable in tort cases such as this breach of fiduciary duty so

long as the very high threshold of moral culpability is satisfied."

*Id.* (internal quotations omitted); *Paz Systems, Inc. v. Dakota Group Corp.*, 514 F.Supp.2d 402, 410 (E.D.N.Y. 2007). ***PLAINTIFFS DISPUTE THE HIGHLIGHTED LANGUAGE.***

In addition to actual damages as we just discussed, the law permits the jury under certain

circumstances to award a plaintiff punitive or exemplary damages in order to deter a defendant

and others from breaching their duty of loyalty.  In order to award such punitive damages, you

must find from a preponderance of the evidence that defendants' conduct in breaching their duty

was willful and deliberate.

An act is willfully done if it is done knowingly, voluntarily and intentionally, and not

because of mistake or accident.

If you find that defendants' breaches of loyalty were willful, you may award, if you deem

it proper to do so, such sum as you deem appropriate.  You must keep in mind that the purpose of

awarding punitive or exemplary damages is not as compensation to plaintiff for wrong done, but

to punish a wrongdoer for some extraordinary conduct and to serve as an example or warning to others not to engage in such conduct.  You also may award punitive damages against certain defendants and not all defendants if you find that the conduct of certain defendants was willful and the conduct of others was not willful.  Defendants assert that in light of Plaintiffs' bad faith and wrongful acts in violating federal law by stealing 546 of Defendants' emails, forging Fell's signature to his alleged non-compete agreement, committing trespass, sending spies to Warrior, and menacing Defendants' business by making false reports concerning drug activity at Warrior, advertising for Pure Power outside of Warrior's facility, and attempting to make false reports concerning Warrior's facility with the Department of Buildings, Plaintiffs have no basis to seek punitive damages.*PLAINTIFFS DISPUTE THE HIGHLIGHTED LANGUAGE*

## Unjust Enrichment against All Defendants

When a person has obtained money or property from another under such circumstances that in good conscience it should not be retained, the law imposes a duty to repay or return it.

. The Plaintiffs claim that they expended a significant amount of money in developing the business materials, concepts and/or proprietary information stolen from for Pure Power. The Plaintiffs claim that the Defendants misappropriated these business materials and concepts and/or proprietary information from Pure Power without the Plaintiffs' authorization and without compensating Plaintiffs.

However, Defendants assert that the business plan and non-compete agreements did not contain proprietary information and the documents were not ultimately used in the creation of Warrior.  There is also nothing in these documents which show that they are so special and unique that they qualify as a "trade secret." The information contained in the customer list does

- 14 -

not qualify for protection because the contact information for Pure Power's customers can be readily identified. ***PLAINTIFFS DISPUTE THE HIGHLIGHTED LANGUAGE.***

The Plaintiffs have the burden of proving the facts on which they base their claims. If you find that the Defendants were enriched by misappropriating Plaintiffs' business materials, concepts and/or proprietary information from Pure Power, you must decide for Plaintiffs.

If you find that the Defendants did not misappropriate Plaintiffs' business materials, concepts and/or proprietary information then you must decide for the Defendants.

A claim for unjust enrichment will not stand where there exists available contractual remedies based upon an allegedly explicit contract. *Apfel v. Prudential-Bache Sec., Inc.*, 81 N.Y.2d 470, 616 N.E.2d 1095, 600 N.Y.S.2d 433 (N.Y. 1993). Thus, if you find that Defendants are liable for breach of contract you cannot also find that defendants are liable for unjust enrichment for the same acts that also constitute a breach of contract. You may find that the Defendants have been unjustly enriched by wrongful acts that do not constitute breach of contract.

If you decide for Plaintiffs, the amount that they can recover depends on the blameworthiness of the Defendants' conduct. As a general rule, a conscious wrongdoer, or someone who takes action despite a known risk that their conduct could be violating the rights of the owner, will be required to disgorge all of their gains. This includes gains that are not a direct result of the initial act of misappropriation but rather a consequence of the misappropriation.

On the other hand, should you find that the Defendants conduct was innocent or merely negligent; they will only be liable for the direct benefit they received from their wrongful conduct. A direct benefit may be measured, where such a measurement is available and appropriate.

- 15 -

Adapted from PJI 4:2; Restatement (Third) of Restitution and Unjust Enrichment § 43 (2010).

Common Law Unfair Competition Against All Defendants

Plaintiffs have also brought unfair competition claims against the Defendants. The essence of a claim for unfair competition is the misappropriation of a commercial advantage belonging to another. Central to this cause of action is that Defendants acted in bad faith. Bad faith is a term used by lawyers that requires more than bad judgment or negligence. It requires a person to consciously commit a wrong because of a dishonest purpose; stated differently a person must have done something "underhandedly" or with "ill will".[1]

While relief from the infringement of a trademark or trade name does not require a showing that Defendants acted with fraudulent intent to compete unfairly, the question of the Defendants' intent becomes important where, as an alternative to showing confusion or a likelihood of confusion, Plaintiffs seek to instead show that Defendants' use of Pure Power's word, feature, or symbol was with the wrongful intent to capitalize on the goodwill and business established by Pure Power.

To determine whether Defendants acted unfairly to capitalize on good will and business established by Pure Power, you may examine whether the Defendants committed voluntary wrongful acts—actual confusion or deception does not need to be shown. Rather, the inquiry would be whether or not the imitation was calculated to deceive or confuse – not whether actual confusion resulted from Defendants' actions. Therefore, if you find that Defendants acted wrongful in an attempt to confuse the public, by capitalizing on the good will and business of Pure Power, then you must rule for Pure Power. If you do not find this, you must then consider the second scenario that I am about to explain.

---

[1] Adapted from *Black's Law Dictionary* (5th ed., West 1983).

- 16 -

If you determine that Plaintiffs' demonstrated that Defendants likely caused confusion between Pure Power and Warrior Fitness, or that the two facilities could be mistaken for each other, then you must rule for Plaintiffs.

In this case Plaintiffs claim that Defendants acted with bad faith when they spoke badly about Pure Power to clients, damaged the Pure Power facility, misappropriated both the labors and expenditures of Pure Power, as well as Pure Power's concepts, Trade Dress and other proprietary information.  Plaintiffs also claim that Defendants' acts have caused confusion to the public and/or deceived prospective Pure Power clients in regards to the origin of Warrior Fitness, and that such confusion has harmed Pure Power.

On the other hand, Defendants claim that Warrior Fitness does not emulate Pure Power in any way that can cause confusion, that there is no likelihood of or actual confusion, that it is not an indoor obstacle and confidence course based a marine design but instead is a boot-camp styled gym, modeled after the experiences that Belliard and Fell had during their time as Marines.  The Defendants further assert that Warrior Fitness has different equipment and teaching styles as compared to that of Pure Power.  Defendants also assert that the name "Warrior Fitness" was chosen because Belliard and Fell own the gym are both "warriors" as former marines.  In addition, Defendants assert that Plaintiffs do not have protectable trade dress. Plaintiffs copied their allegedly unique concept, design, and layout directly from the United States military and Plaintiffs have already conceded that they cannot stop Defendants from operating their own boot camp gym.  Plaintiffs' purported trade dress is also not consistent among its facilities ***PLAINTIFFS DISPUTE THE HIGHLIGHTED LANGUAGE.***.

It is up to you to decide whether the acts complained of are fair or unfair by analyzing all the facts and testimony presented to you during the course of this trial, as well as the law I just

provided to you.  Testimony and facts you should consider when making your determination include the character and circumstances of the businesses and the nature of the alleged unfair practices.

N.Y. Jur. 2d *Trade Regulation* §§ 196, 198 (2010) (modified).

Conduct of the Defendants

The Court assumes that everyone must be understood to have intended the consequences of his or her own deliberate acts, and the intent to deceive can be inferred from all of the circumstances surrounding the use of a trade name or trade dress which it finds to be confusingly similar to one already established.

N.Y. Jur. 2d *Trade Regulation* § 198 (2010) (modified).

Standard for Confusion

When determining whether Warrior Fitness caused market confusion, you must determine whether the similarities between Warrior Fitness and Pure Power would mislead the ordinary observer.  This does not mean that you find for Warrior Fitness if an ordinary observer could point out the differences between it and Pure Power when examining the facilities in a side by side comparison.  Because people who purchase gym memberships must rely upon their memory when selecting a gym, they are unable to compare gyms in a side by side fashion like one could with a product on a supermarket shelf.  Therefore, if you find that a person — relying on their memory — could confuse the two facilities, then you must rule in favor of Pure Power.

R. Callmann on Unfair Competition, Trademarks, and Monopolies §21:15 (Westlaw) (4th ed. 2010); *Gotham Silk Hosiery v. Reingold*, 210 N.Y.S. 38, 39 (1st Dep't 1925).  ***DEFENDANTS DISPUTE THE HIGHLIGHTED LANGUAGE.***

Damages

The measure of damages in a case of unfair competition is the amount which the Plaintiff would have made <u>but for</u> the defendant's wrong, and not the profits received by the defendants.

- 18 -

*Suburban Graphics Supply Corp v. Nagle*, 5 AD.3d 663, 774 N.Y.S.2d 160,163-64 (2d Dep't

20(4) (citing Michel Cosmetics v. 'I\'irkas, 282 N.Y. 195,200, 6 N.E.2d 16; *McRoberts Protective*

*Agency v. Lansdell Protective Agency*, 61 A.D.2d 652, 655,403 N.Y.S.2d 511; *Bruno Co. v.*

*Friedberg*, 21 A.D.2d 336, 341,250 N.Y.S.2d 187) (emphasis added). .

Future lost profits can also be awarded, using approximation, but only if you can make

such an approximation on reliable factors and not do so by unduly speculating.  You should not

consider the profits received by the defendant when awarding damages for common law unfair

competition.

Adapted from *Suburban Graphics Supply Corp. v. Nagle*, 744 N.Y.S.2d 160, 163 (2d Dep't
2004).

Punitive Damages for Breach for Unfair Competition Claims

Punitive damages are also available for unfair competition claims. In order to award

punitive damages you must find that Defendants' conduct "constituted gross, wanton or willful

fraud or other morally culpable conduct to an extreme degree."

*Getty Petroleum Corp. v. Island Transp.*, 878 F.2d 650, 657 (2d Cir. 1989) *cert. denied*, 490 U.S.
1006 (1989) (internal quotations and citations omitted).

Defendants assert that in light of Plaintiffs' bad faith and wrongful acts in  violating

federal law by stealing 546 of Defendants' emails, forging Fell's signature to his alleged non-

compete agreement, committing trespass, sending spies to Warrior, and menacing Defendants'

business by making false reports concerning drug activity at Warrior, advertising for Pure Power

outside of Warrior's facility, and attempting to make false reports concerning Warrior's facility

with the Department of Buildings, Plaintiffs have no basis to seek punitive damages.

***PLAINTIFFS DISPUTE THE HIGHLIGHTED LANGUAGE.***

Statutory Trade Dress Infringement Against all Defendants, Including Claims Under GBL §360,

Another of Pure Power's claims in this case can be classified generally as a trade dress infringement claim. This claim is asserted based on the Federal Statute called the Lanham Act, and is also part of Pure Power's Unjust Enrichment, Common Law Unfair Competition and Violation of GBL § 360, et. seq. claims. The elements of those claims as they relate to trade dress are essentially the same as under the federal statute so I address all trade dress claims together but I will point out the differences between them.

Trade dress refers to the total image, design, appearance or look of a product, package or even a place of business. Trade dress may include features such as the size, shape, color, texture and graphics, artifacts and other elements of decoration, colors, floor plan, and particular sales techniques. It is the non-functional physical detail and design of the trade dress at issue indicating or identifying the source of the product or service and distinguishing it from those of others.

It is settled law that restaurants, pool halls, wine stores, billiard parlors, gas stations and other kinds of establishments may have a total visual appearance that constitutes protectable trade dress. This includes features such as décor, menu, layout, style of service, equipment used, servers' uniforms and other features reflecting by total image of the establishment.

Adapted from *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992); *Merriam-Webster, Inc. v. Random House, Inc.*, 35 F.3d 65, 70 (2d Cir. 1994), *cert. denied,* 115 S. Ct. 1252 (1995); *Stormy Clime Ltd. v. Progroup, Inc.*, 809 F.2d 971, 974 (2d Cir. 1987); *LeSportsac, Inc. v. Kmart Corp.*, 754 F.2d 71, 75 (2d Cir. 1985); *Fuddruckers, Inc. v. Doc.'s B.R. Others, Inc.*, 826 F. 2d 837, 841 (9th Cir. 2001); *Best Cellars Inc. v. Grape Finds At Dupont, Inc.*, 90 F.Supp. 2d 431 (S.D.N.Y. 2000); *Clicks Billiards, Inc. v Six Shooters*, 251 F.3d 1252 (9th Cir. 2001); *Esso Standard Oil Co. v. Bazerman et al.*, 99 F. Supp. 983 (E.D.N.Y., 1951). ***DEFENDANTS DISPUTE THE HIGHLIGHTED LANGUAGE.***

Pure Power's trade dress claim is that the overall appearance of the interior of its facility having the combination of features enumerated on is protectable. Pure Power's trade dress is registered with the United States Patent and Trademark Office, under Registration No. 3580542.

- 20 -

I instruct you that the trade dress of Pure Power's facility may be protected only if the overall appearance of the Pure Power facility having this combination of features is protectable.  That depends, under Federal law, on whether the trade dress is inherently distinctive or if it has acquired a secondary meaning in the marketplace.

Adapted from *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763 (1992); *Knitwaves, Inc. v. Lollytogs Ltd.,* 71 F.3d 996 (2d Cir. 1995); *Merriam-Webster, Inc. v. Random House, Inc.,* 35 F.3d 65, 70 (2d Cir. 1994), *cert. denied,* 115 S. Ct. 1252 (1995).

### False Designation of Origin Claim

Under the Federal statutory trade dress claim any person who makes commercial use of any word, term name or symbol or combination thereof (i.e., trade dress), or any false designation of origin, or false or misleading description of fact which is likely to cause confusion or to deceive as to the origin, affiliation, connection or association with another person or as to the origin, sponsorship or approval of his commercial activities by another person, is liable to any person who is or is likely to be damaged by the use of the trade dress, false designation of origin or false description.

### Trade Dress Infringement – Elements of Proof

Under Pure Power's trade dress Federal claims, Pure Power has the burden of proving each of the following by a preponderance of the evidence:

1.      Pure Power began to use its claimed trade dress prior to defendant's use of its trade dress;

2.      Defendant began to use its trade dress in an area where Pure Power was offering its services;

3.      Defendant's use of its trade dress was without the consent of Pure Power;

- 21 -

4.      Pure Power's trade dress is non-functional;

5.      Pure Power's trade dress is inherently distinctive or has acquired secondary meaning.

6.      Defendant's trade dress is likely to cause confusion among ordinary purchasers as to the source of Pure Power's and defendant's services.

I instruct you that Pure Power is the owner of U.S. Trademark Registration No. 3,508,542 which is a registration for its trade dress . As a matter of law, the registration is prima facie evidence of the validity of the trade dress as a trademark and of Pure Power's exclusive right to use that trade dress.

## Unfair Competition

Plaintiff's New York state unfair competition claim is based on the alleged likely confusion generated in the marketplace by consumers of defendant's services believing that they are being provided by Pure Power or sponsored or approved by Pure Power.

The law of unfair competition serves to protect the public from being misled as to the nature, quality and source of the services they buy, and also protects the property rights of a business to identify itself and its services to the public. The essence of the wrong consists of the sale of the services of one vendor for those of another. Therefore if you find that the defendants committed trade dress infringement you must find that they engaged in unfair competition with Pure Power.

*Hanover Star Milling Co v. D.D. Metcalf*, 2400 S. 403, 412-413 (1916); *American Footwear Corp. v. General Footwear Co.*, 609 F.2d 655, 664 (2d. Cir. 1979).

Functionality

Trade dress protection extends only to design features that are not functional; functional features are those that are essential to the use or purpose or an article of place of business.

*Qualitiex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 165 (1995); *Inwood Laboratories, Inc. v. Ives Laboratory, Inc.*, 456 U.S. 844, 850 (1982).

The fact that individual elements of the trade dress are functional, however, does not necessarily mean that the trade dress as a whole is functional; rather functional elements that are separately unprotectable can be protected together as part of a trade dress.

*Le Sportsac, Inc. v. K. Mart Corp.*, 754 F.2d 71, 76 (2d Cir. 1985).

Therefore, the focus is not on the individual elements, but rather on the overall visual impression that the combination and arrangement of these elements create.

*Click Billiards, Inc. v. Six Shooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001).


Inherent Distinctiveness

In determining whether the trade dress of Pure Power's facility is protectable, you should first consider whether the trade dress is inherently distinctive. A trade dress is inherently distinctive if the overall design, having this combination of features, is such that customers and prospective customers who might use such a facility are likely to regard that appearance as indicating primarily that the services provided in a facility having the appearance are provided by a particular source, even without regard to whether that design has been advertised or otherwise associated with a particular company through the manner in which it has been presented to the marketplace. This is to be distinguished, for example, from buyers and prospective buyers thinking of the appearance as simply a style of exercise facility that would be provided by a number of different sources.

*Kruger Int'l, Inc. v. Nightingale, Inc.*, 915 F. Supp. 595, 603 (S.D.N.Y. 1996)

In deciding this question, there are a number of factors that you should consider.

First, you should take into account whether the overall appearance of Pure Power's exercise facility having this combination of features, is striking or unusual. If the appearance is striking or unusual, people are more likely to regard it as indicating a facility operated by a particular source than if it is commonplace or an insignificant variation on other designs used by other facilities.

Second, you should consider whether the combination of features of the Pure Power facility is the sort of combination of features that people are likely to regard as indicating that facilities with this appearance are provided by a particular source as opposed, for example, to being part or parcel of a conventional exercise facility.

The third factor you should consider is how likely it is that the primary significance of the combination of features of Pure Power's trade dress that make it unusual, if you think it is unusual, is to identify the source of the services provided in such a facility. In other words, when people look at exercise facilities with the combination of features used in Pure Power's trade dress, are they likely to think that the appearance of the facility, taking into account all of their particular features, primarily indicates that the services provided these come from a particular company? Or, are they likely to regard the design as perhaps desirable, but something that is not uniquely associated with a single source?

If, on considering all of these factors and all of the evidence in this case, you conclude that Pure Power has proved, by a preponderance of the evidence, that the overall appearance of Pure Power's trade dress is such that customers and prospective customers of the facility are likely to regard that appearance as indicating primarily that the services provided there come from a particular source, you will find that Pure Power's trade dress is inherently distinctive, and

- 24 -

therefore are a protectable trade dress. Otherwise, you must go on to consider whether the Pure

Power trade dress has acquired a secondary meaning in the marketplace.

Adapted from *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763 (1992); RESTATEMENT (THIRD)
OF UNFAIR COMPETITION § 13 cmt. e (1995); see *Knitwaves, Inc. v. Lollytogs Ltd.,* 71 F.3d 996 (2d
Cir. 1995); *Duraco Prods. v. Joy Plastic Enter.. Ltd.,* 40 F.3d 1431 (3d Cir. 1994); *Seabrook
Foods. Inc. v. Bar-Well Foods, Ltd.,* 568 F.3d 1342, 1344 (C.C.P.A. 1977).

Secondary Meaning

The expression "secondary meaning" means that the appearance or trade dress of a

commercial establishment such as a restaurant or exercise facility through use, may

come to be uniquely associated with a single source even if the trade dress itself is not

inherently distinctive. In other words, if people seeing a facility with a particular trade dress

would conclude, given not only the appearance, but all of the circumstances relating to the

history of the services provided, that the services came from a particular source, then that trade

dress has which is called secondary meaning. This does not mean that consumers actually must

know the name of the source, but the primary significance of the trade dress must be to identify the

source of the product rather than the product itself.

*Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763 (1992); RESTATEMENT (THIRD) OF
UNFAIR COMPETITION § 13 cmt. e (1995); *Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111,
118 (1938); *815 Tonawanda Steel Corp.v.  Fays Drug Co., Inc.*, 842 F.2d 643, 647 (2d Cir. 1988).

The factors for determining whether Pure Power's trade dress has acquired a secondary

meaning in the marketplace under Federal law are (1) the extent to which Pure Power has

advertised its services, the appearance of its facility, and the manner in which it has done so; (2)

the extent to which Pure Power has been successful in selling its services in such a facility; (3)

the extent and the nature of any unsolicited media coverage focusing on the facilities' distinctive

look; (4) whether and to what extent the Defendants or others attempted to copy Pure Power's

- 25 -

trade dress; and (5) the length of time that Pure Power has used its trade dress and whether its use has been substantially exclusive.

Adapted from *Centaur Comms, Ltd. v. A/S/M Comms, Inc.*, 830 F.2d 1217, 1221-1223, 1225, 1228 (2d Cir. 1987); *Merriam-Webster, Inc. v. Random House, Inc.*, 26 U.S.P.Q.2d 1161 (S.D.N.Y. 1993); Burton, *Jury Instructions In Intellectual Property Cases*, § 30:55:51; *Best Cellars Inc. v. Grape Finds at Dupont, Inc.*, 90 F.Supp. 2d 431, 451 (S.D.N.Y. 2000).

I remind you that no single factor is determinative and every element need not be proved. In essence, you may consider all the evidence which would lead you to believe, or not to believe, that consumers have come to associate the Pure Power trade dress at issue in this case with a single source. If you find that Pure Power has proved by a preponderance of the evidence that its trade dress identifies services that originate with a single source (even if the source name is not known) then secondary meaning has been established.

*George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 23 U.S.P.Q.2d 1351 (2d Cir. 1992); *Thompson Medical Co., Inc. v. Pfizer, Inc.*, 753 F.2d 208, 217 (2d Cir. 1985); Burton, *Jury Instructions In Intellectual Property Cases*, § 30:30:02.

If you find that Defendants deliberately attempted to copy Pure Power's trade dress in order to capitalize on Pure Power's good will, that fact supports a finding that the Pure Power trade dress has acquired secondary meaning.

*Merriam-Webster, Inc. v. Random House, Inc.*, 26 U.S.P.Q. 2d 1161 (S.D.N.Y. 1993); *Centaur Comms Ltd. V. A/S/M Comms, Inc.*, 830 F.2d 1217, 1228 (2d Cir. 1987).

If you find that Pure Power has established by a preponderance of the evidence either that its trade dress is inherently distinctive or that it has acquired a secondary meaning, then you will have found that the Pure Power's trade dress is protectable under Federal law.  If you find instead that Pure Power has failed to establish that the trade dress is protectable because it is neither inherently distinctive nor has it acquired a secondary meaning in the marketplace, then you have found that the trade dress is not protectable under Federal law and you must find for defendants.

- 26 -

<u>Secondary Meaning – New York Law</u>

Under Plaintiffs' New York law of unfair competition, however, Plaintiffs are not required to prove secondary meaning in order to obtain relief from infringing trade dress. *Perfect Fit Indus, Inc. v. Acme Quilting Co., Inc.*, 618 F.2d 950, 952 (2d Cir. 1980); *Florence Mfg. Co. v. J.C. Dowd & Co.*, 178 F. 73, 75 (2d Cir. 1910).

Relief has been granted under New York law to insure that one may not misappropriate the results of the skill, expenditure and labors of a competitor. New York law grants relief on the theory of the misappropriation of a property right or a commercial advantage of another, particularly where the defendant's conduct has involved a clear attempt to profit at the expense of plaintiff. Under New York law such conduct has been deemed to be unfair competition despite the fact that plaintiffs' trademark or trade dress has not acquired secondary meaning. *Flexitized, Inc. v. National Flexitized Corp.*, 335 F.2d 774 (2d Cir. 1964), *cert. denied*, 380 U.S. 913 (1965)

<u>Likelihood of Confusion</u>

If you find that Pure Power's trade dress is protectable under Federal law or New York law then you must consider whether ordinary and prudent consumers were likely to be confused as to the source of Warrior Fitness' services. That is, will such consumers likely be confused into believing that, because of the overall appearance of the Warrior Fitness facility, Warrior Fitness' services were provided, sponsored by, approved or authorized by Pure Power.

<u>Confusion - Factors</u>

There are a number of factors you should consider in making the determination whether there is likely to be confusion as to the origin of the Warrior Fitness' services based on its facilities' appearance.

NY1 488268v1 12/22/10

1.      First, you should consider the distinctiveness or lack of distinctiveness of the Pure Power trade dress that you found protectable and the extent to which Pure Power's services provided in facilities having that trade dress are recognized as coming from a single source.

2.      Second, you should consider any physical similarity between the protectable trade dress of Pure Power and the overall appearance of Warrior Fitness' facility.

3.      The third factor is the proximity or closeness of the services provided by both parties in the marketplace.

4.      The fourth factor is the quality of Pure Power's services.

5.      The fifth factor is whether there is any direct evidence of actual confusion among consumers.

6.      The sixth factor is the level of sophistication of the typical consumer of fitness or exercise training services and whether it was such that the consumers were likely to distinguish between Warrior Fitness' services and Pure Power's services.

7.      A seventh factor that you should consider in determining whether there is likely confusion is whether the Defendants acted in good faith or bad faith in creating and offering its services in its facility.

*Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir.), *cert. denied,* 368 U.S. 820 (1961); *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532 (2d Cir. 1992).

I will now explain each of these factors in greater detail.


Factor No. 1 -- Distinctiveness of the Trade Dress

The first factor I mentioned is the distinctiveness or lack of distinctiveness of the Pure Power's trade dress and, under Federal law, the extent to which Pure Power's services are

associated with a single source based on that trade dress. This means that you can consider, among the other evidence you think relevant, the extent to which people recognize the Pure Power trade dress and associate it with a single source.

If you find that an appreciable number of consumers will associate it with a single source, then this factor weighs in favor of Pure Power. On the other hand, if you find that the Pure Power trade dress is not associated with a single source, then this factor, under Federal law, weighs in favor of the defendants.

Again under New York law this concept of secondary meaning is not applicable.

### Factor No. 2 -- Similarity of Trademarks and Trade Dress

The second factor that you are to consider is the extent, if any, to which the overall appearance of the Warrior Fitness facility is similar to Pure Power's trade dress. The test of consumer confusion is not whether the products or facilities can be differentiated when subjected to a side-by-side comparison, but rather whether they create the same general overall impression. *RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1059, 1060 (2d. Cir. 1979).

If you find that there is substantial similarity between the trade dress of Pure Power and Warrior Fitness, then this factor weighs in Pure Power's favor. If you find that there is no substantial similarity, or only a general similarity, then this factor weighs in favor of the defendants.

### Factor No. 3 -- Proximity in the Marketplace

The third factor is the proximity of the parties' services in the marketplace and the extent to which they appeal to the same universe of purchasers. In considering this factor, you may take into account the kinds of customers to which Pure Power and the Defendants sell their respective

- 29 -

services, the prices at which they sell them, and any other factors which in your judgment bear

upon whether prospective customers may be confused. The closer you find these services to be in

the marketplace, the more this factor weighs in favor of Pure Power The more disparate you find

these services, the more this factor weighs in favor of defendants.


### Factor No. 4 -- Quality of the Defendants' Services

The fourth factor you should consider in determining whether there was likely to be

confusion is the quality of the Warrior Fitness services. If you find that there is a marked

difference in quality between the Pure Power services and the Warrior Fitness services, then this

factor weighs in favor of Warrior Fitness.


### Factor No. 5 -- Evidence of Actual Confusion

The fifth factor to consider is whether there is any direct evidence of actual confusion among

consumers. Actual confusion means that people actually believed that the Warrior Fitness

services and/or facility were from the same source as Pure Power's services and facility or were

sponsored or approved by Pure Power.

In considering this factor, you may consider specific instances of confusion, if any, that

Pure Power has proved, including who was confused or deceived and the nature of any confusion

experienced.

Generally, specific instances of actual confusion weigh in favor of Pure Power and little or

no evidence of actual confusion weighs in favor of the defendants.

NY1 488268v1 12/22/10

### Factor No. 6 -- Sophistication of the Consumers

The sixth factor you should consider in determining whether there was a likelihood of confusion is the sophistication of the consumers in the relevant market. Sophistication in this context does not mean the education or training of the customer. Rather, it means the ability of the customer to distinguish between the Warrior Fitness trade dress and that of Pure Power. If you find that consumers do not have the level of sophistication that would lead them to make that distinction, then this factor weighs in favor of Pure Power. If you find that they do have this level of sophistication, this weighs in favor of defendants.

### Factor No. 7 -- Existence of Good Faith or Bad Faith

The seventh factor that you should consider in determining whether there is a likelihood of confusion is whether the defendants acted in good or bad faith in creating, designing and adopting the Pure Power facilities' overall appearance or trade dress.

If you find that the defendants intended to confuse consumers by adopting their facilities' overall appearance and trade dress to use in providing their services, or that the defendants intentionally copied Pure Power's trade dress, then this would constitute evidence of bad faith. If you find that the defendants acted in bad faith, then this is significant evidence of likelihood of confusion and would weigh in Pure Power's favor. ***DEFENDANTS DISPUTE THE HIGHLIGHTED LANGUAGE.***

### Balancing the Factors

You may find that some of these factors favor Pure Power while other factors favor the defendants. In determining whether there was likely confusion, you must consider and weigh all of the factors that I have just described to you, as well as any other factors that you think are

- 31 -

helpful. No one factor is determinative of whether there was confusion. Different factors may weigh more heavily than others, depending on your consideration of the facts and circumstances of this case. *See Nikon Inc. v. Ikon Corp.,* 987 F.2d 91, 96 (2d Cir. 1993).

### An Appreciable Number

Let me say also a word about what I mean in saying that Pure Power must prove, by a preponderance of the evidence, that an appreciable number of ordinarily prudent consumers were likely to be confused. Proof that only a few people were likely to be confused is not enough. On the other hand, it is up to you to decide, if you find that there was likely to be confusion, whether the number of people likely to be confused was appreciable.

### Ordinarily Prudent Consumers

I have used the phrase "ordinarily prudent consumers." In using that phrase, I mean people who shop with ordinary care and attentiveness. Ordinarily prudent consumers are neither overly attentive not overly inattentive.

### Intent or Knowledge as Evidence of Confusion

There is one other point that I want to make to you about the defendants' intent and knowledge insofar as it bears on the issue of confusion. If you find that the defendants adopted their trade dress knowing or believing that people were likely to think that their facility was provided by Pure Power, or sponsored or associated with it then you may, conclude from that fact alone that confusion occurred.

*Paddington Corp. v. Attiki Importers & Distrib.,* 996 F.2d 577, 586-87 (2d Cir. 1993); 2 J. McCarthy, *McCarthy on Trademarks* § 23.32[2].

NY1 488268v1 12/22/10

Such conscious imitation of a plaintiffs' trade dress supports at least a presumption that the similarity will cause consumer confusion.

*RJR Food, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1060; *Harold F. Ritchie, Inc. v. Chesebrough-Ponds, Inc.*, 281 F.2d 755, 758-759 (2d Cir. 1960).

Under New York law, when a second comer in a market has for no reason he can assign, plagiarized the "make up" of an earlier comer, even if he adds difference that he thinks will prevent diversion, New York courts are content to accept his "forecast" that he is likely to succeed in causing confusion. ***DEFENDANTS DISPUTE THE HIGHLIGHTED LANGUAGE.***

*Am. Chicle Co. v. Topps Chewing Gum, Inc.*, 208 F. 2d 560, 563 (2d Cir. 1944)(J. Hand), *cert. denied*, 323 U.S. 715 (1944).

Intent - Willful Deception

An intention to compete or an intention to imitate Pure Power's trade dress alone is not sufficient to establish willful deception. Willful deception exists only if the defendants not only copied the trade dress, but deliberately intended to cause confusion as to the source of sponsorship or association of their services with Pure Power.

In considering whether the defendants deliberately intended to create confusion as to source, you may take into account the entire manner in which the Warrior Fitness facility was designed and constructed in terms of its overall appearance and any other relevant evidence. In sum, you should consider the overall presentation of the facility.

Intent - Corporate Party's Agents and Employees

I instruct you also - and this applies to all questions relating to the knowledge, belief, or intent of the defendants - that a corporation may act only through its agents or employees. Any agent or employee of a corporation may bind the corporation by his or her acts and declarations

- 33 -

made while the agent or employee is acting within the scope of his or her authority delegated by
the corporation or within the scope of his or her duties as an employee or agent of the corporation.
I instruct you that the knowledge or intent of an agent or employee may be attributed to the
corporation if the agent or employee is acting with the knowledge of the corporation or within the
scope of the agency or employment.

3 Devitt, Blackmar & Wolff § 71.09.

### Scope of Confusing Similarity

A competitive business, once found to have committed an act of unfair competition, may
thereafter be required to keep a safe distance away from the margin line even if that requirement
involves a handicap as compared with those who have not disqualified themselves. *U.S. v.
Leo's, Inc.*, 371 U.S. 38, 53 (1962); *Broderick Boscom Rope Co. v. Manoff,* 41 F.2d 353, 354 (6th
Cir. 1930).

Therefore the phrase "confusingly similar" may be construed so broadly as to prohibit the
use not only of the defendant's originally selected trade dress but also efforts by the defendant to
retain at least part of the goodwill originally misappropriated from plaintiff.

*Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 705 (5thCir. 1981);
*Kentucky Fried Chicken Corp. v. Diversified Packaging*, 549 F.2d 368, 3901 (5th Cir. 1977).

### Pure Power's New York Law Trade Dress Claims

As I mentioned before, plaintiff asserts that the use of Warrior Fitness' accused trade
dress constitutes unfair competition and trade dress infringement under the common law of New
York.  By common law I simply mean the law of New York State as developed by court
decisions as opposed to laws enacted by New York State Legislature.  Unfair competition in this
context is intended to protect against any attempt to misappropriate by deception or confusion
the results of the skill, expenditures and labors of another.

- 34 -

If you concluded earlier that plaintiffs' trade dress was not infringed by defendants because plaintiff's trade dress had not acquired secondary meaning under Federal law, plaintiffs may still prevail on their New York State unfair competition claim if you find that defendants have in bad faith misappropriated the labors and expenditures of plaintiff with the intent to benefit from plaintiff's goodwill and there exists a likelihood of confusion as to the source of defendants' services.  Plaintiff need not prove that its trade dress has acquired meaning to prevail on this claim.

Adapted from: *Imagineering Inc. v. Van Klassens Inc.*, 31 U.S.P.Q.2d 1119 (S.D.N.Y. 1994), *affd* 34 U.S.P.Q.2d 1526 (Fed. Cir. 1995); *Tripledge Prods, Inc. v. Whitney Res. Ltd.* 735 F. Supp 1154 (S.D.N.Y 1990) Burton, Jury Instructions In Intellectual Property Cases, § 30:27:41.

### New York State Trademark Dilution

Additionally, you must separately consider whether defendants have engaged in dilution of Pure Power's trade dress rights under New York General Business Law § 368-d.  You must make such a finding if you determine that defendants' behavior created a likelihood of injury to plaintiff's business reputation or of dilution of the distinctive quality of plaintiffs' trade dress. New York General Business Law § 368-d.

The New York antidilution statute applies to competitors and non competitors, and explicitly does not require plaintiff to prove likelihood of consumer confusion as to source. N.Y.S.G.B.L. § 368-d; *Deere & Co. v. MTD Prods, Inc.*, 41 F.3d 39 (2d Cir. 1994).

The interest protected by this section is the selling power that a distinctive trade dress with favorable associations has engendered for a product or service in the mind of the consuming public.

*Sally Gee Inc. v. Myra Hogan*, 699 F.2d 622 (2d Cir. 1983).

- 35 -

Dilution is the adverse effect upon the value of a senior user's mark or trade dress and refers to the loss of distinctiveness of the trade dress, and a weakening of the trade dress' propensity to bring to mind a particular service, resulting from the junior user's continuing use of similar trade dress.

*Spring Mills, Inc. v. Ultracashmere House, Ltd.*, 532 F.Supp. 1203 (S.D.N.Y. 1982); *Olympic Prison v. U.S. Olympic Comm.*, 489 F.Supp. 1112 (S.D.N.Y. 1980).

<u>Damages</u>

Under the Lanham Act there are two types of monetary recovery which you the jury can provide to a prevailing plaintiff. They are:

1.      An award to the plaintiff of the defendants' profits; or

2.      An award to the plaintiff measured by its actual business damages and losses caused by the defendants' wrongful conduct, including plaintiffs' own lost profits.

Authority:  Cited from *Merriam-Webster, Inc. v. Random House, Inc.*, 26 U.S.P.Q.2d 1161 (S.D.N.Y. 1993); Burton, *Jury Instructions In Intellectual Property Cases*, § 30:80:01.

If you, the jury, find that Warrior Fitness infringed Pure Power's trade dress or unfairly competed with Pure Power and you also found that any one of the following three situations to be supported by a preponderance of the evidence, the you may properly award Pure Power defendants' profits from their sale of Warrior Fitness' services using the:

1.      that defendants unjustly benefitted from their use of the Pure Power trade dress;

2.      that Pure Power sustained damages as a result of defendants' use of Pure Power trade dress; or

3.      that defendants willfully intended to deceive or cause confusion by their use of the Pure Power trade dress.

To receive an award of defendants' profits, Pure Power need not prove that it has lost any sales as a result of defendants' infringement.

See, 15 U.S.C. § 1117, *Brooks Bros. v. Brooks Clothing of California, Ltd.*, 60 F. Supp. 442 (S.D. Cal. 1945), aff'd, 1548 F.2d 798 (9thCir. 1947); *Mater Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117 (9thCir. 1968); *Foremost-McKesson, Inc. v. Trojan Distrib. Co., Inc.* CA No.C-71-1153 RHS (N.D. Cal. 1973); Burton, *Jury Instructions In Intellectual Property Cases*, § 30:82:13.

There are three purposes for which you may make an award of defendants' profits:

1.      to compensate Pure Power for its injury;

2.      to prevent unjust enrichment on the part of Warrior Fitness from their unlawful actions, if any; and

3.      to deter willful infringement if you find the defendants acted willfully and violated Pure Power's rights.

If you determine such an award is appropriate, then you should award Pure Power defendants' net profits from their importation and sale of their services.

In proving a dollar amount with respect to defendants' profits, Pure Power need only prove the dollar amount of sales of Warrior Fitness' services. Defendants bear the burden of proving any deduction, and no deduction may be allowed for any costs unless proven by the defendants by a preponderance of the evidence. If you find that defendants failed to meet their burden of establishing their costs, then you must award Pure Power the full amount of defendants' sales.

*Merriam-Webster, Inc. v. Random House, Inc.*, 26 U.S.P.Q.2d 1161 (S.D.N.Y. 1993); Burton, Jury Instructions In Intellectual Property Cases, § 30:82:31.

Any doubt as to the computation of deductible costs or profits is to be resolved in favor of plaintiff.

- 37 -

*Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966 (2d Cir. 1985). *International Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.,* 80 F.3d 749 (2d Cir. 1996); *George Basch Co., Inc. v. Blue Coral, Inc.,* 968 F.2d 1532 (2d Cir.), *cert. denied.* 113 S.Ct.. 510 (1992).

Under the Lanham Act's grant of discretion, it is proper to estimate lost profits of the Plaintiff, even where the infringer lost money, because the Plaintiff should not be prejudiced by Defendant's inefficiency.

*Otis Clapp & Son, Inc. v. Filmore Vitamin Co.* , 754 F.2d 738 (2d Cir. 1985).

Punitive Damages

In addition to actual damages as we just discussed, the law permits the jury under certain circumstances to award a plaintiff punitive or exemplary damages in order to deter a defendant and others from committing infringing acts. In order to award such punitive damages, you must find from a preponderance of the evidence that defendants' conduct was willful and deliberate.

An act is willfully done if it is done knowingly, voluntarily and intentionally, and not because of mistake or accident.

If you find that defendants' infringing acts were willful, you may award, if you deem it proper to do so, such sum as you deem appropriate. You must keep in mind that the purpose of awarding punitive or exemplary damages is not as compensation to plaintiff for wrong done, but to punish a wrongdoer for some extraordinary conduct and to serve as an example or warning to others not to engage in such conduct. You also may award punitive damages against certain defendants and not all defendants if you find that the conduct of certain defendants was willful and the conduct of others was not willful.

Burton, *Jury Instructions in Intellectual Property Cases*, § 30:83:01.

Defendants assert that in light of Plaintiffs' bad faith and wrongful acts in  violating federal law by stealing 546 of Defendants' emails, forging Fell's signature to his alleged non-

- 38 -

compete agreement, committing trespass, sending spies to Warrior, and menacing Defendants'
business by making false reports concerning drug activity at Warrior, advertising for Pure Power
outside of Warrior's facility, and attempting to make false reports concerning Warrior's facility
with the Department of Buildings, Plaintiffs have no basis to seek punitive damages..

In determining the amount of punitive damages reasonably necessary to punish
defendants, you may consider testimony as to their net worth. However, it is the defendants'
burden to show by a preponderance of the evidence that their financial circumstances warrant a
limitation of the award.

Source: *Smith v. Lightning Bolt Prods, Inc.*, 861 F.2d 363, 373 (2d Cir. 1988).

Therefore, before you can limit an award of punitive damages based on a finding that a
higher amount would result in financial ruin to a defendant, that defendant must show, by a
preponderance of the evidence, that the award would have such an effect.

Finally, the defendants in this Action are joint tortfeasors and are jointly and severally
liable for any damages awarded herein. Joint and several liability was designed so that a plaintiff
does not have the burden of proving which share of the injury each of the defendants was
responsible for. defendants have the burden of denying all liability or proving that the injury is
divisible and how the damages should be apportioned among them.

1 J.D. Lee and B.A. Lindahl, *Modern Tort Law Liability and Litigation,* § 19.02-19.04 (Rev. Ed.
1994).

<u>Copyright Infringement Against All Defendants</u>

We turn now to the claim by Pure Power that Warrior Fitness has infringed the
copyrights in certain of Pure Power's documents including its operation manual, startup manual,
Business Plan and Camp Brochure.

- 39 -